IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

THE HOLMES GROUP, INC.,                )
                                       )
            Plaintiff,                 )        CA No. 05-CV-11367-WGY
                                       )        (Alexander, M.J.)
            v.                         )
                                       )
WEST BEND HOUSEWARES, LLC and          )
FOCUS PRODUCTS GROUP, LLC              )
                                       )
            Defendants.                )
_____)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin  53202-4108
Tel:  (414) 271-6560

Charles A. Laff
Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601
Tel:  (312) 222-0800

Lee Carl Bromberg, BBO # 058480
Erik Paul Belt, BBO # 558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA  02110-1618
Tel:  (617) 443-9292

*Attorneys for the Defendants*

July 19, 2006

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………………………………..…………..iii

INTRODUCTION……………………………………………………….………………….1

STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE
ISSUE OF DISPUTE…………………………………………………………….…………..1

I.      U.S. Patent No. 6,573,483…………………………………………………………1

        A.      The '483 Patent Specification Teaches A Slow Cooker With A Programmable
                Controller Mounted To A Housing Outside The Heating Unit……...………………1

        B.      The Asserted Claims of The '483 Patent…………………………..…………………3

        C.      The '483 Patent Prosecution History Confirms The Limited Scope Of The '483
                Patent To Cookers With A Programmable Controller Mounted To A Housing
                Outside The Heating Unit…......................................................................................4

                1.      The First Office Action And Response……………………….……………..4

                2.      The Second Office Action And Response………………………….………...5

II.     U.S Patent No. 6,740,855…………………………………………………..………….7

        A.      The '855 Patent Specification……………………………………….………...7

        B.      The Asserted Claims Of The '855 Patent……………………….……………..7

        C.      The '855 Patent Prosecution History Demonstrates That The Patent Is Limited To
                Cookers With A Programmable Circuit Positioned Within A Housing Outside The
                Heating Unit……………………………………………………….…...……...8

III.    West Bend's Cooker Has A Programmable Controller And Circuit Housed
        Inside The Heating Unit……………………………………………………….………….9

        ARGUMENT………………………………………………………………….………..11

IV.    There Is No Ambiguity In The Intrinsic Record As To Claim Scope…………………..………..12

      A.    The Specifications Of The Patents-In-Suit Define And Limit The Scope Of
          The Asserted Claims To Cookers With A Programmable Controller Mounted To Or
          Positioned Within A Housing Outside The Heating Unit………………………………13

      B.    The Prosecution Histories Of The Patents-In-Suit Provide An Unmistakable
          And Clear Disavowal of Claim Scope That Would Cover West Bend's  Cooker…........14

V.    West Bend's Cooker Lacks A Programmable Controller Mounted To A Housing Mounted
      Outside The Heating Unit As Required By Claims 13, 14, 17 and 19 Of
      The '483 Patent…………………………………………………………………………..16

VI.    West Bend's Cooker Does Not Infringe Claims 20, 24, 26, 27 Or 29 Of The '855
      Patent Because Its Programmable Controller Is Housed Inside The Heating Unit……….…..18

CONCLUSION…………………………………………………………………………..………..19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Alloc, Inc. v. ITC,* 342 F.3d 1361 (Fed. Cir. 2003), *cert. denied,* 541 U.S. 1063 .......................14

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573 (Fed. Cir. 1996) ...........................11

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,*
    262 F.3d 1258 (Fed. Cir. 2001)....................................................................................................12

*Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335 (Fed. Cir. 1998) ....................................14

*Engel Indus., Inc. v. Lockformer Co,* 96 F.3d 1398 (Fed. Cir. 1996) ...........................................15

*Hockerson-Halberstadt, Inc. v. Avia Group Int'.l,* 222 F.3d 951 (Fed. Cir. 2000).......................15

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*
    381 F.3d 1111(Fed. Cir. 2004).....................................................................................................12

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.,* 450 F.3d 1350
    (Fed. Cir. 2006). ...........................................................................................................................14

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,* 424 F.3d 1336 (Fed. Cir. 2005)..................... 13, 16

*MacNeill Engineering Company, Inc. v. Trisport, Ltd.,* 126 F. Supp. 2d 51
    (D. Mass 2001)..............................................................................................................................11

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc),
    *aff'd*, 116 S.Ct. 1384 (1996).........................................................................................................11

*Mediacom Corporation v. Rates Technology, Inc.,* 4 F. Supp. 2d 17
    (D. Mass. 1998)............................................................................................................................11

*Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340 (Fed. Cir. 2004),
    *cert. denied* 125 S.Ct. 61.............................................................................................................13

