**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

```
-----------------------------------------------X
THE HOLMES GROUP, INC.,              :
                                     :
                  Plaintiff,         :        Civil Action No.  05-CV-11367 WGY
            v.                       :        (Alexander, M.J.)
                                     :
WEST BEND HOUSEWARES, LLC and        :
FOCUS PRODUCTS GROUP, L.L.C.,        :
                                     :
                  Defendants.        :
-----------------------------------------------X
```

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
Alan M. Sack, Esq. (*Pro Hac Vice)*
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  516-822-3550
Facsimile:  516-822-3550

Nicholas J. Nesgos (BBO No. 553177)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  617-973-6100
Facsimile:  617-367-2315

*Attorneys for Plaintiff*

October 12, 2006

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................ii, iii

I.    INTRODUCTION .........................................................................................1

      1.    The Invention at Issue .........................................................................1

      2.    Overview of Proceedings .....................................................................1

II.   THE PATENTS-IN-SUIT ..............................................................................3

III.  THE WEST BEND PROGRAMMABLE SLOW-COOKER ............................6

IV.   ARGUMENT ...............................................................................................8

      1.    Legal Standard ..................................................................................8

            A.    Summary Judgment ...................................................................8

            B.    Literal Infringement ..................................................................9

            C.    Doctrine of Equivalents ..............................................................9

      2.    West Bend's Statement of Facts And Arguments Related
            to Claim Construction Are No Longer At Issue ....................................10

      3.    The Court's Construction of the Limitation "A Programmable Circuit
            Positioned Within Said Housing" Is Flawed as a Matter of Law ...........10

      4.    West Bend's Programmable Slow-Cooker Includes A Programmable
            Controller Mounted To A Housing Fixedly Mounted To A Heating Unit
            As Defined In Claim 13 Of The '483 Patent .........................................13

      5.    West Bend's Programmable Slow-Cooker Infringes
            Claim 20 Of The '855 Patent ..............................................................17

V.    CONCLUSION ............................................................................................20

TABLE OF AUTHORITIES

Page(s)

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
    183 F.3d 1334 (Fed. Cir. 1999)...............................................................................11

*Brown v. 3M*,
    265 F.3d 1349, 1352 (Fed. Cir. 2001) ...................................................................13

*CAE Screenplates Inc. v. Heinrich Fielder GmbH & Co. KG*,
    224 F.3d 1308 (Fed. Cir. 2000).................................................................................9

*Cannon Rubber Ltd. v. The First Years, Inc.*,
    163 Fed. Appx. 870, 2005 WL 3542910 (Fed. Cir. 2005)..................................12, 13

*Gentry Gallery Inc. v. Berkline Corp.*,
    134 F.3d 1473 (Fed. Cir. 1998)...............................................................................11

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
    339 U.S. 605 (1950).................................................................................................16

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
    62 F.3d 1512 (Fed. Cir. 1995) *rev'd on other grounds,*
    520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)..............................................9

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
    78 F.3d 1575 (Fed. Cir. 1996)..................................................................................11

*Johns Hopkins Univ. v. Cellpro Inc.*,
    152 F.3d 1342 (Fed. Cir. 1998)................................................................................11

*Kahn v. Gen. Motors Corp.*,
    135 F.3d 1472 (Fed. Cir. 1998)..................................................................................9

*Litton Sys., Inc. v. Honeywell, Inc.*,
    140 F.3d 1449 (Fed. Cir. 1998),
    *abrogated on other grounds by Festo*, 234 F.3d 558..................................................9

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
    402 F.3d 1364 (Fed. Cir. 2005).............................................................................3, 11

*Pfaff v. Wells Elecs., Inc.*,
    5 F.3d 514 (Fed. Cir. 1993).........................................................................................9

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000)................................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996).............................................................................3, 11

**STATUTES**

Fed.R.Civ.P. 56(c) .............................................................................................................8, 9

# I.     INTRODUCTION

## 1.     The Invention at Issue

The Holmes patents-in-suit relate to a structure and method of using a programmable slow-cooker appliance.  Subsequent to the market introduction of a programmable slow-cooker by Holmes covered by the Holmes patents, West Bend began marketing and selling programmable slow-cookers which Holmes contends infringe Holmes' '483 and '855 patents.

Holmes markets and sells its programmable slow-cooker under the brand names Rival® Crockpot®.  Holmes is the undisputed market leader in the slow-cooker appliance industry and has for decades provided customers with innovative, high-quality products.  While Holmes has long known great success in the sales of slow-cooker appliances, in the early 2000's, Holmes was the first in the industry to recognize the benefits of a programmable slow-cooker over traditional, mechanically controlled slow-cookers and bring such a product to market.

