IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

        Plaintiff,

vs.

WEST BEND HOUSEWWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

        Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**LEAVE TO FILE GRANTED
ON OCTOBER 19, 2006**

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
### MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

October 19, 2006          *Attorneys for Defendants*

## INTRODUCTION

As construed by the Court, the claims require that the programmable controller/circuit, not just a portion of the circuit, be mounted to or positioned within a housing mounted **<u>outside</u>** the heating unit. There is no dispute that the only programmable component of West Bend's cooker – the microprocessor controller – is at least part of the programmable controller/circuit and that it is mounted to and positioned within a housing that is located entirely **<u>inside</u>** the cooker's heating unit. This simple, undisputed fact warrants the grant of summary judgment of noninfringement in favor of West Bend.

Unable to show infringement under the Court's *Markman* rulings, Holmes argues that almost all of the rulings should be changed to fit its contrived theory of infringement. There is no support in the intrinsic record to support Holmes' claim interpretation arguments. In fact, the record contradicts Holmes' arguments.

Accordingly, summary judgment of noninfringement should be granted to West Bend.

## ARGUMENT

## I.     HOLMES' PROPOSED CLAIM INTERPRETATIONS ARE INCORRECT.

In its response to West Bend's Motion for Summary Judgment, Holmes requests that the Court reconsider several of its *Markman* rulings. West Bend does not oppose that request but suggests that, if the rulings are reconsidered, they should not be limited to just those rulings which Holmes disputes. The Court should address West Bend's as well as Holmes' concerns with the *Markman* rulings. West Bend also agrees with Holmes that claim 13 of the '483 patent and claim 20 of the '855 patent should be interpreted so that they are consistent with each other.

1

West Bend further suggests that the claims at issue should be construed to be consistent not only with each other but also consistent with the specification and file histories of the patents-in-suit.[1]

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed.Cir.1998)). If claim interpretation is reconsidered, the Court should be aware that throughout Holmes' 20 page brief and the 22 page declaration of Holmes' expert, there is no mention of the prosecution histories of the patents or of the clear claim disavowals contained therein.

### A. The "Programmable Controller" And "Programmable Circuit" Do Not Include The Input And Output Devices.

In response to an argument made by Holmes that the input and output devices were needed "to carry out the structure of the claim," the Court interpreted the term "programmable controller" as "a form of electrical circuit or circuits **including** input and output devices which permit an operator to select a cooking temperature and cooking time**."** Holmes Ex. E[2] at 20, ll.

---

[1]     The prosecution histories of the patents-in-suit are not among the documents reviewed by Holmes' expert in preparing his report which is directed primarily to claim interpretation rulings. For that reason alone, his claim interpretation "opinions" are legally flawed and should summarily be disregarded by the Court. *See Serio-Us Indus., Inc. v. Plastic Recovery Tech. Corp.*, 459 F.3d 1311, 1319 (Fed. Cir. 2006) ("As this court stated recently, 'a court should discount any expert testimony 'that is at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'")

[2]     "Holmes Ex." refers to the Exhibits filed by Holmes in conjunction with Plaintiff's Response To Defendants' Memorandum In Support Of Their Motion For Partial Summary Judgment of Non-Infringement. References to "Ex. A" through "Ex. S" refer to the exhibits filed in connection with West Bend's opening summary judgment brief. West Bend additionally files with this brief Ex. T and Ex. U. Ex. T is Holmes' Supplemental Response To West Bend's

19-22.  The Court included the input and output devices "because you're going to have to have more circuits than that [the microprocessor circuit] to actually select a cooking temperature and time."  Holmes Ex. E at 19, ll. 15-21.  This interpretation constitutes legal error because it is based upon the legally erroneous assumption that patent claims must include limitations to each step or structure necessary for operability.

> Even though the memory device needs this information, **the claims need not recite every component necessary to enable operation of a working device**.  *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1303, 50 USPQ2d 1429, 1435 (Fed.Cir.1999) (applicant need not claim every feature of a working device).

*Rambus, Inc. v. Infinion Technologies, AG,* 318 F.3d 1081, 1093 (Fed. Cir. 2003) (emphasis added).

> In so construing the claims, the district court erred by importing the functions of a working device into these specific claims, **rather than reading the claims for their meaning independent of any working embodiment**.

*Rodime PLC v. Seagate Technology, Inc.,* 174 F.3d 1294, 1303 (Fed. Cir. 1999) (emphasis added).

The selection step of method claim13 requires only that among the circuits and/or structures used in making the selection there be a "programmable controller/circuit."

In the context of the '483 patent, a "controller" is a device that controls other devices, i.*e.*, output devices such as the heating element, LEDs and displays.  A "programmable" controller is one that is capable of receiving various modes of operation instructions from other devices, i.*e.*, input devices such as a thermistor and switches.  J.A.[3] at MKM0014, col. 1, ll. 50-56.  Figure 10 of the '483 patent lists several components of circuitry 300.  Only one of those

---

Interrogatory No. 1 In View of Claim Construction By The Court dated October 6, 2006.  Ex. U is the photograph of the West Bend cooker that includes the reference numbers used by Holmes' in its infringement claim chart included with its response to Interrogatory No. 1.

[3]     "J.A." refers to the Joint Appendix For Markman Briefing filed by the parties.

components is designated as the controller – controller 302 – which is the only programmable component of circuitry 300. The controller is only a part of circuitry 300. Claim 13 neither requires nor excludes the presence of other circuits or structures (inputs and outputs) that may also be used in the selection step.

