THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE HOLMES GROUP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> WEST BEND HOUSEWWARES, LLC and FOCUS PRODUCTS GROUP, LLC, <br><br> Defendants. | Civil Action No. 05-CV-11367 WGY <br> (Alexander, M.J.) |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE ARE NO GENUINE ISSUES OF DISPUTE AND WHICH ENTITLE DEFENDANTS TO SUMMARY JUDGMENT OF INVALIDITY**

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

December 1, 2006                                    *Attorneys for Defendants*

Pursuant to Rule 56.1 of the Local Rules for The United States District Court for the District of Massachusetts, defendants West Bend Housewares, LLC and Focus Products Group, LLC submit the following statement of material facts as to which there are no genuine issues of dispute and which entitle defendants to partial summary judgment of noninfringement.

1. Plaintiff The Holmes Group ("Holmes") accuses defendants West Bend Housewares, LLC and Focus Products Group, LLC of infringing Holmes' U.S. Patent Nos. 6,573,483 ("the '483 patent") (Joint Appendix to *Markman* Briefing [hereinafter J.A.] at MKM0001-0017) and 6,740,855 ("the '855 patent") (J.A. at MKM0120-0138), both entitled "Programmable Slow-Cooker Appliance." The '855 patent is a continuation of the '483 patent. *See* Defs.' 1st Mot. Summ. J. Ex. N, Complaint.

2. Holmes is a Massachusetts corporation having a principal place of business at One Holmes Way, Milford, Massachusetts. Defs.' 1st Mot. Summ. J. Ex. N.

3. West Bend Housewares, LLC is a limited liability company organized under the laws of Illinois having a principal place of business at 2845 Wingate Street, West Bend, Wisconsin. In its answer to the complaint, West Bend Housewares, LLC denies infringement and asserts that the patents-in-suit are invalid. In addition, it has filed a counterclaim (1) seeking a declaration that the patents-in-suit are invalid and not infringed, and (2) asserting that Holmes infringes three U.S. design patents owned by West Bend Housewares, LLC relating to slow-cookers, namely: U.S. Patent No. Des. 434,266; U.S. Patent No. Des. 444, 664; and U.S. Patent No. 444,993. *See* Defs.' 1st Mot. Summ. J. Ex. O, West Bend's Answer and Countercl.

4. Focus Products Group, LLC is also a limited liability company organized under the laws of Illinois and has a principal place of business at 120 Lakeview Parkway, Vernon Hills, Illinois. West Bend Housewares, LLC is a wholly-owned subsidiary of Focus Products Group, LLC. In its answer to the complaint, Focus Products Group, LLC denies infringement and

asserts that the patents-in-suit are invalid. In addition, it has filed a counterclaim seeking a declaration that the patents-in-suit are invalid and not infringed. *See* Defs.' 1st Mot. Summ. J. Ex. P, Focus Products Group's Answer and Countercl. Hereinafter, for purposes of the present summary judgment motion, West Bend Housewares, LLC and Focus Products Group, LLC shall be collectively referred to as "West Bend."

5. U.S. Patent 4,307,287 (the "Weiss Patent") (Ex. A) issued on December 21, 1981, more than nineteen years before Holmes applied for its patents. The Weiss patent discloses an "electric cooking appliance with improvements which enable all kinds of foods, namely both vegetables and meat or fish, to be cooked correctly without supervision." Weiss Patent, Ex. A, col. 1, ll. 23-26. Weiss teaches a slow cooker in which the operator, using a "control circuit," sets "the average power [temperature]" and "duration [time]" of the cooking phase. *Id.* at col. 1, ll. 12-22. After the normal cooking phase selected by the user, the control circuit automatically proceeds to "phase M, at reduced power [temperature], in which the food is kept hot." *Id.* at col. 4, ll. 67-68. Weiss' control circuit is housed in an outside "extension." *Id.* at col. 3, ll. 48-55.

6. Weiss U.S. Patent No. 4,307,287 entitled "Electric Cooking Appliance" was filed on November 13, 1980 and issued on December 21, 1981. Ex. A at 1.

7. Kowalics, U.S. Patent No. 4,817,510 entitled "Cooker Apparatus For Fluid Container," was filed on July 22, 1986 and issued on April 4, 1989. Ex. C at 1.

8. Norwood, U.S. Patent No. 4,345,145 entitled "User Programmable Control System For Toaster Over Appliance," was filed on May 19, 1980 and issued on August 17, 1982. J.A. at MKM0302.

