# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,   :
            :
  Plaintiff/Counterclaim-Defendant, :  Civil Action No.  1: 05-CV-11367 WGY
            :  (Alexander, M.J.)
     v.       :
            :
WEST BEND HOUSEWARES, LLC and :
FOCUS PRODUCTS GROUP, L.L.C., :
            :
  Defendants/Counterclaim-Plaintiffs. :

## MEMORANDUM IN SUPPORT OF HOLMES'
## MOTION FOR SUMMARY JUDGMENT OF
## NON-INFRINGEMENT OF WEST BEND'S DESIGN PATENTS

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
Alan M. Sack, Esq. (*Pro Hac Vice*)
AMSDocket@hoffmannbaron.com
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, New York 11791

and

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Joseph W. Corrigan (BBO No. 647393)
jcorrigan@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  (617) 973-6100
Facsimile:  (617) 367-2315

*Attorneys for Plaintiff*

December 1, 2006

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................1

I.     INTRODUCTION ...................................................................................................5

II.    STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
       IS NO GENUINE ISSUE TO BE TRIED ...........................................................5

III.   APPLICABLE LAW ..............................................................................................5

       A.    Requirements For Summary Judgment....................................................6

       B.    The Law Of Infringement In General ......................................................7

       C.    Design Patent Claim Construction............................................................7

             1.    Design Patents In General............................................................7

             2.    Construing The Scope Of A Design Patent ................................8

             3.    The Listing Of Ornamental Features For
                   Design Patent Claim Construction...............................................9

       D.    The Two Required Tests For Determining Design Patent Infringement.................9

             1.    The Test Of Substantial Similarity ............................................10

             2.    Points Of Novelty Test................................................................10

IV.    THE WEST BEND PATENTS-IN-SUIT............................................................11

       A.    The '993 Patent..........................................................................................11

             1.    The '993 File History ...................................................................11

             2.    The '993 Patent Specification And Drawings ...........................11

       B.    Claim Interpretation Of The '993 Patent...............................................13

V.     THE HOLMES SLOW-COOKERS DO NOT INFRINGE THE '993 PATENT .............14

A.     The Holmes Slow-Cookers Are Not Substantially The
       Same As The Design Claimed In The '993 Patent...............................................15

       1.     The Lip Of The Cooking Vessel..................................................................15

       2.     Rounded Off Rectangular Shape Of The Heating Cooking Unit
              And Cooking Vessel ....................................................................................16

       3.     Skirt Underneath Knob Attached To Lid.....................................................19

       4.     The Cooking Vessel Handle Portions..........................................................21

       5.     The Interface Between The Cooking Vessel Lip and Lid.........................23

       6.     Heating Unit Having A Smooth, Flat Bottom Surface ...............................23

       7.     The Ordinary Observer Test Is Not Satisfied ............................................24

B.     The Holmes Slow-Cookers Do Not Infringe The
       '993 Patent Under The "Point Of Novelty" Test......................................................25

C.     Summary Judgment On The Issue Of Non-Infringement
       Of the '933 Patent Is Appropriate Under The Facts Of This Case.........................30

V.     THE '266 PATENT..................................................................................................30

A.     The File History ........................................................................................................30

B.     The '266 Patent Specification And Drawings.........................................................30

C.     Claim Interpretation Of The '266 Patent.................................................................31

VII.   THE HOLMES SLOW-COOKERS DO NOT INFRINGE THE '266 PATENT .............33

A.     The Holmes Slow-Cookers Are Not Substantially The Same
       As The Design Claimed In The '266 Patent.............................................................34

B.     Point(s) Of Novelty...................................................................................................34

C.     Summary Judgment On The Issue Of Non-Infringement
       Of The '266 Patent Is Appropriate Under The Facts Of This Case ......................34

VIII.  THE '664 PATENT.................................................................................................34

A.     The File History .......................................................................................................34

B.      The '664 Patent Specification And Drawings .........................................................35

C.      Claim Interpretation Of The '664 Patent ...............................................................35

VII.    THE HOLMES SLOW-COOKERS DO NOT INFRINGE THE '664 PATENT .............35

A.      The Holmes Slow Cookers are Not Substantially The Same
        As The Design Claimed In The '664 Patent............................................................35

B.      Point(s) of Novelty...................................................................................................36

C.      Summary Judgment On The Issue Of Non-Infringement
        Of the '664 Patent Is Appropriate Under The Facts Of This Case.........................36

VIII.   AS A MATTER OF LAW WEST BEND'S FAILURE TO MARK PRECLUDES
        DAMAGES PRIOR TO ACTUAL NOTICE.....................................................................37

A.      Controlling Law Requires Specific Actual Notice of Infringement ......................37

B.      West Bend's Counterclaim Was Insufficient To Provide Actual Notice ...............38

C.      Holmes Did Not Receive Sufficient Actual Notice Until
        West Bend Identified the Accused Slow Cooker Models......................................40

IX.     CONCLUSION...................................................................................................................42

# TABLE OF AUTHORITIES

Page(s)

*Amsted Ind. Inc. v. Buckeye Steel Castings, Co.*,
  24 F.3d 178 (Fed. Cir. 1994)....................................................................................38

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................5

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996)..................................................................................6

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*,
  853 F.2d 1557 (Fed. Cir. 1988)................................................................................5

*Best Lock Corp. v. Ilco Unican Corp.*,
  94 F.3d 1563 (Fed. Cir. 1996)..................................................................................8

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002)........................................................................10, 14

*Coca-Cola Co. v. Pepsico, Inc.*,
  2004 WL 4910334 (N.D. Ga. 2004) .......................................................................38

*Durling v. Spectrum Furniture Co.*,
  101 F.3d 100 (Fed. Cir. 1996)..................................................................................8

*Eastern America Trio Prods., Inc. v. Tang Elec. Corp.*,
  97 F. Supp.2d 395 (S.D.N.Y. 2000).........................................................................9

*Eastman Kodak Co., Inc. v. AGFA-Gevaert N.V.*,
  2005 WL 281174 (W.D.N.Y 2005) .........................................................................38

*Elmer v. ICC Fabricating, Inc.*,
  67 F.3d 1571 (Fed. Cir. 1995)...............................................................................7, 9

*Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*,
  44 F. Supp. 2d 1149 (D. Kan. 1999) ........................................................................9

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001)...............................................................................38

*Gorham Mfg. Co. v. White*,
  81 U.S. 511 (1871).......................................................................................9, 10, 15

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1988)..............................................................................7

*Key Mfg. Group, Inc. v. Microdot, Inc.*,
    925 F.2d 1444 (Fed. Cir. 1991)..............................................................................6

*KeyStone Retaining Wall Systems v. Westrock, Inc.*,
    997 F.2d 1444 (Fed. Cir. 1993).........................................................................10, 23

*Lans v. Digital Equipment Corp*,
    252 F.3d 1320 (Fed Cir. 2001)..............................................................................38

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988)..........................................................................9, 10

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (*in banc*),
    *aff'd*, 517 U.S. 370 (1996)...................................................................................6

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998)............................................................................37

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997).......................................................5, 7, 9, 10, 14, 30

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)................................................................................6

*SRI Int'l v. Advanced Tech. Labs*,
    127 F.3d 1462 (Fed. Cir. 1997).........................................................................37. 38

*Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*,
    48 F.3d 1193 (Fed. Cir. 1995)............................................................................8, 10

