THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HOLMES GROUP, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>WEST BEND HOUSEWARES, LLC and<br>FOCUS PRODUCTS GROUP, LLC,<br><br>    Defendants. | Civil Action No. 05-CV-11367 WGY<br>(Alexander, M.J.) |

**DECLARATION OF DR. BARRY N. FEINBERG
IN SUPPORT OF DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON
<u>INVALIDITY OF U.S. PATENT NOS. 6,573,483 AND 6,740,855</u>**

I, Barry N. Feinberg, Ph.D., P.E., hereby give the following declaration made on personal knowledge, and if called to testify, would state:

    1.    I am a registered professional engineer, licensed to practice engineering in the states of Illinois and Indiana, a Life Fellow of the Institute of Electrical and Electronics Engineers (IEEE), and a Fellow of the American Institute for Medical and Biological Engineering. I have worked as a consulting engineer for thirty-three (33) years and as a professor of electrical engineering.

    2.    I hold a Ph.D. degree in Engineering from the Case School of Engineering, Case Western Reserve University, a Masters of Electrical Engineering degree from the University of Louisville, and Bachelor of Science degrees in Electrical Engineering and Mathematics from the University of Michigan.

    3.    I have written a university textbook, <u>Applied Clinical Engineering</u>, that covers the subject of the engineering of electrical devices. I have edited five (5) published books in

engineering, authored sixteen (16) papers in professional journals, and presented forty three (43) technical papers at engineering conferences. I am a past member of the Accreditation Board for Engineering and Technology (ABET) Accreditation Team for accrediting university programs in Electrical and Computer Engineering. My C.V. has been previously filed in this matter.

4. I have been asked to make this declaration in support of Defendant's Motion For Partial Summary Judgment On Invalidity of U.S. Patent Nos. 6,573,483 and 6,740,855.

5. U.S. Patent No. 4,307,287 to Weiss' ("Weiss") selection of cooking temperature and method of maintaintaining the cooking temperature through application of adjustable power to the heating element is the same method described in both the '483 and '855 patents, in which power is supplied to the heating element to select and maintain the cooking temperature. ('483 patent, col. 3, ll. 9-12 and col. 6, ll. 1-12.)

6. The '483 patent recognizes that "[a]s is well-known in the art, a variety of other indicator devices may be provided, including digital readouts, audible alarms, liquid crystal displays, incandescent lamps or fluorescent readouts." ('483 patent, col. 3, ll. 34-40.). Thus, the knowledge of one skilled in the art would have provided the motivation to add illuminated indicators to show that the Weiss cooker was powered and the timer was active.

7. The motivation to combine U.S. Patent No. 4,817,510 to Kowalics ("Kowalics") or U.S. Patent No. 4,345,145 to Norwood ("Norwood") with Weiss to produce the purported invention of claim 14 of the '483 patent stems from the knowledge of one skilled in the art as well as the nature of the problem already solved by Kowalics and Weiss, namely notifying a user that the cooker is powered and the timer is active. One skilled in the art would have readily applied the teachings of Kowalics and Norwood to the cooker disclosed in Weiss. Moreover, one skilled in the art would have a reasonable expectation of successfully producing the

purported invention of claim 14 because the claimed illumination feature was already implemented in the Kowalics and Norwood patents.

8.  The '483 patent recognized that a sound emitting feature was already well known in the art. '483 patent, col. 3, ll. 34-40. The knowledge of one skilled in the art likewise would have provided the motivation to include a sound emitting feature with Weiss' cooker.

9.  Both Kowalics and Norwood disclose a sound emitting feature. (Kowalics, col. 11, ll. 34-37; Norwood, col. 12, ll. 48-51.) One skilled in the art would have been motivated to combine any of these references with Weiss because the interchangeability of features between cooking appliances would have been readily apparent.

10.  There was nothing new about mounting the heating element in the sidewall of the heating unit, and one skilled in the art would have a reasonable expectation of successfully combining the Rival prior art Crock Pot model no. 3350/2 or Rival patents (U.S. Patent No. 3,806,701 to Scott ("the '701 Scott patent") issued on April 23, 1974 and 3,881,090 to Scott ("the '090 Scott patent") issued on April 29, 1975) with Weiss to produce the purported invention of claim 20.

11.  While Weiss does not specify the materials used for its housing and cooking unit, the Rival prior art Crock Pot cookers disclose the use of a plastic material for the housing and a ceramic cooking vessel. Rival's model no. 3350/2 cooker includes a housing made from a plastic material. The plastic housing of the Rival 3350/2 includes a portion that adjoins and extends into the sidewall of the heating unit. In addition, the knowledge of one skilled in the art would have provided a motivation to use a thermoplastic material for Weiss' housing because thermoplastic plastic materials were recognized as having thermal insulative properties. Thus,

one skilled in the art would have been motivated to use thermoplastic materials in components that a user would touch, such as the housing.

12. The Rival prior art Crock Pot also discloses the use of a ceramic cooking unit, and one skilled in the art would have readily used this ceramic cooking unit in the Weiss cooker. The '855 patent also acknowledges that the use of a ceramic cooking unit was part of the prior art. ('855 patent, col. 2, ll. 66-67.) Additionally, the '701 and '090 Scott patents both disclose the use of a ceramic cooking unit in a Rival Crock Pot. ('701 Scott patent, col. 2, ll. 28-31; '090 Scott patent, col. 4, ll. 18-25.) Both the prior art and knowledge of one skilled in the art provide the motivation to use a ceramic cooking unit with the Weiss cooker, and one skilled in the art would have a reasonable expectation of successfully doing so.

13. The knowledge of one skilled in the art would have provided the motivation to use switches instead of buttons because the interchangeable use of knobs and switches was known in the art. The prior art Norwood patent likewise discloses the use of "user actuable keys," or switches, to activate different cook modes. (Norwood, col. 5, ll. 8-15.) U.S. Patent No. 6,191,393 to Park ("Park") also discloses the use of switches to activate different cooking modes. (Park, col. 5, ll. 35-42.) One skilled in the art thus would have been motivated to use switches in connection with the Weiss cooker to activate different cooking modes and would have had a reasonable expectation of successfully doing so.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on November 30, 2006.

*Barry Feinberg, PE*
Barry N. Feinberg, Ph.D., P.E., I.E.E.E. Fellow