# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

```
---------------------------------------------------X
THE HOLMES GROUP, INC.,                      :
                                             :
                    Plaintiff,               :        Civil Action No.  05-CV-11367 WGY
                v.                           :        (Alexander, M.J.)
                                             :
WEST BEND HOUSEWARES, LLC and                :
FOCUS PRODUCTS GROUP, L.L.C.,                :
                                             :
                    Defendants.              :
---------------------------------------------------X
```

**EXPERT REPORT OF PROFESSOR DAVID L. TRUMPER**
**IN SUPPORT OF PLAINTIFF`S DIRECT CASE OF INFRINGEMENT**

I, David L. Trumper, Ph.D., have been retained by THE HOLMES GROUP, INC. ("Holmes") as a technical expert in this case.  I expect to testify as an expert in the analysis and design of electronic digital control systems.

I have provided my expert declaration in support of Plaintiff's response to Defendants' motion for partial summary judgment of non-infringement, which was executed by me and filed with the Court on October 12, 2006.  My Declaration and the annexed Appendices (A-D) are incorporated by reference and made a part of this Report.  I confirm and still agree with the facts and opinions set forth in my Declaration.  My compensation rate in this matter is $ 400.00 per hour plus reasonably incurred expenses.  A copy of my *Curriculum Vitae* summarizing my educational and professional background is attached as Appendix A to my October 12, 2006 Declaration.

## DOCUMENTS AND MATERIALS REVIEWED

In preparing my report I have reviewed and analyzed the structure and operation of the West Bend Housewares, LLC programmable "Crockery" slow-cooker Model No. 843896 as it relates to U.S. Patent Nos. 6,573,483 ("the '483 Patent") and 6,740,855 ("the '855 Patent"), both entitled "Programmable Slow-Cooker Appliance."

In performing my analysis, I have read the '483 and '855 Patents, their prosecution file histories and the references cited during prosecution of these patents. I have reviewed the Instruction Manual for the West Bend slow-cooker (a copy of which is attached as Appendix B to my October 12, 2006 Declaration) which is provided with a West Bend Model No. 84386 6-Quart Electronic Crockery™ Oval Slow-cooker that I purchased from a Wal-Mart store in Plaistow, New Hampshire. I also examined the West Bend programmable slow-cooker, including disassembling the device that I purchased to analyze its internal structure. I also consulted a document entitled: *Slow-cooker Specification Details*, 84386 *Oval Slow-cooker*, Revision A, dated as of November 28, 2004, bearing document Numbers WB 000286- WB 000364. I understand that West Bend markets and sells other programmable slow-cookers, namely Model Nos. 84396; 84496 and 84596, accused of infringement in this case. It is my understanding that except for minor cosmetic differences, these accused programmable slow-cookers have the same structure and function as the West Bend programmable slow-cooker Model No. 84386 which I have analyzed. Therefore, my analysis and opinion applies to all of the accused West-Bend programmable slow cookers.

I reviewed the transcript of the Court's *Markman* Hearing conducted on September 27, 2006; and I reviewed the Declaration of Barry N. Feinberg. I have also considered the Court's rulings on *Summary Judgment* in the motion hearing transcript dated October 18, 2006.    Upon

my reading of the transcript of the Court's *Markman Hearing*, it is my understanding that certain terms of Claim 13 of the '483 Patent have been construed by the Court. In addition, it is my understanding that certain terms of Claim 20 of the '855 Patent have been construed by the Court, as well.

I understand that the Court in the October 18, 2006 *Summary Judgment* hearing granted partial Summary Judgment of non-infringement as to literal infringement. I understand that the Court stated that Claim 13 of the `483 Patent and Claim 20 of the `855 Patent were not literally infringed, in view of its original *Markman* construction of the terms of these claims, and required that the entire programmable circuit must be within the housing. (*See, Summary Judgment* hearing Transcript @ pages 2-3.) The Court, however, denied Summary Judgment of non-infringement of these claims, without prejudice, ruling that the issue of infringement can be tried under the *Doctrine of Equivalents.* (*Summary Judgment* hearing Transcript @ pages 4-5.)

### 1.    WEST BEND SATISFIES EACH ELEMENT OF INDEPENDENT CLAIM 13 OF THE `483 PATENT

I find that each and every claim element or its equivalent of independent Claim 13 of the '483 Patent is present in the structure and operation of the West Bend programmable slow-cooker.

**A.    West Bend literally satisfies the claim element "A method of using *a programmable slow-cooker appliance"* of Claim 13 of the `483 Patent**

Claim 13 of the '483 Patent recites "**A method of using *a programmable slow-cooker appliance*.**" This element appears in Claim 13, lines 1-2 of the '483 Patent. The Court construed the italicized portion of this claim element as "*a cooking device designed for cooking food at a constant relatively low cooking temperature for a relatively long period of time [being], being*

- 3 -

*programmable to operate in a variety of different cooking modes and cooking times.*"  (*See,* the Court's *Markman* Hearing Transcript @ page 3, lines 7-12.)

West Bend's accused device, the West Bend Model No. 84386 6-Quart Electronic Crockery™ Oval Slow-cooker is sold with a booklet entitled *West Bend Housewares 6-Quart Electronic Crockery™ Cooker Instruction Manual.*  (Appendix B)  The Instruction Manual at pages 4-11 describes a method of using the West Bend programmable slow-cooker as a cooking device designed for cooking food at constant, relatively-low cooking temperatures for a relatively long period of time, being programmable to operate in a variety of different cooking modes and cooking times.  *Also, see* attached Photos 1-2 (Appendix C) showing the accused West Bend Crockery™ cooker.

Specifically, at page 4 of the Instruction Manual, specific programming instructions are provided to the purchaser. As explained at p. 4, the user turns on the device by pressing the on/off button located on the control panel interface.  The user then presses the "TEMP" button on the control panel interface to select a cooking temperature.  The user then presses the time button to set a desired cooking time.  Once the time and temperature have been selected, the user presses the cook button to start the cooking cycle.  As stated in the Instruction Manual, when the cooking cycle is complete, the cooker shifts to the warm setting.  Additionally, pages 7-11 of the Instruction Manual provide slow-cooker recipes for a method of using the programmable slow-cooker by cooking at relatively low cooking temperatures for relatively long periods of time.

In my opinion the West Bend Model No. 84386 programmable slow-cooker provides the required structure to carry out the method steps of Claim 13 of the '483 Patent.  The West Bend programmable slow-cooker is illustrated in Photographs 1-13 (Appendix C).  Accordingly, it is my opinion that this first claim element for a method of using a programmable slow-cooker

- 4 -

appliance Claim 13 of the '483 Patent is literally met by West Bend's accused device and by the instructions for using this device in West Bend's *Instruction Manual*.

**B.**    **West Bend satisfies each of the method steps of Claim 13 of the '483 Patent**

The claim term is the open ended phrase "the method comprising" which upon advice of Counsel I understand means that the method includes, at least, the steps following this transition. As explained below, use of West Bend's Programmable slow-cooker in preparing food, as described in the included *Instruction Manual* satisfy the claim elements following this transitional phrase.  (*See*, West Bend's *Instruction Manual*, generally describing use of the programmable slow-cooker @ p. 4. and recipes @ pages 7-11.)

**C.**    **West Bend literally satisfies the claim element "selecting a cooking temperature and time *using a programmable controller*" of Claim 13 of the'483Patent**

The Court also construed the element ***"a programmable controller"*** appearing in  Claim 13, lines 6-7 of the '483 Patent as *"a form of an electrical circuit or circuits including input and output devices which permit an operator to select a cooking temperature and cooking time."* *See* page 20, lines 19-22 of the *Markman Hearing* transcript.

The Instruction Manual included with West Bend Model No. 84386 programmable slow-cooker describes selecting a cooking temperature and time using a programmable controller. (*See Instruction Manua*l, generally describing use of the programmable slow-cooker @ p. 4. and recipes @ pages 7-11.)

West Bend Model No. 84386 programmable slow-cooker includes *"a programmable controller"* consistent with the Court's construction of this element for Claim 13 of the '483 Patent.  Specifically, the West Bend programmable slow-cooker includes a programmable electrical circuit (300) as shown in Photographs 10 and 12, including input and output devices,

for example a microprocessor controller (302), Triac (304), thermistor (310), switches (S1-S2) and light emitting diodes (LED's) (D3-D8)), which permit an operator to select a cooking temperature and cooking time.  Therefore, it is my opinion that the West Bend programmable slow-cooker and the *Instruction Manual* included with the slow-cooker literally satisfies this phrase of Claim 13, by instructing the user in "selecting a cooking temperature and time using *a programmable controller*" as interpreted by the Court.

