# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

               Plaintiff,

vs.

WEST BEND HOUSEWWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

               Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE ARE NO GENUINE ISSUES OF DISPUTE AND WHICH ENTITLE DEFENDANTS TO SUMMARY JUDGMENT OF NONINFRINGEMENT

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

December 1, 2006                     *Attorneys for Defendants*

Pursuant to Rule 56.1 of the Local Rules for The United States District Court for the District of Massachusetts, defendants West Bend Housewares, LLC and Focus Products Group, LLC submit the following statement of material facts as to which there are no genuine issues of dispute and which entitle defendants to partial summary judgment of noninfringement.

1.      Plaintiff The Holmes Group ("Holmes") accuses defendants West Bend Housewares, LLC and Focus Products Group, LLC of infringing Holmes' U.S. Patent Nos. 6,573,483 ("the '483 patent") (Joint Appendix to *Markman* Briefing [hereinafter J.A.] at MKM0001-0017) and 6,740,855 ("the '855 patent") (J.A. at MKM0120-0138), both entitled "Programmable Slow-Cooker Appliance."  The '855 patent is a continuation of the '483 patent. *See* Defs.' 1st Mot. Summ. J. Ex. N, Complaint.

2.      Holmes is a Massachusetts corporation having a principal place of business at One Holmes Way, Milford, Massachusetts.  Defs.' 1st Mot. Summ. J. Ex. N.

3.      West Bend Housewares, LLC is a limited liability company organized under the laws of Illinois having a principal place of business at 2845 Wingate Street, West Bend, Wisconsin.  In its answer to the complaint, West Bend Housewares, LLC denies infringement and asserts that the patents-in-suit are invalid.  In addition, it has filed a counterclaim (1) seeking a declaration that the patents-in-suit are invalid and not infringed, and (2) asserting that Holmes infringes three U.S. design patents owned by West Bend Housewares, LLC relating to slow-cookers, namely:  U.S. Patent No. Des. 434,266; U.S. Patent No. Des. 444, 664; and U.S. Patent No. 444,993.  *See* Defs.' 1st Mot. Summ. J. Ex. O, West Bend's Answer and Countercl.

4.      Focus Products Group, LLC is also a limited liability company organized under the laws of Illinois and has a principal place of business at 120 Lakeview Parkway, Vernon Hills, Illinois.  West Bend Housewares, LLC is a wholly-owned subsidiary of Focus Products Group,

LLC.  In its answer to the complaint, Focus Products Group, LLC denies infringement and asserts that the patents-in-suit are invalid.  In addition, it has filed a counterclaim seeking a declaration that the patents-in-suit are invalid and not infringed.  *See* Defs.' 1st Mot. Summ. J. Ex. P, Focus Products Group's Answer and Countercl.  Hereinafter, for purposes of the present summary judgment motion, West Bend Housewares, LLC and Focus Products Group, LLC shall be collectively referred to as "West Bend."

5.      In order to obtain the patents-in-suit, Holmes had to amend claims 13 and 20 to require that its programmable circuit is housed outside the heating unit and argue that housing the circuit outside the heating unit is patentably distinct from the prior art.  J.A. at MKM 0092-98.  In addition, the patents' specifications distinguish and criticize the prior art for not mounting the programmable circuit outside the heating unit.  J.A. at MKM0014, col. 1, ll. 16-23.

6.      Holmes' patents explain that the function and purpose of mounting or positioning the programmable circuit outside the heating unit is to protect the circuit from overheating.  Prior art cookers "suffer because the controller inevitably must be placed near the heating unit."  J.A. at MKM0014, col. 1, ll. 23-27.  The alleged invention is then distinguished from the prior art because its "programmable controller [is] mounted on its outside, and preferably mounted via a controller housing, which acts to insulate the controller from the heat of the appliance."  *Id*. at col. 1, ll. 38-43.

