## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,                       :
                                              :
    Plaintiff/Counterclaim-Defendant,    :    Civil Action No.  1: 05-CV-11367 WGY
                                              :    (Alexander, M.J.)
               v.                        :
                                              :
WEST BEND HOUSEWARES, LLC and                 :
FOCUS PRODUCTS GROUP, L.L.C.,                 :
                                              :
    Defendants/Counterclaim-Plaintiffs.  :


## MEMORANDUM IN SUPPORT OF HOLMES'
## MOTION FOR SUMMARY JUDGMENT OF
## NON-INFRINGEMENT OF WEST BEND'S DESIGN PATENTS

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
Alan M. Sack, Esq. (*Pro Hac Vice*)
AMSDocket@hoffmannbaron.com
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, New York 11791

and

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Joseph W. Corrigan (BBO No. 647393)
jcorrigan@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  (617) 973-6100
Facsimile:  (617) 367-2315

*Attorneys for Plaintiff*

December 8, 2006

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION ............................................................................................1

II.   STATEMENT OF MATERIAL FACTS.................................................................3

III.  APPLICABLE LAW ........................................................................................3

    A.    Requirements for Summary Judgment....................................................3

    B.    The Law of Design Patent Infringement..................................................3

        1.    Design Patent Claim Construction..............................................3

        2.    The Two Required Tests For Determining
            Design Patent Infringement ........................................................4

            a.    The Test of Substantial Similarity ....................................4

            b.    Points of Novelty Test ......................................................5

IV.   THE WEST BEND PATENTS-IN-SUIT.............................................................5

    A.    The '993 Patent....................................................................................5

        1.    Claim Interpretation of the '993 Patent .......................................6

        2.    The Holmes Slow-Cookers Do Not Infringe the '993 Patent.......7

            a.    The Holmes Slow-Cookers Are Not Substantially
               the Same as the Design Claimed in the '993 Patent ..........7

                  i.    The Cooking Vessel Lip and Transition From
                      the Lid to the Lip..................................................7

                  ii.   Shape of the Heating Unit and Cooking Vessel..................8

                  iii.  Skirt Underneath Knob Attached to Lid ...........................10

                  iv.   The Cooking Vessel Handle Portions ...............................11

v.     Heating Unit Having a Smooth, Flat
Bottom Surface .................................................................11

b.     The Ordinary Observer Test Is Not Satisfied ................................12

c.     The Holmes Slow Cookers Do Not Infringe the
'993 Patent Under the "Point of Novelty" Test ..............................13

d.     Summary Judgment on the Issue of Non-Infringement
of the '933 Patent Is Appropriate Under the Facts
of This Case ..................................................................15

B.     The '266 Patent..................................................................15

1.     Claim Interpretation of the '266 Patent ......................................16

2.     The Holmes Slow-Cookers Are Not Substantially the Same
as the Design Claimed in the '266 Patent....................................16

3.     Points of Novelty .............................................................17

4.     Summary Judgment on the Issue of Non-Infringement
of the '266 Patent Is Appropriate Under the Facts of This Case................17

C.     The '664 Patent..................................................................17

1.     Claim Interpretation of the '664 Patent ......................................18

2.     The Holmes Slow-Cookers Are Not Substantially the Same
as the Design Claimed in the '664 Patent....................................18

3.     Points of Novelty .............................................................18

4.     Summary Judgment on the Issue of Non-Infringement
of the '664 Patent Is Appropriate Under the Facts of This Case................18

V.     AS A MATTER OF LAW, WEST BEND'S FAILURE TO MARK
PRECLUDES DAMAGES PRIOR TO ACTUAL NOTICE............................................18

A.     Controlling Law Requires Specific Actual Notice of Infringement ....................19

B.     West Bend's Damages Are Limited To Sales Occurring
After Actual Notice..................................................................19

VI.     CONCLUSION......................................................................20

# TABLE OF AUTHORITIES

Page(s)

*Amsted Ind. Inc. v. Buckeye Steel Castings, Co.*,
    24 F.3d 178 (Fed. Cir. 1994)........................................................................19

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988)......................................................................3

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002)......................................................................7

*Durling v. Spectrum Furniture Co.*,
    101 F.3d 100 (Fed. Cir. 1996).......................................................................4

*Eastman Kodak Co., Inc. v. AGFA-Gevaert N.V.*,
    2005 WL 281174 (W.D.N.Y 2005) ..............................................................19

*Elmer v. ICC Fabricating, Inc.*,
    67 F.3d 1571 (Fed. Cir. 1995)........................................................................3

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001).....................................................................19

*Gorham Mfg. Co. v. White*,
    81 U.S. 511 (1871).................................................................................4, 5, 7

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1988)......................................................................3

*KeyStone Retaining Wall Systems v. Westrock, Inc.*,
    997 F.2d 1444 (Fed. Cir. 1993)................................................................4, 12

