IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HOLMES GROUP, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>WEST BEND HOUSEWWARES, LLC and<br>FOCUS PRODUCTS GROUP, LLC,<br><br>        Defendants. | Civil Action No. 05-CV-11367 WGY<br>(Alexander, M.J.) |

**WEST BEND'S MEMORANDUM IN OPPOSITION TO HOLMES'
MOTION FOR SUMMARY JUDGMENT OF
<u>NONINFRINGEMENT OF WEST BEND'S DESIGN PATENTS</u>**

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

December 22, 2006                    *Attorneys for Defendants*

## INTRODUCTION

The core infringement issue presented in West Bend's (WB) design patent case is whether an ordinary observer would find Holmes' accused products substantially similar to the overall visual impression created by all of WB's design patents' figures.  Design patent infringement is thus a factually intensive question not generally amenable to summary judgment. *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006).  In reversing summary judgment of no infringement in *Amini*, the Federal Circuit commented that "[a]t the outset, this court perceives again that conclusions about reasonable jurors are difficult to make on issues of this factual dimension [*i.e.*, design patent infringement]." *Id.*

Holmes' motion for summary judgment of noninfringement ignores the overall visual impression created by all of the figures of WB's design patents and improperly focuses on minor differences between individual elements of the claimed designs and the accused products. That is not the proper legal standard. Tellingly, Holmes never mentions, much less compares, Figure 1 of WB's design patents, which best illustrates the overall claimed design, to the accused products.  The reason is obvious.  When considering WB's claimed



| The Patented Design | Holmes' Design |

designs as a whole, the accused products are substantially similar.  A jury considering all of the patent figures and applying the correct legal standard would so find.  WB has thus come forward with more than ample evidence, which the Court must view in the light most favorable to WB, to

demonstrate Holmes' infringement of WB's design patents. Genuine issues of material fact unquestionably exist here, and summary judgment is not appropriate.

## ARGUMENT

### I.    WB's Claim Constructions Should Be Adopted Because They Evoke The Overall Visual Appearance Of The Patented Design

The infringement analysis in a design patent case begins with the Court's claim construction, which should translate the design patent's drawings into verbal language so as to "evoke the visual image of the design." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). The verbal description evoking the overall visual image of the design must be made without reference to the accused product. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985).

WB submits the following descriptions as accurately evoking the overall visual image of the patented designs.

'993 Patent

a straight and vertically sided oval shaped body having a thin band around its top perimeter, an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter, an opaque round shaped and disc-like skirt that is larger in diameter than the unclaimed knob, and a translucent and oval shaped lid having no integral skirt or knob.

'266 Patent

a straight and vertically sided oval shaped body having thin bands around its top and bottom perimeters, an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter, an opaque round shaped and disc-like knob mounted on a round shaped smaller diameter pedestal or a somewhat mushroom shaped knob, an opaque round shaped and disc-like skirt that is larger in diameter than the knob, and a translucent and oval shaped lid having no integral skirt or knob.

2

'664 Patent

> a straight and vertically sided oval shaped body having a thin band around its top
> perimeter, an opaque and oval shaped insert separating a lid from a body having a
> generally oval shaped perimeter that has slight concave curves transitioning to
> outwardly flared end handles and having a material thickness that thins around the
> insert's entire perimeter, an opaque round shaped and disc-like knob mounted on
> a round shaped smaller diameter pedestal or a somewhat mushroom shaped knob,
> an opaque round shaped and disc-like skirt that is larger in diameter than the
> knob, a translucent and oval shaped lid having no integral skirt or knob, and four
> opaque small cylindrical feet placed in a rectangular pattern on the body's bottom.

*See* West Bend's Design Patent Claim Construction Brief, filed on December 1, 2006.

Holmes' proposed claim constructions are impermissibly narrow, fail to encompass the patented designs' visual appearances as a whole by focusing upon minute details, and mischaracterize the visual impression actually created by WB's patented designs. Holmes incorrectly characterizes the design of the heating and cooking unit as having a "rounded off rectangular-shape" with "relatively small arcs of the four corner edges, which gives the visual impression of a near rectangle with slightly bowed out sides." Holmes Br. at 5-6. Holmes' claim construction is not dictated by an analysis of the intrinsic evidence, but is deliberately drafted with its accused products in mind to distinguish the patented designs from the accused products. Indeed, at page 5 of its brief, Holmes admits that its claim interpretation is made "in contrast to a clean and flowing elliptical shape which is the dominant shape of all accused products." Holmes' use of the accused products to construe the claims is wrong as a matter of law. *SRI Int'l*, 775 F.2d at 1118.

Holmes' constructions are also incorrect factually. As evident from Figs. 1 and 6 from WB's patents, the shape of the heating and cooking units is oval, and not a rounded-off

rectangle.  Woodring Decl.,[1] ¶ 5.  The West Bend design does not have four corner edges or

relatively small arcs of the four corner edges and does not give the visual impression of a near

rectangle with slightly bowed sides.  *Id.*  There is no rectangle, straight sides, or corners in West

Bend's design.  *Id.*



Holmes' proposed claim constructions also focus upon minutiae.  For example, Holmes

focuses upon the specific configuration of the slope on the insert's lip rather than the overall

visual impression created by the thinning of the lip around its entire perimeter.  Woodring Decl.,

¶ 4.  Holmes likewise describes the knob, which an ordinary observer would perceive as

mushroom shaped, in terms of each individual surface and the precise geometry of surface edges,

which an ordinary observer would not notice.  *Id.*  Holmes' proposed construction for the '993

patent also ignores the skirt on the lid altogether.  *Id.*  Holmes' proposed constructions do not

evoke the overall visual impression of the WB design patents as they would be perceived by an

ordinary observer.

## II.    Holmes' Accused Products Are Substantially Similar To The Patented Designs Under The Ordinary Observer Test

The Supreme Court set forth the "ordinary observer" test for design patent infringement

over 100 years ago, which has remained unchanged.  *Gorham Co. v. White*, 81 U.S. 511, 528

(1871).

---

[1] "Woodring Decl." refers to the Declaration of Cooper C. Woodring In Support Of West Bend's Opposition To Holmes' Motion For Summary Judgment Of Noninfringement Of West Bend's Design Patents.

