IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HOLMES GROUP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> WEST BEND HOUSEWWARES, LLC and FOCUS PRODUCTS GROUP, LLC, <br><br> Defendants. | Civil Action No. 05-CV-11367 WGY <br> (Alexander, M.J.) |

**WEST BEND'S COUNTER-STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE ARE GENUINE ISSUES OF DISPUTE
IN SUPPORT OF WEST BEND'S OPPOSITION TO
HOLMES' MOTION FOR SUMMARY JUDGMENT OF
<u>NONINFRINGEMENT OF WEST BEND'S DESIGN PATENTS</u>**

        Michael E. Husmann
        Joseph T. Miotke
        MICHAEL BEST & FRIEDRICH LLP
        100 East Wisconsin Avenue, Suite 3300
        Milwaukee, Wisconsin 53202-4108
        Telephone:    414-271-6560

        Martin L. Stern
        MICHAEL BEST & FRIEDRICH LLP
        180 North Stetson Avenue, Suite 2000
        Chicago, Illinois 60601-6710
        Telephone:    312-222-0800

        Lee Carl Bromberg, BBO #058480
        Erik Paul Belt, BBO #558620
        BROMBERG & SUNSTEIN LLP
        125 Summer Street
        Boston, Massachusetts 02110-1618
        Telephone:    617-443-9292

December 22, 2006        *Attorneys for Defendants*

Pursuant to Rule 56.1 of the Local Rules for The United States District Court for the District of Massachusetts, defendant West Bend Housewares, LLC submits the following counter-statement of material facts as to which there are genuine issues of dispute and which do not entitle Holmes to summary judgment of noninfringement of West Bend's (WB) design patents.

**I.     WB's Claim Constructions Should Be Adopted Because They Evoke The Overall Visual Appearance of the Patented Design**

1.     Holmes' proposed claim constructions focus upon the specific configuration of the slope on the insert's lip rather than the overall visual impression created by the thinning of the lip around its entire perimeter. Woodring Decl.,[1] ¶ 4. Holmes likewise describes the knob, which an ordinary observer would perceive as mushroom shaped, in terms of each individual surface and the precise geometry of surface edges, which an ordinary observer would not notice. *Id.* Holmes' proposed construction for the '993 patent also ignores the skirt on the lid altogether. *Id.*

2.     As evident from Figs. 1 and 6 from WB's patents, the shape of the heating and cooking units is oval, and not a rounded-off rectangle. Woodring Decl., ¶ 5. The West Bend design does not have four corner edges or relatively small arcs of the four corner edges and does not give the visual impression of a near rectangle with slightly bowed sides. *Id.* There is no rectangle, straight sides, or corners in West Bend's design. *Id.*

---

[1] "Woodring Decl." refers to the Declaration of Cooper C. Woodring In Support Of West Bend's Opposition To Holmes' Motion For Summary Judgment Of Noninfringement Of West Bend's Design Patents.

## II. Holmes' Accused Products Are Substantially Similar To The Patented Designs Under The Ordinary Observer Test

3. A comparison of all the figures from each of WB's design patents to the Holmes' accused products demonstrates that the accused products are substantially similar to the claimed design of WB's patents in the eyes of an ordinary observer. Woodring Decl., ¶ 7.

4. Given a slow cooker's relatively low cost, market, and channels of distribution, an ordinary observer in this case would be an everyday consumer who has recently purchased a slow cooker or is considering purchasing one. *Id.* ¶ 6. Holmes notably offers no definition for an ordinary observer. Holmes Br.

5. Figure 1 from the '993 patent is a logical starting part for comparing the claimed design to the accused products. Woodring Decl., ¶ 7.

6. Neither Holmes nor its expert compares any of the accused products with Fig. 1 of the '993 patent. Woodring Decl., ¶ 9; Holmes Br.

7. The accused products appear nearly identical, and unquestionably substantially similar, to Fig. 1. *Id.* An ordinary observer would thus conclude that Fig. 1 from the '993 patent is substantially similar to the Holmes accused products. *Id.*

8. An ordinary observer would likewise conclude that Fig. 1 from both the '266 and '664 patents also are substantially similar to Holmes' accused products. Woodring Decl., ¶ 8.

9. In addition to the design features of the '933 patent, the '266 patent further claims a thin band around its bottom perimeter and an opaque round shaped, disc-like (somewhat mushroom shaped) knob mounted on a round shaped smaller diameter pedestal, which are both

2

present in Holmes' model nos. 3730W, 37351C, 3735W, 3752SM, 5070TCW, 5445BCN, 6445BC, SCV450SS, and SCV500SM. Woodring Decl., ¶ 8; Henneberger Decl., Ex. B.



10. The '664 patent claims the same design features as the '993 patent and also (1) an opaque round



shaped and disc-like (somewhat mushroom shaped) knob



mounted on a round shaped smaller diameter pedestal (as claimed in the '266 patent) and (2) four opaque small cylindrical feet placed in a rectangular pattern on the cooker's bottom. Henneberger Decl.,[2] Ex. C.

