# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,                      :
                                             :
    Plaintiff/Counterclaim-Defendant,        :        Civil Action No.  1: 05-CV-11367 WGY
                                             :        (Alexander, M.J.)
                       v.                    :
                                             :
WEST BEND HOUSEWARES, LLC and                :
FOCUS PRODUCTS GROUP, L.L.C.,                :
                                             :
    Defendants/Counterclaim-Plaintiffs.  :


## HOLMES' RESPONSE TO WEST BEND'S SECOND MOTION
## FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
Alan M. Sack, Esq. (*Pro Hac Vice*)
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  516-822-3550

Nicholas J. Nesgos (BBO No. 553177)
Joseph W. Corrigan (BBO No. 647393)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  617-973-6100

*Attorneys for Plaintiff*

December 22, 2006

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ....................................................................................... iii

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT ......................................................................................................1

    A.  Legal Standard for Summary Judgment ...................................................1

        1.  Literal Infringement ......................................................................1

        2.  Doctrine of Equivalents .................................................................1

    B.  Claim 13 of U.S. Patent No. 6,573,483 Is Infringed by the
West Bend Programmable Slow-Cookers .................................................2

        1.  Claim Construction of Claim 13 of the '483 Patent ......................2

        2.  Infringement of Claim 13 of the '483 Patent .................................3

        3.  Holmes Is Not Precluded From Asserting Infringement of
Claim 13 of the '483 Patent ...........................................................5

            a.  All the Claimed Elements Are Present Either Literally
or Equivalently ................................................................5

            b.  The DOE is Applicable Since No Prosecution History
Estoppel (PHE) Exists With Respect to Claim 13 of the
'483 Patent .......................................................................6

    B.  Claim 20 of U.S. Patent No. 6,740,855 (the '855 Patent) Is Infringed
By the West Bend Programmable Slow-Cookers ...................................10

        1.  The Court's Construction of Claim 20 of the '855 Patent ...........11

        2.  There Is No Issue of Estoppel With Respect to Claim 20
of the '855 Patent ........................................................................15

        3.  West Bend's Programmable Circuit Falls Within the Scope of
Claim 20 Under the DOE .............................................................17

        4.  The Presumption of Estoppel Does Not Apply ...........................18

III.    CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ...................................................................................9

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
   183 F.3d 1334 (Fed. Cir. 1999) .................................................................................13

*CAE Screenplates Inc. v. Heinrich Fielder GmbH & Co. KG*,
   224 F.3d 1308 (Fed. Cir. 2000) ...................................................................................1

*Depuy Spine, Inc., v. Medtronic Sofamar Danek, Inc.*,
   2006 WL 3346155 (CA. Fed. (Mass.)) *8 .............................................................6, 18

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
   62 F.3d 1512 (Fed. Cir. 1995)
   *rev'd on other grounds*, 520 U.S. 17 (1997) ..............................................................2

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
   402 F.3d 1364 (Fed. Cir. 2005) .................................................................................13

*Pfaff v. Wells Elecs., Inc.*,
   5 F.3d 514 (Fed. Cir. 1993)..........................................................................................1

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)....................................................................................12

*W.L. Gore & Assoc., Inc. v. Gearlock, Inc*,
   842 F.2d 1275 (Fed. Cir. 1988) ...................................................................................9

**STATUTES**

Fed .R. Civ. P. 56(c) ........................................................................................................1

## I.    INTRODUCTION

On September 27, 2006 the Court rendered its decision on claim construction at the *Markman* Hearing.  At a hearing regarding West Bend's motion for summary judgment, the Court held that there was no literal infringement; however, the Court denied West Bend's motion with respect to infringement under the doctrine of equivalents ("DOE").  As will be shown below, triable issues of fact exist regarding whether the accused West Bend slow-cookers include only insubstantial changes from the claimed invention and therefore infringe under the DOE.

## II.    ARGUMENT

### A.    Legal Standard for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Nonetheless, the Court must view the evidence in the light most favorable to the non-moving party.  *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 517 (Fed. Cir. 1993).

### 1.    Literal Infringement

A two-step analysis is performed to determine whether an accused device literally infringes a patent claim.  *CAE Screenplates Inc. v. Heinrich Fielder GmbH & Co. KG*, 224 F.3d 1308, 1316 (Fed. Cir. 2000).  "First, the claims must be correctly construed to determine the scope of the claims.  Second, the claims must be compared to the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998).  If the accused product meets each of the limitations contained in a claim, then the product literally infringes the patent.