*Omega Engineering, Inc. v. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003)...............................15

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005)..................................................... 12, 13

*Plant Genetic Systems, N.V. v. DeKalb Genetics Corp.,* 315 F.3d 1335
    (Fed. Cir. 2003) ............................................................................................................................15

*Sextant Avionique, S.A. v. Analog Devices, Inc.,* 172 F.3d 817 (Fed. Cir. 1999).........................13

*Southwall Technologies, Inc. v. Cardinal IG Company,* 54 F.3d 1570
   (Fed. Cir. 1995). ................................................................................................ 11, 16

*Spectrum Int'l., Inc. v. Sterilite Corp.,* 164 F.3d 1372 (Fed. Cir. 1998) ...................................... 16

*Toro Co. v. White Consolidated Industries, Inc.,* 199 F.3d 1295 (Fed. Cir. 1999) ..................... 12

*V-Formation, Inc. v. Benetton Group SpA,* 401 F.3d 1307 (Fed. Cir. 2005) .............................. 12

*Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546 (Fed. Cir. 1989)................................. 4, 11

*Wang Laboratories, Inc. v. America Online, Inc.,* 197 F.3d 1377 (Fed. Cir. 1999)............... 12, 14

*Watts v. XL Sys., Inc.,* 232 F.3d 877 (Fed. Cir. 2000)........................................................... 12, 13

## **Statutes**

35 U.S.C. § 112............................................................................................................................ 14

35 U.S.C. § 271(b) ....................................................................................................................... 11

## **Rules**

Fed. R. Civ. P. Rule 56................................................................................................................ 11

## INTRODUCTION

Holmes accuses West Bend and Focus of infringing two patents related to programmable slow cookers.  The undisputed facts show that West Bend and Focus do not infringe either of these patents for one simple – and dispositive – reason.  The asserted claims from both Holmes patents require a programmable controller mounted to or positioned within a housing mounted outside the heating unit.  The overarching technologic concept of the patents-in-suit, as driven home by their prosecution, is the placement of the programmable controller outside the heating unit to prevent overheating and damage.  In contrast, West Bend's programmable controller is mounted to and positioned within a housing inside the heating unit.[1]  Holmes cannot dispute this fact.  Therefore, as a matter of law, West Bend does not infringe Holmes' patents.

### STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE OF DISPUTE

**I.     U.S. Patent No. 6,573,483**

The first patent, U.S. Patent No. 6,573,483 ("the '483 patent"), issued on June 3, 2003, from an application filed on March 8, 2001. The patent and all other exhibits are attached to Defendants' LR 56.1 Statement of Undisputed Material Facts.   The '483 patent claims priority from two provisional applications filed on March 15 and April 5, 2000.

**A.     The '483 Patent Specification Teaches A Slow Cooker With A Programmable Controller Mounted To A Housing Outside The Heating Unit**

According to the '483 patent (Ex. A), some slow-cooker appliances that provide all-day cooking only permit one cooking temperature to be set, potentially subjecting the cooked food to over- or under-cooking.  While "[a]nother option may be to use a cooking unit with a controller,

---

[1] "West Bend" is used throughout the remainder of this brief, and only for purposes of this summary judgment motion, to collectively refer to West Bend Housewares, LLC, and Focus Products Group, LLC.

where a user may set a time or temperature desired," such units "tend to be quite a bit larger and more expensive than slow-cooker appliances." *See* Ex. A, '483 patent at col. 1, *ll.* 16-20. The patent explains that if such programmable cookers are made smaller, they "suffer because the controller inevitably must be placed near the heating element." Thus, "[w]hat is needed is a slow cooker unit in which the controller does not become overheated and damaged by the heating element." *Id*. at col. 1, *ll.* 9-28.

To accomplish this objective, the '483 specification describes a single slow-cooker embodiment with a programmable controller mounted to and positioned within a housing ***outside*** the heating unit. No alternative locations for the programmable controller are described or contemplated in the patent.[2] Figure 4 of the patent, reproduced here and annotated, illustrates the sole embodiment disclosed. A printed circuit board (254), which includes a programmable controller (302), is mounted inside housing (210). This housing is mounted outside the heating unit (12). *Id*. at col. 3, *ll.* 12-18; col. 4, *ll.* 48-51.