Mechanical slow-cookers provide the consumer with a choice of cooking temperatures, generally low and high and the appliance remains in a cooking mode until shut-off or unplugged. Holmes recognized the benefit of a programmable slow-cooker in which the consumer would have better control over the cooking process.  Several alternative designs for the programmable slow-cooker appliance are disclosed in the '483 and '855 patents.  Generally, the programmable slow-cooker covered by the Holmes patents permits the consumer to select a cooking time and temperature.  At the expiration of the set cooking time, the appliance automatically reduces power to the heating element to place it in a keep warm mode.  Thus, the cooked food is maintained at a serving temperature and prevents spoilage in the event the user is not available at the end of the set cooking time to attend to the appliance.

## 2.     Overview of Proceedings

On July 19, 2006, Defendants (hereinafter referred to as "West Bend") filed a Motion for

Partial Summary Judgment of Non-Infringement.  Thereafter, the Court scheduled Markman briefing and a Markman Hearing which was conducted on September 27, 2006.  At the Markman Hearing, the Court provided its interpretation of the disputed claim limitations in U.S. Patent Nos. 6,573,483 (the '483 Patent) and 6,740,855 (the '855 Patent).  A copy of the Markman Hearing Transcript is provided as Ex. E to Plaintiff's Counter-Statement of Facts.

In view of the claim construction issued by the Court, Plaintiff ("Holmes") responds to West Bend's motion as set forth below.  Much of West Bend's motion has been rendered moot based upon the Court's claim construction.  A significant portion of West Bend's motion is directed to claim construction which has already been decided by the Court.  Furthermore, West Bend's motion relies heavily on a claim construction that the "programmable controller" defined in Claim 13 of the '483 Patent and "programmable circuit" defined in Claim 20 of the '855 Patent is limited solely to a microprocessor and excludes all other electronic components of the circuit.  Contrary to West Bend's proposed interpretation, the Court has held that the "programmable controller" and "programmable circuit" are not so limited.

Furthermore, in construing the limitation of the "programmable circuit positioned within said housing," the Court has made an error of law which should be corrected.  Specifically, the Court has interpreted the limitation as requiring the "circuit, not just a portion of the circuit" to be positioned within the housing.  Ex. E, p. 38.  However, such an interpretation is contrary to the ordinary meaning of those terms as understood by persons skilled in the art as well as the teaching in the specification and, more importantly, does not encompass any disclosed embodiment in the written description portion of the specification which is necessary for proper claim construction. This maxim flows from the statutory requirement that the specification shall contain a written description of the invention, which requires a patent applicant to disclose in the specification

sufficient subject matter to support the breadth of the claims. A claim construction that does not encompass a disclosed embodiment is thus rarely, if ever, correct and would require highly persuasive evidentiary support. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). *See also Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1368 (Fed. Cir. 2005). ("The fact that the construction adopted by the district court and advocated by Masimo would have the effect of placing all embodiments of the invention outside the scope of the claims is powerful evidence that the court's construction is incorrect"). As discussed below, the Court's interpretation requiring "not just a portion of the circuit" to be positioned within the housing places all the disclosed embodiments of the patent outside the scope of the claims. Accordingly, this interpretation should be modified as a matter of law.

Lastly, the limitation of the housing fixedly mounted to the heating unit as set forth in Claim 13 (''483 Patent) and Claim 20 ('855 Patent) have been construed by the Court in a manner which requires further clarification. Specifically, the Court's construction should be modified to be more consistent with each other and the disclosed embodiments. Notwithstanding the suggested modifications, the West Bend device falls within the scope of the claims as interpreted by the Court either literally or under the doctrine of equivalents.

## II.    THE PATENTS-IN-SUIT

The '483 patent issued on June 3, 2003. The '483 Patent and all other exhibits are attached to Holmes' LR 56.1 Counter-Statement of Material Facts To Which a Genuine Issue Exists. The '483 Patent discloses a programmable slow-cooker appliance which allows a user to select a cooking temperature and a cooking time. In operation, at the expiration of the elapsed cooking time, the programmable slow-cooker automatically switches the heating element from a cooking mode to a lower temperature warm mode to maintain the cooked food at a serving temperature. (Ex. A, Col. 5, line 44 - Col. 6, line 27). The '855 Patent is a continuation of the '483 Patent and

issued on May 25, 2004. (Ex. B). Therefore, the specification and drawings in the '483 and '855 patents are identical; only the claims differ. Thus, when considering the disclosure and drawings of the '483 and '855 patents, reference need only be made to the '483 Patent.

The '483 and '855 patents also disclose and claim a novel structure to keep electronic components of the programmable slow-cooker cool. However, Holmes has not asserted any claims which require the novel cooling structure.