The Court has already construed the "programmable circuit" of claim 20 as "an assemblage of electronic components . . . [that] does not include the heating element, the control panel, displays, and buttons." Holmes Ex. E at 38, ll. 12-21. West Bend agrees with the Court's construction as quoted above, but believes that the construction does not go far enough in its limitation of what is not included as part of the "programmable circuit." For the reasons set forth above in regard to claim 13, West Bend believes that the "programmable circuit" of claim 20 must be limited to the only circuit shown in Figure 10 that is "programmable," *i.e.*, controller 302, and excludes the input and output devices.

**B.    The Controller/Circuit, "<u>NOT JUST A PORTION</u>," Must Be Mounted To Or Positioned Within A Housing Outside The Heating Unit.**

Proper claim construction requires that the "programmable controller" of claim 13 (however defined), not just a portion of that controller, be mounted to a housing outside the heating unit. The language of claim 13 places no qualification that would exclude any portion of the claimed programmable controller. This conclusion is confirmed when claim 13 is read in the context of the specification as required by the Federal Circuit's *en banc* decision in *Phillips*.

The purpose of mounting the "programmable controller" to an outside housing is to protect it from overheating. As explained by the patents, prior art cookers "suffer because the **controller** inevitably must be placed near the heating unit." J.A. at MKM0014, col. 1, ll. 23-27. The patent then states that the patented cooker is better and different than the prior art because its "programmable **controller** [is] mounted on its outside, and preferably mounted via a controller

housing, which acts to insulate the **controller** from the heat of the appliance." *Id*. at col. 1, ll. 38-43.  Insulating and protecting only a portion of the controller from overheating makes no sense.  If a portion of the controller overheats, the controller fails and the purpose at the very heart of Holme's alleged invention fails.  Further, the only description of the invention set forth in the specification mounts **all** of the electronic components needed to be insulated from the heat to a housing outside the heating unit.  Nowhere does the specification suggest mounting only a portion of the controller to an outside housing.  There simply is no intrinsic evidence supporting Holmes' position.

Holmes argued at the *Markman* hearing, and now again on summary judgment, that the embodiments of the invention disclosed in the specification mount only a portion of the circuitry shown in Figure 10 to the housing.  Arguing that Figure 10 defines the claimed programmable controller/circuit, Holmes concludes that the claims therefore require that only a portion of the claimed programmable controller/circuit  be mounted to (or positioned within) the housing.  Holmes Br. at 4-5.  As noted above, the basis for Holmes' position is legally erroneous.

West Bend does not dispute the fact that the only embodiments of the invention disclosed in the specification neither mount the thermistor to the housing nor position the thermistor within the housing.  Those electrical devices that do not require insulation, *e.g*., the heating element (output device) and the thermistor (input device), are of necessity positioned inside the heating unit.  The logical conclusion (and the one actually consistent with the patent specification) to be drawn from this fact, however, is that Figure 10 does not define the "programmable controller" and the heating element and thermistor, like all of the other input and output devices, are not part of the programmable controller.  Consequently, claim 13, as properly construed, covers all of the embodiments disclosed in the specification.

The Court has already construed claim 20 to mean that the programmable "circuit, not just a portion of the circuit, is positioned within the housing." Holmes Ex. E at 38, ll. 12-21. West Bend agrees with the Court's construction. For the reasons set forth above in regard to claim 13, the Court should not change its construction that claim 20 requires that the programmable circuit, not just a portion of the circuit , is positioned within the housing.

By construing the programmable controller/circuit as excluding the input and output devices and requiring that the entire controller/circuit, not just a portion of the controller/circuit, be mounted to and positioned within the housing outside the heating unit, there is consistency between claims 13 and 20 and between those claims and the specification because the claims cover the disclosed embodiments.

Holmes' reliance upon the unpublished *Cannon Rubber Ltd. v. The First Years, Inc.*, 163 Fed. Appx. 870, 2005 WL 3542910 (Fed. Cir. 2005), decision is entirely misplaced[4] and does not support its position that the term "within" as recited in claim 20 means "partially within." Even if considered, however, the facts of *Cannon Rubber* do not support Holmes' argument because it ignores the different context of the patents. The specification of *Cannon Rubber's* patent demonstrated that the breast pump component could be entirely **or partially** disposed within the claimed body. The Holmes' patent specification demonstrates that the entire circuit, not just a portion of the circuit, must be positioned within the housing. The Federal Circuit adhered to *Phillips* and relied upon the context provided by the specification when it construed the term "disposed in the body" as not limited to structures disposed entirely in the claimed body. *Id.* As explained above, the problem addressed by the '483 and '855 patents is protecting the

---

[4] At the outset, *Cannon Rubber* is an unpublished decision "and must not be employed or cited as precedent." Fed. Cir. R. 47.6(b). West Bend believes that the Court should follow the Federal Circuit Rules and ignore Holmes inappropriate citation and argument regarding this case.

programmable controller/circuit from heat damage.  J.A. at MKM0014, col. 1, ll. 23-27 & 38-43.
It would be nonsensical to protect only a portion of this circuit, as the unprotected portion would
still be damaged.  Moreover, Holmes' patent specification discloses mounting or
positioning only the **entire** controller/circuit within the housing.  *Cannon Rubber* is not
applicable to the facts of this case.