9. Rival's own U.S. Patent No. 3,806,701, assigned to Rival by Scott and entitled "Electric Cooking Utensil Having a Removable Vessel," was filed on November 3, 1972 and issued on April 23, 1974. Ex. D at 1. Rival's U.S. Patent No. 3,881,090, assigned to Rival by

Scott and entitled "Electric Cooking Utensil Having a Ceramic Vessel" was filed on December 3, 1973 and issued on April 29, 1975.  Ex. E at 1.

10. Park U.S. Patent Nos. 6,191,393 entitled "Cooking Utensil and Manufacturing Method Therefore" was filed on November 23, 1999 and issued on February 20, 2001.  J.A. at MKM0603.

11. The Weiss, Kowalics, Norwood, and Rival patents constitute prior art under Sections 102(b) and 103(a) because they were granted more than one year prior to the filing date of both patents-in-suit (i.e., more than one year prior to March 15, 2000).  Likewise, Holmes' Rival Crock Pot model no. 3350 slow cooker constitutes prior art under Sections 102(b) and 103(a) because it was offered for sale and sold in the United States prior to March 1999.  Holmes' 30(b)(6) Deposition Testimony, Ex. B at 16, l. 21 – 17, l. 13.  The Park patent constitutes prior art under Sections 102(e) and 103(a) because it was filed before the earliest filing date of the Holmes patents in suit.  J.A. at MKM0603.

12. The preamble of claim 13 recites "[a] method of using a programmable slow-cooker appliance."[1]  J.A. at MKM0017, col. 8, ll. 26-27.  The Court construed a "programmable slow-cooker" as "a cooking device designed for cooking food at a constant, relatively low cooking temperature for a relatively long period of time, being programmable to operate in a variety of different cooking modes and cooking times."  *Markman* Transcript[2] [hereinafter MKM Tr.] at 3, ll. 8-12.  Weiss discloses such a programmable slow cooker that cooks food at a constant, relatively low cooking temperature for a relatively long period of time.  Ex. A, col. 1, ll. 23-28 and col. 4, ll. 47-54.  Indeed, Weiss states that "with the cooking appliance described, it

---

[1] While West Bend maintains that the preamble of claim 13 is not itself a claim limitation, Weiss discloses a programmable slow cooker appliance as recited in claim 13's preamble.
[2] The *Markman* Hearing Transcript is already part of the record in this case and was filed with the Court on October 12, 2006 as Exhibit E to Plaintiff's Counter-Statement of Facts supporting Plaintiffs' Response to Defendants' Memorandum In Support Of Their Motion For Partial Summary Judgment Of Noninfringement.

is possible to carry out, in total safety, diverse types of cooking ranging from **simmering at low temperature for a prolonged period of time** to deep frying at high temperature. *Id.* at col. 5, ll. 23-27. Weiss also operates in a variety of different cooking modes and cooking times, meeting the Court's programmable slow cooker construction. Ex. A, col. 4, ll. 47-57.

13. Claim 13 comprises four steps. J.A. at MKM0017, col. 8, ll. 26-35. Weiss clearly discloses the first two: 1) cooking of food (*Id.* at col. 1, ll. 21-28) in a 2) cooking unit (removable vessel 12). Ex. A, col. 2, ll. 25-26. Step three requires "selecting a cooking time and temperature using a programmable controller." J.A. at MKM0017, col. 8, ll. 31-32. Weiss discloses an "electronic control circuit 22" that permits an operator to select cooking temperature and cooking time. Ex. A at col. 2, ll. 61-68 and col. 4, ll. 47-57. Weiss has a control panel with regulating knobs that are used to select a cooking power (i.e., temperature) and to select a cooking time in hours and minutes. *Id.* at col. 2, ll. 61-68. Weiss' selection of cooking temperature and method of maintaintaining the cooking temperature through adjustable application of power to the heating element is the same method described in both the '483 and '855 patents, in which power is supplied to the heating element to select and maintain the cooking temperature. J.A. at MKM 0014, col. 3, ll. 9-12 and col. 6, ll. 1-12; Feinberg Decl., Nov. 30, 2006[3] ¶ 5.

14. Claim 13 also requires that the programmable controller is "mounted to a housing fixedly mounted to a heating unit." J.A. at MKM0017, col. 8, ll. 32-33. Weiss discloses that its entire programmable controller (control circuit 22) is mounted to a housing, referred to by Weiss as "extension 46." Ex. A, col. 3, ll. 48-68. Housing 46 is mounted to and located on the outside of Weiss' heating unit, referred to by Weiss as casing 10. *Id.* Weiss explains that "this extension

---

[3] "Feinberg Decl." refers to the Declaration of Dr. Barry N. Feinberg in Support of Defendants' Motion for Partial Summary Judgment On Invalidity Of U.S. Patent Nos. 6,573,483 and 7,740,855, filed herewith.