*Transmatic, Inc. v. Gulton Indus., Inc.*,
    53 F.3d 1270 (Fed. Cir. 1995)..............................................................................10

*Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*,
    157 F.3d 1311 (Fed. Cir. 1998)............................................................................10

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)................................................................................6

**STATUTES**

Fed .R. Civ. P. 56(c) ................................................................................................5

## I.    INTRODUCTION

The Holmes Group, Inc. ("Holmes") filed a Complaint against West Bend Housewares, LLC ("West Bend") and Focus Products Group, LLC ("Focus") on June 28, 2005 alleging infringement of U.S. Patent No. 6,573,483 ("the '483 patent") and U.S. Patent No. 6,740,855 ("the '855 patent"), both owned by Holmes.[1]

West Bend filed its Answer to Complaint and Counterclaim on August 24, 2005.  Count V of West Bend's counterclaim alleged that "certain slow-cooker appliances" sold by Holmes infringe three (3) design patents owned by West Bend without specifically identifying which of Holmes slow-cookers were at issue.  These design patents are essentially directed to the same design.  Design patents are limited to the ornamental design of a device as shown in the figures of the design patent, as opposed to a utility patent, which covers the functional features of a product by way of written claims.

Holmes has denied and continues to deny West Bend's allegations of infringement.  It will be readily apparent to the Court that West Bend's allegations of infringement of its design patents are frivolous and stretch the limits of Fed. R. Civ. P. Rule 11.  For this reason, Holmes is submitting the instant summary judgment motion, seeking reimbursement of its attorney's fees and costs.  Even after West Bend's expert and the two inventors of the West Bend patents-in-suit by deposition testimony failed to find any of the claimed elements of the patented designs to be present in the accused devices and upon request of withdrawal of this frivolous claim by counsel for Holmes, West Bend continues to pursue this baseless claim.

Holmes markets and sells its slow-cooker units under the brand names Rival® and

---

[1]  Subsequent to the filing of this lawsuit, The Holmes Group, Inc. was purchased by and merged into Jarden Corporation under the name JCS/THG, LLC d/b/a The Holmes Group.  Jarden Corporation later merged JCS/THG, LLC into Sunbeam, Inc. d/b/a Jarden Consumer Solutions, which is referred to in this motion as "Holmes."

Crockpot®.  These brand names are the most well known in the slow-cooker industry and Holmes is clearly the market leader in the sales of slow-cookers by a significant margin.

Holmes has obtained numerous patents on its slow-cooker technology, including the Letters Patents at issue in this suit related to programmable slow-cookers as well as design Patent Nos. Des 429, 596 ("the '596 patent") and Des 434,940 ("the '940 patent") both entitled "Slow Cooker."  (Henneberger Decl., Exhibits J and K respectively).[2]  These design patents owned by Holmes are directed to oval-shaped slow-cookers and are prior art to all three of the design patents now being asserted by West Bend.  The '596 and '940 patents owned by Holmes show all of the basic components of an oval slow cooker, including a rounded off rectangular-shaped heating unit, a translucent lid with a knob, a cooking vessel having a lip which includes outwardly flared end handles at opposite ends thereof, the cooking vessel lip being supported on an upper edge of the heating unit, handles attached to each side of the heating unit, and feet that raise the heating unit up off of a supporting surface.  Figures 1 and 2 of the Holmes '596 patent are shown below:



Exhibit J.

---

[2]  Exhibits A-R are attached to the Declaration of Glenn T. Henneberger filed herewith and Exhibits S-T are attached to the Declaration of Charles R. Mauro filed herewith.

Furthermore, in the Spring of 1997, Holmes sold a slow-cooker Model No. 3755 HG covered by the '596 and '940 patents.  (Henneberger Decl., ¶ 13).  A photograph of a front elevation view, top plan view and bottom plan view are shown below:

 



West Bend initially asserted that two models of slow-cookers infringed the West Bend design patents which cover separate ornamental aspects of a single slow-cooker design, i.e., the primary design in all three patents are the same, only minor details as will be discussed below are different among the three patents.  By way of an expert report dated November 3, 2006 and supplemental interrogatory responses, West Bend now identifies thirty-four (34) allegedly infringing models of slow-cookers sold by Holmes.  These model numbers are set forth in Exhibit 6 of the Expert Report of Cooper C. Woodring ("Woodring Report"), an expert witness retained by West Bend in the field of industrial design.  (Henneberger Decl., ¶ 8, Exhibit G). It is incredible to allege that thirty-four (34) different slow-cookers can infringe a single design as claimed in the West Bend patents-in-suit.  Likewise, the named inventors, William Dobson and

Scott Pollnow testified during depositions conducted on November 28, 2006 that the accused Holmes products were different in all respects, i.e., shape of heating unit and cooking vessel, shape of knob, shape of cooking vessel lip and shape and arrangement of feet, to the claimed designs further evidencing the baseless nature of West Bend's accusations of infringement. (Henneberger Decl., ¶ 6, Exhibits N and O). All of the accused products sold by Holmes clearly do not infringe any of the West Bend patents-in-suit as will be discussed below.

The design patents asserted by West Bend include:  U.S. Patent No. Des 434,266 ("the '266 patent"); U.S. Patent No. D444,993 ("the '993 patent") and U.S. Patent No. D444,664 ("the '664 patent") (collectively referred to herein as "West Bend patents-in-suit").  (Exhibits A, B and C, respectively).  The parent patent from which the West Bend patents-in-suit make a claim of priority, U.S. Patent No. Des. 425,360 has not been asserted by West Bend.  (Henneberger Decl., ¶ 2, Exhibit D).

As the Court will note, slow-cookers are manufactured in several shapes and sizes and are manufactured with different shaped lids, handles and knobs.  Photographs or catalog sheets depicting the accused Holmes slow-cookers are attached to the Mauro Decl., Exhibits T1 through T34.

As more fully explained in detail below, there are significant ornamental differences between each of the accused slow-cookers sold by Holmes and the designs shown and claimed in the figures of the West Bend patents-in-suit.  As properly construed, none of the West Bend design patents cover any of the accused Holmes slow-cookers.  Therefore, summary judgment of non-infringement is more than appropriate under the facts of this case.

## II.    STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Holmes submits concurrently herewith its Local Rule 56.1 Concise Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried In Support Of Holmes' Motion for Summary Judgment.  Reference to the text and supporting exhibits are made throughout this Memorandum in Support of Holmes motion for  summary judgment of non-infringement.

## III.    APPLICABLE LAW

### A.    Requirements For Summary Judgment

The Federal Circuit has emphasized that "summary judgment is as appropriate in a patent case as in any other."  *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988).  As stated by the Federal Circuit in *OddzOn*, 122 F.3d at 1401:

> Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).  In determining whether there is a genuine issue of material fact, the evidence must be viewed in a light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 U.S.P.Q.2d (BNA) 1035, 1038 (Fed. Cir. 1995).

The Court in *Avia* noted, however:

> The moving party need not "produce evidence showing the absence of a genuine issue of material fact"; rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.

*Avia*, 853 F.2d at 1560.