D.     **West Bend satisfies the element "*mounted to a housing*" in Claim 13 of the '483 Patent**

I understand that the Court, at the *Summary Judgment* hearing stated that Claim 13 of the `483 Patent was not literally infringed, in view of its original *Markman* construction of the terms of these claims, and required that the entire *programmable circuit* must be within the housing. (*See, Summary Judgment* hearing Transcript @ pages 2-3.)  The Court also decided that infringement of these claims can be tried under the *Doctrine of Equivalents.*  (*Summary Judgment* hearing Transcript @ pages 4-5.)

As shown in Photos 4, 5, 8-10, 12 and 13, the West Bend programmable slow-cooker includes **"*a programmable controller*"** namely, a programmable electrical circuit (300).  Also, as shown in Photographs 8-10 and 11-12, the West Bend programmable circuit (300) includes two printed circuit boards (254 and *255*), connected by wires as well as components mounted external to the printed circuit boards (254 and *255*).  One of the printed circuit boards (254) of the programmable circuit is positioned within the housing (210).  The other printed circuit board (*255)* is mounted within the heating unit (12).  The thermistor (310) and Triac (304) are both mounted externally to the printed circuit boards (254 and *255)*, within the heating unit interior space.  Accordingly, I believe that West Bend's *programmable circuit* is literally mounted to the housing; however,  given the Court's construction requiring the circuit, not just a portion of the

circuit to be positioned within the housing, I conclude that the West Bend Programmable slow-cooker satisfies this element of Claim 13 of the '483 Patent by having at least an equivalent of this element.

West Bend's programmable circuit (300) is not entirely within the housing; however, a printed circuit board (254) including electronic components which permit a user to select a cooking time and temperature is positioned within the housing (210). The circuit (300) as a whole, including both printed circuit boards (254 and *255*), the thermistor (310) and Triac (304), works in exactly the same way as the programmable circuit (300) disclosed in the '483 and '855 Patents. The only difference is that some electronic components are provided on a *second printed circuit board* (*255*) located within the heating unit rather than the housing. Splitting the printed circuit board components of the programmable circuit (300) into two circuit boards which are connected by wires is an insubstantial change readily apparent to a person of ordinary skill in the field of electronic digital control circuits. The West Bend programmable circuit (300) performs all the claimed functions (selecting a cooking time and temperature and automatically changing the heating element from a cook mode to a warm mode once the set time has expired) in substantially the same way to achieve substantially the same result. Merely splitting one circuit board component of the programmable circuit into two circuit boards connected by wires does not change the function, way, or result of the circuit (300). Thus, the West Bend device satisfies this element of Claim 13 as construed by the Court by providing an equivalent structure that operates in substantially the same way to achieve substantially the same result.

**E.      West-Bend satisfies the element *"a housing fixedly mounted to a heating unit"* in Claim 13 of the '483 Patent**

The Court construed the element *"a housing fixedly mounted to a heating unit"* in lines 7-8 of Claim 13 of the '483 Patent, as *"[the housing is] mounted to and located on the ...outside,*

*or at least overwhelmingly or generally outside…of the heating unit." See,* the Court's *Markman Hearing* transcript at page 20, lines 24-25; page 21, lines 2-3; and page 24, lines 1-2.  The Court indicated that the housing is "*located on the outside, or at least overwhelmingly or generally outside…of the heating unit."*

The West Bend Model No. 84386 programmable slow-cooker literally includes this element of Claim 13, lines 7-8 of the '483 Patent.  As can be seen in Photos 1, 2, 5, 10 and 12, both the *inner housing shell (210A)* and the *outer housing shell (210B)* of the West Bend programmable slow-cooker are fixedly mounted by screws to, and extend beyond, the outer surface of the sidewall (18) of the heating unit (12).  The entire *outer housing shell (210B)* extends outwardly from the outer side wall.  Accordingly, it is my opinion that the West Bend Model No. 84386 programmable slow-cooker literally includes all limitations of this claim element, as interpreted by the Court, namely that the the housing is "*located on the outside, or at least … generally outside…of the heating unit."*

In addition, while it is my opinion that the West Bend device literally satisfies this structure, any perceived difference between the location of West Bend's housing (210) on the heating unit (12) and the Court's interpretation of this element is merely an insubstantial change which accomplishes the function of the invention (*i.e.*, programming a cooking time and temperature and automatically changing the heating unit temperature from a cooking mode to a lower temperature warm mode at the end of a selected time) in substantially the same way to achieve substantially the same result.

The way to achieve the function is by providing a circuit (300) which can program a cooking time and temperature.  Additionally, the circuit is (300) configured to automatically change power to the heating element to switch from a cooking mode to a lower temperature

warm mode at the expiration of a set cooking time.  Clearly, West Bend's device includes a circuit (300) to accomplish these functions.  With respect to the housing (210), West Bend's device includes a housing (210) fixedly mounted to the heating unit (12).  West Bend's housing (210) or enclosure includes portions which extend both into the heating unit (12) as well as projecting outwardly beyond the outer surface of the outer sidewall (18) of the heating unit (12).  Accordingly, should the Court require the housing to be "overwhelmingly" or "generally" outside of the outer sidewall (18) of the heating unit (12), the West Bend device still satisfies this claim element by providing an equivalent structure, since the housing accomplishes the function of providing an enclosure (210) for the programmable controller (300) in substantially the same way to achieve substantially the same result of this claim element, as construed by the Court.

Should the Court hold that the housing limitation is not literally present, any differences in the West Bend structure are merely insubstantial.  Therefore it still satisfies this element of the claim by providing an equivalent structure, which has the same function.  The function of the housing (210) is to provide an enclosure for at least a portion of the programmable circuit.  The way in which this function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall of the heating unit to form the enclosure (210).  The result is substantially the same since the enclosure (210) projects outwardly, and is located "generally outside," beyond the outer surface of the sidewall (18) of the heating unit (12).

The Court has stated that the housing is "*located on the outside, or at least overwhelmingly or generally outside…of the heating unit.*"  However, the *"located on the …outside, or at least overwhelmingly or generally outside"* limitation is not specifically defined in the specification.  Beyond the ordinary interpretation of these words, there is no requirement in the specification for how far the housing must extend from the heating unit.  Accordingly, it is

my opinion that West Bend's accused structure, if not literally present, is clearly an insubstantial

equivalent modification that functions in substantially the same way to achieve substantially the

same result, thereby satisfying the requirement of this claim element.

**F.     West-Bend literally satisfies the element "changing the heating unit temperature automatically to a lower temperature after the selected time" in Claim 13 of the '483 Patent**

The West Bend's programmable slow-cooker performs the step of automatically changing

the heating unit temperature to a lower temperature after the expiration of the selected time.

(*See*, Instruction Manual @ p. 4, program cooking, step 3 ; *also see*  recipes at pages 7-11.)

Accordingly, it is my opinion that each element of Claim 13 of the `483 Patent or its

equivalent is provided by the West Bend accused Programmable slow-cooker device and its

*Instruction Manual,* and nothing in the file history or otherwise limits my opinion in any respect.

## 2.     WEST BEND SATISFIES EACH ELEMENT OF DEPENDENT CLAIMS 14, 17 & 19 OF THE `483 PATENT

**Dependent Claim 14**- Dependent Claim 14 recites a method that requires all of the

elements of the method of Claim 13, as described in section 1, above, and adds the element

"further comprising, notifying a user with illuminated indicators that the slow-cooker appliance

is powered and that the time is active."  Operation of the West Bend programmable slow-cooker

as shown in Photos 1, 6, and 8 (Appendix C), uses illuminated indicators that are seen through

the Digital Display Window of the Control Panel User Interface (224) in the form of an LED

Digital Display and LED's (D3-D8), to notify the user that the appliance is powered and that the

timer is active.  (*Also see* Instruction Manual, p. 4, program cooking, steps 3 and 5.)

Accordingly, it is my opinion that West Bend satisfies the elements of Claim 14 of the `483

Patent.

**Dependent Claim 17**- Dependent Claim 17 recites a method that requires all of the elements of the method of Claim 13, as described in section 1, above. Dependent Claim 17 also specifies: "wherein the temperature and time are set in increments." Operation of the West Bend programmable slow-cooker includes all of the elements of Independent Claim 13, as described in section 1, above. Also, my analysis of the operation of the West Bend programmable slow-cooker confirms that the temperature and time are set in increments. (*Also see* Instruction Manual, p. 4, program cooking, steps 2 and 3.) Accordingly, it is my opinion that West Bend satisfies the elements of Claim 17 of the `483 Patent.

**Dependent Claim 19**- Dependent Claim 19 recites a method that requires all of the elements of the method of Claim 13, as described in section 1, above and adds the element "further comprising, emitting a sound." Operation of the West Bend programmable slow-cooker includes all of the elements of Independent Claim 13, as described in section 1, above; and the West Bend programmable slow-cooker emits a sound. (*See,* Instruction Manual, p. 5, Helpful Hints, bullet #3.) A sound emitting electronic component is shown on Circuit Board (254) in Photo 8 (Appendix C) of West Bend's device. Accordingly, it is my opinion that West Bend satisfies the elements of Claim 19 of the `483 Patent.