7.      During prosecution of the patents-in-suit, Holmes initially sought to patent a slow cooker where the programmable circuit was simply "mounted to the heating unit," without a requirement that the circuit be mounted outside the heating unit.  J.A. at MKM0041-43.  After this proposed claim was rejected based upon the prior art, Holmes amended claim 13 to require that the programmable circuit be mounted not just to the heating unit, but rather to a housing

mounted outside the heating unit.  J.A. at MKM0092-98.  Specifically, Holmes amended claim 13 by adding the underlined and bolded language:  "a programmable controller **mounted to a housing fixedly** mounted to a heating unit" and argued that the amendment was made to better describe the location of the programmable circuit housing, and therefore the location of the programmable circuit, **outside** the heating unit in order to distinguish over the prior art.  J.A. at MKM0095.

8.    Holmes made a similar amendment and argument regarding claim 20 of the '855 patent when Holmes added the language "**projecting outside**" the heating unit to describe the location of the programmable circuit housing.  J.A. at MKM0237.

9.    The WB equivalent structure asserted by Holmes positions the entire programmable circuit inside – not outside – of the heating unit.  WB's programmable circuit is mounted to and positioned within two separate housings both of which are located inside – not outside – of the heating unit.  Significantly, WB's microprocessor, the only programmable component around which its circuitry is based, is located within the heating unit.  Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶ 13.

10.    Holmes' patents explain that "circuitry 300 is preferably built around . . . microprocessor controller 302" and must be mounted outside and spaced away from the heating unit to protect against heat damage.  J.A. at MKM0014, col. 1, ll. 38-41; MKM0015, col. 3, ll. 59-61, col. 4, ll. 61-63; MKM0133, col. 1, ll. 44-47; MKM0134, col. 3, ll. 63-65, col. 4, ll. 63-65.

11.    Rivelli mounts its entire programmable circuit inside a housing that is located inside the heating unit.  J.A. at MKM0292 and 0295, col. 3, ll. 42-59.  Holmes specifically noted that fact to the Examiner during the prosecution of the patents.  "Rivelli describes a deep fat

frying module for cooking food in which the control chamber [and therefore the controller itself] is positioned within a heating module." J.A. at MKM0095.

12.     Holmes amended claims 13 and 20 to avoid the Rivelli prior art patent, among others. J.A. at MKM0092-98.

13.     Holmes' patents clearly teach that the function of mounting and positioning the programmable circuit in a housing outside the heating unit is to protect the circuit from the heat generated inside the heating unit. The way in which this function is accomplished is to distance the programmable circuit from the heat and place it in the ambient temperature that surrounds the appliance. J.A. at MKM0014, col. 1, ll. 38-43. During prosecution of the patents, Holmes reinforced this teaching by explaining that its slow cooker protected the circuit by locating it outside the heating unit rather than locating it inside and wrapping it with "thick insulating slabs" like the Rivelli prior art cooker.

> Rivelli overcomes this difficulty by providing thick insulation to retard heat transfer into control compartment 54 and computer module 26. Fig. 3 shows the insulation, thick insulating slabs 58 and 64, which insulate the control compartment 26, described in Rivelli's claims as "a thermally insulated compartment.

J.A. at MKM0082.

14.     Following the hearing on WB's first motion for summary judgment, Holmes produced the report of its technical expert Dr. Trumper which details Holmes' DOE infringement arguments. Dr. Trumper's opinion regarding the equivalents issue on the "entire circuit limitation" states:

> The West Bend programmable circuit (300) performs all the claimed functions (selecting a cooking time and temperature and automatically changing the heating element from a cook mode to a warm mode once the set time has expired) in substantially the same way to achieve substantially the same result. Merely splitting one circuit board component of the programmable circuit into two circuit boards connected by wires does not change the function, way, or result of the

circuit.  Thus, the West Bend device satisfies this element of Claim 13 [and 20] as construed by the Court by providing an equivalent structure that operates in substantially the same way to achieve substantially the same result.

Trumper Report, Ex. A at 7 (claim 13) and 18 (claim 20).  At his deposition Dr. Trumper testified:

> Q.  Now, what is your understanding of the purpose for positioning the circuit, not just a portion of the circuit, inside the housing?
> A.  I don't understand the purpose of that because it's non functional.