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988)..................................................................4, 5

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998).....................................................................19

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997)................................................................3, 4, 7

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)........................................................................3

*Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*,
    157 F.3d 1311 (Fed. Cir. 1998)....................................................................................................5

## I.    INTRODUCTION

The Holmes Group, Inc. ("Holmes") filed a Complaint against West Bend Housewares, LLC ("West Bend") and Focus Products Group, LLC ("Focus") alleging infringement of U.S. Patent No. 6,573,483 ("the '483 patent") and U.S. Patent No. 6,740,855 ("the '855 patent").[1] West Bend filed an Answer to Complaint and Counterclaim wherein Count V alleged that "certain slow-cooker appliances" sold by Holmes infringe its design patents.

Holmes denies West Bend's allegations of infringement.  It will be readily apparent to the Court that West Bend's allegations of infringement of its design patents are frivolous and stretch the limits of Fed. R. Civ. P. Rule 11.  For this reason, Holmes seeks reimbursement of its attorney's fees and costs.  Both West Bend's expert and the two inventors of the West Bend patents by deposition testimony failed to find any of the claimed elements of the patented designs to be present in the accused devices.  Counsel has requested the withdrawal of this frivolous claim; however, West Bend continues to pursue this baseless claim.

Holmes markets and sells its slow-cookers under the brand names Rival® and Crockpot® and is clearly the market leader.  Holmes has obtained numerous patents on its slow-cooker technology, including the patents at issue in this suit related to programmable slow-cookers as well as design Patent Nos. Des 429, 596 ("the '596 patent") and Des 434,940 ("the '940 patent"). (Henneberger Decl., Exs. J and K respectively).[2]  The Holmes' design patents are directed to oval-shaped slow-cookers showing all of the basic components:  an oval shaped heating unit, a translucent lid with a knob and a cooking vessel having a lip supported on an upper edge of the heating unit as shown below.  The Holmes '596 and '940 patents are prior art to the West Bend

---

[1]  Subsequent to the filing of this lawsuit, The Holmes Group, Inc. was purchased by and merged into Jarden Corporation under the name JCS/THG, LLC d/b/a The Holmes Group.  Jarden Corporation later merged JCS/THG, LLC into Sunbeam, Inc. d/b/a Jarden Consumer Solutions, which is referred to in this motion as "Holmes."

[2]  Exhibits A-R are attached to the Declaration of Glenn T. Henneberger filed herewith and Exhibits S-T are attached to the Declaration of Charles R. Mauro filed herewith.

design patents.

          

Ex. J.

Furthermore, in the Spring of 1997, Holmes sold a slow-cooker Model No. 3755 HG covered by the '596 and '940 patents.  (Henneberger Decl., ¶ 13).  A photograph of a front elevation view and top plan view of this prior art slow-cooker is shown below:

          

The West Bend patents include:  U.S. Patent Nos. Des 434,266 ("the '266 patent"); D444,993 ("the '993 patent") and D444,664 ("the '664 patent") (collectively "West Bend patents-in-suit").  (Exs. A, B and C, respectively).  The parent patent, U.S. Patent No. Des. 425,360 has not been asserted.  (Henneberger Decl., ¶ 2, Ex. D).  Photographs or catalog sheets depicting each of the accused slow-cookers are attached as Exs. T1-T34 and a sample product Model No. 3730 (T1) will be submitted to the Court for consideration.

West Bend initially asserted that two models of slow-cookers infringed.  In an expert report dated November 3, 2006, West Bend now identifies thirty-four (34) allegedly infringing models.  (Henneberger Decl., ¶ 8, Ex. G).  It is incredible to allege that thirty-four different slow-cookers can infringe what is essentially a single design as claimed in the West Bend patents.  Even the named inventors on West Bend's patents, Messrs. Dobson and Pollnow, testified during depositions that the accused products were different in all respects to the claimed designs, i.e., shape of heating unit and cooking vessel, shape of knob and shape of cooking vessel lip, further

evidencing the baseless nature of West Bend's claim.  (Exs. N and O).

## II.    STATEMENT OF MATERIAL FACTS

Holmes submits concurrently herewith its Local Rule 56.1 Concise Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried In Support Of Holmes' Motion for Summary Judgment.  Reference to the text and supporting exhibits are made herein.

## III.    APPLICABLE LAW

### A.    Requirements for Summary Judgment

The Federal Circuit has emphasized that "summary judgment is as appropriate in a patent case as in any other."  *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988).  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997).

### B.    The Law of Design Patent Infringement

It is well established that, "[t]he determination of infringement is a two-step process. First, the language of the claim must be interpreted.  Second, the accused device must be compared to the claim language as interpreted."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992).  A design patent contains only a single claim that must be interpreted before infringement can be analyzed.