> [If] in the eye of an observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* The claimed and accused designs do not have to be identical. *Id.* at 528-29. Indeed, the Supreme Court recognized that despite differences between the claimed and accused design, the designs can still be substantially similar. *Id.* at 529 ("[T]hough variances in the ornament are discoverable, the question remains, is the effect of the whole design substantially the same."). The Federal Circuit likewise recognizes that the claimed design need not be identical to the accused product. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002). "In assessing infringement, the patented and accused design do not have to be identical in order for design patent infringement to be found. What is controlling is the appearance of the design **as a whole** in comparison to the accused product." *Id.* (emphasis added; citations omitted).



Gorham's '440 Design Patent Figure 1 Front View

White's Accused Devise Front View

Gorham's '440 Design Patent Figure 2 Rear View

White's Accused Devise Rear View

© 2005, Cooper C. Woodring, FIDSA®

The illustrations from the *Gorham* case demonstrate that Holmes mistakenly focuses on alleged minor differences between WB's patented designs and the accused products. Despite the readily apparent differences between the claimed and accused design in *Gorham*, the Supreme Court held that the designs were substantially similar in the eye of

the ordinary observer. *Id. at* 521; Woodring Nov. 3 Rpt.[2], ¶ 14. The issue is whether the designs

are substantially similar, not whether there are differences. *Gorham*, 81 U.S. at 521.

*Contessa Foods* also demonstrates the error in Holmes' infringement analysis because the

analysis is not based on all of the patent figures. The

Federal Circuit in *Contessa Foods*  explained "that the

'ordinary observer' analysis is not limited to the

ornamental features of a subset of the drawings, but

instead must encompass the claimed ornamental features

of **all figures** of a design patent." *Contessa*, 282 F.3d at



1379 (emphasis added).  Moreover, it is improper to

analyze the ordinary observer test on an "element by element" basis as Holmes does here.  As

recently noted by the Federal Circuit in reversing summary judgment of infringement, "the trial

court mistakenly analyzed each element separately instead of analyzing the design as a whole

from the perspective of an ordinary observer." *Amini*, 439 F.3d at 1372.  "In evaluating a claim

of design patent infringement, a trier of fact must consider the ornamental aspects of the design

as a whole and **not merely isolated portions of the patented design**." *Braun Inc. v. Dynamics*

*Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992).    A comparison of all the figures from each of

WB's design patents to the Holmes accused products demonstrates that the accused products are

substantially similar to the claimed design of WB's patents in the eyes of an ordinary observer.

Woodring Decl., ¶ 7.  Given a slow cooker's relatively low cost, market, and channels of

distribution, an ordinary observer in this case would be an everyday consumer who has recently

---

[2] "Woodring Nov. 3 Rpt." refers to the Expert Report of Cooper C. Woodring, FIDSA® dated November 3, 2006 and previously filed with the Court in connection with West Bend's Design Patent Claim Construction Brief.

purchased a slow cooker or is considering purchasing one. *Id.* ¶ 6. Holmes notably offers no definition for an ordinary observer. *See* Holmes Br.

Figure 1 from the '993 patent is a logical starting part for comparing the claimed design to the accused products. Woodring Decl., ¶ 7. Neither Holmes nor its expert compares any of the accused products with Fig. 1 of the '993 patent. The reason for this is evident. The accused products appear nearly identical, and unquestionably substantially similar, to Fig. 1. *Id.* An ordinary observer would thus conclude that Fig. 1 from the '993 patent is substantially similar to the Holmes accused products. *Id.*

An ordinary observer would likewise conclude that Fig. 1 from both the '266 and '664 patents also are substantially similar to Holmes' accused



products. Woodring Decl., ¶
8. In addition to the design



features of the '933 patent,
the '266 patent further claims
a thin band around its bottom

Fig. 1

perimeter and an opaque round shaped, disc-like (somewhat mushroom shaped) knob mounted on a round shaped smaller diameter pedestal, which are both present in Holmes' model nos. 3730W, 37351C, 3735W, 3752SM, 5070TCW, 5445BCN, 6445BC, SCV450SS, and SCV500SM. Woodring Decl., ¶ 8; Henneberger Decl., Ex. B.

The '664 patent claims the same design features as the '993 patent and also (1) an opaque round shaped and disc-like (somewhat mushroom shaped) knob mounted on a round shaped

smaller diameter pedestal (as claimed in the '266 patent) and (2) four opaque small cylindrical feet placed in a rectangular pattern on the cooker's bottom. Henneberger Decl.,[3] Ex. C.

The remaining figures from WB's patents further buttress the conclusion that the accused products are substantially similar to the patented designs. For example, a comparison of Fig. 6 from the '993 patent and two representative samples of Holmes' accused cookers readily shows that in the eye of an ordinary observer, the claimed design and the accused products are substantially similar. Woodring Decl., ¶ 9.



Both the patented designs and accused products are oval or elliptical in shape with inserts, i.e., the cooking vessel, that have outwardly flared handles on both right and left ends with a slight "ogee" or reverse curve between the handle itself and the perimeter of the generally oval shaped insert. Woodring Decl., ¶ 10. Both the claimed designs of the WB design patents and accused products also include an opaque skirt sitting atop the transparent domed lid, the skirt being larger in diameter than the knob handle. *Id.*

---

[3]     "Henneberger Decl." refers to the Declaration of Glenn T. Henneberger, Esq. In Support of Plaintiff's Motion For Summary Judgment of Non-Infringement Of West Bend's Design Patents.

The insert, or cooking vessel, lip of the patented designs and accused products have an edge that thins around the insert's entire perimeter, which further buttresses the conclusion that an ordinary observer would view the overall designs as substantially similar. Woodring Decl., ¶ 10.



**Fig. 4 of Patented Design**

*Fig. 4*

Additionally, the bottom view of the claimed designs (Fig. 7) and the accused products also would be perceived as substantially similar in the eye of the ordinary observer. Woodring Decl., ¶ 11.  While the accused products have fastening devices, holes, and stamped depressions to add structural integrity to the flat bottom surface, these features are functional (*Id.*) and, therefore, play no role in the design patent infringement analysis here. *Amini*, 439 F.3d at 1371.  As to the '664 patent that includes four feet (the '993 and '266 patents do not claim the feet), a comparison of Fig. 7 with a representative sample of the accused Holmes cookers demonstrates that the overall appearance of the patented design



*Fig. 7*



and accused products would be substantially similar despite the minor differences in the appearance of the feet on the accused products.  Woodring Decl., ¶ 11.