11. A comparison of Fig. 6 from the '993 patent and two representative samples of Holmes' accused cookers readily shows that in the eye of an ordinary observer, the claimed design and the accused products are substantially similar. Woodring Decl., ¶ 9.

12. Both the patented designs and accused products are oval or elliptical in shape with inserts, i.e., the cooking vessel, that have outwardly flared handles on both right and left ends with a slight "ogee" or reverse curve between the

---

[2] "Henneberger Decl." refers to the Declaration of Glenn T. Henneberger, Esq. In Support of Plaintiff's Motion For Summary Judgment of Non-Infringement Of West Bend's Design Patents.

3

handle itself and the perimeter of the generally oval shaped insert. Woodring Decl., ¶ 10.

13.     Both the claimed designs of the WB design patents and accused products also include an opaque skirt sitting atop the transparent domed lid, the skirt larger in diameter than the knob handle. *Id.*

14.     The insert, or cooking vessel, lip of the patented designs and accused products have an edge that thins around the insert's entire perimeter, which further buttresses the conclusion that an ordinary observer would view the overall designs as substantially similar. Woodring Decl., ¶ 10.

15.     The bottom view of the claimed designs (Fig. 7) and the accused products also would be perceived as substantially similar in the eye of the ordinary observer. Woodring Decl., ¶ 11. While the accused products have fastening devices,  holes, and stamped depressions to add structural integrity to the flat bottom surface, these features are functional (*Id.*) and, therefore, play no role in the design patent infringement analysis here.

16.     As to the '664 patent that includes four feet (the '993 and '266 patents do not claim the feet), a comparison of Fig. 7 with a representative sample of the accused Holmes

cookers demonstrates that the overall appearance of the patented design would be substantially similar despite the minor differences in the appearance of the feet on the accused products. Woodring Decl., ¶ 11.

### III. Holmes Misapplied The Ordinary Observer Test And Never Considers The Overall Design Of West Bend's Patents, Precluding Summary Judgment

17. Holmes never asked the inventors to compare the overall design of the WB design patents with the accused products. Henneberger Decl., Exs. N and O. Rather, Holmes improperly focused upon individual differences between the designs. *Id.*

18. Both inventors actually testified that while there are small differences between the designs, the designs are actually very similar. *Id.*, Ex. O at 46:7-9; Ex. A, Dobson Dep. Tr., at 97:13-98:10.

19. The inventors are not "ordinary observers." They are intimately familiar with the details of their designs, and thus would perceive minor differences in shape that would not be apparent to an ordinary observer. Woodring Decl., ¶ 12.

20. An ordinary observer in this case would be an everyday customer who has recently purchased a slow cooker or is considering purchasing one, without the expertise of the inventors or giving attention to the minute details about which Holmes quizzed the inventors. *Id.* ¶ 6.

21. Holmes relies on an "invariant feature analysis" used by its expert witness to argue that the shape of the accused products is not substantially similar to the patented designs. Holmes' reliance upon the "invariant feature analysis" bears no relationship to how the "ordinary observer" sees or compares overall designs. Woodring Decl., ¶ 13. To the contrary, "invariant feature analysis" is a method employed only when a human **cannot** distinguish between two substantially similar objects. *Id.*

5

22. For example, when targeting a tank, a fighter pilot, in may instances, must ensure that an enemy tank – and not a "friendly" tank – is being targeted because of their similarity. Consequently, computerized invariant feature analysis systems are employed to compare hundreds of details of the targeted tank's shape against a data base to confirm that the tank is an enemy. *Id.* Invariant feature analysis is also the methodology behind computerized facial recognition software in which highly detailed invariant facial features are compared to millions of photographs to locate a matching face. Woodring Decl., ¶ 14. While two faces may appear substantially similar to an ordinary observer, the use of invariant feature analysis reveals differences in the facial features to ensure that that faces are correctly matched. *Id.*

23. An ordinary observer would not decompose the shape of the claimed designs and accused products to perceive the supposed differences identified by Holmes' "invariant feature analysis." Woodring Decl., ¶ 15. Holmes' "invariant feature analysis" is based solely on patent Fig. 6 because Holmes' expert says that Fig. 6 is allegedly the "dominant shape" of the WB design patents.

24. If any view is dominant, it is the front perspective view of patent Fig. 1 because that is how consumers would view the product at the point of purchase, as demonstrated by Holmes' own packaging and catalog sheets which feature a front perspective view like patent Fig. 1. Woodring Decl., ¶ 16.

25. The patent examiner selected Fig. 1 as being most representative and descriptive of the patented design, not Fig. 6. *Id.*

26. If one needs to employ an invariant feature analysis to determine that two designs are different, it means that the designs cannot be readily distinguished by the human eye and,

6

therefore, use of such an analysis as Holmes does here suggests that, to an ordinary observer, the two designs are substantially similar. Woodring Decl., ¶ 13.