### 2.    Doctrine of Equivalents

A device which does not infringe a claim literally may still infringe the claim under the doctrine of equivalents if each and every limitation is literally or equivalently present.  *CAE Screenplates*, 224 F.3d at 1318-19.  A claim limitation is equivalently present if there are only "insubstantial differences" between the limitation and the corresponding elements of the device.

*Id.* at 1319 (citing *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517-18

(Fed. Cir. 1995) *rev'd on other grounds,* 520 U.S. 17 (1997).

> **B.**  **Claim 13 of U.S. Patent No. 6,573,483 Is Infringed by the West Bend Programmable Slow-Cookers**

West Bend's entire motion is based on the incorrect premise that the Court's claim

construction of Claim 13 of the '483 patent requires the programmable circuit to be entirely

within a housing mounted outside the heating unit.  To the contrary, the Court construed Claim

13 to define a housing "mounted to an located on" an outer sidewall of the heating unit.  The

programmable controller, in the form of an electrical circuit, is mounted to the housing.

(*Markman* Tr. pp. 20-21; Ex. E to Holmes' First Counter-Statement).

Claim 13 of the '483 patent states:

> 13.  A method of using a programmable slow-cooker appliance, the method comprising:
>     providing a food item;
>     placing the food item into a cooking unit of the slow-cooker appliance;
>     selecting a cooking temperature and time using a programmable controller
>         mounted to a housing fixedly mounted to a heating unit; and
>     changing the heating unit temperature automatically to a lower
>         temperature after the selected time.

('483 patent, Claim 13; Ex. A to Holmes' First Counter-Statement)

> **1.**  **Claim Construction of Claim 13 of the '483 Patent**

The Court held that "a programmable controller" is "a form of an electrical circuit or

circuits including input and output devices which permit an operator to select a cooking

temperature and cooking time."  *Markman* Tr. p. 20, lines 19-22.  The Court further held that the

programmable controller "mounted to a housing fixedly mounted to a heating unit" means the

housing is "mounted to and located on the outside of the heating unit."  *Markman* Tr. p. 20, line

23 - p. 21, line 3.  On this construction, the Court further noted that "the way you [Holmes] teach

this is outside, or at least overwhelmingly or generally outside" without actually requiring such

limitations to form a part of its construction. *Markman* Tr. p. 24, line 10 to p. 25, line 7.

During briefing of West Bend's first motion for summary judgment, both parties requested modification to the claim construction. At the Motion Hearing conducted on October 18, 2006, the Court ruled that its claim construction would not be changed. Motion Hearing Tr. p. 2, lines 20-22. Contrary to West Bend's assertion and the clear ruling by the Court, Holmes did not stipulate that all the asserted claims require the entire electrical circuit to be positioned within the housing. This limitation only appears in the Court's construction of asserted Claim 20 of U.S. Patent No. 6,740,855 (the '855 patent). Motion Hearing Tr. p. 2, line 23 - p. 3, line 12. Thus, the Court's construction of Claim 13 of the '483 patent does not include any such limitation and the Court's granting of summary judgment of no literal infringement cannot be based on a requirement that the "entire" programmable circuit be provided in the housing.

### 2.    Infringement of Claim 13 of the '483 Patent

As construed by the Court, Claim 13 of the '483 patent is infringed by the accused West Bend slow-cookers at least under the DOE, if not literally. There is no dispute that the accused slow-cookers literally perform all the method steps with the possible exception of the "selecting step." There is also no dispute that the accused slow-cookers permit an operator to "select a cooking time and temperature using a programmable controller." The programmable controller limitation as construed by the Court is literally present, i.e., the accused slow-cooker includes an electrical circuit or circuits including input and output devices which permit an operator to select a cooking temperature and cooking time. (Ex. 1, ¶ 11).

The next limitation defines the programmable controller mounted to a housing fixedly mounted to a heating unit. As stated above, the Court has construed this limitation to mean "a housing mounted to and located on the outside of the heating unit." Specifically, the accused slow-cookers include a housing formed by an inner housing shell (white plastic) and outer

- 3 -

housing shell (black plastic) which together form an enclosure for a printed circuit board, the circuit board including input and output devices mounted thereon.  Both the inner housing shell and outer housing shell are affixed to the outer sidewall of the heating unit by screws, wherein the inner housing shell is fastened to an inside surface of the outer sidewall and the outer housing shell is fastened to the outside surface of the outer sidewall.  The entire outer housing shell and a portion of the inner housing shell extend beyond the outer surface of the outer sidewall of the heating unit as shown in the photographs below:

  

Thus, the electrical circuit including input and output devices which permit an operator to select a cooking time and temperature are mounted in a housing mounted to and located on the heating unit such that every claim limitation is literally present.  (Ex. l, ¶¶ 12-14).