FIG. 4

_____

[2] *See* Ex. A at col. 1, *ll.* 38-40 ("The appliance includes a programmable controller mounted on its outside, and preferably mounted via a controller housing," . . .); col. 1, *ll.* 43-47 ("The housing, on the side of the slow cooker appliance, . . ."); col. 3, *ll.* 12-15 ("The control 200 preferably includes a circuit board housing 210, a control panel 220, and an insulation shield 222 assembled together for attachment to the outer sidewall 18 of the heating unit 12."); col. 3, *ll.* 27-31 ("This . . . locates the controls and componentry within the housing 210 away from a significant amount of the heat generated by the appliance 10."); col. 3, *ll.* 53-56 ("To further protect the electric componentry within the housing 210 from the heat generated by the appliance 10, the annular shield member 222 is preferably sized for interposition between the heating unit 12 and the housing 210.").

As shown in patent Figure 7 below (annotated and colored), the circuit board (254) (red), on which the programmable controller is located, is mounted to the interior of housing (210) (green), which is mounted *outside* the heating unit (12).  The housing (210) is mounted to an insulation heat shield (222) (blue) interposed between the outer sidewall (18) of the heating unit (12) and the housing.  *Id*. at col. 3, *ll*. 12-18, 53-56; col. 4, *ll*. 48-51.



FIG. 7

Thus, only a slow cooker in which the programmable controller is mounted to a housing *outside* the heating unit is disclosed.

### B.    The Asserted Claims Of The '483 Patent

The '483 patent contains 19 claims, of which only claims 13, 14, 17 and 19 have been asserted against West Bend.  *See* Ex. C, Holmes' Second Supplemental Response to West Bend's First Set of Interrogatories at attached "Exhibit A."   Of these four claims, only claim 13 is independent.[3]  Claim 13 and its dependent claims recite a method of using a programmable

---

[3] An independent claim is one that contains a complete description of the subject matter sought to be protected, without reference to any other claim.  A dependent claim is one that refers back to and further restricts (i.e., makes more narrow) the preceding claim, which may itself be a dependent claim.  A dependent claim thus incorporates all of the elements of the

slow cooker with "a programmable controller mounted to a housing fixedly mounted to a heating unit." The underlined portion of claim 13 below indicates the only limitation of the claim at issue in the present summary judgment motion.

> 13.    A method of using a programmable slow-cooker appliance, the method comprising:
>
> providing a food item;
>
> placing the food item into a cooking unit of the slow-cooker appliance;
>
> selecting a cooking temperature and time using <u>a programmable controller mounted to a housing fixedly mounted to a heating unit</u>; and
>
> changing the heating unit temperature automatically to a lower temperature after the selected time.

Ex. A at col. 8, *ll.* 27-36 (emphasis added).

Dependent claims 14, 17 and 19 add features to the cooking method recited in Claim 13 that are not relevant for purposes of the present motion. *Id.* at col. 8, *ll.* 37-52.

> **C.    The '483 Patent Prosecution History Confirms The Limited Scope Of The '483 Patent To Cookers With A Programmable Controller Mounted To A Housing Outside The Heating Unit**

> **1.    The First Office Action And Response**

The claims as originally filed with the '483 patent application were all rejected by the patent examiner as unpatentable over the cited prior art. *See* Ex. D, '483 First Office Action at 2. The examiner's first office action was brief, and simply identified claims 1-7, 9 and 11-13 as "being clearly anticipated by Rivelli et al." and claims 8, 10 and 14-19 as obvious in view of Rivelli and Yung.[4] *Id.* at 3.

---

claim(s) from which it depends. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

[4] Rivelli U.S. Patent No. 3,904,852 (Ex. E) and Yung U.S. Patent No. 6,196,113 (Ex. F).

In response, Holmes described Rivelli as providing "thick insulation to retard heat transfer into control compartment 54 and computer module 26" and "clearly designed to insulate the controller from heat." *See* Ex. G, '483 Response to First Office Action at 2. Holmes argued that, in contrast to Rivelli's "thermally insulated" controller housing, the '483 patent application claimed a slow cooker and a method of using a slow cooker where the programmable controller housing convects heat away from the controller using a "chimney effect" for cool air flow through the housing. Holmes characterized claim 13 as a method of using the slow cooker of claim 11, thus indicating that claim 13 is limited in scope to a method of using a slow cooker having a programmable controller housing mounted to the outside of the heating unit, as recited in claim 11. *Id.* at 2.

### 2.    The Second Office Action And Response

In a second office action, the examiner again rejected all the claims as obvious in view of Rivelli in combination with various other patents. *See* Ex. H, '483 Second Office Action. In its response, Holmes amended claim 13 to describe the programmable controller as mounted to a housing that is fixedly mounted to the heating unit, explaining that the amendment was made "to better describe the fixed mounting of the housing to the *exterior* of the heating unit". *See* Ex. I, '483 Response to Second Office Action at 4 (emphasis added).