The programmable slow-cooker includes a heating unit 12 and a programmable cooking unit 14 which is made of ceramic. (Ex. A, Col. 3, lines 8-12; Col. 2, lines 63-67). The heating unit has a bottom 16 and a continuous outer sidewall 18. The bottom and interior sidewall define a well-like heating chamber 20. (Ex. A, Col. 2, lines 38-40). A heating element 24 is provided in thermal contact with and wrapped around the interior sidewall 17 of the heating unit 12. (Ex. A, Fig. 11). The programmable slow-cooker is provided with a programmable control 200 (Ex. A, Fig. 4), which preferably includes a circuit board housing 210, a control panel 220, and an insulation shield assembled together for attachment to the outer sidewall 18 of the heating unit 12. The interior of the housing 210 contains a printed circuit board 254 containing electronic components. (Ex. A, Col. 3, lines 12-18). The housing 210 preferably includes a control panel user interface 224 located on a front surface of the housing. (Ex. A, Col. 3, lines 19-21).

The programmable slow-cooker also includes programmable circuitry 300 designed to permit the user to program both a time and temperature for cooking as well as being configured to automatically switch the heating element from a cook mode to a lower temperature warm mode at the expiration of a set cooking time. Alternative embodiments of the programmable circuit 300 are described in the specification with reference to an electrical schematic as shown in Figs. 10 and 13.

The '483 specification notes that the selected components of the programmable circuit are

merely exemplary and that the circuitry may be implemented in numerous ways to accomplish the varying programming modes. "Note that while examples are given, the circuitry may be implemented in numerous ways, as is well-known in the art, to accomplish the varying programming modes described herein." (Ex. A, Col. 5, lines 16-19). The programmable circuit (300) includes input and output devices in the form of push-button switches, (S1, S2, 227, 229, 231, 233), displays in the form of LED's (D3-D8), or a digital display (57), a microprocessor (302), thermistor (310), and Triac (304), among other electronic components (resistors, capacitors, diodes, etc). The specification also states that some components of the programmable circuit are connected externally of the circuit board. For example, "[t]he temperature of the cooking appliance is measured using a thermistor 310, which is connected externally of the circuit board to the underside of the bottom of the heating chamber." (Ex. A, Col. 5, lines 19-22). Similarly, the Triac 304, which switches power applied to the heating elements is preferably "mounted separately to one of the mounting holes… of the heat sink 256." (Ex. A, Col. 5, lines 27-36; Figures 10, 11 and 13).

Thus, the preferred embodiment in the specification discloses that some components of the programmable circuit are provided on a printed circuit board within the housing while other components are mounted external to the circuit board as well as the housing. Nowhere in the specification is there disclosed any embodiment in which the entire programmable circuit 300 is provided within the housing. Therefore, a proper claim construction must encompass a disclosed embodiment, i.e., wherein components of the programmable circuit are provided on a printed circuit board within the housing, but some components of the circuit can be external to the printed circuit board and outside the housing. The file histories of the '483 and '855 patents do not include any discussion of the programmable circuitry that would limit the Court's construction.

### III.     THE WEST BEND PROGRAMMABLE SLOW-COOKER

Attached as Appendix C to the Trumper Declaration (Ex. D) are photos of the disassembled West Bend programmable slow-cooker taken from the Feinberg Declaration, which have been relabeled and numbered by Dr. Trumper to correspond to the elements described in the '483 Patent. Elements not specifically enumerated in the in the '483 and '855 Patents have been italicized and provided new reference numerals.  (Ex. D, ¶ 13).

The accused West Bend programmable slow-cooker appliance is designed for cooking food at constant, relatively-low cooking temperature for a relatively long period of time, and being programmable to operate at a variety of different cooking modes and cooking times.  (Ex. D, App. C, photos 1-2).  Additionally, at page 4 of the Instruction Manual, programming instructions are provided to the purchaser. As explained at p. 4, the user turns on the device by pressing the on/off button located on the control panel interface.  The user then presses the "TEMP" button to select a cooking temperature.  The user then presses the time button to set a desired cooking time.  Once the time and temperature have been selected, the user presses the cook button to start the cooking cycle.  When the cooking cycle is complete, i.e. the time set for cooking has expired, the cooker shifts to a warm mode.  (Ex. D, ¶¶ 19-21).

The West Bend programmable slow-cooker includes a heating unit (12) and a cooking unit (14) in a form of a ceramic cooking vessel.  The heating unit (12) is formed by an interior (17) an outer sidewall (18) and a bottom (16).  The interior sidewall (17) and bottom (16) define a well-like heating chamber (20), which is shaped to receive the ceramic cooking unit (14).  A heating element (24) is secured to an outer surface of the interior sidewall (17).  The West Bend device also includes a programmable control (200), which includes a circuit board housing (210), programmable circuit (300), and a control panel user interface (224) on the front surface of the

- 6 -

*outer housing shell (210B)* having buttons for setting a cooking time and cooking temperature, light emitting diodes ("LED's") and digital readouts for indicating cooking time and cooking temperature. (Ex. D, ¶ 22; App. C, photos 1, 2-4, 6 and 8).