II.    **WEST BEND'S SLOW COOKER DOES NOT INFRINGE THE HOLMES PATENTS.**

Holmes' infringement allegations are based on the following premises:

1) The programmable controller/circuit of claims 13 and 20 includes the input and output devices.

2) The combination of what Holmes denominates in West Bend's cooker as the "outer housing shell 210B" and the "inner housing shell 210A" constitutes claim 13's and 20's programmable controller/circuit housing.
   *(West Bend will refer to the alleged combination of the two as the "Holmes' combination.")*

3) Claims 13 and 20 only require that a portion of the "programmable controller/circuit" be mounted to and positioned within Holmes' combination.

Infringement requires that each of these three premises are true.  Since none of them are,
West Bend does not infringe as a matter of law.


A.    **West Bend Does Not Infringe Either Claim 13 Or 20 Because Its Programmable Controller Is Not Mounted To Or Positioned Within A Housing Outside The Heating Unit.**

1.    *The Programmable Controller/Circuit Does Not Include Input And Output Devices.*

If the term "programmable controller/circuit" is construed, as West Bend believes it
should, to exclude the input and output devices, West Bend does not infringe.  West Bend's
structure corresponding to this definition is the programmable controller identified in Dr.

Feinberg's declaration at page 6, ¶11. Ex. M. As explained by Dr. Feinberg, this controller is the **only** component of the West Bend cooker that is programmable and the only component that controls the heating unit. Ex. M, ¶13. This testimony is unrebutted. Since West Bend's programmable controller is not mounted to or positioned within a housing that is mounted to and located outside the heating unit, West Bend's cooker does not contain at least one of the limitations of claim 13 or 20 and, consequently, does not infringe those claims or any claim depending there from.

Even if the input and output circuits are included within the definition of the "programmable controller/circuit," West Bend still does not infringe, as explained below.

### 2. *West Bend Does Not Infringe Because Its Housing Is Not Located Outside The Heating Unit.*

First, Holmes' combination is wrong. Without so much as one citation to the intrinsic evidence or any other support, and completely devoid of explanation, Holmes announces that the combination of West Bend's control panel and first circuit board housing is the housing of claim 13. There is no dispute that these are separate, not combined, structures in the West Bend cooker. Together they do not constitute the claimed housing. The specification teaches that separate structures, even those mounted to the "housing," do not together become the housing. Heat shield 222 is mounted to the housing 210, but is a separate structure from housing 210.

> The control 200 preferably includes a circuit board housing 210, a control panel 220, and an insulation shield 222 assembled together for attachment to the outer sidewall 18 of the heating unit 12.

J.A. at MKM0015, col. 3, ll. 12-15.

West Bend's control panel is not mounted to the first circuit board housing. Ex. M, ¶ 10. To the contrary, the control panel is mounted to the outside of the heating unit independently and separate from the first circuit board housing, which is mounted inside the heating unit. The

control panel and first circuit board housing can be attached and removed from the heating unit independently of one another. Ex. M, ¶ 10. Holmes does not dispute this. Calling West Bend's control panel and first circuit board housing "inner" and "outer" shells does not somehow transform them into a single housing, when in fact, they are two separate and independent structures.

Holmes' combination theory is a contrivance fabricated from the need to invent an infringement argument. West Bend's control panel alone cannot be claim 13's housing because it does not house even a portion of the programmable controller/circuit, regardless of how the term is defined. The control panel houses only the buttons and display. Not even Holmes contends that these buttons and displays are part of the programmable controller/circuit:

> THE COURT:       Well, let's, let's talk through here. You don't claim that the
>                  programmable circuit now --
> MR. HOFFMANN:    Yes.
> THE COURT:  --   includes the buttons and displays found on the control
>                  panel.
> MR. HOFFMANN:    No.

Holmes Ex. E at 36, ll. 11-16. The first circuit board housing cannot be the "housing" because it is not mounted to and located **outside of the heating unit**. It is mounted to and located inside the heating unit.[5]

Second, Holmes' combination is not located outside the heating unit. The Court construed claim 13 as requiring that its housing be "mounted to and located on the outside of the heating unit" while noting that the housing must be "outside or at least overwhelmingly or generally outside" the heating unit. Holmes Ex. E at 21, ll. 2-3 and at 23, l. 25 – 24, l. 3.. The Court construed the claim 20 housing to be "a housing mounted to and **largely** outside the outer

_____

[5]      The first circuit board housing (referred to by Holmes as "inner shell 210A") does not house West Bend's microprocessor controller. West Bend's microprocessor controller is located inside a separate, second housing that is entirely inside the heating unit. Ex. M, ¶¶ 12-13.

sidewall of the heating unit." *Id.* at 35, ll. 5-9. This interpretation comports with the specification and the common usage of the claim language describing the housing outside the heating unit. West Bend agrees with these interpretations. Holmes' combination of housings, however, does not meet those interpretations. The combination is not mounted largely, overwhelmingly or generally outside the heating unit. Holmes agrees. At page 16 of its brief, Holmes, retreating to the doctrine of equivalents, abandons literal infringement under the Court's claim interpretation rulings. "Accordingly, should the Court require the housing to be "overwhelmingly" or "largely" outside of the heating unit, the West Bend device would still infringe under the doctrine of equivalents." For the reasons explained below, Holmes cannot prevail on its doctrine of equivalents theories.