[housing 46] projects laterally of the external wall 48 of the casing [heating unit] 10 and houses a plate 50 supporting the control circuit 22 and the switch 20." *Id.* at col 3, ll. 53-55.

15.  Finally, claim 13 requires "changing the heating unit temperature automatically to a lower temperature after the selected time." J.A. at MKM0017, col. 8, ll. 34-35. When Weiss is set to its cooking mode "II," after the food is cooked for the selected time and at the selected temperature, referred to as "cooking phase C," this cooking phase is automatically "followed by the phase M, at reduced power, in which the food is kept hot." *Id.* at col. 4, ll. 66-68. That is, a selected cooking temperature is automatically lowered after a cooking time elapses.

16.  Claim 17 includes all the limitations of claim 13 and further requires that "the temperature and time are set in increments." J.A. at MKM0017, col. 8, ll. 45-46. In the Weiss cooker, the temperature control disc 24 is marked in ten power or temperature increments, and the time control discs 26, 28 are incrementally marked with time settings. Ex. A at col. 3, ll. 62-65.

17.  Claim 14 recites "the method of claim 13, further comprising notifying a user with illuminated indicators that the slow cooker is powered and the timer is active." J.A. at MKM0017, col. 8, ll. 36-38.

18.  The '483 patent recognizes that "[a]s is well-known in the art, a variety of other indicator devices may be provided, including digital readouts, audible alarms, liquid crystal displays, incandescent lamps or fluorescent readouts." J.A. at MKM0015, col. 3, ll. 34-40. Thus, the knowledge of one skilled in the art would have provided the motivation to add illuminated indicators to show that the Weiss cooker was powered and the timer was active. Feinberg Decl. at ¶ 6.

19.  U.S. Patent Nos. 4,817,510 to Kowalics ("Kowalics") (Ex. C), issued in 1989, and 4,345,145 to Norwood ("Norwood") (J.A. at MKM0302-52), issued in 1982, also disclose

illuminated indicators showing that the cooker is powered and the timer is active, demonstrating that such indicators were well known in the art and providing ready motivation to illuminate the Weiss controls as a convenience.

20.     Kowalics discloses a cooking appliance that includes a light "to give ready visual indication that power is being supplied to the apparatus" and a pilot light that remains activated to indicate that its timer circuit is operating. Kowalics, Ex. C, col. 5, ll. 27-29 and 64-68. In the Norwood cooking appliance, "when a function LED 48 is lit, this designates that the numeric data shown in the display 44 represents a time parameter." Norwood, J.A. at MKM0332, col. 5, ll. 44-46. Norwood's cooking appliance further includes "a light 50 which is turned on whenever the upper heating element 24 is energized and, therefore, the oven cavity 14 is being heated." *Id.* at col. 5, ll. 46-49. The motivation to combine Kowalics or Norwood with Weiss to produce the purported invention of claim 14 stems from the knowledge of one skilled in the art as well as the nature of the problem already solved by Kowalics and Weiss, namely notifying a user that the cooker is powered and the timer is active. Feinberg Decl. ¶ 7. One skilled in the art would have readily applied the teachings of Kowalics and Norwood to the cooker disclosed in Weiss. *Id.* Moreover, one skilled in the art would have a reasonable expectation of successfully producing the purported invention of claim 14 because the claimed illumination feature was already implemented in the Kowalics and Norwood patents. *Id.*

21.     Claim 19 depends from claim 13 and further requires "emitting a sound." J.A. at MKM0017, col. 8, ll. 50-51. While Weiss does not disclose emitting a sound, the '483 patent recognized that a sound emitting feature was already well known in the art. J.A. at MKM0015, col. 3, ll. 34-40. The knowledge of one skilled in the art likewise would have provided the motivation to include a sound emitting feature with Weiss' cooker. Feinberg Decl., ¶ 8. In addition, both Kowalics and Norwood disclose a sound emitting feature. Ex. C, col. 11, ll. 34-

-6-

37; J.A. at MKM0335, col. 12, ll. 48-51. One skilled in the art would have been motivated to combine any of these references because the interchangeability of features between cooking appliances would have been readily apparent. Feinberg Decl. ¶ 9.