## B.    The Law Of Infringement In General

It is well established that, "[t]he determination of infringement is a two-step process. First, the language of the claim must be interpreted.  Second, the accused device must be compared to the claim language as interpreted."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992).  The first step, claim construction, is a matter of law to be determined exclusively by the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*in banc*), *aff'd*, 517 U.S. 370 (1996).  The second step involves a question of fact. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1448 (Fed. Cir. 1991). Thus, in order to determine if the Holmes slow-cookers infringe the West Bend patents-in-suit, it is important to first determine what meaning and scope to give to the claim.  *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1448 (Fed. Cir. 1991) ("Before analyzing a claim to determine whether infringement occurs, the Court must properly interpret the claim.  Improper claim construction can distort the entire infringement analysis.").

In interpreting a claim, reliance upon extrinsic evidence, evidence apart from the patent and its file history, is improper, unless the patent documents as a whole are insufficient to enable the court to construe disputed patent elements.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).  Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that the applicant is at least entitled to a claim having the narrower meaning, the notice function of the claim is best served by adopting the narrower meaning.  *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996).

As discussed further below, a design patent contains only a single claim.  It is this claim that must be interpreted before infringement can be analyzed.

### C.    Design Patent Claim Construction

#### 1.    Design Patents In General

One can obtain a design patent for "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171.  Unlike utility patents, which describe an invention in words, design patents are depicted visually in one or more drawings.  The design patent must thus include the language that what is claimed is "the ornamental design... as shown and described." 37 C.F.R. § 1.153(a).  The drawings that the inventor himself has submitted and the required language together protect one invention, and more than one claim is not permitted.  See *Id*.  Even though the focus of the design patent is the drawings, the law still requires that the patent applicant "distinctly [claim] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2.

#### 2.    Construing The Scope Of A Design Patent

When construing the claim of a design patent, the construction of the claim must be limited to what is shown in the drawings, for design patents have almost no scope.  *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed. Cir. 1995) (refusing to omit features shown in the drawings from the claim); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope.  The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). Vaguely worded descriptions are not acceptable.

A design patent protects only the ornamental aspects of a device, and therefore the claim must be interpreted to identify at least these non-functional ornamental elements. See 35 U.S.C. § 171; 37 C.F.R. § 1.53(a).  According to the Federal Circuit, when a design contains both functional and non-functional elements, the scope of the claim must be construed so that the ornamental aspects of the design are identified.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d

1396, 1405 (Fed. Cir. 1997).  Features that arguably have functional aspects will only be

considered ornamental when they can be designed in several ways and yet still retain their

functional aspects.  See, e.g., *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed.

Cir. 1996).

     As noted above, a court must consider only the intrinsic evidence when the intrinsic

evidence is clear.  Thus, when construing the claim of a design patent, one should not look to

extrinsic evidence such as the commercial embodiment or actual prototype of the design to

interpret the claim.  See *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed.

Cir. 1995) (holding that it was error to consider a commercial embodiment of the design having

more elements than the actual claim when deciding infringement).  Among other reasons, the

review of such extrinsic evidence is improper because a court must ensure that it is not

construing the claim to include unclaimed features.  *Id.*

### 3.     The Listing Of Ornamental Features For Design Patent Claim Construction

     In *Durling v. Spectrum Furniture Co.,* 101 F.3d 100 (Fed. Cir. 1996), the Federal Circuit

described the use of words when construing the meaning and scope of a design patent:

> Unlike the readily available verbal description of the invention and
> of the prior art that exists in a utility patent case, a design patent
> case presents the judge only with visual descriptions.  Given the
> lack of a visual language, the trial court must first translate these
> visual descriptions into words -- i.e., into a common medium of
> communication.  From this translation, the parties and appellate
> courts can discern the internal reasoning employed by the trial
> court. . .

*Id.* at 103.  The *Durling* court further stated that "[w]hen properly done, this verbal description

should evoke the visual image of the design."  *Id.* at 103 n.2.

It is standard practice to make a listing of ornamental features when construing the scope of a design patent claim. See, e.g., *OddzOn*, 122 F.3d at 1405 (recognizing that the district court was correct in "carefully not[ing] the ornamental features" of the claimed design); *Elmer*, 67 F.3d at 1577 (interpreting the design claim to include "among its ornamental features triangular vertical ribs and an upper protrusion"); *Lee*, 838 F.2d at 1188; *Eastern America Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp.2d 395, 406 (S.D.N.Y. 2000) (listing ornamental features in construing the design patent claim); *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 44 F. Supp. 2d 1149, 1155 (D. Kan. 1999) (presenting a numbered list of ornamental features to construe the scope of a design patent claim). Furthermore, the listing of the ornamental features facilitates an analysis of infringement of the design patent.

**D.     The Two Required Tests For Determining Design Patent Infringement**

When determining whether a design patent is infringed, two tests will be applied using the determined claim interpretation. Only if the first test is met, then the inquiry proceeds to the second test. Both tests need to be satisfied to find infringement.

**1.     The Test Of Substantial Similarity**

The first test, the "ordinary observer," or *Gorham* test, was established by the Supreme Court more than a century ago:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). The *Gorham* test focuses on the overall ornamental visual impression of the patent as compared to the overall ornamental visual impression of the allegedly infringing article. In *Gorham*, the claimed elements were purely

ornamental.  *Id*.  If the design contains both functional and ornamental features, however, the patentee must show that the perceived similarity is based on the  ornamental--rather than functional--features of the design.  *OddzOn*, 122, F.3d at 1405.

It is important to note that the patented and accused designs must be compared <u>in their entireties</u>.  In other words, the trier of fact must consider all features of the patented and accused designs, including those which may be concealed while in use.  *KeyStone Retaining Wall Systems v. Westrock, Inc*., 997 F.2d 1444, 1450-51 (Fed. Cir. 1993).  The Court must accordingly compare the bottom surface of the accused Holmes slow-cookers with the bottom surface as shown in Fig. 7 of each of the West Bend patents-in-suit.

### 2.        Points Of Novelty Test

If substantial similarity is found under the *Gorham* test, the Court proceeds to the second test, which is known as the "point of novelty" test.  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 n.4 (Fed. Cir. 1988).  To find infringement, the accused design must be found to appropriate the novel ornamental features of the patented design that distinguish it from the prior art.  *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998).  These novel ornamental features are referred to as the "points of novelty" and consist of ornamental features that are not found in the prior art.

Moreover, the points of novelty cannot be functional.  *Id*.  The Federal Circuit has stated that "the trial court cannot evade the point of novelty test by relying on the claimed overall design as the point of novelty."  *Sun Hill*, 48 F.3d at 1197.  Indeed, it is "legal error" to merge the ordinary observer and point of novelty tests by relying on the claimed overall design as the point of novelty.  *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002).

IV.    **THE WEST BEND PATENTS-IN-SUIT**

    A.    **The '993 Patent**

        1.    **The '993 File History**

U.S. Design Patent No. D444,993 is entitled "Cooker" and issued from an application filed on March 28, 2000, claiming priority to an earlier filed patent application which is not asserted by West Bend. The prior art cited during the application is listed on the front of the patent. (Exhibit A). The prosecution history was generally uneventful other than a request by the PTO to file a terminal disclaimer disclaiming the terminal part of any patent granted on the application that would extend beyond the expiration date of the then issued '266 patent or on a patent granted on Application No. 29/120,882. The '993 patent issued on July 17, 2001. As previously noted, all three asserted patents cover separate ornamental aspects of a single slow-cooker design as they each rely on the same parent application.