## 3.    WEST BEND SATISFIES EACH ELEMENT OF INDEPENDENT CLAIM 20 OF THE `855 PATENT

I find that each and every claim element or its equivalent of independent Claim 20 of the `855 Patent is present in the structure of the West Bend programmable slow-cooker.

A.    **West Bend literally satisfies the claim element "*A programmable slow-cooker appliance*" from Claim 20 of the `855 Patent**

Claim 20 of the '855 Patent recites the structural elements of "***A programmable slow-cooker appliance***" which was construed by the Court as "*a cooking device designed for cooking food at a constant relatively low cooking temperature for a relatively long period of time [being], being programmable to operate in a variety of different cooking modes and cooking times.*" (*See*, The Court's *Markman* Hearing Transcript @ page 3, lines 7-12 and page 25, lines 8-15.)

West Bend's accused device, the West Bend Model No. 84386 6-Quart Electronic Crockery™ Oval Slow-cooker literally meets the Court's construction of this claim element.  In my analysis I consulted the *West Bend Housewares 6-Quart Electronic Crockery™ Cooker Instruction Manual*, which was included with a Model 84386 slow-cooker that I purchased.  I also analyzed the West Bend slow-cooker and disassembled the device to study its internal structure.

The Instruction Manual at pages 4-11 describes the West Bend programmable slow-cooker as a cooking device designed for cooking food at constant, relatively-low cooking temperatures for a relatively long period of time, being programmable to operate in a variety of different cooking modes and cooking times.  *Also, see* Photos 1-2 (Appendix C) showing the accused West Bend Crockery™ cooker.

In my opinion the West Bend Model No. 84386 programmable slow-cooker literally embodies the structure of Claim 20 of the '855 Patent.  The West Bend programmable slow-cooker is illustrated in Photographs 1-13 (Appendix C).  As shown in Photos 1-4, West Bend's programmable slow-cooker includes a heating unit (12), and a cooking unit (14) in the form of a ceramic cooking vessel.  The heating unit (12) is formed by an interior (17) an outer sidewall

- 12 -

(18) and a bottom (16).  The interior sidewall (17) and bottom (16) define a well-like heating

chamber (20), which is shaped to receive the ceramic cooking unit (14).  A heating element (24)

is secured to an outer surface of the interior sidewall (17).  (*See* Fig. 11 of the '483 Patent).  The

West Bend programmable slow-cooker also includes a programmable control (200), which

includes a circuit board housing (210), programmable circuit (300), and a control panel user

interface (224) on the front surface of housing (210), specifically on the front surface of the *outer*

*housing shell (210B)*.  (See Photos 1, 10 and 12).

The control panel user interface (224) has buttons for setting a cooking time and cooking

temperature and *a Digital Display Window* for viewing light emitting diodes ("LED's") and

digital readouts for indicating cooking time and cooking temperature.  *See,* Photos 1, 6 and 8;

and the specification and drawings of the '855 Patent, Figs. 1, 2 & 5 and Col. 2, lines 33-63; Col.

3, lines 8-21 & 24-42.  Accordingly, it is my opinion that this first claim element for a

programmable slow-cooker appliance of Claim 20 of the '855 is literally satisfied by West

Bend's accused device.

**B.    West Bend satisfies each of the elements of Claim 20 of the '855 Patent**

The next claim element is the open ended transitional element "comprising" which upon

advice of Counsel I understand means that the claimed structure includes at least the elements

recited following this transition.  As explained below, West Bend's Programmable slow-cooker

includes the structure that satisfies the elements following this transitional phrase.

**C.    West Bend literally satisfies the claim element "a heating unit including a bottom
and a continuous sidewall extending from said bottom, said bottom and said
continuous sidewall defining a well-like chamber, said continuous sidewall
including an outer sidewall and an interior sidewall;" of Claim 20 of the `855 Patent**

The first claim element after "comprising:" is the phrase "a heating unit including a

bottom and a continuous sidewall extending from said bottom, said bottom and said continuous

- 13 -

sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall;" is literally present in West Bend's programmable slow-cooker. Specifically, West Bend's programmable slow-cooker includes a heating unit (12) having an interior bottom and a continuous sidewall  extending from the bottom to define a well-like heating chamber (20).  The continuous sidewall includes an interior sidewall (17) and an outer sidewall (18).  (*See,* Photos 1 & 4, Appendix C.)

**D.     West Bend literally satisfies the claim element "a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall;" of Claim 20 of the `855 Patent**

The second claim element of Claim 20 after "comprising:" specifies "a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall;" is literally present in West Bend's programmable slow-cooker.  Specifically, West Bend's programmable slow-cooker includes a heating element (24) mounted to the heating unit (12) and positioned between an outer sidewall (18) and interior sidewall (17). (*See,* Photos 1 & 4, Appendix C.)

**E.     West Bend satisfies the claim element "*a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit*" in Claim 20 of the `855 Patent**

The Court construed the claim element "*a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit*" appearing in Claim 20, lines 10-11 of the '855 Patent, as "*that it is [a housing] mounted to and largely outside the outer sidewall of the heating unit and extending at least beyond an outer surface of the sidewall of the heating unit.*"  *See* the Court's *Markman Hearing* transcript at page 35, lines 5-9.

The West Bend Model No. 84386 programmable slow-cooker literally includes this element of Claim 20, lines 10-11 of the '855 Patent.  As can be seen in Photos 1, 2, 5, 10 and 12, both the *inner housing shell (210A)* and the *outer housing shell (210B)* of the West Bend

programmable slow-cooker are fixedly mounted by screws to, and extend beyond, the outer

surface of the sidewall (18) of the heating unit (12).  Part of the *inner housing shell (210A)* and

the entire *outer housing shell (210B)* extends outwardly beyond the outer surface of outer

sidewall (18).  Therefore, the combined housing (210) extends "largely" beyond the outer

surface of outer sidewall (18).  Accordingly, it is my opinion that the West Bend Model No.

84386 programmable slow-cooker literally includes all limitations of this claim element, as

interpreted by the Court.

Furthermore, while it is my opinion that the West Bend device literally includes this

structure, any perceived difference in the location of West Bend's housing (210) on the heating

unit (12) and the Court's construction of this claim element, is merely an insubstantial change

which accomplishes the function of the invention (*i.e.*, programming a cooking time and

temperature and automatically changing the heating unit temperature from a cooking mode to a

lower temperature warm mode at the end of a selected time) in substantially the same way to

achieve substantially the same result.

The way to achieve the function is by providing a circuit (300) which can program a

cooking time and temperature.  Additionally, the circuit (300) is configured to automatically

change power to the heating element to switch from a cooking mode to a lower temperature

warm mode at the expiration of a set cooking time.  Clearly, West Bend's device includes a

circuit (300) to accomplish these functions.  With respect to the housing (210), West Bend's

device includes a housing (210) fixedly mounted to the heating unit (12).  West Bend's housing

(210) or enclosure includes portions which extend both into the heating unit (12) as well as

projecting outwardly beyond the outer surface of the outer sidewall (18) of the heating unit (12).

Accordingly, should the Court find that the West Bend's housing is not "largely" outside of the

outer sidewall (18) of the heating unit (12), the West Bend device still satisfies this element of the claim by providing an equivalent structure, since the housing accomplishes the function of providing an enclosure (210) for the programmable controller (300) in substantially the same way to achieve substantially the same result of this claim element, as construed by the Court.

Should the Court hold that the housing limitation is not literally present, any differences in the West Bend structure are merely insubstantial. Therefore, it still satisfies this element of the claim by providing an equivalent structure. The function of the housing (210) is to provide an enclosure for at least a portion of the programmable circuit. The way in which this function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall of the heating unit to form the enclosure (210). The result is substantially the same since the enclosure (210) projects outwardly beyond an outer surface of the sidewall (18).

The Court has required that the housing project "largely outside," the outer sidewall; however, this limitation is not defined in the specification. Part of the *inner housing shell (210A)* and the entire *outer housing shell (210B)* extends outwardly beyond the outer surface of outer sidewall (18). Therefore, if West Bend's combined housing (210) does not literally extend "*largely*" beyond the outer surface of outer sidewall (18), the extent to which it extends is clearly an insubstantial difference, functioning in substantially the same way to achieve substantially the same result.