Trumper Deposition Tr., Ex. B at 120, ll. 20-24.

15.    At the *Markman* hearing, this Court initially determined that the claimed housing must be "located on the outside of the housing unit."  *Markman* Tr.[1] at 21, ll. 2-3..  Holmes objected to that construction arguing:

> "the housing doesn't have to be limited to being on the outside.  It can also **extend inward**.  As our drawings show, it goes **into the housing** and you have wires and things connecting to the components on the inside.  And it extends through the wall **into the housing**.  So the embodiments shown in the patent show it going inside and out.  So I don't think it should be limited to just outside"

*Id.* at ll. 5-8 (emphasis added).  Based on this argument, the Court construed that language of the claims to mean that the housing must be largely-generally-overwhelmingly (collectively "largely") outside the heating unit so as to allow for relatively small inward extensions, *i.e.*, the "rearwardly projecting cylindrical flange 246 that extends into the outer wall 18" shown in the patents at Fig. 7 and described at Col. 4, ll. 5-10.

16.    WB mounts its entire electrical circuit within two separate housings, *i.e.*, the first and second circuit board housings.  Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶¶ 10, 12.  Both of those housings are mounted to the inside of the heating unit.  *Id.*  The first circuit board

---

[1]    The *Markman* Hearing Transcript is already part of the record in this case and was filed with the Court on October 12, 2006 as Exhibit E to Plaintiff's Counter-Statement of Facts supporting Plaintiffs' Response to Defendants' Memorandum In Support Of Their Motion For Partial Summary Judgment Of Noninfringement.

housing is mounted inside the heating unit between its inner and outer sidewalls. *Id.* ¶ 10. The second circuit board housing is mounted inside the bottom of the heating unit. *Id.* ¶ 12.

17.     The specification teaches that separate structures, even those mounted to the "housing," do not together become the claimed housing. Heat shield 222 is mounted to the housing 210, but is a separate structure from housing 210.

> "The control 200 preferably includes a circuit board housing 210, a control panel 220, and an insulation shield 222 assembled together for attachment to the outer sidewall 18 of the heating unit 12."

J.A. at MKM0015, col. 3, ll. 12-15.

18.     WB's control panel mounted on the outside of the heating unit does not house any portion of the programmable circuit and is a separate and independent structure from the first circuit board housing inside the heating unit. The control panel is not mounted to the first circuit board housing. It is mounted to the heating unit independent of and separate from the first circuit board housing. Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶ 10. The control panel and first circuit board housing are attached and removed from the heating unit independent of one another. *Id.* ¶ 10.

19.     The control panel houses only the buttons and a display window. Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶ 8. Not even Holmes contends that these buttons and displays are part of the programmable circuit:

| | |
|---|---|
| The Court: | Well, let's, let's talk through here. You don't claim that the programmable circuit now -- |
| Mr. Hoffmann: | Yes. |
| The Court:  -- | includes the buttons and displays found on the control panel. |
| Mr. Hoffmann: | No. |

*Markman* Tr. at 36, ll. 11-16.

20.     During prosecution of the patents, Holmes argued that the location of claim 13's and 20's housing was different from that of the Rivelli prior art cooker.  J.A. at MKM0094-96 and 0249-53.  Rivelli includes a combined control panel 32 and programmable circuit housing 26.  Only the control panel 32 is located outside the heating unit.  The rest of the combined structure is located within the heating unit.  J.A. at MKM0292 and 0295, col. 3, ll. 42-59.  In distinguishing Rivelli's combined control panel 32 and circuit housing 26 to the patent examiner, Holmes told the Patent Office that Rivelli does "<u>not</u> describe or suggest a device having a controller housing mounted <u>outside</u> the heating unit."  J.A. at MKM0094-95.