#### 1.  Design Patent Claim Construction

When construing the claim of a design patent, the construction of the claim must be limited to what is shown in the drawings, for design patents have almost no scope.  *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (refusing to omit features shown in the drawings from the claim); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope.  The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). Vaguely worded descriptions are not acceptable.

A design patent protects only the ornamental aspects of a device. When a design contains both functional and non-functional elements, the scope of the claim must be construed so that the ornamental aspects of the design are identified. *OddzOn Prods.,* 122 F.3d at 1405. In *Durling v. Spectrum Furniture Co*., 101 F.3d 100 (Fed. Cir. 1996), the Federal Circuit noted that trial court must translate the visual descriptions into words. *Id.* at 103. The *Durling* court further stated that "[w]hen properly done, this verbal description should evoke the visual image of the design." *Id.* at 103 n.2. It is standard practice to make a listing of ornamental features when construing the scope of a design patent claim. *See*, e.g., *OddzOn*, 122 F.3d at 1405.

### 2.    The Two Required Tests For Determining Design Patent Infringement

When determining whether a design patent is infringed, two tests will be applied using the claim interpretation. Only if the first test is met, then the inquiry proceeds to the second test. Both tests need to be satisfied to find infringement. *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 n.4 (Fed. Cir. 1988).

### a.    The Test Of Substantial Similarity

The first test, the "ordinary observer," or *Gorham* test, was established by the Supreme Court more than a century ago. *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). The *Gorham* test focuses on the overall ornamental visual impression of the patent as compared to the overall ornamental visual impression of the accused device. If the design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental, not functional, features of the design. *OddzOn*, 122 F.3d at 1405.

It is important to note that the patented and accused designs must be compared in their entireties. In other words, the trier of fact must consider all features of the patented and accused designs, including those which may be concealed while in use. *KeyStone Retaining Wall Systems v. Westrock, Inc*., 997 F.2d 1444, 1450-51 (Fed. Cir. 1993). If the ordinary observer test

is not satisfied, there can be no infringement as a matter of law.

### b.    Points of Novelty Test

Only if substantial similarity is found under the *Gorham* test may the Court proceed to the second test, which is known as the "point of novelty" test. *Lee*, 838 F.2d at 1189, n.4. To find infringement, the accused design must be found to appropriate the novel ornamental features of the patented design that distinguish it from the prior art. *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998). These novel ornamental features are referred to as the "points of novelty."

## IV.    THE WEST BEND PATENTS-IN-SUIT

### A.    The '993 Patent

All three asserted patents are related and cover separate ornamental aspects of a single slow-cooker design. U.S. Design Patent No. D444,993 entitled "Cooker," issued on July 17, 2001. The prior art considered during prosecution is listed on the cover page of the '993 patent. (Ex. A). The '993 patent illustrates a slow-cooker having all the basic slow-cooker components, i.e., a heating unit, a cooking vessel and lid. Specifically, the '993 patent shows a rounded off rectangular-shaped heating unit, cooking vessel and lid as shown below. (Mauro Decl., ¶ 9).

 

Ex. A.

The term "rounded off rectangular-shaped," as used herein to describe the West Bend designs is in contrast to a clean and flowing elliptical shape which is the dominant shape of all the accused products. The term is intended to convey a primary shape of a rectangle having rounded off corners to create the shape as shown above in Fig. 6. One characteristic of this squared off rectangular-shape is the relatively small arcs of the four corner edges, which gives

the visual impression of a near rectangle with slightly bowed out sides. (Mauro Decl., ¶ 10).

As stated above, the shape of the heating unit, cooking vessel and lid of the '993 patent is generally a rounded off rectangle. Figs. 2-5 also show a thin band around the top of the perimeter of the walls of the heating unit. The band is provided on all slow-cookers during the manufacturing process and exists in the prior art. (Mauro Decl., ¶ 10, Ex. A).

Figs. 1-6 illustrate a lip portion of the cooking vessel. All slow-cookers which include a ceramic cooking vessel have a lip thereon which rests upon an upper edge of the heating unit. The claimed lip tapers downwardly and outwardly from a top surface to a bottom surface, the taper being concave in shape. The cooking vessel lip bottom surface is substantially flat and overhangs the edge of the heating unit. As in the prior art, the lip of the cooking vessel separates the lid from the cooking unit. (Mauro Decl., ¶ 13).

Figs. 1-6 illustrate a translucent lid having a round, disk-like skirt centrally located thereon and shaped to fit within the top surface of the cooking vessel lip. (Mauro Decl., ¶ 16). Fig. 7 shows a flat, smooth bottom surface of the heating unit. (Mauro Decl., ¶ 17). Figs. 1-5 show the knob on the lid, handles on the heating unit, control panel and bottom edge of the heating unit in broken lines and do not form part of the claimed invention. (Mauro Decl., ¶ 19).