The Holmes accused products are thus substantially similar to the overall visual impression created by WB's design patents as a whole.  WB's evidence of the substantial similarity between the claimed designs and accused products, when viewed in a light most favorable to West Bend, presents a factually intensive question to be resolved by the jury and is not appropriate for disposition on summary judgment.

**III.    Holmes Misapplied The Ordinary Observer Test And Never Considered The Overall Design Of West Bend's Patents, Precluding Summary Judgment**

Instead of basing its arguments upon the overall visual impression of the claimed designs as a whole, Holmes seeks to improperly rely upon minor differences between individual elements of the claimed designs and accused products.  The differences noted by Holmes do not alter the conclusion that the claimed designs and accused products are substantially similar as a whole as explained above.  Woodring Decl., ¶¶ 5-11.  Thus, at a minimum, substantial questions of material fact exist as to whether an ordinary observer would conclude that these small differences still result in substantially similar designs.

Holmes asserts that "[e]ven the inventors of the asserted West Bend design patents admit that the designs are different."  Holmes' Br. at 7.  There is no dispute that there are small differences between the designs.  But that is not the test of infringement.  Holmes never asked the inventors to compare the overall design of the WB design patents with the accused products.  Henneberger Decl., Exs. N and O.  Rather, Holmes improperly focused upon individual differences between the designs.  *Id.*  Contrary to Holmes' characterization of the inventors' testimony, both inventors actually testified that while there are small differences between the designs, the designs are actually very similar.  *Id.*, Ex. O at 46:7-9; Ex. A, Dobson Dep. Tr., at

10

97:13 – 98:10.  Moreover, the inventors are not "ordinary observers."  They are intimately familiar with the details of their designs, and thus would perceive minor differences in shape that would not be apparent to an ordinary observer.  Woodring Decl., ¶ 12.  An ordinary observer in this case would be an everyday customer who has recently purchased a slow cooker or is considering purchasing one, without the expertise of the inventors or giving attention to the minute details about which Holmes quizzed the inventors.  *Id*. at ¶ 6.  The testimony of the inventors is not evidence of how an ordinary observer would observe the overall designs at the point of purchase.  *See Contessa*, 282 F.3d at 1382.

Holmes' also erroneously relies upon a so-called "invariant feature analysis" used by its expert witness to argue that the shape of the accused products is not substantially similar to the patented designs.  Holmes' reliance upon the "invariant feature analysis" is misplaced because it bears no relationship to how the "ordinary observer" sees or compares overall designs.  Woodring Decl., ¶ 13.  To the contrary, "invariant feature analysis" is a method employed only when a human **cannot** distinguish between two substantially similar objects.  *Id*.  For example, when targeting a tank, a fighter pilot, in may instances, must ensure that an enemy tank – and not a "friendly" tank – is being targeted because of their similarity.  Consequently, computerized invariant feature analysis systems are employed to compare hundreds of details of the targeted tank's shape against a data base to confirm that the tank is an enemy.  *Id*.  Invariant feature analysis is also the methodology behind computerized facial recognition software in which highly detailed invariant facial features are compared to millions of photographs to locate a matching face.  Woodring Decl., ¶ 14.  While two faces may appear substantially similar to an ordinary observer, the use of invariant feature analysis reveals differences in the facial features to ensure that that faces are correctly matched.  *Id*.

An ordinary observer would not decompose the shape of the claimed designs and accused products to perceive the supposed differences identified by Holmes' "invariant feature analysis." Woodring Decl., ¶ 15. Moreover, Holmes' "invariant feature analysis" is based solely on patent Fig. 6 because Holmes' expert says that Fig. 6 is allegedly the "dominant shape" of the WB design patents. This analysis is fundamentally flawed because it fails to compare the design as a whole and fails to take into account all of the patents' figures. *Braun*, 975 F.2d at 820. Moreover, if any view is dominant, it is the front perspective view of patent Fig. 1 because that is how consumers would view the product at the point of purchase, as demonstrated by Holmes' own packaging and catalog sheets which feature a front perspective view like patent Fig. 1. Woodring Decl., ¶ 16. Indeed, the patent examiner selected Fig. 1 as being most representative and descriptive of the patented design, not Fig. 6. *Id.*

Consequently, the testimony and illustrations of Holmes' expert are wrong as a matter of law. In fact, if one needs to employ an invariant feature analysis to determine that two designs are different, it means that the designs cannot be readily distinguished by the human eye and, therefore, use of such an analysis as Holmes does here suggests that, to an ordinary observer, the two designs are substantially similar. Woodring Decl., ¶ 13

Holmes' expert also bases his opinion on so-called orthographic scale drawings of the accused products that are inaccurate and demonstrate Holmes' flawed analysis. Woodring Decl., ¶ 17. Even if they were accurate, these drawings do not focus upon the overall design of West Bend's patents compared with the overall design of the accused products and instead focus upon minor details. *Id.* Additionally, an ordinary observer would not resort to these orthographic scale drawings when comparing the overall design of WB's patents with Holmes' accused products. *Id.*

In sum, an ordinary observer would find that the overall designs of Holmes' accused products are substantially the same as WB's patented designs. At a minimum, numerous issues of fact exist as to the proper application of the ordinary observer test here. For this reason alone, Holmes is not entitled to summary judgment that its accused products do not infringe WB's design patents.

## IV.    Holmes' Accused Products Include The Points Of Novelty Of The Patented Designs

Holmes' faulty claim construction infects its point of novelty analysis as well. The "point of novelty" test is separate from the "ordinary observer" test and "requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art." *Contessa*, 282 F.3d at 1377. As with the "ordinary observer" test, the "point of novelty" test is a question of fact for the jury, "undertaken by the fact finder during the infringement stage of the proceedings, after the claim has been construed by the court." *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed. Cir. 2004). Indeed, "the **fact finder** generally will be able to determine the points of novelty that distinguish the design patent from the prior art by comparing the design patent with the cited prior art references, aided by any written statements of the applicant and examiner in the prosecution history." *Id.* at 1384.

The "point of novelty" test thus presents three levels of factual inquires: (1) determination of the scope and content of the prior art; (2) identification of the points of novelty based upon a review of the prior art; and (3) a determination of whether the accused product appropriates the points of novelty. *Bernhardt*, 386 F.3d at 1384. None of these factual inquiries can be resolved on summary judgment here.