27.  Holmes' expert also bases his opinion on orthographic scale drawings of the accused products that are inaccurate. Woodring Decl., ¶ 17. Even if they were accurate, these drawings do not focus upon the overall design of West Bend's patents compared with the overall design of the accused products and instead focus upon minor details. *Id.* Additionally, an ordinary observer would not resort to these orthographic scale drawings when comparing the overall design of WB's patents with Holmes' accused products. *Id.*

### IV.  Holmes' Accused Products Include The Points Of Novelty Of The Patented Designs

28.  Following are the points of novelty of the WB's patented designs.

| '993 Patent | '266 Patent | '664 patent |
|---|---|---|
| Lid: a translucent and oval shaped lid having no integral skirt or knob | Lid: a translucent and oval shaped lid having no integral skirt or knob | Lid: a translucent and oval shaped lid having no integral skirt or knob |
| Insert: an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter | Insert: an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter | Insert: an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter |
| | | Feet: four opaque small cylindrical feet placed in a rectangular pattern on the body's bottom |

Woodring Decl., ¶ 18; Woodring Nov. 3 Rpt., ¶¶ 46-53. These points of novelty are based upon the references cited during prosecution of the '993, '266, and '664 patents as well as other prior

7

art identified by Holmes. *Id.* The points of novelty are the same for the '993 and '266 patents, with the '664 patent also including the feet as a point of novelty. *Id.*

29. The Holmes accused products appropriate the points of novelty of WB's patents. The above comparison of Fig. 6 of the patents to representative samples of Holmes' accused cookers demonstrates that the accused cookers appropriate the point of novelty relating to the translucent domed and oval-shaped lid having no integral skirt or knob. Woodring Decl., ¶ 19; Woodring Nov. 3 Rpt., ¶¶ 46-53.

30. Figures 1, 2, and 6 of the patents show another point of novelty appropriated by Holmes, namely, an opaque and oval shaped insert separating the lid from the cooker body with the insert having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter. Woodring Decl., ¶ 20.



31. Holmes identifies two separate, and incorrect, points of novelty that are different from those offered by WB. Woodring Decl., ¶¶ 21-22.

32. "The domed lid being shaped to make a smooth transition from its outer periphery to the upper edge of the cooking vessel lip" is not a point of novelty to the WB design patents as proposed by Holmes. *Id.* ¶ 21. Instead, the proper point of novelty directed to the lid of the patented designs encompasses "a translucent and oval shaped lid having no integral skirt or

8

knob," as identified above. *Id.* Regardless, at least some of the accused cookers include such a smooth transition between the lip and lid, as shown here. *Id.*



33.     "The lip of the cooking vessel sloping from a top surface to a bottom surface downwardly and outwardly throughout is perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat" is not a point of novelty to the WB design patents as proposed by Holmes. Woodring Decl., ¶22. Instead, the proper point of novelty directed to the insert of the patented design is "an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles and having a material thickness that thins around the insert's entire perimeter," as identified above. *Id.*

34.     As shown above in the comparison of Fig. 2 of the '993 patent to representative samples of the accused products, at least some of the accused cookers include such a smooth transition between the lip and lid, as shown here. Woodring Decl., ¶ 21.

## V.  West Bend Is Entitled To Damages From The Date Of Its Counterclaim

35.     Holmes seeks damages on several different models of WB's accused slow cookers from the filing of its utility patent infringement complaint even though Holmes only identified one WB model in its complaint. Ex. B. Prior to its November 3, 2006 expert report on damages, Holmes never identified three additional WB slow cooker models for which Holmes

9

seeks damages back to the time of the filing of its complaint and did not even identify these models in its most recent supplemental interrogatory response on October 6, 2006 regarding the purported of infringement Holmes' patents.  Ex. C.

Dated: December 22, 2006 WEST BEND HOUSEWARES, LLC
By their attorneys,


/s/ Erik Paul Belt
Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02100-1618
Telephone:    617-443-9292
Facsimile:     617-443-0004
E-mail:ebelt@bromsun.com

| | |
|---|---|
| Michael E. Husmann | Martin L. Stern |
| Joseph T. Miotke | MICHAEL BEST & FRIEDRICH LLP |
| MICHAEL BEST & FRIEDRICH LLP | 180 North Stetson Avenue, Suite 2000 |
| 100 East Wisconsin Avenue, Suite 3300 | Chicago, Illinois 60601-6710 |
| Milwaukee, Wisconsin 53202-4108 | Telephone:    312-222-0800 |
| Telephone:    414-271-6560 | Facsimile:     312-222-0818 |
| Facsimile:     414-277-0656 | |

CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants


/s/ Erik P. Belt
Erik Paul Belt

10