Alternatively, any differences between the claimed method and the accused devices are clearly insubstantial and fall within the purview of the DOE.  Specifically, West Bend's housing includes portions which extend both into the heating unit as well as projecting outwardly beyond the outer surface of the outer sidewall as shown above.  The function of the housing is to provide an enclosure for at least a portion of the electrical circuit of the programmable controller as disclosed in the specification.  ('483 patent, Col. 3, lines 17-18; Col. 5, lines 19-37).  The way in which this function is accomplished by the accused slow-cooker is by providing inner and outer housing portions which are fixedly mounted to the outer sidewall of the heating unit to form an enclosure in which a printed circuit board is mounted.  The printed circuit board has input and

output devices mounted thereon to set a cooking temperature and time. The result is substantially the same since the enclosure extends outwardly beyond an outer surface of the sidewall. (Ex. 1, ¶ 15). Accordingly, the West Bend slow-cooker includes each limitation of Claim 13 either literally or equivalently.

It is unclear whether the Court's claim construction related to the housing of Claim 13 includes the limitation of being "at least overwhelmingly or generally outside" the outer sidewall of the heating unit. (*Markman* Tr. p. 23, line 17 - p. 24, line 3). Should the Court require such a limitation, the West Bend housing still falls within the scope of Claim 13. It is indisputable that the housing formed by the inner and outer shell portions is "generally outside" the outer sidewall. The entire outer shell portion and part of the inner shell portion project outwardly beyond the outer surface of the heating unit. Thus, contrary to West Bend's assertion that approximately 50% of the housing is inside and 50% is outside the heating unit, more than 50% of the inner and outer housing portions which together form the housing clearly extend beyond the outer sidewall; i.e., generally or largely outside the sidewall. To the extent that the West Bend slow-cooker housing does not literally meet the claim limitation, any perceived differences are clearly insubstantial. Whether the housing extends from the outer sidewall 51%, 75% or 90% would not be considered a substantial difference by those skilled in the art and the function, way, result test is still met. (Ex. 1, ¶¶ 16-18). Accordingly, the West Bend slow-cooker falls within the scope of Claim 13 either literally or under the DOE.

### 3.    Holmes Is Not Precluded From Asserting Infringement of Claim 13 of the '483 Patent

#### a.    All the Claimed Elements Are Present Either Literally or Equivalently

All the elements of Claim 13 of the '483 patent are present in the accused slow-cookers either literally or equivalently. The Federal Circuit has recently clarified its application of the

All Elements Rule and vitiation of claim elements stating:

> It is important to note that when we have held that the doctrine of equivalents cannot be applied to an accused device because it "vitiates" a claim limitation, it was not to hold that the doctrine is always foreclosed whenever a claim limitation does not literally read on an element of an accused device; such an interpretation of the "all elements" rule would swallow the doctrine of equivalents entirely.  *See Ethicon*, 149 F.3d at 1316-17 (holding that a similar interpretation "would force the All Elements rule to swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement" (footnote omitted)).   "[A]ny analysis of infringement under the doctrine of equivalents *necessarily* deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim."  Id. at 1317 (emphasis in original).

*Depuy Spine, Inc., v. Medtronic Sofamar Danek, Inc*., 2006 WL 3346155 (CA. Fed. (Mass.)) *8.

West Bend does not dispute that it has a programmable controller in the form of an electrical circuit as construed by the Court.  Nor does West Bend dispute that a housing is provided for at least a portion of the electrical circuit.  The parties have a fundamental disagreement as to what components form the housing; however, Holmes has provided evidence in the form of Dr. Trumper's declarations that the housing of the accused slow-cooker is formed by the inner and outer housing shells and is "mounted to and located on the outside" of the outer sidewall as construed by the Court.  (Ex. 1, ¶¶ 14-17).  If the Court requires the housing to be "largely" outside, the West Bend slow-cooker literally meets this limitation and, is at best, insubstantially different.  Thus, no claim limitations are missing in their entirety and the all elements rule has been satisfied.

### b.  The DOE is Applicable Since No Prosecution History Estoppel (PHE) Exists With Respect to Claim 13 of the '483 Patent

During prosecution of the '483 patent, Claim 13 was amended by adding the language italicized to the selecting step:  "selecting a cooking temperature and the using a programmable controller *mounted to a housing fixedly* mounted to a heating unit."  Applicants made the following arguments relevant to the issue of PHE raised by West Bend:

- "As mentioned above, neither Rivelli nor Frey describe a housing for a programmable controller fixedly mounted to the outside of the heating unit." (MKM0095).[1]

- "In Yung, a programmable controller is mounted inside the [outer] housing, not outside." (MKM0096).