Holmes' arguments for the patentability of claim 13 (and the other two independent claims) emphatically relied on the location of the controller housing on the ***outside*** of the heating unit as the primary feature that distinguished the claimed cooker from the prior art:

- "[T]he combination [of cited references] does not yield the *claimed invention* of Claims 1, 11 and 13, which is a programmable slow-cooker appliance comprising a heating unit, a cooking unit, *a controller housing mounted outside the heating unit, and a programmable controller mounted to the housing, where heat is convected away from the housing.*"

- "The combination [of cited references] does not describe or suggest a device having a controller housing mounted *outside the heating unit* nor having other claimed features, such as those that would allow convection to occur."

- "The combination [of cited references] does not yield a cooking implement having a *controller housing fixedly mounted to an outside of the housing*, since the control module of Rivelli is contained within the single housing, while the controller of Skutt is only hingedly mounted to the exterior of the housing."

- "As mentioned above, neither Rivelli nor Frey describe [sic] a *housing for a programmable controller fixedly mounted to the outside of the heating unit.*"

- "Therefore, even an improper combination of [cited references] does not describe or suggest the claimed invention, including *a controller housing mounted fixedly to the outside of the heating unit.*"

*Id.* at 3-5 (emphasis added).

Holmes also argued that, unlike its claimed invention, Rivelli "has no convection cooling whatever," "uses insulation to prevent conduction of heat to the controller" and "does not use convection to carry heat away from the controller." *Id.* at 3. Likewise, Holmes distinguished the prior art Yung cooker because it uses internal circulation to cool the controller and "fails to describe a housing for a controller mounted outside the heating unit." *Id.* at 5. Indeed, Holmes *defined* the invention recited in claim 13 of the '483 patent as using a slow cooker having a programmable controller mounted outside the heating unit in a housing that convects heat away from the controller. *Id.* at 3.

Accepting Holmes' claim amendments and arguments focusing on the importance of mounting the programmable controller to a housing outside the heating unit as distinguishing the prior art, the examiner issued a notice of allowability as to all claims, with no statement of reasons for allowance. (The claims of the '483 patent are numbered the same as they were in the application.)

6

## II.    U.S. Patent No. 6,740,855

The second patent in suit, U.S. Patent No. 6,740,855 ("the '855 patent"), issued on May 25, 2004, as a continuation of the '483 patent.  The '855 patent is attached as Exhibit B.

### A.    The '855 Patent Specification

The '855 specification is essentially the same as the '483 specification and only describes a slow cooker with an outside-mounted housing for a programmable circuit.

### B.    The Asserted Claims Of The '855 Patent

Of the 42 claims in the '855 patent, only claims 20, 24, 26, 27 and 29 have been asserted against West Bend.  Ex. C at attached "Exhibit A."  Of these, claim 20 is the only independent claim.  The underlined portions of claim 20 below indicate the claim limitations at issue in the present motion for summary judgment.

> 20.    A programmable slow-cooker appliance comprising:
>
> a heating unit including a bottom and a continuous sidewall extending from said bottom, said bottom and said continuous sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall;
>
> a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall;
>
> <u>a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit</u>;
>
> <u>a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time</u>;
>
> a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time; and
>
> a cooking unit removably positioned in said well-like chamber.

*See* Ex. B, the '855 patent at col. 9, *ll.* 17-38 (emphasis added).

Dependent claims 24, 26, 27 and 29 add features to the slow cooker of claim 20 that are not relevant for purposes of the present motion. *Id*. at col. 9, *ll*. 53-57, *l*. 62 to col. 10, *l*. 3; col. 10, *ll*. 6-9.

### C.    The '855 Patent Prosecution History Demonstrates That The Patent Is Limited To Cookers With A Programmable Circuit Positioned Within A Housing Outside The Heating Unit

The patent examiner initially rejected all claims in the '855 patent application as obvious in view of Rivelli (Ex. E) and other prior art. *See* Ex. J, '855 First Office Action. In response, Holmes argued that although "concerned with protecting solid state components from overheating," Rivelli "does not have applicability to slow cookers" because Rivelli's programmable circuit housing is mounted within the heating unit "rather than projecting from an outer sidewall as described in the independent claims of the present application." *See* Ex. K, '855 Response to First Office Action at 16. In keeping with this argument, claim 53 of the application (now claim 20 of the '855 patent) was amended specifically to describe, among other things, the housing for the programmable circuit projecting outside the sidewall of the heating unit. *Id*. at 6.