The West Bend programmable slow-cooker includes *"a programmable controller"* consistent with the Court's construction of this term for Claim 13 ('483 Patent) and *"a programmable circuit,"* as interpreted by the Court for Claim 20 ('855 Patent). Specifically, the West Bend programmable slow-cooker includes a programmable electrical circuit (300). (Ex. D, App. C, photos 10 and 12). The electrical circuitry (300) includes input and output devices, for example a microprocessor controller (302), Triac (304), thermistor (310), switches (S1-S2), LED's (D3-D8) as well as other circuit components which permit an operator to select a cooking temperature and cooking time. (Ex. D, ¶ 28).

The West Bend programmable slow-cooker further includes a printed circuit board housing (210) formed by an *inner housing shell (210A)* (white plastic) and an *outer housing shell (210B)*, (black plastic) which together form an enclosure (210). The control panel user interface (224) is located on the outer face of *the outer housing shell (210B)*. The outer sidewall (18) of the West Bend slow-cooker has a cutout to accommodate the printed circuit board housing (210) enclosure and provide access for wires connecting to electronic components of the programmable circuit (300) to components mounted within the heating unit (12). The *inner housing shell (210A)* is attached to the inner surface of outer sidewall (18) by screws fastened from the outside of outer sidewall (18). The *outer housing shell (210B)* covers the *inner housing shell (210A)* and is affixed to the exterior of the outer sidewall (18) of the heating unit (12) by screws fastened from the inside of the outer sidewall (18). The *inner housing shell (210A)* and *outer housing shell (210B)* having the control panel user interface (224) on its outer surface form the circuit board housing (210)

enclosure, which is mounted to and located on the outer sidewall (18) of the heating unit (12). (Ex. D, ¶ 35, App. C, photos 4-6, 8 and 10). Both the *inner housing shell (210A)* and the *outer housing shell (210B)* are fixedly mounted by screws to, and extend beyond, the outer surface of the sidewall (18) of the heating unit (12). (Ex. D, ¶¶ 28, 36, App. C, photos 1, 3, 5, 10 and 12).

Furthermore, the West Bend programmable slow-cooker includes a programmable circuit (300), in the form of an assemblage of electronic components including a microprocessor controller (302), Triac (304), thermistor (310), switches (S1-S2), light emitting diodes (LED's)(D3-D8) and other electronic components to form the circuit. More specifically, the West Bend device includes components of the programmable circuit (300) mounted on a printed circuit board (254) located within the printed circuit board housing (210) and other components of the programmable circuit (300), including a microprocessor controller (302), resistors, diodes and capacitors on a *second printed circuit board* connected by wires to printed circuit board (254) and to Triac (304). The thermistor (310) is positioned within the heating unit to determine the temperature of the cooking appliance and connected by wire to the printed circuit board (254). (Ex. D, ¶ 45).

## III.    ARGUMENT

### 1.    Legal Standard

At the Markman Hearing, the Court issued its interpretation of disputed claim limitations identified by the parties. Based upon the Court's construction, Holmes contends that the accused West Bend programmable slow-cooker infringes the asserted claims either literally or under the doctrine of equivalents.

### A.    Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Nonetheless, the Court must view the evidence in the light most favorable to the non-moving

party. *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 517 (Fed. Cir. 1993). In considering a motion for summary judgment, the Court relies upon any "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," which in toto comprise the relevant record. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir. 2000) (quoting Fed. R. Civ. P. 56(c)).

### B.    Literal Infringement

A two-step analysis is performed to determine whether an accused device literally infringes a patent claim. *CAE Screenplates Inc. v. Heinrich Fielder GmbH & Co. KG*, 224 F.3d 1308, 1316 (Fed. Cir. 2000). "First, the claims must be correctly construed to determine the scope of the claims. Second, the claims must be compared to the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998). If the accused product meets each of the limitations contained in a claim, then the product literally infringes the patent. If, however, even one limitation is not met, then the product does not literally infringe. Therefore, "any deviation from the claim precludes a finding of literal infringement." *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998), *abrogated on other grounds by Festo*, 234 F.3d 558.

### C.    Doctrine of Equivalents

In theory, "[a] device which does not infringe a patent claim literally may still infringe the claim under the doctrine of equivalents if each and every limitation of the claim is literally or equivalently present." *CAE Screenplates*, 224 F.3d at 1318-19. A claim limitation is equivalently present if there are only "insubstantial differences" between the limitation and the corresponding elements of the device. *Id.* at 1319 (citing *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517-18 (Fed. Cir. 1995) *rev'd on other grounds,* 520 U.S. 17, (1997). As with literal infringement, the doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole. *Id.* at 29.