Statements made by Holmes during the prosecution of the patents-in-suit confirm that the location of the alleged Holmes' combination is not outside the heating unit as required by claims 13 and 20. During prosecution of the patents, Holmes argued that the location of claims 13 and 20's housing was different from that of the Rivelli prior art cooker. J.A. at MKM0094-96 and 0249-53. Rivelli includes a combined control panel 32 and housing 26. Only the control panel 32 is located outside the heating unit. The rest of the combined structure is located within the heating unit. J.A. at MKM0292 and 0295, col. 3, ll. 42-59. In distinguishing Rivelli's combined control panel 32 and housing 26 to the patent examiner, Holmes told the Patent Office that Rivelli does "**not** describe



housing 26 to the patent examiner, Holmes told the Patent Office that Rivelli does "**not** describe

or suggest a device having a controller housing mounted **outside** the heating unit." J.A. at

MKM0094-95. Thus, even if one combines the separate West Bend control panel and first

circuit board housing as Holmes suggests, the result would be a structure no different from the

Rivelli structure that Holmes told the patent examiner was not outside the heating unit, and,

therefore, not covered by its claims. Holmes cannot tell the patent examiner one thing to obtain

its patents and then argue the opposite thing to try prove infringement. Therefore, the alleged

combination of West Bend's control panel and first circuit board housing, even if made, is not

located outside the heating unit as required by claims 13 and 20 according to Holmes' own

admissions. For this reason alone, West Bend does not infringe Claims 13 and 20.

### 3.    *West Bend Does Not Infringe Because Its Entire Programmable Controller/Circuit Is Not Mounted To Or Positioned Within Holmes' Combination Of Housings.*

As discussed above, claims 13 and 20 require that the entire programmable

controller/circuit, not just a portion of the controller/circuit, be mounted to and positioned within

the housing. Thus, even if (1) the input and output devices are included within the definition of

the "programmable controller/circuit," and (2) Holmes' combination of housings is erroneously

accepted, West Bend still does not infringe. It is undisputed that:

1)    West Bend's microprocessor is, at a minimum, the central part of the programmable controller/circuit because it is the only programmable component of West Bend's cooker and is the component that sends and receives signals to and from the input and output devices.

2)    West Bend's microprocessor is mounted to and positioned within a housing that is mounted to and located entirely **inside** the heating unit. The microprocessor is not mounted to or positioned within a housing outside the heating unit.

Consequently, even if the "programmable controller/circuit" includes input and output devices,

only a portion of West Bend's "programmable controller/circuit" would be mounted to and

positioned within Holmes' combination. Certainly, if any portion of the "programmable

11

controller/circuit" must be mounted to or positioned within Holmes' combination outside the heating unit, that portion must include West Bend's microprocessor controller. It is undisputed that West Bend's microprocessor controller is not mounted to or located within Holmes' combination. For this reason alone, West Bend does not infringe claims 13 and 20.

### III.    WEST BEND DOES NOT INFRINGE CLAIMS 13 AND 20 UNDER THE DOCTRINE OF EQUIVALENTS.

Holmes' initial answers to West Bend's interrogatory requesting a detailed explanation of Holmes' claim of infringement stated that infringement **was not** claimed under the Doctrine of Equivalents ("DOE"). Ex. C. Six days before filing its response to West Bend's Motion for Summary Judgment, Holmes informed West Bend that it **was** claiming infringement based on the DOE. Exs. T & U. Holmes' last minute resort to equivalents fails **as a matter of law** because Holmes:

1)  is estopped from using the DOE to establish infringement for the missing claim limitations; and

2)  fails to present any evidence that West Bend's cooker has the equivalent asserted by Holmes.

### A.    The Claim Limitations At Issue.

The DOE involves a limitation-by-limitation analysis. Infringement is not established by showing that West Bend's cooker as a whole is equivalent to the claimed cooker as a whole, as Holmes seeks to do here. *Aquatex Industries, Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382 (Fed. Cir. 2005). Holmes must prove that any limitation not literally present in West Bend's cooker is present by virtue of an equivalent structure. *Id.* The first step then is to define what limitations of claims 13 and 20 are not literally present in West Bend's cooker.

Holmes' argument that West Bend infringes under the DOE is twofold. Holmes argues:

1) If the claimed housing is required to be largely outside the heating unit, as this Court has ruled, the location of Holmes' combination in the West Bend product is equivalent to a housing mounted largely outside of the heating unit; and

2) If the entire programmable controller/housing must be mounted to or positioned within the housing, West Bends' mounting and positioning of only a portion of the controller/circuit is equivalent to mounting and positioning the entire controller/circuit.

The limitations missing from West Bend's cooker and at issue in regard to infringement under the DOE are those relating to the **location of the housing** and the **composition of the controller/circuit** that must be mounted to or positioned within the housing. There is no issue as to whether West Bend has a programmable controller/circuit or a housing. In fact, West Bend does not deny that it has a "programmable controller/circuit" that controls the operation of the cooker and is configured to automatically change the temperature to a warm setting after the selected cooking time. Nor does West Bend deny that it has a housing.