22. Claim 20 of the '855 patent requires "a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall." J.A. at MKM0137, col. 9, ll. 18-22. In Weiss, the heating element 18 is mounted to the base of the cooking unit 10. Ex. A, col. 2, ll. 27-31 and Figs. 1 and 2. The '855 patent admits that mounting the heating element in the sidewall of the heating unit was part of the prior art and describes "one prior art embodiment of a food-heating slow-cooker appliance" as having a heating element "mounted to the heating unit 12, either under the bottom 16 or additionally **between the outer sidewall 18 and interior sidewall 17**." J.A. at MKM0133, col. 2, ll. 37-51.

23. Holmes' Crock Pot cookers have included a heating element located between the sidewalls of the heating unit since at least the 1970s. In addition, two patents from the early 1970s assigned to Rival, Holmes' predecessor show the use of a heating element between the sidewall of a slow cooker, namely U.S. Patent No. 3,806,701 to Scott ("the '701 Scott patent") (Ex. D) issued on April 23, 1974 and 3,881,090 to Scott ("the '090 Scott patent") (Ex. E.) issued on April 29, 1975. Ex. D, Fig. 1, showing heating element 36 mounted between the sidewall of the heating unit; Ex. E, Fig. 2, showing heating element 36a and 36b mounted between the sidewall of the heating unit.

24. An actual Rival Crock Pot cooker sold in the United States in the 1970s with a heating element disposed between the interior and outer sidewall of the heating unit is shown below. Ex. B at 182, l. 2 – 183, l. 1.

-7-



Ceramic cooking unit

Heating unit

Outside Housing

Heating element disposed between outer and interior sidewall of heating unit

25.    There was nothing new about mounting the heating element in the sidewall of the heating unit, and one skilled in the art would have a reasonable expectation of successfully combining the Rival prior art Crock Pot or Rival patents with Weiss to produce the purported invention of claim 20.  Feinberg Decl., ¶ 10.

26.    Claim 20 further requires "a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit."  J.A. at MKM0137, col. 9, ll. 26-27.  As shown in the claim chart above, Weiss includes a housing 46 that is mounted to and largely outside the sidewall 48 of the heating unit 10.  Ex. A, col. 3, ll. 48-68.

27.    Claim 20 then recites "a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time."  J.A. at MKM0137, col. 9, ll. 28-31.  Weiss discloses an "electronic control circuit 22" that allows the user to program both the cooking temperature and desired time for cooking.  *Id.* at col. 2, ll. 61-68 and col. 4, ll. 47-57.  This control circuit 22 also automatically changes the heating element to an automatic warm mode once the set cooking time has expired.  When Weiss is set to its cooking mode "II," after the food is cooked at the selected time and temperature, referred to as "cooking phase C," this phase is automatically "followed by the phase M, at reduced power, in which the food is kept hot."  *Id.* at col. 4, ll. 66-68.  In other words, when the cooking time set by the user expires, Weiss' control circuit 22 reduces power to a warm mode during which the food is maintained at

a predetermined temperature less than the cooking temperature. *Id.* Weiss' entire control circuit 22 is positioned within housing 46. Weiss explains that "this extension [housing 46] projects laterally of the external wall 48 of the casing [heating unit] 10 and houses a plate 50 supporting the control circuit 22 and the switch 20." *Id.* at col 3, ll. 53-55.

28.     Claim 20 next requires "a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time." J.A. at MKM0137, col. 9, ll. 33-35. As shown in the claim chart above, Weiss has a control panel with a top face 52. The control panel includes several regulating discs that comprise a user interface connected to the programmable circuit 22 for selecting a cooking temperature (disc 24) and a cooking time (discs 26 and 28). Ex. A, col. 2, ll. 61-68; col. 3, ll. 48-65; col. 4, ll. 47-57; and Figs. 1, 3, 4, and 5.

29.     Finally, claim 20 requires a cooking unit removably positioned in said well-like chamber." J.A. at MKM0137, col. 9, ll. 37-38. Weiss includes a cooking unit 12 that is removably positioned in a well like chamber, as shown above in the claim chart. Ex. A at col. 2, ll. 22-27 ("The casing 10 receives a removable vessel 12 for holding food which is closed by a lid 14.")

30.     Claim 24 is dependent from claim 20 and further requires that the "housing is comprised of a thermoplastic material and said cooking unit is comprised of a ceramic material, said cooking unit being removably positioned in said well-like chamber." J.A. at MKM0137, col. 9, ll. 53-57. Claim 29 also is dependent from claim 20 and requires that the "housing - includes a thermoplastic portion adjoining and extending into said continuous sidewall of said heating unit." J.A. at MKM0137, col. 10, ll. 6-9. While Weiss does not specify the materials used for its housing and cooking unit, the Rival prior art Crock Pot cookers disclose the use of a plastic material for the housing and a ceramic cooking vessel. Rival's model no. 3350/2 cooker

includes a housing made from a plastic material. Feinberg Decl., ¶ 11. The plastic housing of the Rival 3350/2 includes a portion that adjoins and extends into the sidewall of the heating unit. *Id.* In addition, the knowledge of one skilled in the art would have provided a motivation to use a thermoplastic material for Weiss' housing because thermoplastic plastic materials were recognized as having thermal insulative properties. *Id.* One skilled in the art also would have been motivated to use thermoplastic materials in components that a user would touch, such as the housing. Feinberg Decl., ¶ 11.