        2.    **The '993 Patent Specification And Drawings**

The '993 patent illustrates a slow-cooker having all the basic slow-cooker components, i.e., a heating unit, a cooking vessel and lid. Specifically, the '993 patent shows a rounded off rectangular-shaped heating unit, cooking vessel and lid. (Mauro Decl., ¶ 9). The text of the '993 design patent reads: "The ornamental design for a cooker, as shown and described." The specific claim of the '993 patent includes seven figures showing a perspective view and a front, back, side, top and bottom view of the claimed design, Figure 2 is shown below.



Exhibit A.

The term "rounded off rectangular-shaped," as used herein to describe the West Bend patents-in-suit, is in contrast to a clean and flowing elliptical shape which is the dominant shape of all the accused products.  The term is intended to convey a primary shape of a rectangle having rounded off corners to create the shape as shown most clearly in Figures 6 and 7 in each of the patents-in-suit.  As shown in these figures, this shape includes essentially a first pair of opposing arcs having a first curvature, and a second pair of opposing arcs having a second curvature.  The pair of opposing arcs is turned 90 degrees to the other pair and joined at their ends, thus forming the shape shown.  One characteristic of this squared off rectangular-shape is the relatively small arcs of the four corner edges, which gives the visual impression of a near rectangle with slightly bowed out sides.  (Mauro Decl., ¶ 10).

Turning to the drawings of the '993 patent, Figures 1-7 show a slow-cooker having a heating unit having a smooth outer wall.  As stated above, the shape of the heating unit, cooking vessel and lid is generally a rounded off rectangle.  Figures 2-5 also show a thin band around the top of the perimeter of the walls of the heating unit.  The band is provided on all slow-cookers during the manufacturing process.  An inner wall of the heating unit overlaps a top edge of the outer surface to form an upper edge as shown.  The upper edge of the heating unit supports the lip of the cooking vessel.  (Mauro Decl., ¶ 10, Exhibit A).



*Fig. 2*

Figures 1-6 illustrate the lip of the cooking vessel that is positioned within a cavity of the

heating unit.  Again, all slow-cookers include a cooking vessel with a lip resting upon an upper edge of the heating unit.  The lip of the cooking vessel tapers downwardly and outwardly from a top surface to a bottom surface, the taper being concave in shape.  The bottom surface of the cooking vessel lip which rests upon the heating unit is substantially flat and overhangs the edge of the heating unit.  Specifically, Figures 2-5 in each of the West Bend patents-in-suit clearly illustrate the shape of the cooking vessel lip as described above.  The lip of the cooking vessel separates the lid from the cooking unit.  (Mauro Decl., ¶ 13).

Figures 1-6 also illustrate a lid having a round, disk-like skirt centrally located thereon. The lid is translucent and shaped such that it fits within the top surface of the lip of the heating unit.  (Mauro Decl., ¶ 16).

Figure 7 shows a flat, smooth bottom surface of the cooking unit.  (Mauro Decl., ¶ 17).

Figures 1-5 show the knob on the lid of the slow-cooker, the handles on the outside of the heating unit, the control panel and control knob on the heating unit, and the bottom edge of the heating unit in broken lines.  The written portion of the specification indicates that those portions of the design shown in broken lines do not form part of the claimed invention.  (Mauro Decl., ¶ 19).

**B.    Claim Interpretation Of The '993 Patent**

Based upon the foregoing, Holmes proposes the following interpretation for the single claim of the '993 patent as follows:

A slow-cooker including:

a rounded off rectangle-shaped heating unit having a thin, flush band at an upper edge;

a rounded off rectangle-shaped cooking vessel supported by the upper edge of the heating unit by a lip, at the shorter ends of the rounded off rectangular-shaped cooking vessel, the lip extends outwardly having concave portions transitioning into a convex portion forming the handle portions, the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat, the flat bottom surface of the lip of the cooking vessel overhanging and being positioned adjacent to the upper edge of the heating unit;

a rounded off rectangular-shaped, domed lid which is shaped to make a smooth transition from its outer periphery to the top surface of the cooking vessel lip; and

a rounded off rectangular-shaped bottom, the bottom surface being smooth and flat.

## V.    THE HOLMES SLOW-COOKERS DO NOT INFRINGE THE '993 PATENT

As discussed above, it is incumbent on the patentee to show that the perceived overall similarity between the accused and patented designs is based on ornamental rather than functional features. *OddzOn*, 122 F.3d at 1405.  Moreover, **all** of the patent figures must be considered by the Court in applying the ordinary observer test.  *Contessa*, 282 F.3d at 1378.  The differences between the accused slow-cookers and the asserted design are striking.  Even the inventors of the asserted West Bend design patents admit that the designs are different.  (Exhibit N, p. 95, line 23 to p. 96, line 6 and p. 59, line 11 to p. 60 line 1; Exhibit O, p. 46, line 16 to p. 47, line 12).

A.    **The Holmes Slow-Cookers Are Not Substantially The Same As The Design Claimed In The '993 Patent**

1.    **The Lip Of The Cooking Vessel**

The fact that the accused slow-cookers and the design patents at issue include a cooking vessel having a lip which is supported by an upper edge of the heating unit is irrelevant in applying the *Gorham* test since the lip on the cooking vessel is a purely functional, i.e., to support the cooking vessel within the heating unit. This functional feature exists in all slow-cooker appliances and is clearly seen in the prior art. (See e.g., U.S. Patent No. Des. 429,596). (Mauro Decl., ¶ 5). Thus, one must focus on the ornamental feature of the cooking vessel lip, i.e., its shape and specific contour to determine overall similarity.

As stated above, the '993 patent illustrates and claims a lip of the cooking vessel which tapers downwardly and outwardly from a top surface to a bottom surface, the taper having a concave shape. The bottom surface of the lip is substantially flat and overhangs the edge of the heating unit as shown below in Figure 2 of the '993 patent. (Mauro Decl., ¶ 13).



*Fig. 2*

The accused Holmes slow-cookers do not include this claimed ornamental feature. The differences between the lip of the accused slow-cookers and that found in the claimed design were admitted by the inventors. (Exhibit N, p. 69, lines 2-7 and Exhibit O, p. 43, line 25 to p. 44 line 14). In direct contrast to the claimed cooking vessel lip, the lip on the accused Holmes slow-

cookers includes a substantially flat top surface which has a slight taper downwardly and inwardly to a bottom surface and having a slight convex contour. Both the upper and lower surfaces have a rounded edge. (Mauro Decl., ¶ 26). Accordingly, the accused slow-cooker lip has a taper which is the direct opposite of the claimed ornamental feature, i.e., convex as opposed to concave contour and the directly opposite slope for the taper as shown in detail below. (Mauro Decl., ¶¶ 39-40).



(Exhibit T4)

(Exhibit A, Fig. 4)

Furthermore, as shown above, the bottom edge of the lid does not make a smooth transition to the top surface of the cooking vessel lid as specifically illustrated and claimed in each of the West Bend patents-in-suit. (Mauro Decl., ¶ 27).

### 2. Rounded Off Rectangular Shape Of The Heating Cooking Unit And Cooking Vessel

The ordinary observer would also appreciate the difference in the basic shape of the Holmes slow-cookers versus the shape of the design shown in the '993 patent. The claimed slow-cooker includes a rounded off rectangular-shaped heating unit, cooking vessel and lid as most clearly illustrated in Figures 6 and 7 in each of the patents-in-suit.