**F.      West Bend satisfies the claim element "*a programmable circuit positioned within said housing* and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time;" in Claim 20 of the `855 Patent_____**

The Court construed the claim element "*a programmable circuit positioned within said housing* and configured to automatically switch said heating element from a cook mode to a

- 16 -

lower temperature warm mode at the end of a set cooking time;*"* in lines 12-15 of Claim 20 of '855 Patent as *"a circuit, including an assemblage of electronic components, which allows the user to program both the temperature and desired time for cooking and which can automatically change the heating element from a cooking mode to a warm mode once the set cooking time has expired. The circuit, not just a portion of the circuit, is positioned within the housing. The programmable circuit does not include the heating element, the control panel, displays, and buttons." See,* the Court's *Markman Hearing* transcript @ page 38, lines 12-21. The Court stated that it is not changing its interpretation and required that the entire programmable circuit must be within the housing. The Court consequently granted partial Summary Judgment finding no literal infringement of Claim 20 of the `855 Patent, but denied Summary Judgment on infringement of this claim under the *Doctrine of Equivalents*. (*See, Summary Judgment* Hearing Transcript @ pages 2-3 and 4-5.)

The West Bend Model No. 84386 programmable slow-cooker, as shown in Photos 4, 5, 8-10, 12 and 13, includes ***"a programmable circuit,"*** namely, "a circuit (300), including an assemblage of electronic components (microprocessor controller (302), Triac (304), thermistor (310), switches (S1-S2) & light emitting diodes (LED's)(D3-D8)) which allows the user to program both the temperature and desired time for cooking and which can automatically change the heating element (24) from a cooking mode to a warm mode once the set cooking time has expired. Components of the circuit (300), namely switches (S1-S2) & light emitting diodes (LED's)(D3-D8)), surface mounted resistors, capacitors and electronic logic devices (IC's) connected to the other components of the programmable circuit (300) with traces on the surface of the printed circuit board (254) and by external wiring, which allows the user to program both

the temperature and desired time for cooking are mounted on a printed circuit board (254) inside the housing (210).

While West Bend's programmable circuit (300) is not entirely within the housing as required by the Court's claim construction, it includes a printed circuit board (254) having electronic components which permit a user to select a cooking time and temperature that is mounted within the housing (210). The circuit (300) as a whole, including both printed circuit boards (254 and *255)*, the thermistor (310) and Triac (304), works in exactly the same way as the programmable circuit (300) disclosed in the '855 Patent. The only difference is that some electronic components are provided on a *second printed circuit board* (*255*) located within the heating unit rather than the housing.

Splitting the printed circuit board components of the programmable circuit (300) into two circuit boards which are connected by wires (instead of traces connecting their respective circuit elements) is an insubstantial change readily apparent to a person of ordinary skill in the field of electronic digital control circuit design. The West Bend programmable circuit (300) performs all the claimed functions (selecting a cooking time and temperature and automatically changing the heating element from a cook mode to a warm mode once the set time has expired) in substantially the same way to achieve substantially the same result. Merely splitting one circuit board component of the programmable circuit into two circuit boards connected by wires, instead of traces does not change the function, way, or result of the circuit (300). Thus, the West Bend device satisfies this element Claim 20, as construed by the Court, by providing an equivalent structure that operates in substantially the same way to achieve substantially the same result.

**G.    West-Bend literally satisfies the element "a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time;" in Claim 20 of the `855 Patent_____ _____**

The next claim element appearing in Claim 20 of the `855 Patent is the phrase "a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time;" is literally present in West Bend's programmable slow-cooker. Specifically, West Bend's programmable slow-cooker includes a control panel user interface (224) mounted to and making up a part of the front face of *outer housing sell (210B)* of circuit board housing (210). The control panel user interface (224) includes buttons (264, 266) and a digital display window for viewing the LED digital display and LED's connected to the programmable circuit for selecting a cooking time and temperature.

(*See,* Photos 1, 4, 6 & 8, Appendix C, and Instruction Manual, p. 4, steps 1 and 2, Appendix B.)

**H.    West-Bend literally satisfies the element "and a cooking unit removably positioned in said well-like chamber." of Claim 20 of the `855 Patent_____**

The last claim element appearing in Claim 20 of the `855 Patent is the phrase "and a cooking unit removably positioned in said well-like chamber" is literally present in West Bend's programmable slow-cooker. Specifically, West Bend's programmable slow-cooker includes a cooking unit (14), namely a ceramic cooking vessel, which is removably positioned in the well-like heating chamber (20). (*See,* Photos 1, 3 &, Appendix C.)

Accordingly, it is my opinion that each element of Claim 20 of the `855 Patent or its equivalent is provided by the West Bend accused programmable slow-cooker device and its *Instruction Manual,* and nothing in the file history or otherwise limits my opinion in any respect.

### 4.    WEST BEND SATISFIES EACH ELEMENT
### OF DEPENDENT CLAIMS 24, 26, 27 & 29 OF THE `855 PATENT

**Dependent Claim 24**- Dependent Claim 24 recites a programmable slow-cooker as described in Claim 20, requiring all of the claim elements of independent Claim 20, as described in Section 3, above.  Dependent Claim 24 further defines the housing, by requiring "wherein said housing is comprised of a thermoplastic material and said cooking unit is comprised of a ceramic material, said cooking unit being removably positioned in said well-like chamber."  The West Bend programmable slow-cooker as shown in Photos 1, 3 & 4 (Appendix C), also literally includes a Circuit Board Housing (210) made of a thermoplastic material and a Cooking Unit (14) made of ceramic, the Cooking Unit (14) is removably positioned in the well-like Heating Chamber (20).  Accordingly, it is my opinion that West Bend satisfies the elements of Claim 24 of the `855 Patent.

**Dependent Claim 26**- Dependent Claim 26 recites a programmable slow-cooker as described in Claim 20, requiring all of the claim elements of independent Claim 20, as described in Section 3, above.  Dependent Claim 26 further defines the programmable circuit, by requiring "wherein said programmable circuit is configured such that a user cannot initially set a lower temperature warm mode."  The West Bend programmable slow-cooker includes a Programmable Circuit (300) that is configured such that the warm mode cannot be initially set as a programmed temperature.  (See Instruction Manual, p. 4, program cooking, step 1.)  Accordingly, it is my opinion that West Bend satisfies the elements of Claim 26 of the `855 Patent.

**Dependent Claim 27**- Dependent Claim 27 recites a programmable slow-cooker as described in Claim 20, requiring all of the claim elements of independent Claim 20, as described

in Section 3, above. Dependent Claim 27 further specifies "a switch operatively associated with said control panel, said programmable circuit being configured such that subsequent pushes of said switch activates different cook modes." The West Bend programmable slow-cooker includes a Switch (S1-S2) mounted on Circuit Board (254) operatively associated with Buttons (264-266), specifically the button labeled "TEMP" on the Control Panel User Interface (224). The Programmable Circuit (300) of West Bend's programmable slow-cooker, which is in part mounted on Circuit Board (254), is configured such that subsequent pushes of the switch sets different cook modes. (*See*, Photos 1, 6, 8 & 12, Appendix C; and Instruction Manual, p. 4, program cooking, step 1.) Accordingly, it is my opinion that West Bend satisfies the elements of Claim 27 of the `855 Patent.

**Dependent Claim 29**- Dependent Claim 29 recites a programmable slow-cooker as described in Claim 20, requiring all of the claim elements of independent Claim 20, as described in Section 3, above. Dependent Claim 29 further defines the housing, by requiring "wherein said housing includes a thermoplastic portion adjoining and extending into said continuous sidewall of said heating unit." The West Bend programmable slow-cooker includes a housing, namely *Inner Housing Shell ( 210A)* having a thermoplastic portion which extends into the Outer Sidewall (18) of the Heating Unit (12). Accordingly, it is my opinion that West Bend satisfies the elements of Claim 29 of the `855 Patent.

Respectfully submitted,

David L. Trumper Ph.D.

Executed this 3rd day of November, 2006

# EXHIBIT B

DAVID L. TRUMPER, Ph.D.    NOVEMBER 10, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,    )
                           )
             Plaintiff,    )
                           )
         vs.               ) Civil Action No.
                           ) 05-CV-11367 WGY
West Bend HOUSEWARDS, LLC  )
and FOCUS PRODUCTS GROUP,  )
LLC,                       )
                           )
             Defendants.   )
--------------------------)


     VIDEOTAPED DEPOSITION OF

     DAVID L. TRUMPER, Ph.D.

        Syosset, New York.

     Friday, November 10, 2006


Reported by:
JEAN VALERIE GAFA
JOB NO. 188976

ef50853d-6408-41af-9876-89a97b23f248

DAVID L. TRUMPER, Ph.D.        NOVEMBER 10, 2006

Page 120

1                Trumper

2        A.    With respect to the Claim 13?

3        Q.    No, with respect to Claim 20.

4        A.    Oh, we've switched now?

5        Q.    Yes.                          12:02:46

6        A.    I don't think you changed, I don't

7   think you told me Claim 20, so I wasn't

8   looking at Claim 20.

9        Q.    Is it your interpretation, is it

10  your understanding that the Court interpreted 12:02:57

11  Claim 20 of the 855 Patent to require that

12  the entire circuit be positioned within the

13  housing?