21.     During prosecution of the patents-in-suit, after its proposed claims were rejected based upon the prior art, Holmes amended claims 13 and 20 in response to the examiner's prior art rejection to make it clear that the programmable circuit housing was located outside the heating unit in contrast to the prior art.  Holmes amended claim 13 to state that the programmable controller is **mounted to a housing outside** the heating unit and claim  20 of the '855 patent to state that the programmable circuit housing was "fixedly mounted to **and projecting outside**" the heating unit.  Holmes then argued that as amended, the **location** of the claimed programmable circuit housing was different than the location of the prior art because the housings of the prior art were not located outside the heating unit.  J.A. at MKM0251.

- "[T]he combination [of prior art references] does not yield the claimed invention of Claims 1, 11 and 13, which is a programmable slow-cooker appliance comprising a heating unit, a cooking unit, a controller housing **mounted outside the heating unit and a programmable controller mounted to the housing  . . ."**

- "As mentioned above, neither Rivelli nor Frey [prior art references] describe [sic] a housing for a programmable controller fixedly **mounted to the outside of the heating unit**."

- "Therefore, even an improper combination of [prior art references] does not describe or suggest the claimed invention, including a controller housing **mounted fixedly to the outside of the heating unit**."

J.A. at MKM0094-96 (emphasis added).

22.    Rivelli includes a control panel 32 mounted to the outside of the heating unit and a programmable circuit housing 26 mounted inside the heating unit 14.  J.A. at MKM 0292 and 0295, col. 3, ll. 42-59.

23.    During prosecution of the patents, Holmes argued that the **location** of claims 13's and 20's programmable circuit housing outside the heating unit was different from that of the Rivelli prior art cooker.  J.A. at MKM0094-96 and 0249-53.  In distinguishing Rivelli's combined control panel 32 and programmable circuit housing 26 to the patent examiner, Holmes told the Patent Office that Rivelli does "not describe or suggest a device having a controller housing mounted outside the heating unit."  J.A. at MKM0094-95.

24.    Dr. Trumper's DOE infringement opinion regarding the limitation describing the location of the claimed housing outside the heating unit is as follows:

> The function of the housing (210) is to provide an enclosure for at least a portion of the programmable circuit.  The way in which this function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall of the heating unit to form the enclosure (210).  The result is substantially the same since the enclosure (210) projects outwardly, and is located "generally outside," beyond the outer surface of the sidewall (18) of the heating unit (12).

Ex. A at 9 (claim 13) and 16 (claim 20).

25.    WB mounts its first and second circuit board housings inside the heating unit and, consequently, must use thick insulating slabs in order to protect the circuit from the heat inside the heating unit.  Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶¶ 10, 12, 14.  This method of protecting the programmable circuit was specifically disclaimed by Holmes during prosecution of the patents.

§   "Rivelli describes a deep fat frying module in which the control chamber is positioned within a heating module, with dead air space and thick insulation to prevent heat from rising about 250 degrees F."  J.A. at MKM0094.

§   "Instead, Rivelli uses insulation to prevent conduction of heat to the controller; Rivelli does not use convection to carry heat away from the controller."  *Id.*

Dated:  December 1, 2006                    WEST BEND HOUSEWARES, LLC
                                            FOCUS PRODUCTS GROUP, LLC
                                            By their attorneys,


                                            /s/ Erik P. Belt_____
                                            Michael E. Husmann
                                            Joseph T. Miotke
                                            MICHAEL BEST & FRIEDRICH LLP
                                            100 East Wisconsin Avenue, Suite 3300
                                            Milwaukee, Wisconsin 53202-4108
                                            Telephone:  414-271-6560
                                            Facsimile:  414-277-0656


Lee Carl Bromberg, BBO #058480          Martin L. Stern
Erik Paul Belt, BBO #558620             MICHAEL BEST & FRIEDRICH LLP
BROMBERG & SUNSTEIN LLP                 180 North Stetson Avenue, Suite 2000
125 Summer Street                       Chicago, Illinois 60601-6710
Boston, Massachusetts 02100-1618        Telephone:  312-222-0800
Telephone:  617-443-9292                Facsimile:  312-222-0818
Facsimile:  617-443-0004
E-mail:ebelt@bromsun.com


## CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants


                                            /s/ Erik P. Belt_____
                                            Erik P. Belt