### 1.    Claim Interpretation of the '993 Patent

Holmes proposes the following interpretation for the claim of the '993 patent:

A slow-cooker including:

a rounded off rectangular-shaped heating unit having a thin, flush band at an upper edge;

a rounded off rectangular-shaped cooking vessel supported by the upper edge of the heating unit by a lip, at the shorter ends of the rounded off rectangular-shaped cooking vessel, the lip extends outwardly having concave portions transitioning into a convex portion forming the handle portions, the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat, the flat bottom

surface of the lip of the cooking vessel overhanging and being positioned adjacent to the upper edge of the heating unit;

a rounded off rectangular-shaped, domed lid which is shaped to make a smooth transition from its outer periphery to the top surface of the cooking vessel lip; and

a rounded off rectangular-shaped bottom, the bottom surface being smooth and flat.

### 2.    The Holmes Slow-Cookers Do Not Infringe the '993 Patent

It is incumbent on the patentee to show that the perceived overall similarity between the accused and patented designs is based on ornamental rather than functional features. *OddzOn*, 122 F.3d at 1405. Moreover, all of the patent figures must be considered by the Court in applying the ordinary observer test. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002). The differences between the accused slow-cookers and the asserted design are striking. Even the inventors of the asserted West Bend design patents admit that the designs are different. (Ex. N, p. 95, line 23 to p. 96, line 6 and p. 59, line 11 to p. 60 line 1; Ex. O, p. 46, line 16 to p. 47, line 12).

### a.    The Holmes Slow-Cookers Are Not Substantially The Same As The Design Claimed In The '993 Patent

#### i.    The Cooking Vessel Lip and Transition From the Lid to the Lip

The fact that the accused slow-cookers and the design patents at issue include a cooking vessel having a lip which is supported by an upper edge of the heating unit is irrelevant in applying the *Gorham* test since the lip on the cooking vessel is purely functional, i.e., to support the cooking vessel within the heating unit. This functional feature exists in all slow-cooker appliances and is clearly seen in the prior art. (See e.g., Ex. J, Figs. 1 and 2). (Mauro Decl., ¶ 5). Thus, one must focus on the ornamental feature of the cooking vessel lip, i.e., its shape and specific contour to determine overall similarity.

The '993 patent illustrates and claims a lip of the cooking vessel which tapers

downwardly and outwardly from a top surface to a bottom surface, the taper having a concave shape. The bottom surface of the lip is substantially flat and overhangs the edge of the heating unit as shown below in Fig. 2 of the '993 patent. (Mauro Decl., ¶ 13). The lid makes a smooth transition from its lower edge to the top surface of the cooking vessel lip.

The accused Holmes slow-cookers do not include this claimed ornamental feature. The significant differences between the lip of the accused slow-cookers and that found in the claimed design were admitted by the inventors. (Ex. N, p. 69, lines 2-7 and Ex. O, p. 43, line 25 to p. 44 line 14). In direct contrast to the claimed cooking vessel lip, the lip on the accused slow-cookers includes a substantially flat top surface. The lip has a slight taper downwardly and inwardly from the top surface to a bottom surface and having a slight convex contour. Both the upper and lower surfaces have a rounded edge. (Mauro Decl., ¶ 26). Accordingly, the accused slow-cooker lip has a taper which is the direct opposite of the claimed ornamental feature, i.e., convex as opposed to concave contour and the directly opposite slope for the taper. (Mauro Decl., ¶¶ 39-40). Moreover, the contour and shape of the cooking vessel lip in the accused designs resemble the prior art more than the West Bend patented design as shown below.






Ex. A, Fig. 4          Ex. T4          Ex. J, Fig. 6 (Prior art)

Furthermore, as shown above, the bottom edge of the lip of the accused design does not make a smooth transition to the top surface of the cooking vessel lid as specifically illustrated and claimed in the West Bend patents and more closely resembles the prior art. (Mauro Decl., ¶ 27).

### ii.    Shape Of The Heating Unit And Cooking Vessel

The ordinary observer would also appreciate the difference in the basic shape of the

- 8 -

Holmes slow-cookers versus the shape of the design shown in the '993 patent. The claimed slow-cooker includes a rounded off rectangular-shaped heating unit, cooking vessel and lid as most clearly illustrated in Figs. 6 and 7 in each of the patents-in-suit.

As stated by the inventors of West Bend's patents, the accused Holmes slow-cookers clearly do not incorporate this claimed shape and look more like the shape of prior art slow-cookers (Ex. L, Fig. 4) than the claimed design. (Ex. N, p. 95, line 23 to p. 96, line 6; Ex. O, p. 36, lines 21-24, and p. 42, lines 21-25). A photograph of a top view of a representative sample (Ex. T1) is shown below compared to the prior art and the West Bend patent to clearly illustrate that the Holmes design practices the prior art and, as a matter of law, cannot be found to be an infringement.