As noted above, Holmes' claim construction is legally incorrect because it fails to evoke the patented designs' overall visual impression. It follows that Holmes incorrectly identifies the

patented designs' points of novelty.  As part of its flawed claim construction, Holmes' proposed

"constituent elements" 1, 2, 4, and 6 of the WB design patents all require a "rounded off

rectangular-shaped" heating unit, cooking vessel, lid, and bottom.  Holmes Br. at 13-14.  As

explained above, the WB design is not a "rounded off rectangle" and instead is an oval shape.

Holmes' flawed analysis thus carries through to and infects its identification of the purported

points of novelty.  *Id.*  Consequently, Holmes' efforts to show how certain elements of the WB

designs are in the prior art incorrectly mischaracterize the points of novelty.  *Id.*  Even if

Holmes' points of novelty were correct, a factual dispute exists as to whether the Holmes

accused products appropriate these points of novelty.

       Following are the points of novelty of the WB's patented designs.

| '993 Patent | '266 Patent | '664 patent |
|---|---|---|
| Lid: a translucent and oval shaped lid having no integral skirt or knob | Lid: a translucent and oval shaped lid having no integral skirt or knob | Lid: a translucent and oval shaped lid having no integral skirt or knob |
| Insert: an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter | Insert: an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter | Insert: an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter |
|  |  | Feet: four opaque small cylindrical feet placed in a rectangular pattern on the body's bottom |

Woodring Decl., ¶ 18; Woodring Nov. 3 Rpt., ¶¶ 46-53.  These points of novelty are based upon

the references cited during prosecution of the '993, '266, and '664 patents as well as other prior

14

art identified by Holmes.  *Id.*  The points of novelty are the same for the '993 and '266 patents,

with the '664 patent also including the feet as a point of novelty.  *Id.*  Holmes fails to offer any

explanation as to why these points of novelty are not correct or are not present in the accused

products.  *See* Holmes Br.

The Holmes accused products appropriate the points of novelty of WB's patents.  The

above comparison of Fig. 6 of the patents to representative samples of Holmes' accused cookers

demonstrates that the accused cookers appropriate the point of novelty relating to the translucent

domed and oval-shaped lid having no integral skirt or knob.  Woodring Decl., ¶ 19; Woodring

Nov. 3 Rpt., ¶¶ 46-53.

Figures 1, 2, and 6 of the patents show another point of novelty appropriated by Holmes,

namely, an opaque and oval shaped insert separating the lid from the cooker body with the insert

having a generally oval shaped perimeter that has

slight concave curves transitioning to

outwardly flared end handles and having a

material thickness that thins around the

insert's entire perimeter.  Woodring Decl., ¶

20.  While the '664 patent includes a third point of novelty, feet, that are



**Fig. 2 of Patented Design**



**Holmes' Design**

not present in the Holmes accused products, there is no requirement that

the accused product appropriate every point of novelty from the claimed

design.  *See Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1565 (Fed. Cir. 1988);

*Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984); *E. Am. Trio Prods.,*

*Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 405 (S.D.N.Y. 2000).

Holmes identifies two separate, and incorrect, points of novelty that are different from those offered by WB. Holmes Br. at 14. This alone demonstrates that a factual dispute exists, as the identification of the points of novelty is a question of fact. *Bernhardt*, 386 F.3d at 1383-84. WB's points of novelty relate to the overall shape of the lid and insert, while Holmes focuses upon minute details of the lid and insert in an effort to escape infringement. Thus, the parties' dispute over the proper identification of the points of novelty raises material questions of fact for the jury that cannot be appropriately resolved on summary judgment.

Even if Holmes' proposed points of novelty were correct, a question of fact for the jury would remain as to whether the Holmes accused products appropriate these points of novelty. For example, as shown above in the comparison of Fig. 2 of the '993 patent to representative samples of the accused products, a question of  fact remains as to whether "the domed lid on the accused cookers makes a smooth transition from its outer periphery to the upper edge of the cooking vessel lip" as proposed by Holmes. At least some of the accused cookers include such a smooth transition between the lip and lid, as shown here. Woodring Decl., ¶ 21. A question of fact likewise remains as to whether the Holmes accused products appropriate the "sloping lip" point of novelty proposed by Holmes.

Material questions of fact thus exist regarding both (1) the definition of the proper points of novelty of the WB design patents and (2) whether Holmes' accused products appropriate the points of novelty, precluding summary judgment of noninfringement. WB has demonstrated that Holmes' accused products appropriate the properly identified points of novelty of the WB design patents, and the Court must view this evidence in a light most favorable to West Bend. Summary judgment is not appropriate here.

**V.    West Bend Is Entitled To Damages From The Date Of Its Counterclaim**

Holmes was placed on actual notice of infringement as required by Section 287 of the Patent Statute on August 24, 2005 when West Bend filed its counterclaims for design patent infringement.  In an effort to limit its damages, Holmes argues that it is not liable for design patent damages until it was later notified during discovery by WB's interrogatory responses of the exact model numbers accused of infringement.  Holmes is wrong.  It is liable for design patent infringement damages from the filing of WB's counterclaim.

Section 287(a) of the Patent Statute states that if the patentee does not mark the patented article with the appropriate patent number(s):

> no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. **Filing of an action for infringement shall constitute such notice.**

35 U.S.C. § 287(a) (emphasis added).

The Patent Statute is unequivocal, WB's design patent infringement counterclaim filed on August 24, 2005, in and of itself, constitutes actual notice to Holmes sufficient to make Holmes liable for damages since August 24, 2005.  Only notice pleading is required for a patent infringement action, and there is no requirement that the specific model number or product that is accused of infringement be identified in an infringement complaint to satisfy the notice requirement of Section 287 of the Patent Statute.  Holmes cites no cases to the contrary, and WB is not aware of any.

Under Holmes' theory requiring a complaint to specifically identify every product that infringes, the notice pleading requirements under the Federal Rules would be rendered meaningless and compliance with the Federal Rules of Civil Procedure would be at odds with

Section 287 of the Patent Statute. This result is clearly not contemplated by either the Federal Rules or the Patent Statute. Moreover, if the filing of a patent infringement complaint did not constitute actual notice of infringement under Section 287 of the Patent Statute, the date upon which damages begin to accrue would become an issue in every patent case, and varying dates would be applied depending upon when infringing products were discovered and identified during the course of litigation.