- "While Rivelli and Yung disclose controllers mounted to a single housing, Skutt discloses a kiln in which a controller is not fixedly mounted on the outside of the kiln, but is connected via hinges… Therefore, even an improper combination does not describe or suggest the claimed invention, including a controller housing mounted fixedly to the outside of the heating unit." (MKM0096).

Following the above-noted amendment and remarks, the claims were allowed without further comment. The specific claim language and the remarks made during prosecution make clear that the West Bend housing structure was not disclaimed and no prosecution history estoppel exists which would prevent application of the DOE. By way of the amendment and remarks, Holmes, at best, disclaimed a (1) hinged controller housing, such as disclosed in Skutt (MKM0546-54) and (2) a control module which is positioned entirely within the exterior surface of the heating element such as disclosed in Rivelli (MKM0291-96). (Ex. 1 ¶ 20).

As stated above, the West Bend slow-cookers include a housing formed of inner and outer shell portions. The entire outer shell portion and part of the inner shell portion extend outward from the outer sidewall and both housing portions are fixedly mounted to the outer sidewall. Thus, the accused slow-cooker does not fall within any potentially disclaimed subject matter since the housing is not hinged, nor is the entire controller housing affixed to the outer sidewall positioned entirely within the exterior surface of the heating unit. (Ex. 1, ¶ 21).

---

[1]  Copies of the Rivelli, Frey and Yung patents discussed in the amendment are attached to the Joint Appendix for *Markman* Briefing, MKM291-6; MKM613-27; and MKM546-54, respectively.

With respect to prosecution history estoppel, none of the amendments or remarks distinguished the claims over the structure of the West Bend slow-cooker, i.e., an electrical circuit including input and output devices to program a cooking time and temperature mounted to a housing fixedly mounted to the outer sidewall, the housing including a portion extending outwardly from the outer surface of the heating unit and a portion extending inwardly. No such structure is disclosed in the prior art contrary to West Bend's argument. Moreover, the West Bend slow-cookers literally include the elements added by amendment, namely a programmable controller *mounted to a housing fixedly* mounted to a heating unit. Stated differently, the West Bend slow-cookers include an electrical circuit mounted in the housing which is, in turn, mounted to and located on the outer sidewall. (Ex. 1, ¶ 22). Since the limitations are literally present, there can be no estoppel as a matter of law.

In its discussion regarding PHE, West Bend purposely misleads the Court by making affirmative statements regarding "a programmable circuit" which neither forms a part of the explicit claim language nor a part of the construction of Claim 13 by the Court. For example, West Bend argues that "Holmes thereby disclaimed locating the *programmable circuit*, or any portion of such circuit, inside the heating unit." (emphasis added). (West Bend Memorandum p. 6). As clearly discussed above, the amendments and remarks were directed to fixedly mounting a housing to the outside of the heating unit. There is no discussion in the '483 file history regarding the location of a "programmable circuit" as proffered by West Bend and, therefore, cannot form the basis for any estoppel. Accordingly, West Bend's entire argument is based upon a false premise and fails as a matter of law.

Furthermore, West Bend has disingenuously asserted that the "West Bend equivalent in this case is identical to the Rivelli structure that Holmes specifically disclaimed." This statement

is false in two respects. First, the West Bend housing structure and electrical circuit are not identical to Rivelli. Rivelli discloses a commercial deep fat fryer, not a slow-cooker, which does not include a housing mounted to and projecting outwardly from an outer sidewall of a heating unit. Furthermore, the control module 26 or housing for the electrical circuit as disclosed in Rivelli is located entirely within the deep fat fryer box-like exterior housing 14 as shown below.



(MKM0292)                                              (MKM0293)

To the contrary, as discussed previously, the West Bend slow-cooker includes an electrical circuit mounted to a housing, the housing having an inner shell and outer shell mounted to the outer housing. The entire outer housing shell and a portion of the inner housing shell extends outwardly from the outer sidewall of the heating unit. Accordingly, the West Bend slow-cooker structure is significantly different from Rivelli and clearly closer in structure to the claimed invention in the '483 and '855 patents than the commercial fryer of Rivelli. (Ex. 1, ¶ 23).

Lastly, West Bend improperly attempts to read a cooling function into the housing limitation for purposes of the DOE. It is axiomatic that claims are construed the same way for both validity and infringement. *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314 F.3d 1313, 1330 (Fed. Cir. 2003) citing *W.L. Gore & Assoc., Inc. v. Gearlock, Inc*, 842 F.2d 1275, 1279 (Fed. Cir. 1988). For purposes of attempting to establish invalidity in its motion for summary judgment of invalidity, West Bend does not require the prior art to include any cooling function

of the housing for the programmable controller.  To the contrary, for purposes on non-infringement, West Bend contorts the claims such that a required function is cooling the electrical circuit artificially limiting the claim since their position of non-infringement is unpersuasive.  Furthermore, West Bend did not proffer any claim construction to the Court requiring the housing to provide any cooling function nor did the Court include a cooling function in ay of its constructions.  To now assert that cooling is a required function of the housing is improper and without merit.  Without the alleged cooling function, West Bend's entire argument becomes moot.