Thus, consistent with its theme from the '483 patent application, Holmes continued to focus on placement of the programmable controller and programmable circuit housing *outside* the heating unit as a primary reason for patentability. Indeed, Holmes drew a sharp contrast between its cooker and the prior art by arguing that housing the programmable circuit inside the heating unit as taught by Rivelli would not work for Holmes' type of slow cooker. *Id*. at 16.

The examiner then allowed the application explaining, in pertinent part, that the prior art of record does not teach: " . . . as per claims 53-75, use of a separate control housing of

thermoplastic materials which projects outward from the sidewall and is fixedly mounted to control the slow cooker." *See* Ex. L, '855 Notice of Allowance at 2.

### III.    West Bend's Cooker Has A Programmable Controller And Circuit Housed Inside The Heating Unit

The accused West Bend programmable "Crockery"<sup>TM</sup> slow cooker Model No. 84386 has a programmable controller and circuit mounted to and positioned within a housing that is located entirely ***within*** the heating unit.

The West Bend cooker comprises a heating unit that holds a removable cooking vessel in which the food is cooked. The slow cooker is operated through a control panel mounted directly to the front of the heating unit. *See* Ex. M, Feinberg Decl. at ¶ 6. A user can program the cooker by selecting cooking times and temperatures by means of the control panel. The cooking parameters are selected by pushing the buttons on the control panel. There are no electronic or electrical components mounted to the control panel. *Id*. at ¶ 8. When the control panel buttons are pushed, they actuate switches mounted on a first circuit board behind the control panel. The switches provide the user-selected cooking information (in the form of electrical signals) to a programmable controller mounted to and positioned within a housing that is mounted inside the heating unit.



The first circuit board is mounted to the inside of a plastic housing that, in turn, is mounted to the ***inside*** of the heating unit, independent of the control panel, so that the first circuit board lies entirely inside of the heating unit. *Id*. at ¶ 10.

Neither the first circuit board nor any of the components mounted on this first circuit board is programmable or includes any circuitry or logic to program the cooking cycles and temperatures or to automatically lower the cooking temperature to a warm mode. The first circuit board provides a physical platform to mount and interconnect various components, which act as the interface between the user and the programmable controller. *Id.* at ¶ 13.

The programmable controller of the West Bend cooker is the only component of the cooker that is programmed to operate the heating element in accordance with the selected cooking parameters (i.e., cooking time and temperature) and to automatically lower the cooking temperature to a warm mode after the selected cooking time elapses. The programmable controller is positioned within a plastic housing which is mounted to, and lies entirely within, the inside of the heating unit base; the programmable controller is not positioned within a housing mounted to and projecting outside a sidewall of the heating unit. *Id.* at ¶¶ 12, 13.



Second Circuit Board With Programmable
Controller, Viewed From Underside of
Programmable Controller Housing



Cut-Away Side View Of Cooker
Showing Underside of Heating
Unit Base

## ARGUMENT

Determining whether a device or method infringes a patent claim involves a two-step analysis. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 116 S.Ct. 1384 (1996). First, the claims are interpreted to determine their meaning and scope. *Id.* at 976. Second, the properly construed claims are compared to the accused device. *Id.*

A motion for summary judgment of noninfringement under Rule 56 provides a practical and efficient vehicle to construe the claims. *Markman*, 52 F.3d at 981. *Mediacom Corporation v. Rates Technology, Inc.,* 4 F. Supp. 2d 17, 22 (D. Mass. 1998). *See also MacNeill Engineering Company, Inc. v. Trisport, Ltd.*, 126 F. Supp. 2d 51, 68 (D. Mass. 2001). Thus, where as here, Holmes only asserts literal infringement and the relevant structure of West Bend's accused cooker is straightforward and cannot be disputed, the question of infringement collapses into one of claim construction that is amenable to summary judgment.[5] *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed.Cir. 1996).

For literal infringement, each limitation of the asserted claims must be found, without exception, one-for-one in West Bend's cooker. The absence of even one claim limitation from the West Bend cooker precludes a finding of literal infringement.[6] *Southwall Technologies, Inc.*

---

[5] As to the '483 patent, Holmes only asserts claims that cover a *method* of using a programmable slow cooker, and does not assert any of the patent's claims that cover the slow cooker apparatus itself. Thus, as for the '483 patent, West Bend could only be accused of inducing infringement under 35 U.S.C. § 271(b), since it does not itself perform the claimed method, but, rather, sells a cooker that allegedly would be used by others to perform the claimed method. In contrast, the asserted '855 patent claims cover a slow cooker apparatus. In any event, the infringement analysis is the same for both patents-in-suit.