>    2.    West Bend's Statement of Facts And Arguments Related to Claim
>           Construction Are No Longer At Issue

As discussed above, the parties submitted briefs on claim construction and, at a Markman

Hearing, the Court issued its ruling on claim construction.  A chart identifying the claim terms at

issue and the Court's construction of such terms is attached.  (Ex. D, App. D).

West Bend's proffered claim construction was not accepted by the Court in several

important aspects.  Specifically, the Court did not restrict the claim terms "programmable

controller" and "programmable circuit" to the microprocessor component of the circuit as

requested by West Bend.  Instead, the Court construed the programmable controller to be in the

form of an "electric circuit or circuits including input and output devices which permit an operator

to select a cooking temperature and cooking time."  (Ex. E, p. 20).  Similarly, the Court construed

the programmable circuit limitation to be "an assemblage of electronic components, which allows

the user to program both the temperature and desired time for cooking and which can

automatically change the heating element from a cooking mode to a warm mode once the set

cooking time has expired."  (Ex. E, p. 38).  Thus, West Bend's statements of facts which rely on

this incorrect interpretation are themselves incorrect and should be given no weight.  Likewise, the

Court did not adopt West Bend's proposal that the "housing" must extend entirely outside the

heating unit.   Accordingly, West Bend's reasons for finding non-infringement are fundamentally

flawed by relying on incorrect premises as its starting point.

>    3.    The Court's Construction of the Limitation "A Programmable Circuit
>           Positioned Within Said Housing" Is Flawed as a Matter of Law

In construing Claim 20 of the '855 Patent, the Court interpreted the phrase "the

programmable circuit positioned within said housing" to mean that "the circuit, not just a portion

of the circuit, is positioned within the housing."  At the Markman Hearing, Holmes objected to

such an interpretation as improper since the specification was not so limited, none of the disclosed

embodiments included the entire circuit within the housing, and that such an interpretation was an inoperable embodiment since some of the electronic components of the programmable circuit are disclosed as being outside the housing. (Ex. E, pp. 39 and 41-45; Ex. D, ¶¶ 42-44).

When construing claim limitations, the Court views the claims in light of the teaching in the specification. Thus, a patent claim should be construed to encompass at least one disclosed embodiment in the written description portion of the specification. The Federal Circuit has held on numerous occasions that a claim construction which does not encompass a disclosed embodiment is rarely if ever correct, and would require highly persuasive evidentiary support. *Johns Hopkins Univ. v. Cellpro Inc.*, 152 F.3d 1342, 1355 (Fed. Cir. 1998); *Vitronics*, 90 F.3d at 1583. "The fact that a particular construction would have the effect of placing all the embodiments of the invention outside the scope of the claims is powerful evidence that the construction is incorrect." *Nellcor*, 402 F.3d at 1368. "A claim interpretation that excludes the preferred embodiment is rarely, if ever, correct". *Gentry Gallery Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998). "It is unlikely that an inventor would define the invention in a way that excludes the preferred embodiment or that those skilled in the art would read it that way." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996). "A claim construction that would exclude the preferred embodiment described in the specification cannot be sustained." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1341 (Fed. Cir. 1999).

In the present case, the construction by the Court which requires "the circuit, not just a portion of the circuit" to be positioned within the housing is outside the scope of all disclosed embodiments. In the specification, the programmable circuit 300 is illustrated in a schematic diagram in Figs. 10 and 13, which provide alternative embodiments. However, in each disclosed embodiment, electronic components illustrated as being part of the circuit are described in the

- 11 -

specification as being located external to the printed circuit board and outside the housing. For example, a thermistor 310 shown in both Figs. 10 and 13 is used to measure a temperature of the cooking appliance. The specification states that thermistor 310 "is connected externally of the circuit board to the underside of the bottom of the heating chamber." (Ex. A, Col. 5, lines 19-22). Similarly, the Triac 304, which switches power applied to the heating elements is preferably "mounted separately to one of the mounting holes on the center portion 256a of the heat sink 256" external to the printed circuit board. (Ex. A, Col. 5, lines 27-36; Ex. D, ¶ 42).