###    B.    Holmes Is Legally Estopped From Proving Infringement Under The DOE.

The doctrine of prosecution history estoppel operates to preclude a patentee from relying on the DOE to establish infringement. Prosecution history estoppel can result from (1) amendments made during prosecution of the patent for patentability purposes, such as to overcome an examiner's rejection based on prior art, or (2) arguments made to the examiner to establish patentability, such as an argument made to explain why the claims define over the prior art. *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000). The doctrine of prosecution history estoppel treats such amendments and arguments as an abandonment of claim coverage under the DOE and prevents the patentee from resorting to the DOE to establish infringement. *Id*

Holmes bases its claim of infringement upon the combination of West Bend's control panel and first circuit board housing.  Even if one considers Holmes' combination to be the claimed housing of claims 13 and 20, the issue presented by West Bend's summary judgment motion is whether that "combination" is located outside the heating unit as required by the claims.  Holmes is estopped, as a matter of law, from resorting to infringement under the DOE and arguing that the location of Holmes' combination in the West Bend cooker is equivalent to the location of the housing required by claims 13 and 20 of Holmes' patents.

During prosecution of the patents-in-suit, after its proposed claims were rejected based upon the prior art, Holmes argued to the examiner that the **location** of its claimed housing is different from the location of the prior art housings.

- "[T]he combination [of prior art references] does not yield the claimed invention of Claims 1, 11 and 13, which is a programmable slow-cooker appliance comprising a heating unit, a cooking unit, a controller housing **mounted outside the heating unit and a programmable controller mounted to the housing** . . ."

- "The combination [of prior art references] does not describe or suggest a device having a controller housing **mounted outside the heating unit**."

- "As mentioned above, neither Rivelli nor Frey [prior art references] describe [sic] a housing for a programmable controller fixedly **mounted to the outside of the heating unit**."

- "Therefore, even an improper combination of [prior art references] does not describe or suggest the claimed invention, including a controller housing **mounted fixedly to the outside of the heating unit**."

J.A. at MKM0094-96 (emphasis added).

Moreover, Holmes amended claim 13 to clarify the location of the claimed programmable controller housing outside the heating unit.  Specifically, Holmes told the examiner that "[a]pplicants have amended the claims to better describe the fixed mounting of the housing to the **exterior** of the heating unit."  J.A. at MKM 0095.

14

Similarly, Holmes amended claim 20 in response to the examiner's prior art rejection by amending the claim to make it clear that the programmable circuit housing was located outside the heating unit.  Specifically, Holmes amended claim 20 of the '855 patent to state that the housing was "fixedly mounted to **and projecting outside** the heating unit" and argued that as amended, claim 20 was different from the prior art because the housings of the prior art did not project outside the heating unit.  J.A. at MKM0251.

These clear and unmistakable arguments and amendments made by Holmes distinguishing the location of the claimed housing from those shown in the prior art now bar Holmes from using the DOE to shows equivalents to the missing limitations of claims 13 and 20 describing the location of the housing.  *Deering*, 347 F.d at 1326; *Bayer*, 212 F.3d at 1252; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003).  As a matter of law, Holmes cannot rely upon the DOE in this case.  *Id.*

Further, during prosecution of the patents, as noted above, Holmes admitted that a housing/control panel combination that mounts only the control panel outside of the heating unit (like Rivelli's structure) is not located outside the heating unit as required by claims 13 and 20.  Such arguments also estop Holmes from now claiming that the this same combination of structure, even if present in the West Bend's cooker, is mounted outside the heating unit.

Nor is Holmes entitled to resort to the DOE to prove infringement in regard to the composition of the programmable controller/circuit.  As explained by the Federal Circuit: "Structure expressly disclaimed in the specification, of course, cannot be considered an equivalent under the doctrine of equivalents."  *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1368 (Fed. Cir. 2001).  As explained above, the specification of the patents describe the invention as locating the controller outside the heating unit so that the controller is insulated

from the heat generated by the heating element. Insulating and protecting only a portion of the controller from overheating makes no sense. If a portion of the controller overheats, the controller fails and the purpose at the very heart of Holmes' alleged invention fails.

Having specifically identified, criticized, and disclaimed housing the programmable controller/circuit inside the heating unit near the heating element like West Bend's cooker, Holmes cannot now invoke the DOE to recapture subject matter that was specifically excluded. *See Scimed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.,* 247 F.3d 1337, 1345 (Fed. Cir. 2001). When a patent's specification criticizes the shortcomings of the prior art, as here, the DOE cannot be used to recapture the subject matter of the prior art that was criticized. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319-21 (Fed. Cir. 2006). Thus, it would be improper for the claims to cover West Bend's structure which is like the criticized prior art cooker depicted in Figure 1 of the '483 and '855 patents with the controls mounted outside and the circuit mounted inside the heating unit. *See Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).

### C.   Holmes Has Offered No Evidence Of Equivalents Regarding Either The Location Of The Housing Or Composition Of The Programmable Controller/Circuit.

Even assuming that Holmes is not estopped from resorting to the DOE, summary judgment must be granted to West Bend. Holmes has failed to offer any equivalents evidence that:

1)   the location of West Bend's control panel and first circuit board housing (i.e., the "Holmes' combination") is equivalent to the **location** of claims 13 and 20's housing largely outside the heating unit; and

2)   mounting/positioning only a portion of the programmable controller/circuit in the housing outside the heating unit is equivalent to mounting/positioning the entire controller/circuit in this housing.

Holmes' only arguments for equivalents regarding the location of the housing are set forth at pages 15-18 of its response brief.  These arguments simply parrot and, at times, copy portions of the declaration of Holmes' expert.  Holmes argues and its expert opines:

> 1)  By placing a portion of the housing within the heating unit, West Bend has merely made an insubstantial change which accomplishes the function of **the claimed invention** (i.e., programming a cooking time and temperature and automatically changing the heating unit temperature from a cooking mode to a lower temperature warm mode at the end of a selected time) in substantially the same way to achieve substantially the same result.