31.     The Rival prior art Crock Pot also discloses the use of a ceramic cooking unit, and one skilled in the art would have readily used this ceramic cooking unit in the Weiss cooker. Feinberg Decl., ¶ 12. The '855 patent also acknowledges that the use of a ceramic cooking unit was part of the prior art. J.A. at MKM0133, col. 2, ll. 66-67. Additionally, the '701 and '090 Scott patents both disclose the use of a ceramic cooking unit in a Rival Crock Pot. Ex. D, col. 2, ll. 28-31; Ex. E, col. 4, ll. 18-25. Both the prior art and knowledge of one skilled in the art provide the motivation to use a ceramic cooking unit with the Weiss cooker, and one skilled in the art would have a reasonable expectation of successfully doing so. Feinberg Decl., ¶ 12.

32.     Claim 26 is dependent from claim 20 and further requires that the "programmable circuit is configured such that a user cannot initially set a lower temperature warm mode." Weiss discloses this limitation because the Weiss cooker cannot initially be set to a lower temperature warm mode. J.A. at MKM0137, col. 9, ll.62-65. The user must select either between mode "I," in which cooking temperature and cooking time are selected, or mode "II," in which a user selects a cooking time and temperature and after the elapsed time the cooker is automatically switches to a lower temperature warm mode. Ex. A, col. 3, ll. 23-47; col. 4, ll. 47-57 and 66-68. In the Weiss cooker, the cooking cycle must first be completed before the lower temperature warm mode begins. *Id.*

33. Claim 27 is dependent on claim 20 and further requires "a switch operatively associated with said control panel, said programmable circuit being configured such that subsequent pushes of said switch activates different cook modes." J.A. at MKM0137, col. 9, l.1 - col. 10, l. 3. In the Weiss programmable cooker, subsequent "turns" of the regulating discs, such as disc 30, activate different cook modes instead of the use of switches. However, the knowledge of one skilled in the art would have provided the motivation to use switches instead of buttons because the interchangeable use of knobs and switches was known in the art. Feinberg Decl., ¶ 13. The prior art Norwood patent likewise discloses the use of "user actuable keys," or switches, to activate different cook modes. J.A. at MKM0332, col. 5, ll. 8-15. U.S. Patent No. 6,191,393 to Park ("Park") also discloses the use of switches to activate different cooking modes. J.A at MKM0610, col. 5, ll. 35-42. One skilled in the art thus would have been motivated to use switches in connection with the Weiss cooker to activate different cooking modes and would have had a reasonable expectation of successfully doing so. Feinberg Decl., ¶ 12.

34. When asked in an interrogatory to provide its evidence of secondary considerations of nonobviousness, Holmes responded by identifying only documents relating to sales of its slow cooker supposedly covered by the patents-in-suit. *See* Holmes' Response to West Bend's Interrogatory No. 7, Ex. F at 8.

| | |
|---|---|
| Dated: December 1, 2006 | WEST BEND HOUSEWARES, LLC<br>FOCUS PRODUCTS GROUP, LLC<br>By their attorneys, |
| | /s/ Erik P. Belt<br>Michael E. Husmann<br>Joseph T. Miotke<br>MICHAEL BEST & FRIEDRICH LLP<br>100 East Wisconsin Avenue, Suite 3300<br>Milwaukee, Wisconsin 53202-4108<br>Telephone:   414-271-6560<br>Facsimile:    414-277-0656 |
| Lee Carl Bromberg, BBO #058480<br>Erik Paul Belt, BBO #558620<br>BROMBERG & SUNSTEIN LLP<br>125 Summer Street<br>Boston, Massachusetts 02100-1618<br>Telephone:   617-443-9292<br>Facsimile:    617-443-0004<br>E-mail: ebelt@bromsun.com | Martin L. Stern<br>MICHAEL BEST & FRIEDRICH LLP<br>180 North Stetson Avenue, Suite 2000<br>Chicago, Illinois 60601-6710<br>Telephone:   312-222-0800<br>Facsimile:    312-222-0818 |

CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants

/s/ Erik P. Belt
Erik P. Belt