 

*Fig. 6*          *Fig. 7*

As stated by the inventors of West Bend's patents, the accused Holmes slow-cookers clearly do not incorporate this claimed shape. (Exhibit N, p. 95, line 23 to p. 96, line 6; Exhibit O, p. 36, lines 21-24, and p. 42, lines 21-25). The accused Holmes slow-cookers look substantially different from the shape shown in the '993 patent. The dominant shape of the accused Holmes slow-cookers is composed of a series of clean elliptical shapes combined by the designer to produce a clean and flowing elliptical shape in the dominant view of the product. To the contrary, the same view as illustrated in Figure 6 of each of the West Bend patents-in-suit clearly shows a rounded off rectangular-shape wherein a rectangle is the dominant shape resulting in a clearly different appearance. (Mauro Decl., ¶ 37). Photographs of top views of

representative samples (Model Nos. 3730W, Exhibit T1 and 37351C, Exhibit T2) are shown

below to clearly illustrate this significant difference in overall shape.

 



Fig. 6

This clearly unmistakable difference in appearance of the shape of the accused devices

and the West Bend patents-in-suit is further supported by the opinions set forth in the Expert

Report of Charles L. Mauro ("Exhibit R").  In his report, Mr. Mauro explains that humans

perceive shapes as being composed of "shape features."  When two shapes do not have the same

shape feature sets, the shapes will not be found to be substantially similar.  (Mauro Decl., ¶¶ 34-

36).  In this case, the shape feature set of illustrated in the West Bend patents-in-suit is composed

of circular shapes combined and joined together by substantially straight lines to form the

rounded off rectangle.  To the contrary, the accused devices are all composed of a clean and

flowing elliptical shape.  Thus, the shape features are substantially different and will be

perceived as being different by an ordinary observer.  (Mauro Decl., ¶ 37).

A direct comparison was made between representative models of Holmes slow-cookers (Rival Model Nos. 37351, Exhibit T2 and 3730, Exhibit T1) photographed and converted to line drawings for ease of comparison to the design claimed in the '993 patent to clearly illustrate the substantial differences in ornamental appearance to the overall shape.  (Mauro Decl. ¶ 39), (Exhibit S, pp. 10-11).

Using invariant feature analysis, Mr. Mauro concludes that the rounded off rectangular-shaped heating unit of the claimed design is substantially different from the elliptical shaped slow-cookers by Holmes.  Based on Mr. Mauro's application of the formal test of invariant feature analysis relating to how consumers perceive the appearance of a product, Mr. Mauro concludes that the overall shape defined in the claimed West Bend design and the overall shape of the Holmes products "are not substantially similar on any visually salient dimensions."  (Exhibit S, p. 13.)

### 3.    Skirt Underneath Knob Attached To Lid

The '993 patent shows a disk-like skirt centrally located on the lid.  The '993 patent shows this skirt as having a substantial thickness.  (Figs. 2-5).  The disk-like skirt is also approximately twice the diameter of the knob.  (Fig. 6).



Exhibit A.

The Holmes slow-cookers include two basic types of handle for the lid. Some include a knob as shown below:

 

Exhibit T1.

 

Exhibit T6.

Some include a loop-style handle as shown below:

 

Exhibit T4.

The skirts on the slow-cookers with knob-style handles are different from those with a loop-style handle. More specifically, the Holmes slow-cookers with the loop handle include a thin skirt that conforms to the dome shape of the lid as shown above. This skirt is substantially thinner and more rounded than the skirt claimed in the '993 patent.

The skirt associated with the Holmes slow-cookers having the knob has a diameter that is only slightly larger than the diameter of the knob as shown above.  Thus, the relationship of the size of the diameter of the knob to the skirt is significantly different from the skirt shown in the '993 patent.  (Mauro Decl., ¶ 30).  The significant visually perceptible differences between the knob and skirt of the '933 patent and those of the Holmes slow-cookers provide even further differentiation between the designs and undermine any finding of substantial similarity.

### 4.        The Cooking Vessel Handle Portions

The '993 patent shows a portion of the cooking vessel lip that extends outwardly from opposite ends to form a handle for lifting the cooking vessel out of the heating unit.  As shown in Figure 6 below, the cooking vessel handles extend from the lip in a smooth continuous curve whereby the lip extends outwardly having concave portions which are joined by a convex portion to form the handle portion.



Exhibit A.

The entire lip of the cooking vessel, including the handles, slope downwardly and outwardly from a top surface to a bottom surface, the slope being slightly concave as shown in Figure 2 below.



Fig. 2

Exhibit A.

The handles on the cooking vessels of the accused Holmes slow-cookers differ significantly in appearance from the claimed design. Representative photographs of the handles on the cooking vessels of the accused slow-cookers are shown below.

 

Exhibit T1.

The handles on the accused cooking vessels extending outwardly from the lip to permit the cooking vessel to be removed from the heating unit and carried. The handles taper downwardly and inwardly from a top surface to a bottom surface, the taper being slightly concave. The top surface of the handle is substantially flat. Thus, the handle portions of the accused products are substantially different in ornamental appearance from the handle portions shown in the West Bend patents-in-suit. (Mauro Decl., ¶ 32).

### 5.    The Interface Between The Cooking Vessel Lip and Lid

The lip of the cooking vessel of the patented design and a representative photograph of an accused Holmes slow-cooker are shown below.

    

Exhibit T4.                    Exhibit A, Fig. 4

The lip of the cooking vessel of the patented design slopes from a top surface to a bottom surface downwardly and outwardly and includes a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat as shown in detail above.  In direct contrast, the lip of the cooking vessel on the accused slow-cooker slopes from a top surface to a bottom surface downwardly and inwardly and includes a slight convex shape from a top surface to a bottom surface, the top surface being substantially flat.  In essence, the contours of the cooking vessel lip on the accused devices and the patented design are direct opposites as clearly seen above.  (Mauro Decl., ¶¶ 39-40; 45).

### 6.    Heating Unit Having A Smooth, Flat Bottom Surface

As stated above, all features, including those that may be concealed while in use, must be considered when determining whether the accused devices are substantially similar to the claimed design.  *Keystone*, 997 F.2d at 1450-51.  West Bend has included in its claimed design the bottom surface of the heating unit shown in Figure 7, which is smooth and flat.  (Mauro Decl., ¶ 44).



*Fig. 7*

Exhibit A.

To the contrary, the bottom surface of the accused of Holmes slow-cookers is neither smooth nor flat. The Holmes slow-cookers either have an indentation in the surface of the bottom or a protrusion as well as a series of holes around the perimeter and fastening devices which are clearly visible. Representative photographs of the bottom surface of the accused Holmes slow-cookers are shown below:

   

Exhibit T1                              Exhibit T26

These elements cause the bottom of the Holmes slow cookers to look substantially different from the claimed bottom that forms a part of the design of the West Bend patents-in-suit. *Id.*

### 7.    The Ordinary Observer Test Is Not Satisfied

Comparing the ornamental elements of the patented design in their entirety with the accused Holmes slow-cookers, it is clear that any perceived similarity between these designs would not be based on these ornamental elements since they are all substantially different in

appearance.  The only similarity stems from the fact that the accused produces and patented designs are both slow-cookers.  However, such a comparison is not the test.  Focusing on the ornamental features of the slow-cookers alone, and considering all of the views provided in the patent figures, it is clear that there is no substantial similarity between the patented design and any of the accused designs to the ordinary observer and the Court need not go any further in the analysis.  (Mauro Decl., ¶¶ 33-38).