14       A.    Let me look back at what they said.

15  Yes, if you look at page ten of the chart 2D, 12:03:28

16  the Court said, "The circuit, not just a

17  portion of the circuit, is positioned within

18  the housing."

19       Q.    Okay.

20       Now, what is your understanding of the   12:03:44

21  purpose for positioning the circuit, not just

22  a portion of the circuit, inside the housing?

23       A.    I don't understand the purpose of

24  that because it's non functional.

25       Q.    So, as far as you know, there's no  12:04:01

ESQUIRE DEPOSITION SERVICES, LLC - CHICAGO
312.782.8087   800.708.8087   FAX: 312.704.4950

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

Plaintiff,

vs.

WEST BEND HOUSEWWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**WEST BEND'S MEMORANDUM IN SUPPORT OF ITS SECOND
MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

December 1, 2006                *Attorneys for Defendants*

**INTRODUCTION**

After the Court construed the claims of U.S. Patent 6,573,483 (the '483 patent) and U.S. Patent 6,740,855 (the '855 patent) at the *Markman* hearing, the Court granted West Bend's ("WB") motion for summary judgment of no literal infringement upon Holmes' stipulation that the entire programmable controller/circuit of claims 13 and 20 (collectively the "programmable circuit") in the accused WB product is not mounted to or positioned within an outside housing as required by those claims. SJ Trans. at p.3, ll.2-4. WB now moves for summary judgment of no infringement on the following bases:

I. WB's product does not satisfy the claim limitation that the <u>entire</u> programmable circuit be mounted to or positioned within the claimed housing outside the heating unit under the Doctrine of Equivalents ("DOE") because, as a matter of law, Holmes is not entitled to rely upon the DOE with regard to this limitation; and, alternatively,

II. WB's product does not satisfy the claim limitation that the programmable circuit housing be positioned <u>largely outside</u> of the heating unit either literally or under the DOE because:

    A. as a matter of law, Holmes is not entitled to rely upon the DOE with regard to this limitation; and

    B. the undisputed facts establish that WB's programmable circuit housing is not positioned largely outside the heating unit

**ARGUMENT**

**I.**    **WB Does Not Infringe Because Its Product Does Not Satisfy The Claim Limitation That the <u>Entire</u> Programmable Circuit Be Mounted To Or Positioned Within The Claimed Outside Housing Under The DOE**

The DOE involves a limitation-by-limitation analysis. *Aquatex Indus., Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382 (Fed. Cir. 2005). Holmes must prove that any limitation not literally present in WB's cooker is present by virtue of equivalent structure. *Id.* As applied to the missing limitation pertaining to the <u>entire</u> programmable circuit, Holmes must prove that mounting and positioning the WB programmable circuit inside the heating unit is equivalent to the claim requirement that the <u>entire</u> programmable circuit be mounted to or positioned within the claimed housing outside the heating unit.

1

"Application of the doctrine of equivalents is the exception . . . not the rule." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). Holmes left the Patent Office with manifestly limited claims that it now seeks to expand improperly through the DOE. In order to obtain the patents-in-suit, Holmes had to amend claims 13 and 20 to require that its programmable circuit is housed outside the heating unit and argue that housing the circuit outside the heating unit is patentably distinct from the prior art. Joint Appendix to *Markman* Briefing [hereinafter J.A.] at MKM 0092-98. In addition, the patents' specifications distinguish and criticize the prior art for not mounting the programmable circuit outside the heating unit. J.A. at MKM0014, col. 1, ll. 16-23. The DOE cannot be used to eliminate such critical claim limitations and reduce claims 13 and 20 to functional abstracts devoid of meaningful structural limitations, as Holmes seeks to do here. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424-26 (Fed. Cir. 1997). As a matter of law, housing the entire programmable circuit inside the heating unit as West Bend has done, like the prior art, is not equivalent to the claimed structure.

**A.    Holmes' Argument That WB's Structure Is Equivalent To Housing The Entire Circuit Outside The Heating Unit Is Barred As A Matter Of Law**

**1.    The DOE Cannot Be Used To Vitiate A Claim Limitation**

First, Holmes' DOE argument fails as a matter of law because it vitiates the claim limitation at issue. When a claim limitation is binary in nature, like the requirement that the **entire** programmable circuit must be mounted to or positioned within a housing outside the heating unit, the DOE is inapplicable because it would vitiate the limitation in its entirety. *Asyst Techs., In. v. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005). In *Asyst*, the dispute centered on whether a microprocessor that was only electrically connected to a workstation could be considered equivalent to the claimed microprocessor that was required to be "mounted" on the workstation. In reviewing the patent's specification and prosecution history, the Court held:

2

> We agree with the district court's conclusion with respect to the claim of infringement under the doctrine of equivalents. To hold that "unmounted" is equivalent to "mounted" would effectively read the 'mounted on' limitation out of the patent. As the district court noted, the 'all elements rule' provides that the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation. . . . This case falls squarely within both that doctrine and its corollary, the "specific exclusion" principle, since the term 'mounted' can be fairly said to specifically exclude objects that are "unmounted."

*Id.* at 1195. In affirming summary judgment of no infringement under the DOE, the *Asyst* Court noted that merely connecting the microprocessor to the workstation would be "contrary to the inventors' characterization of their invention" and "in tension with one of the objectives of the invention." *Id.* at 1194-95.

The Federal Circuit in *Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142 (Fed. Cir. 2004), also addressed the impropriety of using the DOE to vitiate a claim limitation in violation of the "all elements rule." In that case, the claim required a "connection" between two claimed components which the district court interpreted as requiring a "<u>direct</u> connection," even though the word "direct" did not appear in the claim. The Federal Circuit held that the DOE could not encompass an "<u>indirect</u> connection". Such a finding would vitiate the "connection" limitation because "indirect" is the opposite of "direct," not its equivalent. The Court reached a similar conclusion in *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000), where the Federal Circuit rejected the patentee's argument that strips of adhesive that extend less than the claimed majority of the length of a form are infringements under the DOE.

> [I]t would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.

*Id.* In this case, housing the programmable circuit, or any portion of it, inside the heating unit is the antithesis of housing the entire circuit outside the heating unit as required by claims 13 and 20 and, therefore, cannot be considered to be an equivalent, as a matter of law. It is the entire circuit, "not just a portion of the circuit," that must be mounted to or positioned within the claimed housing

3

outside the heating unit.  The DOE cannot be used to cover WB's product and thereby vitiate this claim limitation.

### 2.    The Patents-In-Suit Expressly Disclaim The WB Structure As Prior Art

Second, when a patent's specification criticizes and disclaims the shortcomings of the prior art the DOE cannot be used to recapture the feature of the prior art that was disclaimed. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319-21 (Fed. Cir. 2006) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims. . . ."). *See also Lizardtech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1343-44 (Fed. Cir. 2005) ("[I]t would be peculiar for the claims to cover prior art that suffers from precisely the same problems that the specification focuses on solving.").  Holmes' patents explain that the function and purpose of mounting or positioning the programmable circuit outside the heating unit is to protect the circuit from overheating.  Prior art cookers "suffer because the controller inevitably must be placed near the heating unit."  J.A. at MKM0014, col. 1, ll. 23-27.  The alleged invention is then distinguished from the prior art because its "programmable controller [is] mounted on its outside, and preferably mounted via a controller housing, which acts to insulate the controller from the heat of the appliance."  *Id.* at col. 1, ll. 38-43.  The patents make no mention of, nor leave room for, mounting only a portion of the programmable circuit outside the heating unit.  According to the patents, it is the entire circuit that must be protected from overheating by mounting it outside the heating unit, especially the microprocessor controller around which the circuitry is based.

Having specifically identified, criticized, and thereby disclaimed the prior art practice of not housing the entire programmable circuit outside the heating unit, Holmes is now estopped from invoking the DOE and claiming that housing the programmable circuit inside the heating unit like WB does is equivalent to housing the entire programmable circuit outside the heating unit as

4

required by claims 13 and 20. *See Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 247

F.3d 1337, 1345 (Fed. Cir. 2001); *J & M Corp. v. Harley-Davidson, Inc.,* 269 F.3d 1360, 1368 (Fed.

Cir. 2001) ("Structure expressly disclaimed in the specification, of course, cannot be considered an

equivalent under the doctrine of equivalents."). Having disclaimed the WB structure in the patents

themselves, Holmes is barred from asserting that WB's product is equivalent.

###    3.    Prosecution History Estoppel Precludes Holmes' Use Of The DOE

Third, Holmes is barred as a matter of law by the doctrine of prosecution history estoppel

from asserting DOE infringement regarding the "entire circuit" limitation. The doctrine of

prosecution history estoppel operates to preclude a patentee from relying on the DOE to establish

infringement. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.,* 347 F.3d 1314,

1324 (Fed. Cir. 2003).

Prosecution history estoppel can result from (1) amendments made during prosecution of the

patent for patentability purposes, or (2) arguments made to the examiner to establish patentability.