Ex. T1                          Ex. L (Prior art)                          Ex. A (West Bend Patent)

This clearly unmistakable difference in appearance of the shape of the accused devices and the West Bend patents-in-suit is further supported by the opinions set forth in the Expert Report of Charles L. Mauro (Ex. S). In his report, Mr. Mauro explains that humans perceive shapes as being composed of "shape features." When two shapes do not have the same shape feature sets, the shapes will not be found to be substantially similar. (Mauro Decl., ¶¶ 34-36). In this case, the shape feature set illustrated in the West Bend patents-in-suit is composed of circular shapes combined and joined together by substantially straight lines to form the rounded off rectangle. To the contrary, the accused devices are all composed of a clean and flowing elliptical shape. Thus, the shape features are substantially different and will be perceived as

being different by an ordinary observer.  (Mauro Decl., ¶ 37).

A direct comparison was made between representative models of Holmes slow-cookers (Exs. T1 and T2) photographed and converted to line drawings for ease of comparison to the design claimed in the '993 patent to clearly illustrate the substantial differences in ornamental appearance to the overall shape.  (Mauro Decl. ¶ 39), (Ex. S, pp. 10-11).  Using invariant feature analysis, Mr. Mauro concludes that the rounded off rectangular-shaped heating unit of the claimed design is substantially different from the elliptical shaped slow-cookers by Holmes. Based on Mr. Mauro's application of the formal test of invariant feature analysis relating to how consumers perceive the appearance of a product, Mr. Mauro concludes that the overall shape defined in the claimed West Bend design and the overall shape of the Holmes products "are not substantially similar on any visually salient dimensions." (Ex. S, p. 13).

### iii.    Skirt Underneath Knob Attached To Lid

The '993 patent shows a disk-like skirt centrally located on the lid.  The skirt has a thickness associated therewith (Fig. 2) and a diameter approximately twice the diameter of the knob.  (Fig. 6, Ex. A).  The Holmes slow-cookers include two basic types of handle for the lid. Some include a knob-style handle as shown below:

            

Ex. T1                                             Ex. T6

Some include a loop-style handle as shown below:

                    

Ex. T4

The skirts on the slow-cookers with knob-style handles are different from those with a loop-style handle. More specifically, the Holmes slow-cookers with the loop handle include a thin skirt that conforms to the dome shape of the lid as shown above.  This skirt is substantially thinner and more domed than the skirt claimed in the '993 patent.

The relatively thin, flat skirt associated with the Holmes slow-cookers having the knob-style handle has a diameter that is only slightly larger than the diameter of the knob as shown above.  Thus, the relationship of the size of the diameter of the knob to the skirt is significantly different from the skirt shown in the '993 patent and further supports a finding that the designs are not substantially similar.  (Mauro Decl., ¶ 30).

### iv.    The Cooking Vessel Handle Portions

The cooking vessel lip has portions that extend outwardly from opposite ends to form a handle for lifting the cooking vessel out of the heating unit.  The cooking vessel handles extend from the lip in a smooth continuous curve whereby the lip extends outwardly having concave portions which are joined by a convex portion to form the handle portion.  The entire lip of the cooking vessel, including the handles, slope downwardly and outwardly from a top surface to a bottom surface, the slope being slightly concave.  (Ex. A, Fig. 6).

The handles on the cooking vessels of the accused Holmes slow-cookers differ significantly in appearance from the claimed design.  The handles taper downwardly and inwardly from a top surface to a bottom surface, the taper being slightly concave.  The top surface of the handle is substantially flat.  Thus, the handle portions of the accused products are substantially different in ornamental appearance from the handle portions shown in the West Bend patents-in-suit which include the opposite taper.  (Mauro Decl., ¶ 32).

### v.    Heating Unit Having A Smooth, Flat Bottom Surface

All features, including those that may be concealed while in use, must be considered

when determining whether the accused devices are substantially similar to the claimed design. *Keystone*, 997 F.2d at 1450-51. West Bend has included in its claimed design the smooth, flat bottom surface of the heating unit shown in Figure 7. (Mauro Decl., ¶ 44).

To the contrary, the bottom surface of the accused of Holmes slow-cookers is neither smooth nor flat. The Holmes slow-cookers either have an indentation or protrusion in the bottom surface as well as a series of holes around the perimeter and fastening devices which are clearly visible. Representative photographs of the bottom surface of the accused Holmes slow-cookers compared to Fig. 7 of the '993 patent are shown below:





Ex. A                    Ex. T1                    Ex. T26

Thus, the bottom of the Holmes slow-cookers look substantially different from the claimed bottom that forms a part of the patented design.