None of Holmes' case law is apposite because it all deals with the sufficiency of **pre-filing** correspondence from the patent owner as notice of infringement . *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998); *Amsted Indus. Inc. v. Buckeye Steel Castings, Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *Eastman Kodak Co. v. AGFA-Gevaer N.V.*, 2005 WL 281174 (W.D.N.Y. 2005). In each case Holmes cites, the question of damages dealt with the sufficiency under Section 287 of correspondence sent by the patent owner to the accused infringer **before** litigation. These cases have no relevance here where actual notice is satisfied by the filing of a complaint for infringement as expressly provided by Section 287.

Holmes' own position on the damages it seeks from WB directly contradicts its argument that WB's counterclaim is not sufficient notice to start the damage period running. Holmes seeks damages on several different models of WB's accused slow cookers from the filing of its complaint even though Holmes only identified one WB model in its complaint. Ex. B. Indeed, prior to its November 3, 2006 expert report on damages, Holmes never identified three additional WB slow cooker models for which Holmes seeks damages back to the time of the filing of its complaint and did not even identify these models in its most recent supplemental interrogatory response on October 6, 2006 regarding the purported infringement of Holmes' patents. Ex. C.

Holmes' position that it is entitled to damages from the filing of its complaint for the three WB model slow cookers that were only recently identified in its expert report undermines its argument that WB's patent infringement counterclaim is not actual notice under Section 287, making Holmes liable for damages from the time WB's counterclaim was filed. Holmes' position is without merit.

## VI.    Conclusion

Holmes is not entitled to summary judgment of noninfringement on WB's design patents. Holmes misapplies the ordinary observer test by focusing on supposed minute differences between individual design elements and failing to consider the patented and accused designs as a whole. Even if Holmes properly applied the ordinary observer test, genuine issues of fact exist as to whether an ordinary observer would consider the claimed and accused designs substantially similar because Holmes' position is based on a so-called "invariant shape analysis" that is improper as a matter of law. Issues of fact likewise exist as to the point of novelty test with respect to: (1) identification of the points of novelty and (2) whether the properly identified points of novelty are present in the accused devices. These questions of fact underpinning the ordinary observer and points of novelty tests are for the jury to resolve and are not appropriate for summary judgment. Finally, West Bend is entitled to recover damages for the infringement of its design patents from the date it filed its counterclaims.

WB respectfully requests that the Court deny Holmes' motion for summary judgment in its entirety.

Dated: December 22, 2006                    WEST BEND HOUSEWARES, LLC
                                            By their attorneys,


                                             /s/ Erik Paul Belt
                                            Lee Carl Bromberg, BBO #058480
                                            Erik Paul Belt, BBO #558620
                                            BROMBERG & SUNSTEIN LLP
                                            125 Summer Street
                                            Boston, Massachusetts 02100-1618
                                            Telephone:     617-443-9292
                                            Facsimile:     617-443-0004
                                            E-mail:ebelt@bromsun.com

Michael E. Husmann                          Martin L. Stern
Joseph T. Miotke                            MICHAEL BEST & FRIEDRICH LLP
MICHAEL BEST & FRIEDRICH LLP                180 North Stetson Avenue, Suite 2000
100 East Wisconsin Avenue, Suite 3300       Chicago, Illinois 60601-6710
Milwaukee, Wisconsin 53202-4108             Telephone:     312-222-0800
Telephone:     414-271-6560                 Facsimile:     312-222-0818
Facsimile:     414-277-0656


## CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants


                                            /s/ Erik P. Belt
                                            Erik Paul Belt

# EXHIBIT

# A

DOBSONROUGH.txt

1

```
 1              (This is a rough draft translation of the
 2         proceedings provided by the court reporter for the
 3         benefit of counsel and parties.  Please remember it
 4         is not a certified, final-form transcript.)
 5                   P R O C E E D I N G S
 6              WILLIAM C. DOBSON, called as a witness
 7         herein by the Plaintiff/Counter-Defendant, after
 8         having first been duly sworn, was examined and
 9         testified as follows:
10                        EXAMINATION
11    BY MR. HENNEBERGER:
12    Q    Mr. Dobson, have you ever had your deposition taken
13         before?
14    A    Yes.
15    Q    And what type of matter was that?
16    A    Several patent issues and several product liability
17         issues.
18    Q    Let's go back one second.  Can you just state your
19         full name and address for the record?
20    A    My full name is William, last name is Dobson.
21         DOBSON.  The address is 3428 Caleb, C-A-L-E-B,
22         Court.  It's in West Bend, Wisconsin, 53092.
23    Q    Okay.  Now, you mentioned that you've testified
24         before in certain patent cases.  Do you recall what
25         types of products they involved?
```

HALMA-JILEK REPORTING, INC.  (414) 271-4466

2

DOBSONROUGH.txt

2       dissimilar.

3    Q   If you saw a product -- let's just take the top

4        photograph all the views of the top photograph,

5        looking at the photograph of that product, do you

6        think that there would be a potential conflict with

7        your design patent?

8               MR. MIOTKE:  Objection to the use of

9        potential conflict with design patent.

10              THE WITNESS:  Well --

11              MR. HENNEBERGER:  Let me rephrase.

12   BY MR. HENNEBERGER:

13   Q   Do you see any feature in the photograph series of

14       the representative sample of Rival's accused design

15       with knob that are substantially similar to the

16       figures in the West Bend design patents?

17              MR. MIOTKE:   Again, object to the use of

18       the term substantially similar to the extent it's

19       calling for a legal conclusion.

20   BY MR. HENNEBERGER:

21   Q   I believe it's a fact question, so you can answer.

22       You can look through all the views.  I mean, if you

23       can find something, I'm interested to know what it

24       is.