The Holmes patents-in-suit are directed to programmable slow-cookers and disclose and claim two different aspects of the invention.  A first aspect relates to a solution to prevent the electronic circuitry from being exposed to excessive heat and ultimate failure.  The claims directed to this feature have not been asserted against West Bend.  A second aspect of the invention which has been asserted relates to a method and apparatus to operate a programmable slow-cooker.  Claim 13 of the '483 patent is a method of operation of a programmable slow-cooker with no mention of any cooling function, nor has the Court construed any claim limitation to require cooling.  Accordingly, the function for purposes of establishing equivalency is clearly to provide an enclosure for a part of the electrical circuit and does not require any cooling features.  In view of the foregoing, West Bend's slow-cookers infringe Claim 13 of the '483 patent either literally or under the DOE.

### B.    Claim 20 of U.S. Patent No. 6,740,855 (the '855 Patent) Is Infringed by the West Bend Programmable Slow-Cookers

West Bend improperly grouped Claim 13 of the '483 patent and Claim 20 of the '855 patent in its motion since both claims include different claim language, different prosecution histories, and were construed differently by the Court.

Claim 20 of the '855 patent states:

20.  A programmable slow-cooker appliance comprising:
a heating unit including a bottom and a continuous sidewall extending from said bottom, said bottom and said continuous sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall;
a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall;
a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit;
a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time;
a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time; and
a cooking unit removably positioned in said well-like chamber.

('855 patent, Claim 20; Ex. B to Holmes' First Counter-Statement).

### 1.    The Court's Construction of Claim 20 of the '855 Patent

The Court construed several limitations of Claim 20.  The remainder of the claim limitations are clearly literally present in the accused slow-cookers.  (Ex. 1, ¶¶ 27-29, 36 and 37).  The first limitation at issue is "a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit" which the Court construed as meaning that the housing "is mounted to and largely outside the outer sidewall of the heating unit and extending at least beyond an outer surface of the sidewall of the heating unit."  As discussed above with respect to Claim 13, this limitation is literally present in the accused slow-cookers which include inner and outer housing shells fixedly attached to and extending at least beyond an outer surface of the sidewall of the heating unit.  Since the entire outer housing shell and a portion of the inner housing shell extend beyond the outer surface of the sidewall, the limitation that the housing be "largely" outside the outer sidewall is also literally met.  (Ex. 1, ¶ 30).

Should the Court hold that the limitation regarding the housing not be literally met, Holmes proffers that the limitation is satisfied under the DOE.  Whether a housing is "mounted

to and largely outside the outer sidewall of the heating unit" is a subjective determination since

the term "largely" is not definitive.  West Bend's housing is clearly mounted to the outer sidewall

(both the inner and outer housing shells are fixedly fastened to the outer sidewall) and the entire

outer housing and a portion of the inner housing extend beyond the outer surface of the sidewall.

To the extent that the Court may determine that the West Bend housing is not "largely" outside,

any such differences are clearly insubstantial.  Whether the housing extends 51% or 75% from

the outer sidewall does not affect the function of the housing, i.e., to provide an enclosure for at

least a portion of an electrical circuit.  The way in which the function is accomplished is by

providing housing portions which are fixedly mounted to the outer sidewall to form an enclosure.

The result is substantially the same since the enclosure projects outwardly beyond an outer

surface of the sidewall.  (Ex. 1, ¶¶ 31-32).

   The second limitation at issue is "a programmable circuit positioned within said housing"

which the Court has construed to mean "a circuit, including an assemblage of electronic

components, which allows the user to program both the temperature and desired time for cooking

and which can automatically change the heating element from a cooking mode to a warm mode

once the set cooking time has expired.  The circuit, not just a portion of the circuit, is positioned

within the housing.  The programmable circuit does not include the heating element, the control

panel, displays and buttons."  (*Markman* Tr. p. 38).

   Reconsideration of this construction was sought since it was directly contrary to Federal

Circuit precedent that a claim construction should at the very least encompass a disclosed

embodiment.  *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996).  "The

fact that a particular construction would have the effect of placing all the embodiments of the

invention outside the scope of the claims is powerful evidence that the construction is incorrect."