[6] The Court need only consider whether independent claim 13 of the '483 patent and independent claim 20 of the '855 patent (the only independent claims asserted here) are infringed because dependent claims cannot be infringed if the independent claim from which they depend is not infringed. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

*v. Cardinal IG Company,* 54 F.3d 1570, 1575 (Fed. Cir. 1995). This principle is called the "all limitations" or "all elements rule." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 884 (Fed. Cir. 2000).

## IV.     There Is No Ambiguity In The Intrinsic Record As To Claim Scope

Although as a general rule patent claims are to be given their plain, ordinary and accustomed meaning to one of ordinary skill in the relevant art, the Court must nevertheless examine the remaining intrinsic evidence (i.e., the specification and prosecution history, including cited prior art) to determine whether Holmes has disclaimed subject matter or otherwise limited the scope of the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). The intrinsic record provides "the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention." *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005). For example, in the *Toro, Bell Atlantic* and *Wang Laboratories* cases, the scope of the claims at issue was limited based on the description of the claimed invention in the specification and disavowal of claim scope in the prosecution history. *Toro Co. v. White Consolidated Industries, Inc.*, 199 F.3d 1295 (Fed. Cir. 1999); *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001); *Wang Laboratories, Inc. v. America Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999).

Given the lack of technical and linguistic complexity of the claims at issue here, as well as the lack of ambiguity in the patents themselves and their prosecution histories, the meaning of the claims as understood by a person of skill in the art can be readily determined by the Court. *Phillips*, 415 F.3d at 1314. There is no ambiguity in the intrinsic evidence here as to the scope of the patent claims and, therefore, resort to extrinsic evidence, such as expert testimony, is improper. *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116

(Fed. Cir. 2004); cited with approval by *Phillips*, 415 F.3d at 1312. Indeed, it would be ironic for Holmes to contend "that the evidence intrinsic to its own patent is ambiguous and insufficient to construe the claims, thus requiring resort to extrinsic evidence such as expert testimony." *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 825 (Fed. Cir. 1999).

### A. The Specifications Of The Patents-In-Suit Define And Limit The Scope Of The Asserted Claims To Cookers With A Programmable Controller Mounted To Or Positioned Within A Housing Outside The Heating Unit

One purpose of examining the specification is to determine if Holmes has limited the scope of the claims. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). The specifications of the patents-in-suit play an important role in properly construing the claims because the specifications identify the primary problem addressed by the claimed invention and the manner in which the invention solves the problem. (The specifications of both patents are substantially identical, given that the latter issued '855 patent is a continuation of the earlier '483 patent).

From the outset, in describing how to prevent the programmable controller from overheating, Holmes' only solution is to mount the programmable controller to a housing outside the heating unit away from the heating element; no other way of solving the problem is contemplated. Ex. A at col. 1, *ll.* 9-28. "While it is true that not every advantage of the invention must appear in every claim, it would be peculiar for the claims to cover prior art that suffers from precisely the same problems that the specification focuses on solving." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1343-1344 (Fed. Cir. 2005) (citation omitted). Holmes' statements about the necessity of mounting the controller to a housing outside the heating unit to avoid overheating "are not limited to describing a preferred embodiment, but more broadly describe the overall" invention of the patents-in-suit. *Microsoft Corp. v. Multi-*

*Tech Sys., Inc.,* 357 F.3d 1340, 1348 (Fed. Cir. 2004), *cert. denied* 125 S.Ct. 61; *see also Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1355 (Fed. Cir. 2006) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." (quotation omitted)).  Where, as here, "the subject matter that is claimed is the only subject matter that is described and enabled in the specification, that is the invention itself, and not simply a 'preferred' example of a broader invention that is not described and enabled." *Wang*, 197 F.3d at 1383.  *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1346-47 (Fed. Cir. 1998).

The specifications of the patents-in-suit provide compelling evidence that the asserted claims must be limited to a cooker where the programmable controller is mounted to or positioned within a housing outside the heating unit.  Any other interpretation would be inconsistent with the very character of the claimed invention, *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1370 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 1063, and cover subject matter that is not sufficiently described in the specification to meet the written description and enablement requirements of 35 U.S.C. §112.  *Wang Laboratories*, 197 F.3d at 1383.