The specification also discloses that alternative electronic components may be used to accomplish the different functions of the circuitry. (Ex. A, Col. 5, lines 16-19). Accordingly, in view of the disclosed preferred embodiments, the specification clearly contemplates that some electronic components of the programmable circuit will be mounted on a printed circuit board provided within the housing, while other components are mounted external to the printed circuit board and housing. (Ex. D, ¶ 43). Therefore, a proper claim construction will not be so limited as to exclude encompassing the preferred embodiments and only require that electronic components of the programmable circuit be mounted on a printed circuit board positioned within the housing. This interpretation is consistent both with the ordinary meaning of the claim terms and the teaching in the patent specification. The claim term "within" is a simple, non-technical term, and under its ordinary meaning includes both circuits contained entirely and partially within the housing.

Of interest is a non-precedential opinion of the Federal Circuit having facts similar to those before the Court. In *Cannon Rubber Ltd. v. The First Years, Inc.*, 163 Fed. Appx. 870, 2005 WL 3542910 (Fed. Cir. 2005), the district court limited the claim language "diaphragm disposed in the body" to require the entire diaphragm to be contained within the body. On appeal, the Federal Circuit, in its non-binding decision, held that, "the district court improperly added the limitation

- 12 -

'entirely' in its interpretation of the claim limitation 'diaphragm disposed in the body.'  As an initial

matter, we note that the term 'in' is a simple, non-technical term, and that under its ordinary

meaning, a 'diaphragm disposed in the body' includes both diaphragms contained entirely and

partially in the body.  *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (recognizing that

claim terms may not be technical terms of art, and do not require elaborate interpretation).  For

example, a trash bag is 'in' a trashcan even though a portion of it is hanging outside of the

trashcan."  *Cannon*, 163 Fed. Appx. at 875, 2005 WL 3542910 at **4.  Accordingly, although not

binding precedent, the Federal Circuit has held that a claim term very similar to "a programmable

circuit positioned within a housing" from Claim 20 of the '855 Patent should be construed to

include programmable circuits both entirely and partially contained within the housing.  Thus, a

construction requiring the entire circuit to be positioned within the housing conflicts with the plain

meaning of the claim terms and is directly contrary to the teachings in the specification so as not to

encompass any disclosed embodiments.  Moreover, there is no reason to deviate from this plain

meaning since the patentee did not act as a lexicographer or surrender any subject matter in the

specification or prosecution history.  In view of the foregoing, Holms requests that the Court

reconsider its construction of this limitation.

### 4.   West Bend's Programmable Slow-Cooker Includes A Programmable Controller Mounted To A Housing Fixedly Mounted To A Heating Unit As Defined In Claim 13 Of The '483 Patent

West Bend only disputes that certain claim limitations are not met by the accused

programmable slow-cookers.  Since West Bend has not raised any issues as to other claim

limitations, there is no dispute that each of these limitations are literally present in the accused

West Bend programmable slow-cookers.  (Ex. D, ¶ 16).

West Bend's programmable slow-cooker appliance includes structure which is covered by

the claim limitation "a programmable controller mounted to a housing fixedly mounted to a

- 13 -

heating unit."  The Court has construed the terms "programmable controller" and the "housing fixedly mounted to a heating unit."  The Court has interpreted the "programmable controller" as "a form of electrical circuit or circuits including input and output devices which permit an operator to select a cooking temperature and cooking time."  (Ex. E, p. 20).

Comparing the claim limitation to the accused West Bend programmable slow-cooker, Dr. Trumper finds that every limitation is literally present.  Specifically, the accused West Bend appliance has a programmable controller in the form of electrical circuitry including input and output devices (e.g. switches, LED's, thermistor, Triac, microprocessor, resistors, capacitors, etc.) which permit an operator to select a cooking temperature and cooking time.  (Ex. D, ¶¶ 16, 28).

The Court has also construed the limitation regarding the "housing fixedly mounted to a heating unit" as a housing "mounted to and located on the outside of the heating unit," commenting further that the housing is "outside, or at least overwhelmingly or generally outside" of the heating unit.  (Ex. E, pp. 20-21, 24).  However, such qualifying terms do not appear in the written specification.  (Ex. D, ¶ 31).  The West Bend programmable slow-cooker includes the housing as defined by the claim and construed by the Court either literally or under the doctrine of equivalents.

As an initial matter, Holmes requests that the Court reconsider its construction of this claim limitation to be definitive and more consistent with the construction of a similar claim limitation in Claim 20 of the '855 Patent.  Specifically, Claim 20 includes the limitation of "a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit."  Holmes contends that the Court's construction of this limitation more accurately defines the claim scope in view of the intrinsic evidence of record, namely, that the housing be mounted to the outer sidewall of the heating unit and extend at least beyond an outer surface of the sidewall.  This construction could also be adopted to the similar limitation in Claim 13 of the '483 Patent regarding the

"housing fixedly mounted to the heating unit."  (Ex. D, ¶¶ 43-34).