Holmes Brief at 15-16 (emphasis added).

> 2)  The function of the housing is to provide an enclosure for at least a portion of the programmable circuit.  The way this function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall of the heating unit to form the enclosure.  The result is substantially the same since the West Bend enclosure projects beyond an outer surface of the sidewall.

Holmes Brief at 17-18.

Holmes' argument, although acknowledging that the DOE issue pertains to the location of the housing, does not address that issue.  Why is mounting a portion of the Holmes combination (i.e., the control panel and first circuit board housing) inside the heating unit **as West Bend** has done, equivalent to mounting the housing largely outside the heating unit as the claims require?  Holmes offers no explanation whatsoever.  Holmes merely concludes that regardless of location, a housing is a housing.  Such an argument is insufficient to raise a fact issue for trial and since Holmes has not presented any evidence of equivalents in response to West Bend's summary judgment motion, summary judgment of no infringement under the DOE should be granted to West Bend.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Holmes' only arguments for equivalents regarding the composition of the programmable controller/circuit is set forth at page 19 of its response brief.  This argument again simply parrots

and, at times, copies portions of the declaration of Holmes' expert.  Holmes argues and its expert

opines:

> Accordingly, under the Court's present construction, which is believed to be in
> error, requiring the circuit, not just a portion of the circuit be positioned within the
> housing, infringement can be found under the doctrine of equivalents.  West
> Bend's programmable circuit is not entirely within the housing. . . . The West
> Bend programmable circuit performs **all the claimed functions** (selecting a
> cooking time and temperature and automatically changing the heating element
> from a cook mode to a warm mode once the set time has expired) in substantially
> the same way to achieve substantially the same result.  Merely splitting one circuit
> board component of the programmable circuit (300) into two circuit boards
> connected by wires does not change the function, way, or result, of the circuit.

Holmes Brief at 19.

The equivalents issue concerns the composition of the programmable controller/circuit

that must be mounted to or positioned within the claimed outside housing.  Must the entire

circuit be so positioned or just a portion?  The Court has ruled that it is the entire circuit.  The

equivalents issue then is:  Is mounting a portion of the circuit within the housing equivalent to

mounting the entire circuit within the housing, not whether West Bend uses a complete

programmable circuit regardless of where it is positioned.

Again, Holmes does not even attempt to address the correct equivalents issue.  Holmes

merely concludes that regardless of whether the controller/circuit is mounted to or positioned

within the housing, it will still function.  Such an argument is insufficient to raise a fact issue for

trial, and since Holmes has not presented any evidence of equivalents in response to West Bend's

summary judgment motion, summary judgment of no infringement under the DOE should be

granted to West Bend.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## CONCLUSION

For the foregoing reasons, West Bend respectfully requests that the Court grant its

Motion For Partial Summary Judgment Of Noninfringement.

Dated: October 19, 2006

WEST BEND HOUSEWARES, LLC
FOCUS PRODUCTS GROUP, LLC
By their attorneys,


/s/ Erik P. Belt
Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:      414-271-6560
Facsimile:      414-277-0656

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02100-1618
Telephone:      617-443-9292
Facsimile:      617-443-0004
E-mail:ebelt@bromsun.com

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601-6710
Telephone:      312-222-0800
Facsimile:      312-222-0818


## CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants


/s/ Erik P. Belt
Erik Paul Belt

03032/00501 562213.1

# EXHIBIT T

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

THE HOLMES GROUP, INC.,                    :
                                           :
                    Plaintiff,             :        Civil Action No.  05-CV-11367 WGY
          v.                               :        (Alexander, M.J.)
                                           :
WEST BEND HOUSEWARES, LLC and              :
FOCUS PRODUCTS GROUP, L.L.C.,              :
                                           :
                    Defendants.            :

**HOLMES' SUPPLEMENTAL RESPONSE TO WEST BEND'S
INTERROGATORY NO. 1 IN VIEW OF CLAIM CONSTRUCTION BY THE COURT**

Plaintiff, The Holmes Group, Inc. (hereinafter "Holmes") submits the following

Supplemental Response  to Defendants, West Bend Housewares, LLC and Focus Products

Group, L.L.C. (hereinafter collectively "West Bend") Interrogatory No. 1 in view of the claim

construction issued by the Court at a *Markman* Hearing conducted on September 27, 2006.

The Supplemental Response is subject to the following general objections.

**GENERAL OBJECTIONS**

Each of Holmes' responses are subject to the following objections and conditions as if

such objections and conditions were fully set forth in said response.  The responses do not repeat

each such objection or condition.

1.      Holmes objects to the Interrogatories to the extent they request information not

relevant to the subject matter of the pending action.

2.      Holmes objects to the Interrogatories to the extent they are unreasonably

cumulative or duplicative, or seek information obtainable from some other source that is more

convenient, less burdensome or less expensive.

3.    Holmes objects to the Interrogatories to the extent they request information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the protection afforded to materials prepared in anticipation of litigation or any other applicable privilege or immunity.  Nothing contained in these objections and responses is intended to be, or in any way constitutes, a waiver of any applicable privilege, immunity or doctrine.  Any document or thing withheld on the grounds of an applicable privilege or immunity will be identified on a separate privilege log.  Holmes objects to identifying documents generated since the inception of this lawsuit by or at the direction of trial counsel, as such identification is likely to reveal work-product and/or attorney-client privileged information.