**B.    The Holmes Slow Cookers Do Not Infringe The '993 Patent Under The "Point Of Novelty" Test**

The Court need not address the point of novelty issue where, as here, there are substantial differences in the overall designs and the ordinary observer test is not satisfied.  However, if the Court deems it necessary to conduct a point of novelty evaluation, in addition to having a different overall appearance, the Holmes' slow-cookers fail to incorporate any of the points of novelty associated with the West Bend design patents.

In order to determine the points of novelty, the features of the claimed design are compared with those shown in the prior art.  Only those features not shown in the prior art can be determined to be points of novelty.  The claim as interpreted above is broken into its constituent elements and compared to the prior art to determine the points of novelty as set forth below.

"A rounded off rectangular-shaped heating unit having a thin, flush band at an upper edge, a rounded off rectangle-shaped cooking vessel supported by the upper edge of the heating unit by a lip";

These features are shown in U.S. Patent No. D 429,596 particularly Figures 1 and 4 set forth below.

 

These features are also shown in a prior art slow-cooker sold by Holmes, Model No.

3755 HG as shown below:

 

Accordingly, this feature cannot be considered a point of novelty

"at the smaller ends of the rounded off rectangular-shaped cooking vessel the lip extends
outwardly forming concave portions which are joined by a convex portion forming handle
portions,"

This feature is shown in U.S. Patent No. Des. 416,434, Figure 6, (Exhibit M); Des. 420,246

Figure 4 (Exhibit L); the '596 patent, Figure 4 (Exhibit J) as well as the prior art slow-cooker,

Model No. 3755 HG as shown above.  (Henneberger Decl., ¶ 13).

 

"the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat, the flat bottom surface of the lip of the cooking vessel overhanging and being positioned adjacent to the upper edge of the heating unit;"

This feature is substantially shown in U.S. Patent No. D 420,246, Figure 3 (Exhibit L) except for the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter.



"a rounded off rectangular-shaped, domed lid"

This feature is shown in U.S. Patent No. Des. 429,596, Figures 2 and 4.  (Exhibit L).

- 27 -



"a centrally located, round disc-like member provided on the lid"

This feature is shown in the D416,434 patent, See e.g. Figures 2 and 6.  (Exhibit M).



"a rounded off rectangular-shaped bottom, the bottom being smooth and flat"

This feature is shown in U.S. Patent No. Des. 434,940, Figure 3.  (Exhibit K).



Accordingly, the only features which arguably are not shown in the prior art are:

1.    the lip of the cooking vessel sloping from a top surface to a bottom surface

downwardly and outwardly throughout its perimeter and including a slight concave shape from

the top surface to the bottom surface, the bottom surface being substantially flat; and

2.      the domed lid being shaped to make a smooth transition from its outer periphery to the upper edge of the cooking vessel lip.

None of the accused Holmes slow cookers incorporate either of these possible points of novelty.  Specifically, the lip on the cooking vessel of the accused slow cookers have a flat top surface.  The contour of the lip from a top surface to the bottom surface is downwardly and inwardly having a convex shape, the direct opposite of the claimed point of novelty.  The shape of the cooking vessel lip on the accused devices creates a very different visual appearance from that shown and claimed in the '993 patent as is readily apparent from the comparison below. (Mauro Decl., ¶¶ 38-40).



Exhibit T4          Exhibit A, Fig. 4          Exhibit T1

In addition, as shown above, on the accused devices, the transition between the lid and the lip results in an abrupt change in angle.  This is very distinguishable from the smooth transition between the lid and upper edge of the top surface of the cooking vessel lip as illustrated in the claimed design.  (Mauro Decl., ¶ 41).  Accordingly, none of the points of novelty of the claimed design are present in any of the accused products.  Notwithstanding the fact that no overall similarity exists, West Bend cannot satisfy the points of novelty test and there can be no infringement as a matter of law.  (Mauro Decl., ¶ 45).

C.    **Summary Judgment On The Issue Of Non-Infringement
Of the '933 Patent Is Appropriate Under The Facts Of This Case**

Design patents have almost no scope. *Mann*, 861 F.2d at 1582. West Bend's design

patent is limited to its "overall ornamental visual impression," not to the broader concept of a

slow-cooker. *OddzOn*, 122 F.3d at 1405. An ordinary observer would not purchase a Holmes

slow-cooker supposing it to be the design claimed in the West Bend patent in view of the

numerous and substantial ornamental differences. Moreover, none of the Holmes slow-cookers

include the ornamental features that distinguish the claimed design from the prior art. The claim

of the '993, being limited to the design as shown in the patent drawings, accordingly cannot be

read on the accused slow-cookers. No reasonable trier of fact would find otherwise. Summary

judgment of non-infringement of the '993 patent should accordingly be granted with respect to

all accused Holmes slow-cookers.

V.    **THE '266 PATENT**

A.    **The File History**

U.S. Design Patent No. 434,266 is entitled "Cooker" and issued from U.S. Patent

Application No. 29/120,985 filed on March 28, 2000. The '266 patent is a continuation of

Application No. 29/097,446, filed December 7, 1998, now U.S. Patent No. D425,360. The

patent issued on November 28, 2000. (Exhibit B).

B.    **The '266 Patent Specification And Drawings**

The '266 Patent shows the same claimed elements as the '993 patent and adds additional

elements. The additional elements include a thin band around the bottom perimeter of the

heating unit, the bottom of the heating unit being at a right angle with respect to the side wall of

the heating unit and a disk-like knob mounted on a cylinder shaped smaller diameter pedestal are

claimed as shown in Figures 2 and 6 below.



*Fig. 2*          *Fig. 6*

Exhibit B.

**C.    Claim Interpretation Of The '266 Patent**

Based upon the foregoing, Holmes interprets the claim of the '266 patent as follows:

The claim construction is the same as that for the '993 patent with the addition of the following claimed elements:

a knob centrally located on the lid, the knob having a flat and smooth upper surface and a sharp upper edge which tapers downwardly and inwardly to a flat bottom surface which transitions into an elongated cylindrical stem, the stem being smaller in diameter than the knob, and a round, disk-like skirt which is substantially larger in diameter than the diameter of the knob; and

the bottom of the heating unit being at a right angle with respect to the sidewall of the heating unit.

**VII.    THE HOLMES SLOW-COOKERS DO NOT INFRINGE THE '266 PATENT**

**A.    The Holmes Slow-Cookers Are Not Substantially The Same
As The Design Claimed In The '266 Patent**

None of the accused Holmes slow-cookers are substantially the same in overall appearance when compared to the claimed design in the '266 patent for the same reasons as set forth with regard to the '993 patent.

In addition, as stated above, the '266 patent further claims the knob on top of the lid. The purpose of the knob is to remove the lid from the cooking vessel. Therefore the existence of a handle on the lid is functional. Accordingly, claim coverage is only permitted for the ornamental features of the handle.

Upon comparing the claimed knob to the accused slow cookers there are significant differences. The knob shown in the '266 patent is disk-like with a flat and smooth upper surface and a sharp upper edge which tapers downwardly and inwardly to a flat bottom surface. The handle used on the accused Holmes slow-cooker lids are either a loop-style or a knob as shown below.

 

Exhibit T1.

 

Exhibit T6.

 

Exhibit T4.

It is without question that both the loop-style handle and knob-style handles on the lid of the accused products are substantially different in ornamental appearance when compared to the claimed knob. Such substantial differences would prevent a finding of substantial similarity.