*Id.; Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1251 (Fed. Cir. 2000). The doctrine

of prosecution history estoppel treats such amendments and arguments as an abandonment of claim

coverage precluding resort to the DOE. *Id.*

During prosecution of the patents-in-suit, Holmes initially sought to patent a slow cooker

where the programmable circuit was simply "mounted to the heating unit," without a requirement

that the circuit be mounted outside the heating unit. J.A. at MKM0041-43. After this proposed

claim was rejected based upon the prior art, Holmes amended claim 13 to require that the

programmable circuit be mounted not just to the heating unit, but rather to a housing mounted

outside the heating unit. J.A. at MKM0092-98. Specifically, Holmes amended claim 13 by adding

the underlined and bolded language: "a programmable controller **mounted to a housing fixedly**

mounted to a heating unit" and argued that the amendment was made to better describe the location

of the programmable circuit housing, and therefore the location of the programmable circuit,

**outside** the heating unit in order to distinguish over the prior art. J.A. at MKM0095. Holmes

thereby disclaimed locating the programmable circuit, or any portion of such circuit, inside the

heating unit. Holmes made a similar amendment and argument regarding claim 20 of the '855

patent when Holmes added the language "**projecting outside**" the heating unit to describe the

location of the programmable circuit housing. J.A. at MKM0237. These clear and unmistakable

arguments and amendments disclaiming mounting or positioning any portion of the programmable

circuit inside the heating unit bar Holmes from establishing infringement under the DOE. *See*

*Spectrum Int'l. Inc. v. Sterlite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998) ("[B]y distinguishing

the claimed invention over the prior art, an applicant is indicating what the claims do not cover.").

   The Federal Circuit has made clear that a "narrowing amendment made for a substantial

reason relating to patentability gives rise to a presumption that the patentee has surrendered **all**

subject matter between the original claim limitation and the amended claim limitation." *Biagro*

*Western Sales, Inc. v. Regents of the Univ. of Cal.*, 423 F.3d 1296, 1305 (Fed. Cir. 2005) (emphasis

added); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1367 (Fed. Cir.

2003). Holmes bears the burden to rebut this presumption, the determination of which is an issue of

law for the Court to decide and properly determine on summary judgment. *Biagro*, 423 F.3d at

1305.

   The amendments made by Holmes to claims 13 and 20, as explained above, were each a

"narrowing amendment made for a substantial reason relating to patentability." The language

Holmes added to the claims narrowed the claims so that they defined over the prior art upon which

the Examiner relied in rejecting the unamended claims, including the prior art patent to Rivelli.

Consequently, it is presumed that Holmes has surrendered all equivalents to the claim limitation

requiring that the programmable circuit, not just a portion of the circuit, be housed outside the

heating unit. *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005).

The burden is now on Holmes to overcome that presumption. There are only three ways that Holmes can make such a showing. By establishing that:

1. the alleged equivalent would have been unforeseeable at the time of the narrowing amendment;
2. the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question; or
3. there was 'some other reason' suggesting that [Holmes] could not reasonably have been expected to have described the alleged equivalent.

*Festo*, 344 F.3d at 1369. Holmes cannot and has not made such a showing.

The Federal Circuit explained in *Festo* that "if the alleged equivalent were known in the prior art in the field of invention, it certainly should have been foreseeable at the time of the amendment." *Festo*, 344 F.3d at 1369. The WB equivalent structure asserted by Holmes positions the entire programmable circuit inside – not outside – of the heating unit. As explained below, WB's programmable circuit is mounted to and positioned within two separate housings both of which are located inside – not outside – of the heating unit. Significantly, WB's microprocessor, the only programmable component around which its circuitry is based, is located within the heating unit (Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶ 13), contrary to the teachings of Holmes' patents which explain that "circuitry 300 is preferably built around . . . microprocessor controller 302" and must be mounted outside and spaced away from the heating unit to protect against heat damage. J.A. at MKM0014, col. 1, ll. 38-41; MKM0015, col. 3, ll. 59-61, col. 4, ll. 61-63; MKM0133, col. 1, ll. 44-47; MKM0134, col. 3, ll. 63-65, col. 4, ll. 63-65.

WB's structure of mounting its entire circuitry, including its microprocessor, inside the heating unit was unquestionably foreseeable. It was in fact known at the time Holmes amended claims 13 and 20. The location of WB's programmable circuit housed inside the heating unit is identical to that of the Rivelli patent that Holmes distinguished when amending the claims. Rivelli

mounts its entire programmable circuit inside a housing that is located inside the heating unit. J.A. at MKM0292 and 0295, col. 3, ll. 42-59. Holmes specifically noted that fact to the Examiner during the prosecution of the patents. "Rivelli describes a deep fat frying module for cooking food in which the control chamber [and therefore the controller itself] is positioned within a heating module." J.A. at MKM0095. The alleged WB equivalent in this case is identical to the Rivelli structure that Holmes specifically disclaimed. Without question, therefore, this structure was not "unforeseeable at the time of the narrowing amendment."

Holmes cannot, as a mater of law, show that "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question." "[T]his criterion asks whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Festo*, 3444 F.3d at 1369. As the Federal Circuit stated in *Festo*: "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to the allowance of the claim." *Id.* This is precisely the case here. Holmes amended claims 13 and 20 to avoid the Rivelli prior art patent, among others. J.A. at MKM0092-98. Holmes cannot now claim that this amendment was only tangentially related to patentability.

Holmes also cannot show that "there was 'some other reason' suggesting that [Holmes] could not reasonably have been expected to have described the alleged equivalent." Again, Holmes is precluded, as a matter of law, from making such a showing. "[A] patentee may not rely on the third rebuttal criterion if the alleged equivalent is in the prior art, for then 'there can be no other reason the patentee could not have described the substitute in question.'" *Festo*, 344 F.3d at 1370. As noted above, the alleged equivalent in this case is in the prior art, *i.e.*, the Rivelli patent. Holmes cannot rebut the *Festo* presumption.

For the reasons stated above, the scope of the claim limitations requiring that the **entire** programmable circuit be positioned in a housing outside the heating unit cannot be expanded under

8

the DOE to encompass a cooker where the entire programmable circuit, or any portion of it, is housed inside the heating unit. Housing the entire programmable circuit inside the housing unit is the opposite, not the equivalent, of housing the entire circuit, "not just a portion of the circuit," outside the heating unit. For these reasons alone, WB does not infringe the patents-in-suit either literally or under the DOE.

**B.    Holmes Has Failed To Meet Its Burden Of Establishing Infringement Under The DOE**

Apart from being precluded, as a matter of law, from relying on the DOE, Holmes has failed to present any substantive evidence of equivalents.

Holmes' patents clearly teach that the function of mounting and positioning the programmable circuit in a housing outside the heating unit is to protect the circuit from the heat generated inside the heating unit. The way in which this function is accomplished is to distance the programmable circuit from the heat and place it in the ambient temperature that surrounds the appliance. J.A. at MKM0014, col. 1, ll. 38-43. During prosecution of the patents, Holmes reinforced this teaching by explaining that its slow cooker protected the circuit by locating it outside the heating unit rather than locating it inside and wrapping it with "thick insulating slabs" like the Rivelli prior art cooker.

> Rivelli overcomes this difficulty by providing thick insulation to retard heat transfer into control compartment 54 and computer module 26. Fig. 3 shows the insulation, thick insulating slabs 58 and 64, which insulate the control compartment 26, described in Rivelli's claims as "a thermally insulated compartment.

J.A. at MKM0082.

Following the hearing on WB's first motion for summary judgment, Holmes produced the report of its technical expert Dr. Trumper which details Holmes' DOE infringement arguments. Dr. Trumper's opinion regarding the equivalents issue on the "entire circuit limitation" states:

> The West Bend programmable circuit (300) performs all the claimed functions (selecting a cooking time and temperature and automatically changing the heating

9

element from a cook mode to a warm mode once the set time has expired) in substantially the same way to achieve substantially the same result. Merely splitting one circuit board component of the programmable circuit into two circuit boards connected by wires does not change the function, way, or result of the circuit. Thus, the West Bend device satisfies this element of Claim 13 [and 20] as construed by the Court by providing an equivalent structure that operates in substantially the same way to achieve substantially the same result.

Trumper Report, Ex. A at 7 (claim 13) and 18 (claim 20).  At his deposition Dr. Trumper testified:

> Q. Now, what is your understanding of the purpose for positioning the circuit, not just a portion of the circuit, inside the housing?
> A. I don't understand the purpose of that because it's non functional.

Trumper Deposition Tr., Ex. B at 120, ll. 20-24.