### b.    The Ordinary Observer Test Is Not Satisfied

Comparing the ornamental elements of the patented design in their entirety with the accused slow-cookers, it is clear that any perceived similarity between these designs would not be based on these ornamental elements since they are all substantially different in appearance. The only similarity stems from the fact that the accused products and patented designs are both slow-cookers. However, such a comparison is not the test. Focusing on the ornamental features of the slow-cookers alone, and considering all of the views provided in the patentfigures, it is clear that there is no substantial similarity between the patented design and any of the accused designs to the ordinary observer. (Mauro Decl., ¶¶ 33-38). Thus, there can be no infringement as a matter of law since the ordinary observer test is not satisfied.

>c.    **The Holmes Slow Cookers Do Not Infringe the**
>      **'993 Patent Under the "Point of Novelty" Test**

The Court need not address the point of novelty test where, as here, there are substantial differences in the overall designs and the ordinary observer test is not satisfied.  However, if the Court deems it necessary to conduct a point of novelty evaluation, in addition to having a different overall appearance, the Holmes' slow-cookers fail to incorporate any perceived points of novelty associated with the West Bend design patents.

In order to determine the points of novelty, the features of the claimed design are compared with those shown in the prior art.  Only those features not shown in the prior art can be determined to be points of novelty.  The claim as interpreted above is broken into its constituent elements and compared to the prior art to determine the points of novelty as set forth below.

1.    "A rounded off rectangular-shaped heating unit having a thin, flush band at an upper edge, a rounded off rectangle-shaped cooking vessel supported by the upper edge of the heating unit by a lip";

This feature is shown in U.S. Patent No. D 429,596 (Ex. J), Figs. 1 and 4  as well as the prior art slow-cooker, Model No. 3755 HG.  (Henneberger Decl., ¶ 13) and cannot be a point of novelty.

2.    "at the smaller ends of the rounded off rectangular-shaped cooking vessel the lip extends outwardly forming concave portions which are joined by a convex portion forming handle portions,"

This feature is shown in U.S. Patent No. Des. 416,434 (Ex. M), Fig. 6; Des. 420,246 (Ex. L) Fig. 4; the '596 patent (Ex. J), Fig. 4 as well as the prior art slow-cooker, Model No. 3755 HG. (Henneberger Decl., ¶ 13) and cannot be a point of novelty.

3.    "the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat, the flat bottom surface of the lip of the cooking vessel overhanging and being positioned adjacent to the upper edge of the heating unit;"

This feature is substantially shown in U.S. Patent No. D 420,246, Fig. 3 (Ex. L), except for the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter.

    4.      "a rounded off rectangular-shaped, domed lid"

This feature is shown in U.S. Patent No. Des. 429,596 (Ex.t J, Figs. 2 and 4 and cannot be a point of novelty.

    5.      "a centrally located, round disc-like member provided on the lid"

This feature is shown in U.S. Patent No. D416,434 (Ex. M), Figs. 2 and 6 and cannot be a point of novelty.

    6.      "a rounded off rectangular-shaped bottom, the bottom being smooth and flat"

This feature is shown in U.S. Patent No. Des. 434,940 (Ex. K), Fig. 3 and cannot be a point of novelty.

    Accordingly, the only features which arguably are not shown in the prior art are:

    1.      the lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout its perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat; and

    2.      the domed lid being shaped to make a smooth transition from its outer periphery to the upper edge of the cooking vessel lip.

    None of the accused slow-cookers incorporate either of these possible points of novelty. Specifically, the lip on the cooking vessel of the accused slow-cookers has a flat top surface. The contour of the lip from a top surface to the bottom surface is downwardly and inwardly having a convex shape, the direct opposite of the claimed point of novelty and closer in shape and contour to the prior art than the patented design. The shape of the cooking vessel lip on the accused devices creates a very different visual appearance from that shown and claimed in the '993 patent as is readily apparent from the comparison below. (Mauro Decl., ¶¶ 38-40).

    

Ex. T4              Ex. A, Fig. 4         Ex. T1

In addition, as shown above, on the accused devices, the transition between the lid and the lip results in an abrupt change.  This is very distinguishable from the smooth transition between the lower edge of the lid and upper edge of the top surface of the cooking vessel lip as illustrated in the claimed design.  (Mauro Decl., ¶ 41).  Accordingly, none of the points of novelty of the claimed design are present in any of the accused products and there can be no infringement as a matter of law.  (Mauro Decl., ¶ 45).

> **d.    Summary Judgment on the Issue of Non-Infringement of the '933 Patent Is Appropriate Under the Facts of This Case**

An ordinary observer would not purchase a Holmes slow-cooker supposing it to be the design claimed in the West Bend patents in view of the numerous and substantial ornamental differences.  Moreover, none of the Holmes slow-cookers include the ornamental features that distinguish the claimed design from the prior art and, in fact, are closer in appearance to the prior art than the patented design.  The claim of the '993, being limited to the design as shown in the drawings, cannot be read on the accused slow-cookers.  No reasonable trier of fact would find otherwise.  Thus, summary judgment of non-infringement should be granted.