25   A   What is similar?


         HALMA-JILEK REPORTING, INC.  (414) 271-4466

                                                     98

1    Q   Substantially similar.  I mean, obviously all these

2        things have knobs and lids and inserts and --

3    A   Well, the thing -- I mean, they're all

                   Page 91

DOBSONROUGH.txt

```
 4        substantial -- they're all substantial similar yet
 5        in the fact they're all significantly different.
 6   Q    Significantly?
 7   A    The handle treatments are different.  The knob
 8        treatments are different.  The liner treatments are
 9        different, the shapes are different and yet -- and
10        yet they're very, very, very similar.
11   Q    Well, are they similar because they're all crock
12        type slow cookers?
13   A    There are certain utilitarian parts of this design
14        that you have to have.
15   Q    Well, let me ask you this a little bit more direct
16        question.
17            Looking at the photograph, the top photograph
18        series which is the accused design with knob, is
19        there any ornamental feature that you see, you know,
20        something that you in your design, perceive as an
21        ornamental feature that you can find in the series
22        of photographs for that Rival product?
23            MR. MIOTKE:  Object as to the use of the
24        term ornamental feature.
25
```

HALMA-JILEK REPORTING, INC.   (414) 271-4466

99

```
 1   BY MR. HENNEBERGER:
 2   Q    Do you understand what I mean by ornamental feature?
 3        I mean, we're not talking about the function.  We're
 4        talking about the way something looks.
 5   A    Let me explain to you how I look at this.
```
                              Page 92

# EXHIBIT

# B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

       Plaintiff

       v.

WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, L.L.C.

       Defendants.

**05 : 11367 REK**

Civil Action No.

COMPLAINT

Jury Trial Demanded

MAGISTRATE JUDGE *Alexander*

RECEIPT # 65298
AMOUNT $ 250
SUMMONS ISSUED 4(2)
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK. _Tony_
DATE 6/28/05

Plaintiff, THE HOLMES GROUP, INC., by way of its Complaint against defendants,

THE WEST BEND COMPANY and FOCUS PRODUCTS GROUP, L.L.C., alleges and says:

### THE PARTIES

1.    Plaintiff, THE HOLMES GROUP, INC. ("HOLMES"), is a Massachusetts

corporation having a principal place of business at One Holmes Way, Milford, Massachusetts

01757.

2.    Upon information and belief, defendant, FOCUS PRODUCTS GROUP, L.L.C.

("FOCUS") is a limited liability Illinois corporation having a principal place of business at 120

Lakeview Parkway, Vernon Hills, Illinois 60061 and defendant, WEST BEND HOUSEWARES,

LLC is a limited liability Illinois corporation having a principal place of business at 120

Lakeview Parkway, Vernon Hills, Illinois 60061, and is a wholly owned subsidiary of FOCUS;

(hereinafter collectively referred to as "WEST BEND").

### SUBJECT MATTER JURISDICTION

3.    Jurisdiction over the subject matter of the within Complaint is vested in the

United States District Court pursuant to 28 U.S.C. § 1331 [general federal question jurisdiction]

ID # 435816v01/3021-158/ 06.27.2005

and 28 U.S.C. § 1338(a) [special federal question jurisdiction].

<u>VENUE</u>

4.     Venue over the within action is proper in the federal judicial district comprising the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(b).

<u>PATENT INFRINGEMENT</u>

5.     HOLMES is the owner by assignment of all right, title, and interest in and to United States Letters Patent No. 6,573,483 B1 (hereinafter referred to as "the '483 patent") entitled, "Programmable Slow-Cooker Appliance". A copy of the '483 patent is attached hereto as Exhibit A.

6.     The '483 patent was duly and legally issued on June 2, 2003 to HOLMES. The '483 patent remains in full force and effect.

7.     HOLMES is the owner by assignment of all right, title, and interest in and to United States Letters Patent No. 6,740,855 B1 (hereinafter referred to as "the '855 patent") entitled, "Programmable Slow-Cooker Appliance". A copy of the '855 patent is attached hereto as Exhibit B.

8.     The '855 patent was duly and legally issued on May 25, 2004 to HOLMES. The '855 patent remains in full force and effect.

9.     HOLMES has and continues to distribute, market, and sell programmable slow cooker appliances covered by the claims of the '483 patent and the '855 patent (hereinafter collectively referred to as "the patents-in-suit").

10.     On information and belief, WEST BEND has manufactured, imported, distributed, marketed, offered for sale, and sold certain slow cooker appliances (hereinafter "the

2

accused products") covered by the claims of the patents-in-suit. At least one such accused product is identified as the WEST BEND® Housewares 6-Quart Electronic Crockery Cooker, Model 84386. A copy of selected pages from the owner's manual for the accused product is attached as Exhibit C.

11. The activities of WEST BEND constitute direct infringement, contributory infringement and/or actively inducing infringement of the patents-in-suit.

12. WEST BEND's infringement of the patents-in-suit has been without license from HOLMES and in violation of HOLMES' patent rights, and it is believed that WEST BEND will continue to infringe HOLMES' patent rights unless enjoined by this Court.

13. WEST BEND's acts of infringement have been willful and deliberate, with full knowledge of HOLMES' patent rights.

14. As a result of WEST BEND's willful infringement of the patents-in-suit, HOLMES has been damaged and will continue to be damaged in an amount to be determined at trial. HOLMES has suffered and will continue to suffer irreparable injury unless the infringing activities of WEST BEND are enjoined.

15. By virtue of WEST BEND's willful and deliberate infringement, this is an "exceptional case" within the meaning of 35 U.S.C. § 285.

WHEREFORE, HOLMES prays for the following relief:

A. Judgment for HOLMES on its cause of action for patent infringement.

B. Preliminary and permanent injunction enjoining WEST BEND, its officers, directors, agents, employees, and all those in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from making, using, importing, offering for sale, and selling infringing fans and from otherwise infringing,

3

contributing to infringement, and actively inducing infringement of the patents-in-suit.

    C.     An award of compensatory and punitive damages to HOLMES by reason of the

wrongs committed by WEST BEND, including an award of increased damages pursuant to

35 U.S.C. § 284, for defendant's willful and deliberate patent infringement.

    D.     An award of costs of this action together with HOLMES' attorneys' fees pursuant

to 35 U.S.C. § 285.