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1368 (Fed. Cir. 2005). "A claim construction that would exclude the preferred embodiment described in the specification cannot be sustained." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1341 (Fed. Cir. 1999).

In the specification, electronic components illustrated as being part of the programmable circuit 300 are described as being located external to the printed circuit board and outside the housing. For example, a thermistor 310 shown in both Figs. 10 and 13 is used to measure a temperature of the cooking appliance. The specification states that thermistor 310 "is connected externally of the circuit board to the underside of the bottom of the heating chamber." ('855 patent, Col. 5, lines 21-24). Similarly, the Triac 304, which switches power applied to the heating elements is preferably "mounted separately to one of the mounting holes on the center portion 256a of the heat sink 256" external to the printed circuit board. (*Id.* at Col. 5, lines 34-40; Trumper Decl. ¶ 42 (Ex. D to Holmes' First Counter-Statement).

The specification also discloses that alternative electronic components may be used to accomplish the different functions of the circuitry. ('855 patent, Col. 5, lines 17-20). Accordingly, in view of the disclosed preferred embodiments, the specification clearly contemplates that some electronic components of the programmable circuit will be mounted on a printed circuit board provided within the housing, while other components are mounted external to the printed circuit board and housing. (Ex. D, Trumper Decl., ¶ 43). The claim term "within" is a simple, non-technical term, and under its ordinary meaning includes both circuits contained entirely and partially within the housing. Accordingly, Holmes again requests reconsideration of the Court's claim construction requiring the entire circuit to be positioned with the housing.

If the Court maintains its claim construction, Holmes does not dispute that a portion of

West Bend's programmable circuit resides outside the housing. However, Holmes has presented evidence in the form of Dr. Trumper's declarations supporting a finding of infringement under the DOE. Specifically, The West Bend programmable circuit includes two printed circuit boards connected by wires as well as other electronic components, such as the thermistor, mounted external to the printed circuit boards. One of the printed circuit boards is positioned within the housing that projects outwardly from the sidewall as discussed above. The other printed circuit board is mounted within the base portion of the heating unit. West Bend's programmable circuit, including both printed circuit boards and the externally mounted thermistor and Triac, works in exactly the same way as the programmable circuit (300) disclosed in the '855 patent, i.e., permits an operator to select a cooking temperature and time and, at the end of a set cooking time, automatically switches from a cooking mode to a lower temperature warm mode. The only difference is that some of the electronic components are located external to the printed circuit board provided in the housing mounted to and projecting outwardly from the outer sidewall. Splitting the printed circuit board component of the programmable circuit into two circuit boards connected by wires is an insubstantial change readily apparent to a person of ordinary skill in the art as specifically described in the '855 specification. See, '855 patent, Col. 4, lines 55-60; and Col. 5, lines 18-21. Based upon this teaching in the patent specification, Dr. Trumper concluded that, as one skilled in the art of electronic digital control and design, the inventors clearly contemplated and disclosed that various circuit components may be used in various arrangements both inside and outside the housing to achieve the desired functions of the programmable circuit (300). (Ex. 1, ¶¶ 34-35; Trumper Decl., ¶ 43 (Ex. D)).

In view of the foregoing, the West Bend programmable circuit performs all the claimed functions, i.e., allowing a user to select a cooking time and temperature and automatically

- 14 -

changing the heating element from a cook mode to a lower temperature warm mode once the set

cooking time has expired, in substantially the same way via a circuit including an assemblage of

electronic components to achieve substantially the same result.  Merely splitting one circuit

board component of the programmable circuit into two circuits boards connected by wires does

not change the way in which the circuit operates or the result thereof.  Thus, the way in which

the programmable circuit operates, although using different electronic components as

contemplated by the inventors in the specification, is substantially the same.  The West Bend

programmable circuit unquestionably achieves substantially the same result.  *Id.*  Accordingly,

this limitation is satisfied either literally or equivalently.

### 2.  There Is No Issue of Estoppel With Respect to Claim 20 of the '855 Patent

In response to an Office Action, Claim 20, i.e., Claim 53 in the original application

which, when allowed, was renumbered as issued Claim 20, was amended.  The amendment to

Claim 53 appears below with additions underlined and deletions stricken:

> 53.    (Currently Amended)  A programmable slow-cooker appliance comprising:
> a heating unit including a bottom and a continuous sidewall extending from said bottom, said bottom and said continuous sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall;
> a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall;
> a housing <u>fixedly</u> mounted to <u>and projecting outside</u> said continuous sidewall of said heating unit;
> a programmable circuit positioned within said housing ~~including means for automatically switching~~ <u>and configured to automatically switch</u> said heating element from a cook mode to a lower temperature warm mode <u>at the end of a set cooking time</u>;
> ~~means~~ <u>a control panel mounted to said housing and including a user interface connected to said programmable circuit</u> for selecting a cooking temperature and cooking time; <u>and</u>
> ~~means for ventilating said housing; and~~
> a cooking unit removably positioned in said well-like chamber.