**B.    The Prosecution Histories of the Patents-In-Suit Provide An Unmistakable And Clear Disavowal of Claim Scope That Would Cover West Bend's Cooker**

The prosecution histories of the patents-in-suit leave no doubt that the asserted claims do not cover West Bend's cooker.  The '483 patent is limited to a slow cooker where the programmable controller is mounted to a housing that is mounted outside the heating unit.  Likewise, the '855 patent is limited to a slow cooker where the programmable circuit is

positioned within a housing mounted to and projecting outside a sidewall of the heating unit. Based on the prosecution history alone, a patent's claims may be properly interpreted as narrower than their ordinary meaning where there has been a clear disavowal of claim coverage such as in the present case. *Plant Genetic Systems, N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1345 (Fed. Cir. 2003).[7] Examination of the prosecution histories of the patents-in-suit is especially important here, where the invention involves a crowded art field and there is particular prior art that Holmes has distinguished. *Engel Indus., Inc. v. Lockformer* Co, 96 F.3d 1398, 1405 (Fed. Cir. 1996). When Holmes repeatedly declared during prosecution of the patents-in-suit that its claims do not cover cookers where the programmable controller or programmable circuit is mounted to or positioned within a housing inside the heating unit, it cannot now change its position and sue West Bend based on the very type of device that it expressly disclaimed. *Hockerson-Halberstadt, Inc. v. Avia Group Int.'l*, 222 F.3d 951, 957 (Fed. Cir. 2000).

During the prosecution of the patents-in-suit, Holmes consistently characterized its invention as limited to a cooker where the programmable controller is mounted to a housing outside the heating unit, insisting that this feature alone made its cooker patentable. To drive its point home, Holmes repeatedly distinguished the prior art, including Rivelli and Yung, from its claimed cooker on the grounds that the prior art cookers mounted their controllers to housings inside the heating unit. In this crucial respect, West Bend's cooker is just like the prior art that Holmes so painstakingly distinguished to obtain the patents-in-suit.

---

[7] The doctrine of prosecution history disclaimer is well established in Supreme Court precedent, precluding Holmes from recapturing through claim interpretation specific meanings disclaimed during prosecution. *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The doctrine of prosecution history disclaimer has been adopted by the Federal Circuit "as a fundamental precept" in its claim construction jurisprudence. *Id.*

The prosecution histories of the patents-in-suit confirm that all of the asserted claims are limited in scope to a cooker where the programmable controller is mounted to or positioned within a housing on the outside of the heating unit.  Holmes has unequivocally disclaimed any claim scope that would cover West Bend's cooker with a programmable controller mounted to and positioned within a housing inside the heating unit like the prior art that Holmes distinguished to obtain the patents-in-suit.  *Spectrum Int'l., Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed Cir. 1998).  Any other conclusion would lead to sweeping, overbroad claims of a scope far greater than that to which Holmes is entitled.  *LizardTech., Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005).  By mounting the programmable controller – the only programmable component of its cooker – to a housing inside the heating unit, West Bend has produced a slow cooker that falls far outside the scope of the patents-in-suit.  *See Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d 1570 (Fed. Cir. 1995), *cert. denied* 516 U.S. 987 (1995).

## V.    West Bend's Cooker Lacks A Programmable Controller Mounted To A Housing Mounted Outside The Heating Unit As Required By Claims 13, 14, 17 and 19 Of The '483 Patent

West Bend's Crockery[TM] slow cooker does not infringe claim 13 or dependent claims 14, 17, and 19 of the '483 patent because these claims require a "programmable controller mounted to a housing fixedly mounted to a heating unit."  The specification and prosecution history of the '483 patent, as discussed above, present a clear claim disavowal restricting this claim limitation to programmable controllers mounted to housings *outside* the heating unit.

In contrast, West Bend's programmable controller is mounted to a housing that is mounted to the inside of the base of the heating unit. The West Bend programmable controller and the housing in which it is mounted lie entirely within the heating unit. Ex. M at ¶ 12. The West Bend programmable controller and the housing in which it is mounted are not mounted outside the heating unit and, therefore, West Bend's Crockery™ slow cooker does not infringe claims 13, 14, 17 or 19 of the '483 patent.



In its answers to West Bend's interrogatories, Holmes points to the West Bend control panel on the front of the cooker as the component that purportedly corresponds to the programmable controller housing mounted to the outside of the heating unit required by claims 13, 14, 17 and 19. Ex. C at attached "Exhibit A".