Should the court not modify its construction of this limitation, Holmes contends that the West Bend programmable slow-cooker still falls within the scope of the claim.  Specifically, the West Bend device includes a housing (210) formed by two housing parts, an *inner housing shell (210A)* and an *outer housing shell (210B)* which form an enclosure.  The *inner housing shell* is fixedly attached to the interior surface of the outer sidewall by screws.  A portion of the *inner housing shell* extends beyond an outer surface of the sidewall of the heating unit.  (See Ex. D, ¶¶ 35, 36, App. C, photos 1-6, 8, 10 and 12).  A printed circuit board including input and output devices is mounted to the printed circuit board housing (210).  The printed circuit board is connected by wires to the externally mounted thermistor and other electrical components of the programmable circuit (300) mounted on another printed circuit board provided in the base of the heating unit.  The *outer housing shell (210B)* covers or encloses the opening of the *inner housing shell* and is fixedly fastened to the exterior surface of the heating unit.  The entire *outer housing shell* projects outwardly beyond an outer surface of the sidewall of the heating unit.  Thus, the *inner and outer shells* both project outwardly beyond the heating unit sidewall.  Accordingly, the West Bend programmable slow-cooker literally includes a "programmable controller mounted to a housing fixedly mounted to a heating unit" as defined by Claim 13 of the '483 patent.  (Ex. D, ¶ 36).

If the Court should find that the West Bend structure is not literally encompassed by the claim, Holmes contends that the West Bend device infringes under the doctrine of equivalents.  By placing a portion of the housing within the heating unit, West Bend has merely made an insubstantial change which accomplishes the function of the claimed invention (i.e., programming a cooking time and temperature and automatically changing the heating unit temperature from a cooking mode to a lower temperature warm mode at the end of a selected time) in substantially the

same way to achieve substantially the same result.  *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608 (1950).  The way to achieve the function is by providing a circuit which can program a cooking time and temperature and configured to automatically change power to the heating element to switch from a cooking mode to a lower temperature warm mode at the expiration of a set cooking time.  Clearly, West Bend's device includes a circuit to accomplish these functions.  With respect to the housing, West Bend's device includes a housing fixedly mounted to the heating unit.  West Bend's housing or enclosure includes portions which extend both into the heating unit as well as projecting outwardly beyond the outer surface of the sidewall of the heating unit.  Accordingly, should the Court require the housing to be "overwhelmingly" or "largely" outside of the heating unit, the West Bend device would still infringe under the doctrine of equivalents since the housing accomplishes the function of providing an enclosure for the programmable controller as construed by the Court in substantially the same way to achieve substantially the same result as an enclosure "largely" outside the heating unit.  (Ex. D, ¶¶ 37-38).

West Bend's motion for summary judgment with respect to Claim 13 is based upon an incorrect premise.  West Bend relies on a finding that the programmable controller is the microprocessor component (302) of the programmable circuit (300).  The Court has ruled otherwise.  (Ex. E, pp. 19-20).  Thus, West Bend incorrectly concludes that the microprocessor "is not mounted to the control panel, and, therefore, the control panel is not a programmable controller housing as called for by the asserted claims."  (West Bend Memorandum, p. 17).  In view of West Bend's argument being rendered moot by the Court's claim construction and the evidence of infringement of Claim 13 as provided in the Trumper Declaration (Ex. D), West Bend's motion must fail.

**5.    West Bend's Programmable Slow-Cooker Infringes
Claim 20 Of The '855 Patent**

West Bend only disputes that certain limitations of Claim 20 of the '855 patent are not present in the accused device. Thus, there is no dispute that the remainder of the claim limitations are literally present in the West Bend programmable slow-cooker. (Ex. D, ¶ 16). Specifically, West Bend contends that the issues relate to the programmable circuit positioned within the housing.

With respect to the claim limitation "a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit" the Court has construed that to mean a housing "mounted to and largely outside the outer sidewall of the heating unit and extending at least beyond an outer surface of the sidewall of the housing unit." As discussed above, the West Bend device includes a housing formed by an *inner housing shell (210A)* and an o*uter housing shell (210B)*. A portion of the *inner housing shell* extends beyond an outer surface of the sidewall and the entire *outer housing shell* extends outwardly from the outer sidewall. Accordingly, the housing formed from the two housing parts are mounted to and extend beyond an outer surface of the outer sidewall of the heating unit. In its construction, the Court has interpreted the claim so that the housing is "largely outside" the outer sidewall. Since a portion of the inner housing shell and the entire outer housing shell of the housing extend outwardly from the outer sidewall, this limitation is literally met by the West Bend structure. (Ex. D, ¶ 35, 36; App. C, photos 1, 3, 5, 10 and 12).