4.    Holmes objects to the disclosure of confidential information and the production of documents containing confidential information until the Court enters an appropriate Protective Order.

5.    Holmes objects to the Interrogatories to the extent they impose obligations on Holmes that go beyond the requirements set forth in the Federal Rules of Civil Procedure and Local Rules for the District of Massachusetts.

6.    Holmes objects to West Bend's definitions and instructions to the extent they impose obligations on Holmes that go beyond the requirements set forth in the Federal Rules of Civil Procedure and Local Rules for the District of Massachusetts.

7.    As discovery in this case is ongoing, Holmes reserves the right to supplement its objections and responses to West Bend's requests.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections, Holmes responds as follows:

**Interrogatory No. 1**

Identify each claim of the Holmes patents-in-suit that you contend is infringed by West Bend Housewares or Focus and state in detail your infringement contentions and claim construction by completing a claim chart comparing each West Bend Housewares cooker you contend infringes any of the Holmes patents-in-suit with each asserted claim of each Holmes patent-in-suit, on a limitation-by-limitation basis, describing the complete factual and legal bases for any contention by Holmes that any claim limitation is present in the West Bend Housewares cooker(s) you accuse of infringement, including whether each element is present literally or present under the doctrine of equivalents, whether the alleged infringement is direct or indirect, and identifying the documents and things that you contend supports your contentions and claim construction, and each person having knowledge of any factual bases for the response.

**Supplemental Response to Interrogatory No. 1**

Holmes objects to this interrogatory to the extent that it seeks information protected by the attorney/client privilege and/or work product immunity.  Subject to and without waiver this objection and the General Objections, Holmes responds as set forth in Exhibit A attached hereto. Holmes further responds that the documents and things supporting the infringement contention are the file histories of the Holmes patents-in-suit, the West Bend accused products and the West Bend Instruction Manual for the accused products.  The persons having knowledge regarding the infringement contentions are counsel of record for Holmes, Charles R. Hoffmann and Glenn T. Henneberger.

## VERIFICATION OF ANSWERS

I, Timothy Gallogly, Esq., an authorized agent of Sunbeam Products, Inc.,

d/b/a Jarden Consumer Solutions f/k/a The Holmes Group ("Holmes") declare that I have read

the foregoing answers on behalf of Holmes, that I have read the foregoing answers and subscribe

to the same on behalf of Holmes, that said answers were prepared with assistance and advice of

counsel and other representatives of Holmes, that said answers, subject to inadvertent or

undiscovered errors, are based on, and therefore, limited by the records and information still in

existence, presently recollected and thus far discovered in the course of preparation of these

answers; that consequently, Holmes reserves the right to make changes in the answers if it

appears at any time that omissions or errors have been made therein or that more accurate

information is available; and that subject to the

limitations set forth herein, that said answers are true to the best of my knowledge, information

and belief.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on October _6_, 2006.

SUNBEAM PRODUCTS, INC.,
d/b/a JARDEN CONSUMER SOLUTIONS
f/k/a THE HOLMES GROUP

By: _____

Name: Timothy Gallogly, Esq.
Title: Vice-President and
     Associate General Counsel

- 4 -

The undersigned subscribes to the foregoing objections.

Respectfully submitted,

SUNBEAM PRODUCTS, INC.,
d/b/a JARDEN CONSUMER SOLUTIONS
f/k/a THE HOLMES GROUP
By its Attorneys,

Dated:  October 6, 2006

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550
Facsimile:  (516) 822-3582

and

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Joseph W. Corrigan (BBO No. 647393)
jcorrigan@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  (617) 973-6100
Facsimile:  (617) 367-2315

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing HOLMES' SUPPLEMENTAL RESPONSE

TO WEST BEND'S INTERROGATORY NO. 1 IN VIEW OF CLAIM CONSTRUCTION BY

THE COURT has been served via e-mail, this 6th day of October, 2006 upon the following:

> Erik Paul Belt
> Berg & Sunstein LLP
> 125 Summer Street
> Boston, Massachusetts 02110
> Tel:  (617) 443-9292
> Facsimile:  (617) 443-0004
> ebelt@bronsum.com
>
> Of Counsel:
>
> Charles A. Laff
> Martin L. Stern
> Michael Best & Friedrich LLP
> 401 N. Michigan Ave. – Ste. 1900
> Chicago, Illinois 60611
> Tel:  (312) 222-0800
> Facsimile:  (312) 222-0818
> calaff@michaelbest.com
> MLStern@michaelbest.com
>
> and
>
> Michael E. Husmann
> Joseph T. Miotke
> Michael Best & Friedrich LLP
> 100 E. Wisconsin Ave.
> Milwaukee, Wisconsin 53202
> Tel.: (414) 271-6550
> Facsimile: (414) 277-0656
> mehusmann@michaelbest.com
> jtmiotke@michaelbest.com

Glenn T. Henneberger

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  05-CV-11367 WGY |
| v. | : | (Alexander, M.J.) |
| | : | |
| WEST BEND HOUSEWARES, LLC and | : | |
| FOCUS PRODUCTS GROUP, L.L.C., | : | |
| | : | |
| Defendants. | : | |