Specifically, the knobs on the accused Holmes slow-cookers do not include a disk-like knob having a flat and smooth top surface and a sharp upper edge as shown in the '266 patent. Instead, one style of knobs as shown above (top pictures) has a rounded or domed top and rounded edges. Additionally, the stem is much shorter in height than the elongated stem shown in the '266 patent giving a very different overall appearance. Furthermore, the top of the knob of the accused devices includes ornamental circumferentially spaced grooves which are not shown in the '266 patent figures which define the claimed subject matter. (Mauro Decl., ¶¶ 28, 42).

A second styled knob (middle pictures) has a dome shaped top surface which is almost the same diameter as the skirt. Furthermore, the transition from the upper edge to the lower edge is a straight line slope downwardly and inwardly as opposed to the convex contour illustrated in the patented design. Theses substantial differences further distinguish those Holmes slow-cookers from the claimed design such that there is no substantial similarity. *Id*.

## B.    Point(s) Of Novelty

The additional features added by the '266 patent do not provide any further distinctions over the prior art. The claimed knob of the '266 patent is found in the prior art including Des. 416,434 (Exhibit M, Figures 1 and 2) and a West Bend catalog sheet depicting a prior art slow-cooker identified by document production numbers WB00516-17. (Exhibit R).

**C.    Summary Judgment On The Issue Of Non-Infringement
Of The '266 Patent Is Appropriate Under The Facts Of This Case**

The claim of the '266 patent as defined by the design shown in the patent figures is substantially different from the design of the accused slow-cookers.  The ornamental features of the patented design are different from those found in the Holmes slow-cookers.  The distinctions are striking and no observer would confuse the claimed design with the accused products.  In addition, the Holmes slow-cookers do not incorporate any of the possible points of novelty.  The only similarity arises from the fact that the designs at issue are all slow-cookers and share functional features which cannot be considered in the determination of overall similarity.  Summary judgment of non-infringement of the '266 patent should accordingly be granted with respect to all accused Holmes slow-cookers.

**VIII.    THE '664 PATENT**

**A.    The File History**

U.S. Design Patent No. D 444,664 is entitled "Cooker" and was issued from U.S. Patent Application No. 29/120,882 filed on March 28, 2000.  The file history of the '664 patent is essentially the same as that of the '993 patent.  The '664 patent issued on July 10, 2001.  (Exhibit C).

### B.     The '664 Patent Specification And Drawings

The '664 patent also claims the same ornamental design for a slow-cooker as that in the

'266 patent, with the exception of adding four small cylindrical feet in a rectangular pattern on

the bottom of the heating unit.  (See Figures 2 and 7 as shown below).  Like the '993 patent, the

bottom edge of the heating unit is shown in broken lines and does not form a part of the claimed

invention.



### C.     Claim Interpretation Of The '664 Patent

Based upon the foregoing, Holmes interprets the claim of the '664 patent the same

as the '993 patent with the addition of the knob as defined in the '266 patent and further

including:

four cylindrically-shaped feet arranged in a rectangular pattern on the bottom surface of

the heating unit.

## VII.    THE HOLMES SLOW-COOKERS DO NOT INFRINGE THE '664 PATENT

### A.     The Holmes Slow-Cookers Are Not Substantially The Same
###        As The Design Claimed In The '664 Patent

The design of the Holmes slow cookers is not substantially the same as the design

claimed in the '664 patent for the same reasons as set forth above with regard to the '266 and '993

patents.

- 35 -

In addition, none of the accused Holmes slow-cookers includes cylindrical-shape feet provided in a rectangular arrangement on the bottom of the heating unit as specifically claimed in the '664 patent, Figure 7.  The feet of the '664 patent are functional, and serve to raise the heating unit from the surface on which the slow-cooker rests.  Therefore, the mere presence of feet is not a proper design element.  It is the specific ornamental design of the feet that is relevant.  It is indisputable that none of Holmes' slow-cookers include the four cylindrical feet as shown in the '664 patent.  To the contrary, the accused Holmes slow-cookers include cone-shaped feet generally not arranged in a rectangular pattern.  (See e.g., Exhibit T1 and T4).  Thus, to the extent, if any, that the feet are ornamental, the accused Holmes slow-cookers are substantially clearly different in ornamental appearance.

Since the addition of the feet only serves to further distinguish the claimed design from the Holmes slow-cookers, the substantial similarity test is not met and there can be no infringement as a matter of law.

**B.      Point(s) Of Novelty**

The feet do not distinguish the design from the prior art and are not a point of novelty. The cylindrical feet of the claimed design can be found in U.S. Patent No. Des. 416,434, Figures 3 and 7.  (Exhibit M).

**C.      Summary Judgment On The Issue Of Non-Infringement
Of the '664 Patent Is Appropriate Under The Facts Of This Case**

The claim of the '664, being limited to the design as shown in the patent drawings, accordingly cannot be read on the accused slow-cookers.  As stated above, it is indisputable that the Holmes slow-cookers do not include the element of the feet claimed in the '664 patent as well as each of the other elements as described above with respect to the '993 patent and the knob as

- 36 -

discussed in the '266 patent.  Summary judgment of non-infringement of the '664 patent should

accordingly be granted with respect to all accused Holmes slow-cookers.

## VIII.  AS A MATTER OF LAW WEST BEND'S FAILURE TO MARK PRECLUDES DAMAGES PRIOR TO ACTUAL NOTICE

Notwithstanding that the Holmes accused slow-cookers do not infringe any of the West

Bend design patents, West Bend's failure to mark their products covered by the asserted design

patents pursuant to 35 U.S.C. § 287 limits any potential recovery of damages arising from any

alleged infringement.  West Bend is not entitled to recover damages based on sales made prior to

providing Holmes with actual notice of infringement by identifying a specific product or device.

### A.    Controlling Law Requires Specific Actual Notice of Infringement

A patent owner who makes, sells or authorizes another to make and/or sell articles covered

by the patent must mark the article in accordance with 35 U.S.C. § 287(a), or be limited in the

amount of damages that can be recovered.  In the absence of appropriately marking an article, the

statute limits the amount of damages that can be recovered in an infringement suit to those acts

that occur after the patentee gives actual notice of infringement.  The purpose of the statue is to

encourage marking such that the public is put on notice that a product is covered by a patent.

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998).  The marking

requirement of 35 U.S.C. § 287(a) "applies to design patents whether remedy for infringement is

sought under § 284 or § 289."  *Nike*, 138 F.3d at 1446.

When constructive notice by marking is absent, the actual notice requirement assures that the

infringer knew of the adverse patent and the alleged infringement during the period in which its

liability accrues.  *SRI Int'l v. Advanced Tech. Labs*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).