Dr. Trumper's testimony is insufficient as a matter of law to create an issue of fact on equivalents. His generalized and conclusory testimony as to the supposed overall similarity between the claims and the WB cooker does not provide the particularized evidence and linking argument on a limitation-by-limitation basis that is required under the DOE. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1588, 1567 (Fed. Cir. 1996) ("Generalized testimony as to overall similarity between the claims and the accused infringer's product or process will not suffice."). *See also Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1362-63 (Fed. Cir. 2005); *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). The question is not whether WB's programmable circuit works (the question Dr. Trumper addresses). The question is whether WB's housing its entire programmable circuit inside the heating unit is equivalent to locating the entire circuit in a housing outside the heating unit as required by claims 13 and 20. Dr. Trumper ignores the patents' clear teaching that the purpose of locating the entire programmable circuit outside the heating unit is to protect the circuit from heat and does not even recognize the function of this limitation. He presents no evidence that WB's product includes any structure that performs an equivalent function in substantially the same way to achieve substantially

10

the same result as required by the limitation at issue.[1]  Consequently, Holmes has presented no evidence that WB's product has an equivalent to the missing limitation requiring that the entire programmable circuit be housed outside the heating unit. For these reasons, WB is entitled to summary judgment of no DOE infringement.

## II.    WB Does Not Infringe Because Its Product Does Not Satisfy The Claim Limitation That The Programmable Circuit Housing Be Positioned <u>Largely Outside</u> Of The Heating Unit Either Literally Or Under The DOE

At the *Markman* hearing, this Court initially determined that the claimed housing must be "located on the outside of the housing unit." *Markman* Tr. at 21, ll. 2-3. Holmes objected to that construction arguing:

> "the housing doesn't have to be limited to being on the outside.  It can also **extend inward**.  As our drawings show, it goes **into the housing** and you have wires and things connecting to the components on the inside.  And it extends through the wall **into the housing**.  So the embodiments shown in the patent show it going inside and out.  So I don't think it should be limited to just outside"

*Id.* at ll. 5-8 (emphasis added).  Based on this argument, the Court construed that language of the claims to mean that the housing must be largely-generally-overwhelmingly (collectively "largely") outside the heating unit so as to allow for relatively small inward extensions, *i.e.*, the "rearwardly projecting cylindrical flange 246 that extends into the outer wall 18" shown in the patents at Fig. 7 and described at Col. 4, ll. 5-10.

### A.    WB Does Not Literally Infringe

An examination of WB's product establishes that no portion of its programmable circuit is mounted to a housing that is mounted "largely outside" the heating unit.  As explained by Dr. Feinberg in his declaration filed in support of WB's first motion for summary judgment, WB mounts its entire electrical circuit within two separate housings, *i.e.*, the first and second circuit

---

[1]  Dr. Trumper's analysis might be applicable to a cooker in which the entire circuit is mounted outside the heating unit and positioned within two separate <u>outside</u> housings.  That, however, is not the structure of the WB product.

11

board housings. Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶¶ 10, 12. Both of those

housings are mounted to the inside of the heating unit. *Id.* The first circuit board housing is

mounted inside the heating unit between its inner and outer sidewalls. *Id.* ¶ 10. The second

circuit board housing is mounted inside the bottom of the heating unit. *Id.* ¶ 12. The first circuit

board housing cannot be claimed outside "housing" because it is not mounted to and located

largely outside of the heating unit. It is mounted to the inside of the heating unit with only a

small portion extending outwardly. The first circuit board housing is thus located largely inside

– not outside - the heating unit.

The second circuit board housing, to which the microprocessor controller is mounted, cannot

be the claimed outside "housing" because it is mounted <u>entirely</u> inside – not outside – the heating

unit. Consequently, WB does not literally infringe either claim 13 or

20.

In its response brief to WB's first summary judgment motion and

in Dr. Trumper's report, Holmes argued that the structure in WB's

product corresponding to the claimed outside housing is the supposed

combination of two structures, *i.e.*, 1) the inside-mounted housing for the first circuit board and

2) WB's control panel.

There is no dispute, however, that WB does not actually combine these separate structures.

Together they do not constitute the claimed housing. The specification teaches that separate

structures, even those mounted to the "housing," do not together become the claimed housing.

Heat shield 222 is mounted to the housing 210, but is a separate structure from housing 210.

> The control 200 preferably includes a circuit board housing 210, a control
> panel 220, and an insulation shield 222 assembled together for attachment
> to the outer sidewall 18 of the heating unit 12.

J.A. at MKM0015, col. 3, ll. 12-15. The claims require that the programmable circuit housing (not the heat shield or a combination of the housing and heat shield) be mounted largely outside the heating unit.

WB's control panel mounted on the outside of the heating unit does not house any portion of the programmable circuit and is a separate and independent structure from the first circuit board housing inside the heating unit. The control panel is not mounted to the first circuit board housing. It is mounted to the heating unit independent of and separate from the first circuit board housing. Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶ 10. The control panel and first circuit board housing are attached and removed from the heating unit independent of one another. *Id.* ¶ 10. Simply calling WB's control panel and first circuit board housing a combined housing, as Holmes argues, does not somehow transform those two structures into the claimed housing, when in fact, they are two separate and independent structures, where the control panel does not even house any electrical components. Holmes' attempt to combine these separate structures is a contrivance fabricated from the need to invent an infringement argument. It has no basis in the actual construction of the accused product. On this basis alone, WB's motion for summary judgment of no literal infringement should be granted.

Nor can WB's control panel alone be the claimed programmable circuit housing because it does not house even a portion of the programmable circuit. The control panel houses only the buttons and a display window. Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶ 8. Not even Holmes contends that these buttons and displays are part of the programmable circuit:

| The Court: | Well, let's, let's talk through here. You don't claim that the programmable circuit now -- |
|---|---|
| Mr. Hoffmann: | Yes. |
| The Court: -- | includes the buttons and displays found on the control panel. |
| Mr. Hoffmann: | No. |

*Markman* Tr. at 36, ll. 11-16.

13

Even if WB were to make a product with the purported combination housing Holmes suggests, WB would not infringe Holmes' patents. As noted above, the Court construed the housing limitation of claims 13 and 20 as requiring that the housing be located largely outside the heating unit, allowing for some small inward projections or extensions such as the circular flange shown in the patent. Holmes' contrived combination housing, however, would be located approximately 50% outside and 50% inside the heating unit with the part located outside not housing any portion of the programmable circuit. A housing mounted 50% inside is not largely outside - it is half inside and half outside. Nor is mounting 50% of the housing inside comparable to allowing for the minor inward projections disclosed in Holmes' patents. Holmes' proposed combination housing would not be largely outside as required by claims 13 and 20.

Moreover, statements made by Holmes during the prosecution of the patents-in-suit confirm that the location of the alleged Holmes' combination is not outside the heating unit as required by claims 13 and 20. During prosecution of the patents, Holmes argued that the location of claim 13's and 20's housing was different from that of the Rivelli prior art cooker. J.A. at MKM0094-96 and 0249-53. Rivelli includes a combined control panel 32 and programmable circuit housing 26. Only the control panel 32 is located outside the heating unit. The rest of the combined structure is located within the heating unit. J.A. at MKM0292 and



0295, col. 3, ll. 42-59. In distinguishing Rivelli's combined control panel 32 and circuit housing 26 to the patent examiner, Holmes told the Patent Office that Rivelli does "not describe or suggest a device having a controller housing mounted outside the heating unit." J.A. at MKM0094-95. Thus, even if WB's separate control panel and first circuit board housing were viewed as a combination

14

housing as Holmes suggests, the result would be a structure no different from Rivelli that Holmes told the patent examiner was <u>not outside</u> the heating unit, and, therefore, not covered by its claims.

Even Holmes agrees. At page 16 of its brief in opposition to WB's first motion for summary judgment, Holmes, retreating to the doctrine of equivalents, abandoned literal infringement under the Court's claim interpretation rulings. "Accordingly, should the Court require the housing to be 'overwhelmingly' or 'largely' outside of the heating unit, the WB device would still infringe under the doctrine of equivalents." By Holmes' own admissions, its alleged combination of WB's control panel and first circuit board housing is not located largely outside the heating unit as required by claims 13 and 20. As a matter of law, WB's product does not literally infringe claims 13 and 20.

**B.    WB Does Not Infringe Under The DOE**

   *1.  Holmes is precluded from relying upon the DOE to prove infringement.*

First as noted above, the DOE cannot be used to vitiate an entire claim limitation. Like the limitation requiring that the "entire" programmable circuit must be mounted or positioned in a housing outside the heating unit, the limitation that the claimed housing must be "largely" outside the heating unit is binary in nature. Either a housing is "largely" outside the heating unit or it is not. Any argument that Holmes' supposed combined housing (WB's control panel and first circuit board housing), which admittedly is not largely outside the heating unit, is equivalent would thus vitiate this claim limitation. For the reasons explained in the *Asyst Technology*, *Searfoss*, and *Moore U.S.A* cases cited above, Holmes' claim of infringement under the DOE is barred as a matter of law.