> **B.    The '266 Patent**

U.S. Design Patent No. 434,266 entitled "Cooker" issued on November 28, 2000.  (Ex. B).  The '266 patent shows the same claimed elements as the '993 patent and claims additional elements such as the bottom of the heating unit being at a right angle with respect to the heating unit side wall and a disk-like knob on the lid as shown below.

 

Ex. B.

### 1.    Claim Interpretation of the '266 Patent

The claim construction is the same as that for the '993 patent with the addition of the

following claimed elements:

a knob centrally located on the lid, the knob having a flat and smooth upper surface and a
sharp upper edge which tapers downwardly and inwardly to a flat bottom surface which
transitions into an elongated cylindrical stem, the stem being smaller in diameter than the knob,
and a round, disk-like skirt which is substantially larger in diameter than the diameter of the
knob; and

the bottom of the heating unit being at a right angle with respect to the sidewall of the
heating unit.

### 2.    The Holmes Slow-Cookers Are Not Substantially the Same
### as the Design Claimed in the '266 Patent

None of the accused slow-cookers are substantially the same in overall appearance when

compared to the claimed design in the '266 patent for the same reasons set forth with regard to

the '993 patent.  The '266 patent further claims the knob on top of the lid.  The knob is functional,

i.e., to pick up the lid.  Thus, claim coverage is only permitted for the ornamental appearance.

The knob shown in the '266 patent is disk-like with a flat and smooth upper surface and a sharp

upper edge which tapers downwardly and inwardly to a flat bottom surface.  The handles on the

accused slow-cooker lids are either loop-style or knob-style.

It is without question that both the loop-style handle and knob-style handles on the lid of

the accused products are substantially different in ornamental appearance when compared to the

claimed knob.  The loop-style handles are obviously significantly different.  The knobs on the

accused slow-cookers do not include a disk-like knob having a flat and smooth top surface and a

sharp upper edge as shown in the '266 patent.  Instead, one style of knob has a rounded or domed

- 16 -

top and rounded edges.  (Ex. T1).  Additionally, the stem is much shorter in height than the elongated stem shown in the '266 patent giving a very different overall appearance.  Furthermore, the top of the knob of the accused devices includes ornamental, circumferentially spaced grooves which are not shown in the '266 patent figures.  (Mauro Decl., ¶¶ 28, 42).

A second style knob (Ex. T6) has a dome-shaped top surface which is almost the same diameter as the skirt.  Furthermore, the transition from the upper edge to the lower edge is a straight line slope downwardly and inwardly as opposed to the convex contour illustrated in the patented design.  These substantial differences further distinguish the accused slow-cookers from the claimed design supporting a finding of no substantial similarity.  *Id.*

### 3.    Points of Novelty

The features added by the '266 patent do not provide any further distinctions over the prior art.  The claimed knob is found in the prior art including Des. 416,434 (Ex. M), Figs. 1 and 2) and a West Bend catalog sheet depicting a prior art slow-cooker.  (Ex. R).

### 4.    Summary Judgment on the Issue Of Non-Infringement of the '266 Patent Is Appropriate Under the Facts of this Case

For the same reasons set forth with respect to the '993 patent and further in view of the substantial differences between the knob design in the '266 patent and the accused products, summary judgment of non-infringement should be granted.

### C.    The '664 Patent

U.S. Design Patent No. D 444,664 entitled "Cooker" issued on July 10, 2001.  (Ex. C).  The file history of the '664 patent is essentially the same as that of the '993 patent.  The '664 patent claims the same ornamental design for a slow-cooker as that in the '266 patent, adding four cylindrical feet in a rectangular pattern on the bottom of the heating unit.  (See Ex. C, Figs. 2 and 7).  Like the '993 patent, the bottom edge of the heating unit is shown in broken lines and does not form a part of the claimed invention.

### 1.    Claim Interpretation of the '664 Patent

Holmes proposes that the claim of the '664 patent be interpreted the same as the '993

patent with the addition of the knob as defined in the '266 patent and further including:

four cylindrically-shaped feet arranged in a rectangular pattern on the bottom surface of
the heating unit.

### 2.    The Holmes Slow-Cookers Are Not Substantially the Same as the Design Claimed in the '664 Patent

The design of the Holmes slow-cookers is not substantially the same as the design

claimed in the '664 patent for the same reasons as set forth with regard to the '266 and '993

patents.  In addition, none of the accused slow-cookers includes cylindrically-shaped feet

provided in a rectangular arrangement on the heating unit bottom.  (Ex. C, Fig. 7).  To the

contrary, the accused slow-cookers include cone-shaped feet generally not arranged in a

rectangular pattern.  (See e.g., Ex. T1 and T4).  Thus, to the extent, if any, that the feet are

ornamental, the accused slow-cookers are substantially different in ornamental appearance.