    E.     An assessment of interest on the damages so computed.

    F.     Such other and further relief as this Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

                    THE HOLMES GROUP, INC.
                    By its Attorneys,

Dated: June 28, 2005

                    Nicholas J. Nesgos
                    BBO No. 553177
                    nnesgos@pbl.com
                    Jennifer Finger
                    BBO No. 641830
                    jfinger@pbl.com
                    Posternak Blankstein & Lund LLP
                    Prudential Tower, 800 Boylston Street
                    Boston, Massachusetts  02199-8004
                    Telephone:  (617) 973-6100
                    Facsimile:  (617) 367-2315

*Of Counsel:*
Charles R. Hoffmann, Esq.
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq.
GTHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550
Facsimile:  (516) 822-3582

ID # 435816v01/3021-15l/ 06.27.2005

EXHIBIT

C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

THE HOLMES GROUP, INC.,                          :
                                                 :
                            Plaintiff,           :        Civil Action No.  05-CV-11367 WGY
                    v.                            :        (Alexander, M.J.)
                                                 :
WEST BEND HOUSEWARES, LLC and                    :
FOCUS PRODUCTS GROUP, L.L.C.,                    :
                                                 :
                            Defendants.          :

**HOLMES' SUPPLEMENTAL RESPONSE TO WEST BEND'S
INTERROGATORY NO. 1 IN VIEW OF CLAIM CONSTRUCTION BY THE COURT**

Plaintiff, The Holmes Group, Inc. (hereinafter "Holmes") submits the following

Supplemental Response to Defendants, West Bend Housewares, LLC and Focus Products

Group, L.L.C. (hereinafter collectively "West Bend") Interrogatory No. 1 in view of the claim

construction issued by the Court at a *Markman* Hearing conducted on September 27, 2006.

The Supplemental Response is subject to the following general objections.

## GENERAL OBJECTIONS

Each of Holmes' responses are subject to the following objections and conditions as if

such objections and conditions were fully set forth in said response.  The responses do not repeat

each such objection or condition.

1.     Holmes objects to the Interrogatories to the extent they request information not

relevant to the subject matter of the pending action.

2.     Holmes objects to the Interrogatories to the extent they are unreasonably

cumulative or duplicative, or seek information obtainable from some other source that is more

convenient, less burdensome or less expensive.

3.    Holmes objects to the Interrogatories to the extent they request information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the protection afforded to materials prepared in anticipation of litigation or any other applicable privilege or immunity.  Nothing contained in these objections and responses is intended to be, or in any way constitutes, a waiver of any applicable privilege, immunity or doctrine.  Any document or thing withheld on the grounds of an applicable privilege or immunity will be identified on a separate privilege log.  Holmes objects to identifying documents generated since the inception of this lawsuit by or at the direction of trial counsel, as such identification is likely to reveal work-product and/or attorney-client privileged information.

4.    Holmes objects to the disclosure of confidential information and the production of documents containing confidential information until the Court enters an appropriate Protective Order.

5.    Holmes objects to the Interrogatories to the extent they impose obligations on Holmes that go beyond the requirements set forth in the Federal Rules of Civil Procedure and Local Rules for the District of Massachusetts.

6.    Holmes objects to West Bend's definitions and instructions to the extent they impose obligations on Holmes that go beyond the requirements set forth in the Federal Rules of Civil Procedure and Local Rules for the District of Massachusetts.

7.    As discovery in this case is ongoing, Holmes reserves the right to supplement its objections and responses to West Bend's requests.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections, Holmes responds as follows:

### Interrogatory No. 1

Identify each claim of the Holmes patents-in-suit that you contend is infringed by West Bend Housewares or Focus and state in detail your infringement contentions and claim construction by completing a claim chart comparing each West Bend Housewares cooker you contend infringes any of the Holmes patents-in-suit with each asserted claim of each Holmes patent-in-suit, on a limitation-by-limitation basis, describing the complete factual and legal bases for any contention by Holmes that any claim limitation is present in the West Bend Housewares cooker(s) you accuse of infringement, including whether each element is present literally or present under the doctrine of equivalents, whether the alleged infringement is direct or indirect, and identifying the documents and things that you contend supports your contentions and claim construction, and each person having knowledge of any factual bases for the response.

### Supplemental Response to Interrogatory No. 1

Holmes objects to this interrogatory to the extent that it seeks information protected by the attorney/client privilege and/or work product immunity. Subject to and without waiver this objection and the General Objections, Holmes responds as set forth in Exhibit A attached hereto. Holmes further responds that the documents and things supporting the infringement contention are the file histories of the Holmes patents-in-suit, the West Bend accused products and the West Bend Instruction Manual for the accused products. The persons having knowledge regarding the infringement contentions are counsel of record for Holmes, Charles R. Hoffmann and Glenn T. Henneberger.

## VERIFICATION OF ANSWERS

I, Timothy Gallogly, Esq., an authorized agent of Sunbeam Products, Inc.,

d/b/a Jarden Consumer Solutions f/k/a The Holmes Group ("Holmes") declare that I have read

the foregoing answers on behalf of Holmes, that I have read the foregoing answers and subscribe

to the same on behalf of Holmes, that said answers were prepared with assistance and advice of

counsel and other representatives of Holmes, that said answers, subject to inadvertent or

undiscovered errors, are based on, and therefore, limited by the records and information still in

existence, presently recollected and thus far discovered in the course of preparation of these

answers; that consequently, Holmes reserves the right to make changes in the answers if it

appears at any time that omissions or errors have been made therein or that more accurate

information is available; and that subject to the

limitations set forth herein, that said answers are true to the best of my knowledge, information

and belief.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on October ___6___, 2006.

SUNBEAM PRODUCTS, INC.,
d/b/a JARDEN CONSUMER SOLUTIONS
f/k/a THE HOLMES GROUP

By: _____
Name:  Timothy Gallogly, Esq.
Title:   Vice-President and
          Associate General Counsel

- 4 -

The undersigned subscribes to the foregoing objections.

Respectfully submitted,

SUNBEAM PRODUCTS, INC.,
d/b/a JARDEN CONSUMER SOLUTIONS
f/k/a THE HOLMES GROUP
By its Attorneys,

Dated:  October 6, 2006

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550
Facsimile:  (516) 822-3582

and

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Joseph W. Corrigan (BBO No. 647393)
jcorrigan@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  (617) 973-6100
Facsimile:  (617) 367-2315

- 5 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing HOLMES' SUPPLEMENTAL RESPONSE

TO WEST BEND'S INTERROGATORY NO. 1 IN VIEW OF CLAIM CONSTRUCTION BY

THE COURT has been served via e-mail, this 6th day of October, 2006 upon the following:

> Erik Paul Belt
> Berg & Sunstein LLP
> 125 Summer Street
> Boston, Massachusetts 02110
> Tel: (617) 443-9292
> Facsimile: (617) 443-0004
> ebelt@bronsum.com
>
> Of Counsel:
>
> Charles A. Laff
> Martin L. Stern
> Michael Best & Friedrich LLP
> 401 N. Michigan Ave. – Ste. 1900
> Chicago, Illinois 60611
> Tel: (312) 222-0800
> Facsimile: (312) 222-0818
> calaff@michaelbest.com
> MLStern@michaelbest.com
>
> and
>
> Michael E. Husmann
> Joseph T. Miotke
> Michael Best & Friedrich LLP
> 100 E. Wisconsin Ave.
> Milwaukee, Wisconsin 53202
> Tel.: (414) 271-6550
> Facsimile: (414) 277-0656
> mehusmann@michaelbest.com
> jtmiotke@michaelbest.com

Glenn T. Henneberger

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  05-CV-11367 WGY |
| v. | : | (Alexander, M.J.) |
| | : | |
| WEST BEND HOUSEWARES, LLC and | : | |
| FOCUS PRODUCTS GROUP, L.L.C., | : | |
| | : | |
| Defendants. | : | |

**EXHIBIT A TO HOLMES' SUPPLEMENTAL RESPONSE TO WEST BEND'S
INTERROGATORY NO. 1 IN VIEW OF CLAIM CONSTRUCTION BY THE COURT**

**U.S. PATENT NO. 6,573,483 B1**

| **Claim 13** | **West Bend Programmable Slow-Cooker** | **Literal/DOE** |
|---|---|---|
| 13.  A method of using a programmable slow-cooker appliance, the method comprising: | | |
| providing a food item; | Operating the West Bend's programmable slow-cooker includes the step of providing a food item. | literal |
| placing the food item into a cooking unit of the slow-cooker appliance; | Operating the West Bend's programmable slow-cooker includes the step of placing the food item into the cooking unit.  (See Instruction Manual, p. 4.)[1] | literal |
| selecting a cooking temperature and time using a programmable controller mounted to a housing fixedly mounted to a heating unit; and | West Bend's programmable slow-cooker allows the user to select a cooking temperature and time using a programmable controller mounted to a housing, the housing being fixedly mounted to a heating unit.  (See Instruction Manual, p. 4, program cooking, steps 1 and 2.) | literal and/or DOE |
| changing the heating unit temperature automatically to a lower temperature after the selected time. | The West Bend's programmable slow-cooker performs the step of automatically changing the heating unit temperature to a lower temperature after the expiration of the selected time.  (See Instruction Manual, p. 4, program cooking, step 3.) | literal |

---

[1]  West Bend's Instruction Manual was attached as Exhibit C to Holmes' Complaint.

| Claim 14 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 14. The method of claim 13, further comprising notifying a user with illuminated indicators that the slow-cooker appliance is powered and that the time is active. | The West Bend programmable slow-cooker includes illuminated indicators in the form of a digital display and LED's to notify the user that the appliance is powered and that the time is active. | literal |

| Claim 17 | | |
|---|---|---|
| 17. The method of claim 13, wherein the temperature and time are set in increments. | The West Bend programmable slow-cooker temperature and time are set in increments. (See Instruction Manual, p. 4, program cooking, steps 2 and 3.) | literal |

| Claim 19 | | |
|---|---|---|
| 19. The method of claim 13, further comprising emitting a sound. | West Bend's programmable slow-cooker emits a sound. (See Instruction Manual, p. 5, Helpful Hints, bullet #3.) | literal |

**U.S. PATENT NO. 6,740,855 B1**

| Claim 20 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 20.  A programmable slow-cooker appliance comprising: | | |
| a heating unit including a bottom and a continuous sidewall extending from said bottom, said bottom and said continuous sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall; | West Bend's programmable slow-cooker includes a heating unit (10) having a bottom (15) and a continuous sidewall (17) extending from the bottom to define a well-like chamber. | literal |
| a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall; | West Bend's programmable slow-cooker includes a heating element mounted to the heating unit and positioned between an outer sidewall and interior sidewall. | literal |
| a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit; | West Bend's programmable slow-cooker includes a plastic housing (30) in the shape of half an oval fixedly mounted to and projecting outside the sidewall (17) of the heating unit (10). | literal and/or DOE |
| a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time; | West Bend's programmable slow-cooker includes a programmable circuit including a printed circuit board positioned within the housing (30) and configured to automatically switch the heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time.  (See Instruction Manual, p. 4, program cooking, step 3.) | literal and/or DOE |
| a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time; and | West Bend's programmable slow-cooker includes a control panel on the front face of the housing and including a digital display and push-buttons thereon (42) mounted to the housing and having a user interface in the form of push-buttons connected to the programmable circuit for selecting a cooking time and temperature. (See Instruction Manual, p. 4, steps 1 and 2.) | literal and/or DOE |
| a cooking unit removably positioned in said well-like chamber. | West Bend's programmable slow-cooker includes a cooking unit (20) removably positioned in the well-like chamber. | literal |

- 3 -

| Claim 24 | West Bend Programmable Slow-Cooker | Literal/DOE |
|---|---|---|
| 24. A programmable slow-cooker appliance as described in claim 20 wherein said housing is comprised of a thermoplastic material and said cooking unit is comprised of a ceramic material, said cooking unit being removably positioned in said well-like chamber. | West Bend's programmable slow-cooker includes a housing (30) made of a thermoplastic material and a cooking unit (20) made of ceramic, the cooking unit being removably positioned in the well-like chamber. | literal |

| Claim 26 | | |
|---|---|---|
| 25. A programmable slow-cooker appliance as described in claim 20 wherein said programmable circuit is configured such that a user cannot initially set a lower temperature warm mode. | West Bend's programmable slow-cooker includes a programmable circuit such that the warm mode cannot be initially set as a programmed temperature. (See Instruction Manual, p. 4, program cooking, step 1.) | literal |

| Claim 27 | | |
|---|---|---|
| 27. A programmable slow-cooker appliance as described in claim 20 including a switch operatively associated with said control panel, said programmable circuit being configured such that subsequent pushes of said switch activates different cook modes. | West Bend's programmable slow-cooker includes a switch on the control panel such that subsequent pushes of the switch sets different cook modes. (See Instruction Manual, p. 4, program cooking, step 1.) | literal |

| Claim 29 | | |
|---|---|---|
| 29. A programmable slow-cooker appliance as described in claim 20 wherein said housing includes a thermoplastic portion adjoining and extending into said continuous sidewall of said heating unit. | West Bend's programmable slow-cooker includes a housing (30) having a thermoplastic portion which extends into the sidewall (17) of the heating unit (10). | literal |

- 4 -