(MKM0242-43).

Importantly, the "means for ventilating said housing" limitation was eliminated and, in

the remarks, Holmes clearly states that "ventilation of the housing for the programmable circuit is not an element of Claims 53 or 70." (MKM0252). Thus, contrary to West Bend's argument, there is no ventilation or cooling function associated with issued Claim 20 of the '855 patent.

Furthermore, the amendment with respect to the housing added the limitations "fixedly" mounted and "projecting outside" the sidewall of the heating unit. It is without question that the housing in the accused slow-cookers is both fixedly mounted to and projecting outside the outer sidewall. Thus, these amended limitations are literally present in the accused slow-cookers and estoppel is not an issue. Moreover, the arguments presented with this amendment do not create any estoppel. Specifically, Holmes argued that "with respect to Claims 53, 64 and 70 and the claims dependent thereon, there is no suggestion [in the prior art Rivelli and Polster references] to provide a warming mode following a cooking mode in a slow-cooker as recited." (MKM0253). The accused West Bend slow-cookers literally include the claimed warming mode following the cooking mode. West Bend attempts to mislead the Court by making reference to arguments made in the '483 patent which do not affect the scope of Claim 20 of the '855 patent. West Bend does not provide a single reference to a statement made in the '855 patent that would support their contention of estoppel. Holmes did not unmistakably surrender the alleged subject matter and, to the contrary, clearly states that ventilation does not form a part of the claimed invention. Thus, the West Bend slow-cooker falls within the scope of the claim as construed by the Court and there can be no estoppel as a matter of law.

Additionally, West Bend's proposed estoppel is barred on an incorrect theory that the amendments related to the housing required that the programmable circuit be located entirely within the housing and Holmes disclaimed a circuit having any portion within the heating unit. (West Bend Memo, pp. 5-6). As clearly seen above, these arguments by West Bend are pure

- 16 -

fiction.  Holmes did not make any amendment to the limitation "a programmable circuit positioned within the housing."  There can be no estoppel where, as here, no amendment was made to the claim limitation at issue and no arguments were presented with respect to this limitation to distinguish over the prior art.  Not surprisingly, West Bend fails to identify a single argument in the prosecution requiring the entire circuit to be positioned within the housing simply because it does not exist.  Accordingly, there can be no estoppel to the application of the DOE to the claim limitation "positioned within the housing."

### 3.    West Bend's Programmable Circuit Falls Within the Scope of Claim 20 Under the DOE

The Court construed the "positioned within" limitation to mean that the "[programmable] circuit, not just a portion of the circuit, is positioned within the housing.  The programmable circuit does not include the heating element, the control panel, displays, and buttons." (*Markman* Tr. p. 38).  Holmes maintains the position that this construction is clearly improper since it does not encompass a disclosed embodiment, conflicts with the plain meaning of the claim terms and is directly contrary to the teachings in the specification.  Notwithstanding, the accused slow-cookers fall within the scope of Claim 20 under the DOE and no claim element is vitiated.

The West Bend slow-cooker indisputably includes a programmable circuit as defined by the Court in its claim construction.  However, West Bend's programmable circuit is not positioned entirely within the housing.  A printed circuit board including electronic components which permit a user to select a cooking time and temperature is positioned within the claimed housing mounted to the sidewall.  A second circuit board including some of the electronic components of the programmable circuit is mounted within the heating unit and electronically connected to the circuit board in the housing by wires.  (Ex. 1, ¶ 35).

The West Bend programmable circuit works in exactly the same way as the claimed

programmable circuit, the only difference being the location of a portion of the circuit. Dr. Trumper testified in his declarations that splitting the printed circuit board component of the programmable circuit into two circuit boards connected by wires is an insubstantial change readily apparent to a person of ordinary skill in the art. (*Id.*). This statement is further supported by the specification of the Holmes patents which clearly discloses that some components of the programmable circuit (300) may be external to the printed circuit board and that the disclosed embodiments may be implemented in numerous ways as is well known by persons skilled in the art. ('855 patent, Col. 4, lines 55-62; Col. 5, lines 18-25 and 34-40). Thus, no claim element is missing in its entirety since the accused device includes a portion of the programmable circuit within the claimed housing and a reasonable juror could conclude that an element of the accused device, i.e., a programmable circuit having a portion positioned in the housing, is equivalent to the claimed element. *Depuy*, 2006 WL 3346155 at *8.