In West Bend's cooker, however, the programmable controller is not mounted to the control panel and, therefore, the control panel is not a programmable controller housing as called for by the asserted claims. The only things mounted to the West Bend control panel are the plastic push buttons for selecting the operating temperature and cooking time and the window to view the time and temperature LEDs. Ex. M at ¶ 8. Like the prior art that Holmes distinguished in order to obtain the patents-in-suit, West Bend mounts its programmable controller to a housing that is mounted inside, not outside, the heating unit. *Id.* at ¶ 12.

West Bend's cooker therefore lacks the critical element required by claim 13 (as well as dependent claims 14, 17 and 19) that purportedly distinguishes the claim from the prior art. As a matter of law, West Bend's cooker does not infringe claims 13, 14, 17 and 19 of the '483 patent.

## VI.    West Bend's Cooker Does Not Infringe Claims 20, 24, 26, 27 Or 29 Of The '855 Patent Because Its Programmable Controller Is Housed Inside The Heating Unit

West Bend's Crockery slow cooker does not infringe claim 20 or dependent claims 24, 26, 27 or 29 of the '855 patent because these claims require "a housing fixedly mounted to and projecting outside" a sidewall of the heating unit and "a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of the set cooking time." The programmable controller is the only component of the West Bend cooker that is programmable and configured to automatically switch the heating element to a lower temperature warm mode at the end of the set cooking time. Claim 20 requires the programmable circuit, and therefore the programmable controller, to be positioned within a housing mounted to and projecting outside the sidewall of the heating unit. There is no dispute that West Bend's programmable controller is positioned within a housing that is mounted to and located entirely inside the base of the heating unit. Thus, there is no infringement because West Bend's programmable controller, the only programmable component of West Bend's cooker, is not positioned within a housing that is mounted to and projects outside the heating unit as required by claim 20 and its dependent claims.

Moreover, the specification and prosecution histories of the patents-in-suit, as discussed above, present a clear disavowal of any claim scope that would cover a cooker like West Bend's where the programmable controller is positioned within a housing that is mounted to and located entirely inside the heating unit. In addition to its arguments to obtain the '483 patent that the programmable controller must be mounted to a housing outside the heating unit, Holmes argued

to obtain the '855 patent that its claimed cooker is patentable over Rivelli because Rivelli's programmable circuit housing is mounted within the heating unit "rather than projecting from an outer sidewall as described in the independent claims of the present application." Ex. K at 16.

Thus, the programmable controller must be positioned within a housing that is mounted to and projects outside a sidewall of the heating unit to meet the limitations of claim 20 and its dependent claims. Holmes has disclaimed any claim scope covering a cooker like West Bend's where the programmable controller, the only programmable component of West Bend's cooker, is positioned within a housing that is located entirely inside the heating unit.

## CONCLUSION

In sum, West Bend's slow cooker does not infringe the patents-in-suit for at least two key reasons. First, West Bend's programmable controller is mounted to a housing inside the base of the heating unit. West Bend's programmable controller is not mounted to a housing mounted outside the heating unit as required by the asserted '483 patent claims. Second, West Bend's programmable circuit is not positioned within a housing mounted to and projecting outside a sidewall of the heating unit as required by claim 20 because West Bend's programmable controller is located entirely inside the base of the heating unit. These critical differences are readily apparent by merely comparing the profiles of the patented device as shown in patent Figure 7 and West Bend's cooker.

Holmes disclaimed any claim scope covering a slow cooker where the programmable controller is mounted to and positioned within a housing that is mounted and located entirely inside the heating unit. The technologic basis of the patents-in-suit is the placement of the programmable controller and circuit outside the heating unit in a housing that convects heat away from the controller and circuit to protect from overheating and damage. Contrary to the

teachings of the patents-in-suit, West Bend has placed its programmable controller – the only programmable component of its cooker – inside the heating unit.

For the foregoing reasons, West Bend respectfully requests that summary judgment be entered against Holmes and in favor of West Bend that West Bend's accused slow cooker does not infringe claims 13, 14, 17 or 19 of the '483 patent or claims 20, 24, 26, 27 or 29 of the '855 patent.

Dated: July 19, 2006

Respectfully submitted,

WEST BEND HOUSEWARES, LLC
FOCUS PRODUCTS GROUP, LLC

*By their attorneys*,


/s/ Erik P. Belt
Lee Carl Bromberg, BBO # 058480
Erik Paul Belt, BBO # 558620
Bromberg & Sunstein LLP
125 Summer Street
Boston, MA 02110-1618
Tel: (617) 443-9292
ebelt@bromsun.com

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Tel: (414) 271-6560

Charles A. Laff
Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Tel: (312) 222-0800

**CERTIFICATE OF SERVICE**

I certify that, on July 19, 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Erik P. Belt
Erik Paul Belt