Should the Court hold that the housing limitation is not literally present, Holmes contends that any differences are merely insubstantial and do not avoid infringement under the doctrine of equivalents. The function of the housing is to provide an enclosure for at least a portion of the programmable circuit. The way this function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall of the heating unit to form the enclosure. The result

- 17 -

is substantially the same since the West Bend enclosure projects beyond an outer surface of the sidewall.  The Court has suggested that the housing project "largely outside" the outer sidewall; however, this limitation does not appear in either the claim language or the specification. Accordingly, West Bend's accused structure, if not literally present, is clearly an insubstantial change and therefore infringement under the doctrine of equivalents.  (Ex. D, ¶¶ 37-39).

    As discussed above, the Court's construction of the limitation "a programmable circuit positioned within the housing" should be modified solely with respect to the requirement that "the circuit, not just a portion of the circuit, is positioned within the housing."  Since this interpretation does not encompass any embodiment disclosed in the specification, Holmes contends that modification is warranted.

    If the Court does modify its interpretation as suggested by Holmes, the West Bend device clearly literally falls within the scope of the claim.  The West Bend device includes a programmable circuit in the form of an assemblage of electronic components which allows the user to program both the temperature and desired time for cooking and which can automatically change the heating element from a cooking mode to a warm mode once the set cooking time has expired.  Specifically, the West Bend device includes a circuit composed of electronic components such as switches, LED's, a microprocessor, Triac, thermistor, resistors, capacitors, transistors, etc. which perform the programming functions of the slow-cooker appliance.  (Ex. D, ¶ 45).

    The West Bend programmable circuit includes two printed circuit boards connected by wires as well as components mounted external to the printed circuit boards.  One of the printed circuit boards of the programmable circuit is positioned within the housing.  The other printed circuit board is mounted within the heating unit.  In the West Bend device, the thermistor and Triac are both mounted externally to the printed circuit boards within the heating unit interior space.

Accordingly, under the Court's present construction, which is believed to be in error, requiring the circuit, not just a portion of the circuit be positioned within the housing, infringement can be found under the doctrine of equivalents. West Bend's programmable circuit is not entirely within the housing; however, a printed circuit board including electronic components which permit a user to select a cooking time and temperature is positioned within the housing. The circuit as a whole, including both printed circuit boards, the thermistor and Triac works in exactly the same way to achieve the same result as the programmable circuit 300 disclosed in the '855 patent. The only difference is that some electronic components are provided on a printed circuit board located within the heating unit rather than inside the housing. Splitting the printed circuit board component of the programmable circuit (300) into two circuit boards which are connected by wires is an insubstantial change readily apparent to a person of ordinary skill in the art. The West Bend programmable circuit performs all the claimed functions (selecting a cooking time and temperature and automatically changing the heating element from a cook mode to a warm mode once the set time has expired) in substantially the same way to achieve substantially the same result. Merely splitting one circuit board component of the programmable circuit (300) into two circuit boards connected by wires does not change the function, way, or result of the circuit. Thus, the West Bend device infringes Claim 20 as construed by the Court under the doctrine of equivalents. (Ex. D, ¶¶ 46-49). Nothing in the prosecution histories would exclude a housing both inside and outside the outer sidewall or a programmable circuit having a portion outside the housing.

Should the Court modify its interpretation as suggested by Holmes and supported by the controlling law, only a portion of the circuit would be required to be "positioned within the housing." It is clearly evident that the West Bend device includes a printed circuit board which forms a part of the programmable circuit positioned within the housing. (Ex. D, ¶ 47). Accordingly, the West Bend

programmable slow-cooker literally infringes the disputed claim limitation by including a printed circuit board having electronic components from the programmable circuit positioned within the housing as modified in the suggested manner by Holmes.

West Bend's motion improperly relies on the requirement that the microprocessor must be positioned within the housing. ("Claim 20 requires the programmable circuit, and therefore the programmable controller [i.e., microprocessor], to be positioned within a housing mounted to and projecting outside the sidewall of the heating unit." West Bend Memorandum, p. 18). Since the Court has construed the programmable circuit (300) to include more than merely the microprocessor component (302), West Bend's logic and therefore its motion must fail.

## V.    CONCLUSION

For the foregoing reasons, the Court should modify the claim construction as proposed and deny West Bend's Motion for Partial Summary Judgment of Non-Infringement.

<div style="margin-left:40%">

Respectfully submitted,

SUNBEAM PRODUCTS, INC.,
f/k/a THE HOLMES GROUP
By its Attorneys,

</div>

Dated: October 12, 2006

<div style="margin-left:40%">

/s/ Charles R. Hoffmann
Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
Alan M. Sack, Esq. (*Pro Hac Vice*)
AMSDocket@hoffmannbaron.com
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on October 12,

2006.

/s/ Glenn T. Henneberger
Glenn T. Henneberger