**EXHIBIT A TO HOLMES' SUPPLEMENTAL RESPONSE TO WEST BEND'S
INTERROGATORY NO. 1 IN VIEW OF CLAIM CONSTRUCTION BY THE COURT**

**U.S. PATENT NO. 6,573,483 B1**

| Claim 13 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 13.  A method of using a programmable slow-cooker appliance, the method comprising: | | |
| providing a food item; | Operating the West Bend's programmable slow-cooker includes the step of providing a food item. | literal |
| placing the food item into a cooking unit of the slow-cooker appliance; | Operating the West Bend's programmable slow-cooker includes the step of placing the food item into the cooking unit.  (See Instruction Manual, p. 4.)[1] | literal |
| selecting a cooking temperature and time using a programmable controller mounted to a housing fixedly mounted to a heating unit; and | West Bend's programmable slow-cooker allows the user to select a cooking temperature and time using a programmable controller mounted to a housing, the housing being fixedly mounted to a heating unit.  (See Instruction Manual, p. 4, program cooking, steps 1 and 2.) | literal and/or DOE |
| changing the heating unit temperature automatically to a lower temperature after the selected time. | The West Bend's programmable slow-cooker performs the step of automatically changing the heating unit temperature to a lower temperature after the expiration of the selected time.  (See Instruction Manual, p. 4, program cooking, step 3.) | literal |

---

[1]   West Bend's Instruction Manual was attached as Exhibit C to Holmes' Complaint.

| Claim 14 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 14.  The method of claim 13, further comprising notifying a user with illuminated indicators that the slow-cooker appliance is powered and that the time is active. | The West Bend programmable slow-cooker includes illuminated indicators in the form of a digital display and LED's to notify the user that the appliance is powered and that the time is active. | literal |

| Claim 17 | | |
|---|---|---|
| 17.  The method of claim 13, wherein the temperature and time are set in increments. | The West Bend programmable slow-cooker temperature and time are set in increments.  (See Instruction Manual, p. 4, program cooking, steps 2 and 3.) | literal |

| Claim 19 | | |
|---|---|---|
| 19.  The method of claim 13, further comprising emitting a sound. | West Bend's programmable slow-cooker emits a sound.  (See Instruction Manual, p. 5, Helpful Hints, bullet #3.) | literal |

## U.S. PATENT NO. 6,740,855 B1

| Claim 20 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 20.  A programmable slow-cooker appliance comprising: | | |
| a heating unit including a bottom and a continuous sidewall extending from said bottom, said bottom and said continuous sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall; | West Bend's programmable slow-cooker includes a heating unit (10) having a bottom (15) and a continuous sidewall (17) extending from the bottom to define a well-like chamber. | literal |
| a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall; | West Bend's programmable slow-cooker includes a heating element mounted to the heating unit and positioned between an outer sidewall and interior sidewall. | literal |
| a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit; | West Bend's programmable slow-cooker includes a plastic housing (30) in the shape of half an oval fixedly mounted to and projecting outside the sidewall (17) of the heating unit (10). | literal and/or DOE |
| a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time; | West Bend's programmable slow-cooker includes a programmable circuit including a printed circuit board positioned within the housing (30) and configured to automatically switch the heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time.  (See Instruction Manual, p. 4, program cooking, step 3.) | literal and/or DOE |
| a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time; and | West Bend's programmable slow-cooker includes a control panel on the front face of the housing and including a digital display and push-buttons thereon (42) mounted to the housing and having a user interface in the form of push-buttons connected to the programmable circuit for selecting a cooking time and temperature. (See Instruction Manual, p. 4, steps 1 and 2.) | literal and/or DOE |
| a cooking unit removably positioned in said well-like chamber. | West Bend's programmable slow-cooker includes a cooking unit (20) removably positioned in the well-like chamber. | literal |

| Claim 24 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 24.  A programmable slow-cooker appliance as described in claim 20 wherein said housing is comprised of a thermoplastic material and said cooking unit is comprised of a ceramic material, said cooking unit being removably positioned in said well-like chamber. | West Bend's programmable slow-cooker includes a housing (30) made of a thermoplastic material and a cooking unit (20) made of ceramic, the cooking unit being removably positioned in the well-like chamber. | literal |

| Claim 26 | | |
|---|---|---|
| 25.  A programmable slow-cooker appliance as described in claim 20 wherein said programmable circuit is configured such that a user cannot initially set a lower temperature warm mode. | West Bend's programmable slow-cooker includes a programmable circuit such that the warm mode cannot be initially set as a programmed temperature.  (See Instruction Manual, p. 4, program cooking, step 1.) | literal |

| Claim 27 | | |
|---|---|---|
| 27.  A programmable slow-cooker appliance as described in claim 20 including a switch operatively associated with said control panel, said programmable circuit being configured such that subsequent pushes of said switch activates different cook modes. | West Bend's programmable slow-cooker includes a switch on the control panel such that subsequent pushes of the switch sets different cook modes.  (See Instruction Manual, p. 4, program cooking, step 1.) | literal |

| Claim 29 | | |
|---|---|---|
| 29.  A programmable slow-cooker appliance as described in claim 20 wherein said housing includes a thermoplastic portion adjoining and extending into said continuous sidewall of said heating unit. | West Bend's programmable slow-cooker includes a housing (30) having a thermoplastic portion which extends into the sidewall (17) of the heating unit (10). | literal |

# EXHIBIT U