A purpose of the actual notice requirement is to facilitate the alleged infringer's efforts to avoid continued infringement. *Lans v. Digital Equipment Corp*, 252 F.3d 1320, 1327 (Fed Cir. 2001). Thus, notice under §287 is generally only satisfied when "the recipient is informed of the identity of the patent *and the activity that is believed to be an infringement." SRI Int'l*, at 1470 (emphasis added). The determination of whether actual notice was given under *§ 287* focuses on the conduct of the patentee, not the knowledge or understanding of the alleged infringer. *Amsted Ind. Inc. v. Buckeye Steel Castings, Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

Actual notice requires "the affirmative communication of a specific charge of infringement *by a specific accused product or device*" *Id.,* (emphasis added). Merely identifying a type of product is not specific enough and is not sufficient to provide actual notice. *Id.* In fact, notice of infringement of a specific model or class of products has been held to be insufficient notice as against unspecified models. *See*, *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346, 1347 (Fed. Cir. 2001); *Eastman Kodak Co. v. AGFA-Gevaer N.V.*, 2005 WL 281174 (W.D.N.Y 2005). "The patent holder can not shift the duty of providing notice to the alleged infringer by notifying them of an allegedly infringing product, and then requiring the alleged infringer (at his or her peril) to identify similar products that may be covered by the notice of infringement. *Eastman Kodak* at 2 (citing *Gart*). In lieu of marking a product, notice under §287 is intended to provide the alleged infringer with a "clear understanding of which of its products are purported to infringe the accuser's patent." *Coca-Cola Co. v. Pepsico, Inc.*, 2004 WL 4910334 (N.D. Ga. 2004).

### B. West Bend's Counterclaim Was Insufficient To Provide Actual Notice

West Bend admits that it sells products that are covered by its design patents-in-suit. (Exhibit P). West Bend further admits that it does not mark any of its products with the patent numbers of the design patents-in-suit. (Exhibit Q).

With regard to actual notice, West Bend's first assertion of its design patents against Holmes was contained in a counterclaim filed on August 24, 2005. (Exhibit E). The Counterclaim stated as follows:

### COUNT V - Patent Infringement

On information and belief, Holmes has manufactured, imported, distributed, marketed, offered for sale and sold certain slow cooker appliances (hereinafter "the accused products") that embody the inventions and are covered by the claims of the '266, '664 and '993 patents (hereinafter collectively referred to as "the West Bend Housewares patents-in-suit") and has caused others to offer to sell, sell and use the accused products.

Accordingly, it failed to specify which of Holmes' many and varied slow-cookers allegedly infringe the design patents-in-suit. To avoid a motion under Fed. R. Civ. P. 12(c), counsel for Holmes contacted counsel for West Bend in an attempt to identify which Holmes slow-cooker models were being accused of infringement. On or about September 2, 2005, counsel for West Bend verbally identified two (2) models of Holmes slow-cookers alleged to be infringing. (Henneberger Decl., ¶.6). At that time, West Bend's counsel identified Holmes' model numbers 3730 and 37351 as the products at issue. This specific charge of infringement identifying the two slow-cooker models was affirmed in writing by West Bend seven months later in their response to Holmes Interrogatory No. 8 dated March 31, 2006, (Exhibit F) which states:

### RESPONSE TO INTERROGATORY NO. 8:

West Bend objects to this interrogatory as premature because fact discovery has just commenced and is ongoing and as calling for expert opinion. Subject to these and its general objections, West Bend states that Holmes' Rival Model Nos. 3730 and 37351 slow cookers infringe each of the West Bend patents-in-suit. Investigation continues.

On November 6, 2006, over a year after the West Bend Counterclaims were served, West Bend specifically charged thirty-two (32) additional models of Holmes' slow-cookers of infringing the design patents-in-suit. (Exhibit G).

### C. Holmes Did Not Receive Sufficient Actual Notice Until West Bend Identified the Accused Slow Cooker Models

West Bend's admitted failure to mark their own slow cookers with the asserted design patents-in-suit required them to provide actual notice of infringement to Holmes. The Federal Circuit has required that a specific accused product or device be identified. The Counterclaims asserted by West Bend, while notifying Holmes of the asserted design patents, but failed to provide a specific charge of infringement by a specific accused product or device. The broad reference in the Counterclaim to "slow cooker appliances," in no way met the requirements of the law. Holmes has sold well over a hundred different slow cooker models since the asserted West Bend patents have been issued. Therefore, to identify "slow cooker appliances" is meaningless.

The lack of actual notice of a specific accused product, required Holmes to request from West Bend specific which models were considered to infringe, before an Answer to the Counterclaim could be filed. It was not until after this inquiry by Holmes that they were provided with a specific charge of infringement by two models of slow-cookers on or about September 2, 2005.

Additionally, when asked by Holmes through interrogatories to clarify these specific charges, West Bend, seven (7) months after filing it Counterclaim, once again only identified the same two models. Therefore, it was Holmes understanding that only two models were being accused of infringement.

On November 6, 2006, nearly a year and a half after asserting its Counterclaim, West Bend for the first time identified an additional thirty-two (32) models made by Holmes that allegedly infringe the design patents-in-suit. A case, which for over a year was only directed to (2) specific slow-cooker models, suddenly became a case involving thirty-four (34) slow-cooker models. Holmes did not have actual notice of the scope of West Bend's allegation and the number of accused models until the specific models were identified.

In reviewing the totality of the communications between the parties it is clear that actual notice was not provided until specific slow-cooker models were identified by West Bend. In fact, West Bend made it clear in their response to interrogatories that even they were only aware of two models that infringed. If at that time West Bend was not aware of other models that infringed, Holmes could not be considered to have had actual notice of infringement by any other models. It was not until just recently that Holmes was informed that any other models of slow-cookers were alleged to infringe.

West Bend's actions frustrate the very purpose of the actual notice requirement. The vague notice provided by the complaint did not provide Holmes with any meaningful information as to what models were being accused. Therefore, damages should not be permitted on any sales taking place before the specific models were identified, i.e., actual notice was provided to Holmes.

Accordingly, summary judgment is appropriate to limit any potential damage recovery with regard to the first two slow-cooker models identified, 3730 and 37351, to sales made after September 2, 2005. With regard to the subsequent thirty-two slow-cooker models identified, West Bend is not entitled to any potential compensation for damages until after November 6, 2006.

## IX.    CONCLUSION

In view of the foregoing, the accused Holmes slow-cookers do not infringe the claims of the West Bend design patents, as properly construed, under the ordinary observer test or the "point of novelty" test. There are no genuine issues of fact with respect to either of these issues. Thus, summary judgment of non-infringement should accordingly be granted. Furthermore, in view of the frivolous nature of West Bend's cause of action, Holmes should be granted its attorneys' fees and costs related to this claim. Lastly, any potential recovery of damages by West Bend should be limited to the time period following actual notice of alleged infringement.

                                SUNBEAM PRODUCTS, INC.,
                                d/b/a JARDEN CONSUMER SOLUTIONS
                                f/k/a THE HOLMES GROUP

                                By its Attorneys,

Dated:  December 1, 2006        /s/Glenn T. Henneberger
                                Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
                                CRHDocket@hoffmannbaron.com
                                Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
                                GTHDocket@hoffmannbaron.com
                                Alan M. Sack, Esq. (*Pro Hac Vice*)
                                AMSDocket@hoffmannbaron.com
                                HOFFMANN & BARON, LLP
                                6900 Jericho Turnpike
                                Syosset, New York  11791-4407
                                Telephone:  (516) 822-3550
                                Facsimile:  (516) 822-3582

                                and

                                Nicholas J. Nesgos (BBO No. 553177)
                                nnesgos@pbl.com
                                Joseph W. Corrigan (BBO No. 647393)
                                jcorrigan@pbl.com
                                Posternak Blankstein & Lund LLP
                                Prudential Tower, 800 Boylston Street
                                Boston, Massachusetts  02199-8004
                                Telephone:  (617) 973-6100
                                Facsimile:  (617) 367-2315

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on December 1,

2006.

/s/ Glenn T. Henneberger
Glenn T. Henneberger