Second, Holmes is barred as a matter of law by the doctrine of prosecution history estoppel from asserting DOE infringement regarding the housing location limitation. As explained above, the doctrine of prosecution history estoppel operates to preclude a patentee from relying on the DOE to establish infringement.

15

During prosecution of the patents-in-suit, after its proposed claims were rejected based upon the prior art, Holmes amended claims 13 and 20 in response to the examiner's prior art rejection to make it clear that the programmable circuit housing was located outside the heating unit in contrast to the prior art. Holmes amended claim 13 to state that the programmable controller is **mounted to a housing outside** the heating unit and claim 20 of the '855 patent to state that the programmable circuit housing was "fixedly mounted to **and projecting outside**" the heating unit. Holmes then argued that as amended, the **location** of the claimed programmable circuit housing was different than the location of the prior art because the housings of the prior art were not located outside the heating unit. J.A. at MKM0251.

- "[T]he combination [of prior art references] does not yield the claimed invention of Claims 1, 11 and 13, which is a programmable slow-cooker appliance comprising a heating unit, a cooking unit, a controller housing **mounted outside the heating unit and a programmable controller mounted to the housing** . . ."

- "As mentioned above, neither Rivelli nor Frey [prior art references] describe [sic] a housing for a programmable controller fixedly **mounted to the outside of the heating unit**."

- "Therefore, even an improper combination of [prior art references] does not describe or suggest the claimed invention, including a controller housing **mounted fixedly to the outside of the heating unit**."

J.A. at MKM0094-96 (emphasis added).

As a matter of law, these clear and unmistakable arguments and amendments made by Holmes distinguishing the location of the claimed programmable circuit housing outside the heating unit from those shown in the prior art now bar Holmes from using the DOE to show equivalents to the missing limitations of claims 13 and 20 describing the location of the claimed housing. *Deering*, 347 F.3d at 1326; *Bayer*, 212 F.3d at 1252; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003).

16

The amendments made by Holmes to claims 13 and 20 were each a "narrowing amendment made for a substantial reason relating to patentability." The amendments were made so that the claims defined over the prior art patent to Rivelli, among others. "A narrowing amendment made to avoid prior art creates a presumption that the patentee surrendered the territory between the original claims and the surrendered claims." *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005). It is thus presumed that Holmes has surrendered **all** equivalents to the claim limitation requiring that the programmable circuit housing be located largely outside of the heating unit and Holmes bears the burden to rebut that presumption in at least one of the three ways noted above. *Biagro*, 423 F.3d at 1305; *Honeywell*, 370 F.3d at 1144; *Festo*, 344 F.3d at 1369 (quoting *Festo VIII*, 535 U.S. 915, 71).

First, the structure Holmes asserts as an equivalent, the contrived combined housing, was unquestionably foreseeable, and in fact foreseen at the time Holmes amended it claims. It is identical to the combined control panel 32 and programmable circuit housing 26 of the Rivelli patent. As explained above, Rivelli includes a control panel 32 mounted to the outside of the heating unit and a programmable circuit housing 26 mounted inside the heating unit 14. J.A. at MKM0292 and 0295, col. 3, ll. 42-59. Without question, therefore, Holmes' alleged combined housing structure was not "unforeseeable at the time of the narrowing amendment."

Second, Holmes amended claims 13 and 20 to avoid the Rivelli prior art patent. Holmes cannot, as a mater of law, therefore, demonstrate that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question. "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to the allowance of the claim." *Festo*, 3444 F.3d at 1369.

Third, Holmes cannot show "there was 'some other reason' suggesting that [Holmes] could not reasonably have been expected to have described the alleged equivalent." "[A] patentee may not

rely on the third rebuttal criterion if the alleged equivalent is in the prior art [such as Rivelli], for then 'there can be no other reason the patentee could not have described the substitute in question." *Festo*, 344 F.3d at 1370.

Even had claims 13 and 20 not been amended, Holmes' arguments themselves made during the prosecution of its patents estop Holmes from asserting the DOE in this case.  During prosecution of the patents, Holmes argued that the **location** of claims 13's and 20's programmable circuit housing outside the heating unit was different from that of the Rivelli and other prior art cookers.  J.A. at MKM0094-96 and 0249-53.  In distinguishing Rivelli's combined control panel 32 and programmable circuit housing 26 to the patent examiner, Holmes told the Patent Office that Rivelli does "not describe or suggest a device having a controller housing mounted outside the heating unit." J.A. at MKM0094-95.  WB's control panel and first circuit board housing (even if combined as Holmes suggests) is no different than the Rivelli structure that Holmes told the patent examiner was not covered by its claims because Rivelli's structure was not outside the heating unit.  Like the Rivelli structure, Holmes' supposed combined housing is not outside the heating unit and Holmes is estopped by its prosecution arguments from arguing differently here. *See Southwell Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

### C. Holmes Has Failed To Meet Its Burden Of Establishing Infringement Under The DOE

Whether or not Holmes is precluded from relying on the DOE as a matter of law, Holmes has failed to present any substantive evidence to show infringement under the DOE.

Holmes details its argument of DOE infringement in the report of its technical expert Dr. Trumper.  Dr. Trumper's DOE infringement opinion regarding the limitation describing the location of the claimed housing outside the heating unit is as follows:

> The function of the housing (210) is to provide an enclosure for at least a portion of the programmable circuit. The way in which this function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall of the heating unit to form the enclosure (210). The result is substantially the same since the enclosure (210) projects outwardly, and is located "generally outside," beyond the outer surface of the sidewall (18) of the heating unit (12).

Ex. A at 9 (claim 13) and 16 (claim 20).

Again, Dr. Trumper's analysis fails to address the missing limitation – the **location** of the housing in relation to the heating unit, i.e., outside the heating unit. He begins his flawed analysis, not by addressing the location of the housing, but rather by defining the general function of Holmes' suggested combined housing as merely providing an enclosure. The analysis then states that the way in which WB supposedly satisfies this general function is by providing structures "which form an enclosure." The missing limitation, however, is not the existence of the housing or its general function. The missing limitation is the requirement that the housing be **located outside** the heating unit.

In a *non sequitor*, departing from his stated function and way analysis, Dr. Trumper then concludes that the result of providing an enclosure is that WB's enclosure is "outside." The supposed combined housing is not located largely outside the heating unit – that is why Holmes retreated to the DOE. Dr. Trumper does not compare the actual location of the supposed combined housing to the location required by Holmes' patent claims to determine if the two locations are equivalent. Consequently, Holmes has no particularized DOE infringement evidence or linking argument upon which a reasonable jury could conclude that WB infringes under the DOE.

As noted above, Holmes' patents clearly teach that the function of mounting the programmable circuit housing outside the heating unit is to protect the circuit from the heat generated inside the heating unit. WB mounts its first and second circuit board housings inside the heating unit and, consequently,

19

must use thick insulation in order to protect the circuit from the heat inside the heating unit. Defs.'

1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶¶ 10, 12, 14. This method of protecting the

programmable circuit was specifically disclaimed by Holmes during prosecution of the patents.

- "Rivelli describes a deep fat frying module in which the control chamber is positioned within a heating module, with dead air space and thick insulation to prevent heat from rising about 250 degrees F." J.A. at MKM0094.

- "Instead, Rivelli uses insulation to prevent conduction of heat to the controller; Rivelli does not use convection to carry heat away from the controller." *Id.*

Having acknowledged that using thermal insulation to protect a programmable circuit

housed inside the heating unit was substantially different from the claimed invention, Holmes

cannot now argue that WB's use of thermal insulation to protect its inside-mounted programmable

circuit is equivalent to locating the programmable circuit in a housing outside the heating unit. *See*

*Acco Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1081 (Fed. Cir. 2003) ("When a

claim amendment was made to distinguish prior art at the point of difference between the claim and

the accused device, the difference cannot be viewed as insubstantial because it was necessary for

patentability. . . ."). Therefore, as a matter of law, WB does not infringe under the DOE.

## CONCLUSION

Therefore, for the foregoing reasons, WB respectfully requests that the Court grant

its motion for summary judgment of no infringement.

Dated: December 1, 2006                 WEST BEND HOUSEWARES, LLC
                                        FOCUS PRODUCTS GROUP, LLC
                                        By their attorneys,


                                        /s/ Erik P. Belt
                                        Michael E. Husmann
                                        Joseph T. Miotke
                                        MICHAEL BEST & FRIEDRICH LLP
                                        100 East Wisconsin Avenue, Suite 3300
                                        Milwaukee, Wisconsin 53202-4108
                                        Telephone:    414-271-6560
                                        Facsimile:    414-277-0656

20

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02100-1618
Telephone:    617-443-9292
Facsimile:    617-443-0004
E-mail:ebelt@bromsun.com

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601-6710
Telephone:    312-222-0800
Facsimile:    312-222-0818

## CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants

/s/ Erik P. Belt
Erik P. Belt