### 3.    Points of Novelty

The claimed feet are not a point of novelty.  The cylindrical feet of the claimed design

can be found in U.S. Patent No. Des. 416,434 (Ex. M), Figs. 3 and 7.

### 4.    Summary Judgment on the Issue Of Non-Infringement of the '664 Patent Is Appropriate Under the Facts of This Case

As stated above, it is indisputable that the accused slow-cookers do not include the

element of the feet claimed in the '664 patent as well as each of the other elements as described

above with respect to the '993 patent and the knob as discussed in the '266 patent.  Summary

judgment of non-infringement of the '664 patent should accordingly be granted.

## V.    AS A MATTER OF LAW, WEST BEND'S FAILURE TO MARK PRECLUDES DAMAGES PRIOR TO ACTUAL NOTICE

Notwithstanding that the accused slow-cookers do not infringe any of the West Bend

design patents, West Bend's failure to mark their products covered by the asserted design patents

pursuant to 35 U.S.C. §287 limits any potential recovery of damages. West Bend is not entitled to recover damages based on sales made prior to providing Holmes with actual notice of infringement by identifying a specific product.

### A.    Controlling Law Requires Specific Actual Notice of Infringement

A patent owner who makes and/or sells articles covered by the patent must mark the article in accordance with 35 U.S.C. §287(a), or be limited in the amount of recoverable damages. In the absence of proper marking, damages can only be for those acts that occur after the patentee gives actual notice of infringement. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998). The marking requirement "applies to design patents whether remedy for infringement is sought under §284 or §289." *Id.*

Whether actual notice was given under §287 focuses on the conduct of the patentee, not the knowledge or understanding of the alleged infringer. *Amsted Ind. Inc. v. Buckeye Steel Castings, Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Actual notice requires "the affirmative communication of a specific charge of infringement *by a specific accused product or device*" *Id.,* (emphasis added). Merely identifying a type of product is not sufficient to provide actual notice. *Id.* Notice of infringement of a specific model or class of products has been held to be insufficient notice as against unspecified models. *See*, *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346, 1347 (Fed. Cir. 2001); *Eastman Kodak Co. v. AGFA-Gevaer N.V.*, 2005 WL 281174 (W.D.N.Y 2005).

### B.    West Bend's Damages Are Limited to Sales Occurring After Actual Notice

West Bend admits that it sells products covered by its design patents (Ex. P) and that it does not mark any of its products with the relevant patent numbers. (Ex. Q). West Bend's first assertion of its design patents against Holmes was contained in a counterclaim filed on August 24, 2005. (Ex. E, Count V). West Bend's claim failed to specify which of Holmes' many slow-

cookers allegedly infringe.  To avoid a Rule 12(b) motion, counsel conferred in an attempt to identify which Holmes slow-cooker models were at issue.  On or about September 2, 2005, counsel for West Bend verbally identified two models of slow-cookers alleged to infringe.  (Henneberger Decl., ¶ 6).  Asserted infringement identifying the same two slow-cooker models was affirmed in writing by West Bend seven months later.  (Ex. F).

On November 6, 2006, over a year after its counterclaims were served, West Bend specifically charged thirty-two (32) additional models of slow-cookers as infringing.  (Ex. G).  Accordingly, summary judgment is appropriate to limit any potential damage recovery with regard to the first two slow-cooker models identified to sales made after September 2, 2005 and damage recovery with regard to the later identified thirty-two slow-cooker models to sales made after November 6, 2006.

## VI.    CONCLUSION

In view of the foregoing, the accused slow-cookers do not infringe any of the West Bend design patents, under the ordinary observer test or the "point of novelty" test.  Thus, summary judgment of non-infringement should accordingly be granted.  Furthermore, in view of the frivolous nature of West Bend's cause of action, Holmes should be granted its attorneys' fees and costs related to this claim.  Lastly, any potential recovery of damages by West Bend should be limited to the time period following actual notice of alleged infringement.

|  | THE HOLMES GROUP |
|---|---|
|  | By its Attorneys, |
| December 8, 2006 | /s/Glenn T. Henneberger |
|  | Charles R. Hoffmann, Esq. (*Pro Hac Vice*) |
| Nicholas J. Nesgos (BBO No. 553177) | Glenn T. Henneberger, Esq. (*Pro Hac Vice*) |
| Joseph W. Corrigan (BBO No. 647393) | Alan M. Sack, Esq. (*Pro Hac Vice*) |
| Posternak Blankstein & Lund LLP | HOFFMANN & BARON, LLP |
| Prudential Tower, 800 Boylston Street | 6900 Jericho Turnpike |
| Boston, Massachusetts  02199-8004 | Syosset, New York  11791-4407 |
| Telephone:  (617) 973-6100 | Telephone:  (516) 822-3550 |
| Facsimile:  (617) 367-2315 | Facsimile:  (516) 822-3582 |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 8, 2006.

/s/ Glenn T. Henneberger
Glenn T. Henneberger