The West Bend programmable circuit indisputably performs all the claimed functions (selecting a cooking time and temperature and automatically changing the heating element from a cook mode to a lower temperature warm mode once the set time has expired). The functions are carried out in the same way using an electrical circuit in the form of an assemblage of electronic components to accomplish the varying programming modes and achieves substantially the same result. Making the circuit board component of the programmable circuit into two circuit boards connected by wires does not change the function, way or result of the circuit. (Ex. 1, ¶¶ 34-35). Thus, the West Bend slow-cooker infringes Claim 20 under the DOE.

### 4.    The Presumption of Estoppel Does Not Apply

The amendments to Claims 13 and 20 did not surrender the accused equivalent housing structure. The limitation of Claim 13 defining that the programmable controller be "mounted to a housing fixedly" mounted to a heating unit is literally present in the accused slow-cookers.

Likewise, the amendment adding the limitation to Claim 20 defining the housing "projecting outside" the sidewall of the heating unit is also literally present in the accused slow-cookers. Thus, estoppel with respect to these limitations simply does not exist.

If the presumption of estoppel is adopted by the Court, West Bend asserts that Holmes cannot rebut the presumption because "it is presumed that Holmes has surrendered all equivalents to the claim limitation requiring that the programmable circuit, not just a portion of the circuit, be housed outside the heating unit." (West Bend Memo, pp. 6-7). First, there is no requirement that the entire circuit be housed <u>outside</u> the heating unit. West Bend makes this fundamentally flawed argument throughout its memorandum. Only Claim 20 as construed by the Court requires that the housing project outside the sidewall and that the entire circuit be mounted in the housing. This is very different from West Bend's contrived construction. Secondly, no amendment was made to the claim limitation which West Bend asserts creates the presumption of estoppel. As previously stated, the claim limitation that the programmable circuit be "positioned within" the housing was not amended during prosecution and no arguments were presented regarding this limitation. Thus, as a matter of law, estoppel is not an issue regarding the "positioned within" requirement of Claim 20. With respect to Claim 13 of the '483 patent, there is clearly no limitation requiring that the entire circuit be positioned within the housing, and therefore, no estoppel.

Furthermore, West Bend's argument regarding foreseeability is flawed. West Bend argues that the accused equivalent structure is disclosed in the prior art. This is simply not true. No prior art device includes a housing formed of an inner and outer housing shell fixedly mounted to and projecting outwardly from the outer sidewall of the heating unit or a programmable circuit for a slow-cooker permitting an operator to select a cooking temperature

and time which automatically shifts from a cook mode to a warm mode at the expiration of a set cooking time. West Bend's structure is clearly not identical to that disclosed in Rivelli.

The same flawed argument provides the basis for West Bend's tangentialness position. The accused equivalent, i.e., a programmable circuit having a portion in the housing mounted to the outer sidewall and a portion mounted within the heating unit, is not found anywhere in the prior art. Since the West Bend structure is not disclosed in the prior art, the rationale underlying the amendment at issue clearly bears no more than a tangential relation to the West Bend equivalent at issue. In any event, the presumption of estoppel does not apply as set forth above. Should the Court determine that Holmes is subject to the rebuttable presumption of estoppel, Holmes requests that the Court conduct a full evidentiary hearing on the issues of unforeseeability, tangentialness and some other reason criteria to rebut the presumption.

## III.    CONCLUSION

For the foregoing reasons, the Court should modify the claim construction with respect to the "positioned within" limitation of Claim 20 of the '855 patent and deny West Bend's Second Motion for Summary Judgment of Non-Infringement.

Respectfully submitted,
THE HOLMES GROUP
By its Attorneys,

Dated:  December 22, 2006                    /s/ Charles R. Hoffmann
                                             Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
Nicholas J. Nesgos (BBO No. 553177)          CRHDocket@hoffmannbaron.com
nnesgos@pbl.com                              Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
Joseph W. Corrigan (BBO No. 647393)          GTHDocket@hoffmannbaron.com
jcorrigan@pbl.com                            Alan M. Sack, Esq. (*Pro Hac Vice*)
Posternak Blankstein & Lund LLP              AMDocket@hoffmannbaron.com
Prudential Tower, 800 Boylston Street        Hoffmann & Baron, LLP
Boston, Massachusetts  02199-8004            6900 Jericho Turnpike
Telephone:  (617) 973-6100                   Syosset, New York  11791-4407
Facsimile:  (617)-367-2315                   Telephone:  (516) 822-3550
                                             Facsimile:  (516) 822-3582

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on December 22,

2006.

/s/ Glenn T. Henneberger
Glenn T. Henneberger