**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | |
| Plaintiff/Counterclaim-Defendant, | : | Civil Action No. 1: 05-CV-11367 WGY |
| | : | (Alexander, M.J.) |
| v. | : | |
| | : | |
| WEST BEND HOUSEWARES, LLC and | : | |
| FOCUS PRODUCTS GROUP, L.L.C., | : | |
| | : | |
| Defendants/Counterclaim-Plaintiffs. | : | |

**HOLMES' MEMORANDUM IN OPPOSITION TO WEST BEND'S
MOTION FOR SUMMARY JUDGMENT OF NON-WILLFULNESS**

## TABLE OF CONTENTS

page(s)

I. INTRODUCTION ..........................................................................................................1

II. COUNTER-STATEMENT OF MATERIAL FACTS AS TO WHICH
A GENUINE ISSUE OF DISPUTE EXISTS .................................................................1

III. ARGUMENT ..................................................................................................................2

    A. Summary Judgment Standard ............................................................................2

    B. Willful Disregard Of Another's Patent Rights ....................................................2

    C. Material Issues Of Fact Prevent A Summary Determination
On Willfulness ....................................................................................................4

        1. West Bend's Opinion Of Counsel Has Significant
Deficiencies ............................................................................................4

            a. The Opinion Is Deficient In Its Analysis
of the '483 Patent ........................................................................5

            b. The Opinion Is Deficient In Its Analysis
of the '855 Patent ........................................................................6

        2. West Bend's Opinion of Counsel Was Simply
A Rubber Stamp Of Its Completed Design ............................................9

        3. West Bend's Litigation Tactics Include Withholding
Material Evidence on Willfulness ........................................................10

IV. CONCLUSION .............................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

*Afros S.p.A. v. Krauss-Maffei Corp.*,
   671 F.Supp. 1402 (D. Del. 1987)...................................................................................3

*Celotex Corp. v. Catrett*,
   447 U.S. 317 (1986)........................................................................................................2

*Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001).......................................................................................3

*Great Northern Corp. v. Davis Core & Pad Co., Inc.*,
   782 F.2d 159 (Fed. Cir. 1986).........................................................................................2

*Jurgens v. CBK, Ltd.*,
   80 F.3d 1566 (Fed. Cir. 1996).........................................................................................3

*Russell Box Co. v. Grant Paper Box Co.*,
   203 F.2d 177 (1st Cir. 1953)......................................................................................3, 10

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
   758 F.2d 613 (Fed. Cir. 1985).........................................................................................2

*SRI Int'l, Inc. v. Advanced Technology Labs.*,
   127 F.3d 1462 (Fed. Cir. 1997)............................................................................. 2, 3, 9

*Stryker Corp. v. Davol Inc.*,
   234 F.3d 1252 (Fed. Cir. 2000).......................................................................................3

*Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*,
   717 F.2d 1380 (Fed. Cir. 1983).......................................................................................3

## I. INTRODUCTION

Willfulness is a question of fact which is very much in dispute in this case and worthy of decision by a jury. West Bend was fully aware of Holmes' patents at issue before it proceeded to market its infringing programmable slow-cooker irrespective of Holmes' patent rights. West Bend's only defense for its infringing actions is reliance on an opinion of counsel. Holmes vigorously disputes the competency of that opinion since it failed to construe claims and ignored important portions of the file history. It would not have been reasonable for West Bend to rely on such an opinion.

West Bend's willful disregard of Holmes' patent rights is further supported by West Bend's tactics in this litigation which include withholding documents material to the issue of willfulness. Documents concerning the development of the slow-cooker during a critical time period have intentionally been withheld from Holmes. The record clearly supports a finding of willfulness, or at the very least, creates significant factual disputes preventing a summary disposition. Therefore, West Bend's request for summary judgment of non-willfulness should be denied.

## II. COUNTER-STATEMENT OF MATERIAL FACTS AS TO WHICH A GENUINE ISSUE OF DISPUTE EXISTS

Holmes submits concurrently herewith its Local Rule 56.1 Concise Counter-Statement of Material Facts as to which there is a genuine issue to be tried in support of Holmes' Memorandum in Opposition to West Bend's Motion for Summary Judgment of Non-willfulness. Reference to the text and supporting exhibits are made throughout this memorandum.

### III. ARGUMENT

#### A. Summary Judgment Standard

It is well established that summary judgment is not proper when a material issue of fact requiring a trial is in dispute. *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed. Cir. 1985). On summary judgment, fact finding is inappropriate since a factual dispute prevents summary judgment. *Id.* The moving party has the burden of showing the absence of a material fact in dispute. *Id.* at 1261. Evidence and inferences must be viewed in a light most favorable to the nonmoving party, and any doubt as to the presence of a disputed issue must be resolved in favor of the non-moving party. *Id.*

West Bend misleads this Court by stating that Holmes must provide clear and convincing evidence in order to defeat its summary judgment motion. Such an assertion is inconsistent with the requirement that all evidence is viewed in a light most favorable to the non-moving party. In the very case West Bend cites to support its assertion, the Supreme Court established that the non-moving party must only present evidence showing that a genuine issue of fact is in dispute. *Celotex Corp. v. Catrett*, 447 U.S. 317, 324 (1986).

#### B. Willful Disregard Of Another's Patent Rights

By statue, a party may seek increased damages for infringement of its patents. 35 U.S.C.§284. Willful infringement of a patent provides justification for an increased damages award. *Great Northern Corp. v. Davis Core & Pad Co., Inc.,* 782 F.2d 159, 167 (Fed. Cir. 1986). The question of whether an infringement is willful is one of fact. *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 628 (Fed. Cir. 1985). In determining willfulness, courts look to the totality of the circumstances to determine whether the defendant had acted in good faith with respect to the plaintiff's patent rights. *SRI Int'l , Inc. v. Advanced Technology Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997).

When a potential infringer has actual notice of another's patent rights, they have an affirmative duty to exercise due care to determine whether or not they are infringing. *Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983). Due care is not shown when a party relies on an opinion of counsel which is incompetent. Therefore, such an opinion does not provide a defense to willful infringement. *SRI Int'l*, 127 F.3d at 1467. Conclusory statements and the failure to consider relevant portions of the file history render an opinion incompetent. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996). Instead, the opinion must be thorough enough to instill a reasonable belief that the patent is either invalid or not infringed. *See Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1259 (Fed. Cir. 2000). The reasonableness of the reliance on an opinion is a question of fact for a jury to decide. *Id.* In addition, an opinion that is not objective and simply intended as a "protective device" for litigation is not sufficient to satisfy the duty of due care. *SRI Int'l*, 127 F.3d at 1467.

In determining willfulness, the courts have also looked to the defendant's actions during the litigation. Litigation tactics which attempt to hide evidence material to willfulness have been found to support a finding of willfulness. *Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183 (1st Cir. 1953); *Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F.Supp. 1402, 1439-40 (D. Del. 1987). Courts have also found that copying a patentee's device supports a finding of willfulness. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001).

### C. Material Issues Of Fact Prevent A Summary Determination On Willfulness

West Bend's actions with respect to Holmes' patents evidence a disregard for the patent right and establish bad faith. West Bend's only defense is the improper reliance on a deficient opinion of counsel. The opinion clearly fails to construe claims and disregards important portions of the file history. West Bend has also engaged in withholding important documents which would be material to the issue of willfulness. West Bend's actions at the very least create serious questions as to its intent with regard to Holmes' patents which bears on the issue of willfulness. Therefore, these issues must be considered by a jury and this motion for summary judgment should be denied.

#### 1. West Bend's Opinion Of Counsel Has Significant Deficiencies

West Bend has admitted to being aware of Holmes' patents during the development of its programmable slow-cooker. Carpenter Decl. ¶2.[1] Therefore, West Bend was charged with the affirmative duty of due care with respect to Holmes' patent rights. West Bend relies on an opinion of a patent attorney as its sole defense against willfulness. West Bend's patent attorney, Mr. Stern, issued a written opinion in February 2005. WB Ex. C at WB 2354-2380.[2] The opinion included a discussion of the '483 patent and the '855 patent in view of West Bend's now accused slow-cooker. However, the opinion purposefully neglected to discuss various material portions of the file history and failed to construe the claim terms. With the competency of the opinion in dispute, summary judgment is not appropriate.

---

[1] Reference is made to the Declaration of Michael Carpenter in support of West Bend's Motion for Summary Judgment of Non-Willfulness.
[2] Reference is to Exhibit C attached to West Bend's Motion or Summary Judgment of Non-Willfulness.

### a. The Opinion Is Deficient In Its Analysis of the '483 Patent

In reviewing the '483 patent, the opinion improperly construes the programmable controller and its location with respect to the heating unit. In the portion of the opinion reviewing the subject West Bend slow-cooker, a programmable controller is defined as containing "circuitry, such as a microprocessor, to allow a user to program desired cooking temperatures and times." WB Ex. C at WB 2359. The programmable controller, therefore, can include various circuit elements. The West Bend slow-cooker includes a circuit board that has switches, or touch sensors, that permit a user to program desired cooking temperatures and times. *Id.* at WB 2358. The opinion further states that the "touch sensor" or push-button switches, and LED display "extend outside the outer sidewall." *Id*. The touch sensors and LED display are circuit elements that clearly fall within the definition of a programmable controller since they are used to program "desired cooking temperatures and times." However, the opinion impermissibly excludes these elements when applying the claim to the subject slow-cooker.

In addition, when construing Claim 13 of the '483 patent, the term "programmable controller" is construed to comprise "a circuit board which includes circuitry and logic to allow the user to electronically control and program cooking cycles and temperature." WB Ex. C at WB 2366. The push button switches and LED display are not excluded from being a part of the programmable controller when applying this proposed construction. However, in determining the issue of infringement, the opinion fails to address the fact that portions of West Bend's programmable controller, namely the push-button switches and LED display extend outwardly beyond the sidewall and are mounted in a housing which also extends from the sidewall. WB Ex. C at WB 2375. Under the opinion's own construction of the claim, infringement can be found, yet this is not addressed at all.

- 5 -

In addition, the opinion interprets the claims as essentially requiring the programmable circuit to include elements all located in one place and all located outside the heating unit. There is no analysis to support such a conclusory contention. The specification clearly shows various electronic components to the programmable circuit to be mounted external to the printed circuit board. For example, the `483 patent specification states that a thermistor 310 which is part of the programmable unit 300 as shown in Figs. 5, 10 and 13, is connected externally to the circuit board to the underside of the bottom of the heating chamber. J.A.[3] MKM 0001-0017, Col. 5, lines 19-22. Likewise, the specification states that the Triac 304 is preferably mounted "separately to one of the mounting holes on the center portion 256a of the heat sink 256 … ." *Id.* at Col. 5, lines 32-36. Thus, the specification clearly contemplates that electronic components of the programmable circuit may be mounted externally of the printed circuit board and therefore outside the housing.

The failings of the opinion with respect to the '483 patent clearly create issues of fact as to its competency. Therefore, summary judgment should be denied.

        **b.**        **The Opinion Is Deficient In Its Analysis of the '855 Patent**

The Stern opinion fails to consider important portions of the '855 patent file history contrary to the requirements of established law. With regard to the '855 patent, the opinion states that claim 53 (issued claim 20) "focused on the convection feature, describing …. 'means for ventilating said housing' for the programmable circuit (claim 53)." WB Ex. C at WB 2372. However, the opinion fails to state that claim 53 was amended to **delete** from the claim the "means for ventilating said housing" limitation. J.A. MKM 0243. Also ignored was the applicants' statement in the amendment, which said "[v]entilation of the housing for the

---

[3] Reference is to the Joint Appendix to Markman briefing.

programmable circuit is not an element of claims 53 or 70…" J.A. MKM 0252.  The applicants clearly did not intend to include the ventilation feature, yet the opinion makes it appear as if ventilation was an important element of the claim.  The applicants instead relied upon the keep warm feature as a basis for distinguishing over the prior art.  *Id*.  This keep warm feature is exactly the feature which West Bend's slow-cooker includes; however, the opinion is completely silent on this feature.  In order to find a basis for non-infringement, the opinion improperly lumps together all the claims including some which include the ventilation feature and some that do not.

In construing Claim 20, the opinion also lumps together the prosecution of the claims of the '855 patent with the claims of the '483 patent.  WB Ex. at WB 2373, ("the specification and the prosecution history of both this and the parent application.")  Certain unasserted claims in the '483 and `855 patents are directed to the ventilation aspect of the invention.  However, Claim 20 was specifically drafted to **not** include ventilation or cooling features as a part of the claimed invention as specifically set forth in the remarks accompanying the Amendment.  J.A. MKM 0252.  Therefore, the opinion improperly relied on features of the invention clearly not found in Claim 20.

Such a significant oversight in reviewing the file history materially affects the competency of the opinion.  Anyone reading this opinion with even a basic understanding of the issued claim would not have reasonably believed that ventilation was part of Claim 20.  Yet, such a finding formed a basis for the opinion.

The opinion also fails to construe important elements of Claim 20 of the '855 patent.  In construing claims of the '855 patent, only a conclusory statement is made.

> With respect to the '855 claims, which require the controller's housing to be fixedly mounted to and projecting outside the sidewall of the heating unit (issued claims 1-36) . . . the specification and the prosecution history of both this and the

- 7 -

>parent application compel the conclusion that the claims are limited to a slow-cooker with a programmable controller that is mounted to a controller housing which is in turn mounted to the outside of the heating unit's sidewall.

WB Ex. C at WB 2373.

Issued Claim 20 does not define a "programmable controller" as stated in the opinion. Instead, the claim includes a "programmable circuit," and there is no mention in the opinion as to how this term is to be construed. This is a critical error. The programmable circuit comprises an assembly of electronic components including those inside the housing and those outside, as shown in Figures 10 and 13 of the '855 patent. J.A. MKM 0129 and 0132. The circuit includes many electronic components including at least the thermistor which are clearly located outside of the housing. West Bend's unit also had circuit components located outside of the heating unit. The programmable circuit was not defined in the opinion in order to help support a finding of non-infringement.

Furthermore, West Bend's push-button switches and LED display which allow a user to electronically control and program cooking cycles and temperature are improperly excluded from the "programmable controller" during the infringement analysis. WB Ex. C at WB 2379. These electronic components are mounted in the housing that projects outwardly from the outer sidewall of the heating unit. No legitimate explanation is given why these electronic components of the programmable unit are not included as a part of the alleged programmable controller discussed in the opinion. Additionally, there is no suggestion in the claim or prosecution history that the entire programmable circuit is required to be mounted outside of the outer sidewall. Therefore, there is no reasonable basis in the opinion for finding that the West Bend device avoids infringement of Claim 20.

The opinion relied upon by West Bend arrives at a conclusion of non-infringement of Claim 20 without considering important portions of the file history and mischaracterizations and misstatements about the of the claim. It would not have been reasonable for West Bend to rely on such a deficient opinion. Therefore, there are material issues of fact as to the competency of the opinion requiring the denial of the present motion.

### 2. West Bend's Opinion of Counsel Was Simply A Rubber Stamp Of Its Completed Design

The law does not recognize an opinion as valid if it is simply prepared as a defense to willfulness for a contemplated litigation. *SRI Int'l*, 127 F.3d at 1467. West Bend began working on the accused programmable slow-cooker in 2002. Carpenter Decl. ¶ 2. Using one of Holmes' own Chinese manufacturers, OEM, a programmable slow-cooker design having a keep warm feature was developed. Carpenter Decl. ¶ 2 and Holmes Ex. A, pg. 59, lines 8-15[4]. During the development process, both OEM and West Bend, through at least Bill Dobson a product/marketing director of West Bend, were aware that Holmes had patents covering its programmable slow-cooker and still continued to pursue the design. WB Ex. A at WB 2831. In June 2003, the '483 patent issued. J.A. MKM 0001. West Bend through at least its project development manager, Howard Kaney, was aware of the '483 patent in 2003 and continued to develop the slow-cooker without seeking an opinion of counsel. Holmes Ex. B, pg. 93, lines 16-20, pg. 11, lines 15-25, pg. 32 17-24; Holmes Ex. C, pg. 18, lines 14-17.

West Bend in its motion papers now claims that it first became aware of the '483 patent in April of 2004, only when OEM brought their concern to West Bend's attention. At this point, however, the West Bend slow-cooker was essentially fully designed. The renderings submitted

---

[4] Reference is to Holmes Exhibit A, which is attached to the Declaration of Alan M. Sack in support of this opposition along with Exhibits B and C.

- 9 -

to the patent counsel which West Bend produced show a programmable slow-cooker very much like the device they brought to market. WB Ex. B at WB 3146-49. Very few changes to the design took place. Holmes Ex. C, pg. 41, lines 14-20. West Bend's assertions that they sought the assistance of a patent attorney early in the development stages of the accused product is false. Their own evidence establishes that West Bend began working on the project in 2002 and did not consult a patent attorney until April of 2004. Carpenter Decl. ¶ 2, WB Ex. A at WB 2831. It was only after developing the programmable slow-cooker, and after being prodded by OEM, did West Bend then obtain an opinion of patent counsel. This letter was simply a protective opinion to try and avoid willfulness. There is no reliable evidence establishing that any significant guidance was given during the design stage. The lack of analysis with regard to Claim 13 of the `483 patent and Claim 20 of the `855 patent described above are the tell-tale signs of an opinion in which its outcome is predetermined from the beginning. Mr. Stern was given a design he had to clear, and drafted an opinion accordingly.

West Bend had no legitimate concern for Holmes' patent rights and operated in bad faith. Therefore, summary judgment should be denied.

### 3. West Bend's Litigation Tactics Include Withholding Material Evidence on Willfulness

Bad faith actions during litigation support a finding of willfulness. *Russell Box Co.,* 203 F.2d at 183. Documents relevant to West Bend's willfulness have been withheld from Holmes. The discovery produced by West Bend in this litigation includes a mysterious two year gap. No documents have been produced relating to the development of West Bend's programmable slow-cooker between the time period when the accused slow-cooker project was started in 2002 and April 2004 when the issue was purportedly first brought to the attention of West Bend's patent attorney. Decl. Sack ¶ 4. West Bend was admittedly working on the programmable slow-cooker

for some time and even formed a "task force" to study the development of a programmable slow-cooker. Holmes Ex. B, pg. 28, lines 15 to 21. However, no documents concerning the development of the programmable slow-cooker have been produced between 2002 and April of 2004.

Documents during this time are very important to determining West Bend's intent with respect to Holmes' patents. Such evidence could establish that West Bend was copying Holmes programmable slow-cooker which was in the market in 2000. See Holmes Ex. C filed in Support of Holmes' Opposition to West Bend's Summary Judgment Motion on Invalidity. The document could also establish that West Bend had essentially completed its design and simply was looking for the design to be "rubber stamped" by their patent attorney. Both actions would be material to determining willfulness.

This gapping hole in the discovery record is clearly intentional. West Bend has produced documents regarding its slow-cookers from dates even earlier than 2002 when it suits their position. For example, West Bend has been able to produce numerous detailed development documents with respect to another slow-cooker project with OEM relating to West Bend's asserted design patents. Decl. Sack ¶ 5. However, for the development of the accused programmable slow-cooker, virtually no documents regarding the programmable slow-cooker development have been produced. Holmes is preparing to file a motion to compel the production of these important documents.

West Bend has also refused to cooperate with Holmes in its efforts to obtain information and witnesses from OEM. Decl. Sack ¶ 6. Therefore, there is a concerted effort being made to block access to this group of documents. By withholding information relevant to willfulness, West Bend intentionally impedes Holmes ability to develop evidence on willfulness which rests

fully in the hands of West Bend. This act of bad faith supports a finding of willfulness under established precedent. No party should be permitted to hide documents relevant to an issue and then seek summary judgment on that same issue based on lack of evidence.

West Bend's refusal to produce documents material to issues related to willfulness constitutes bad faith, warranting a finding of willfulness. At the very least significant issues a fact remain as to West Bend's intent requiring a trial on the merits.

## IV.   CONCLUSION

Numerous genuine issues of fact are in dispute concerning the issue of willfulness. Therefore, for the reasons set forth above, West Bend's motion for summary judgment of non-willfulness should be denied.

|  |  |
|---|---|
|  | SUNBEAM PRODUCTS, INC., d/b/a JARDEN CONSUMER SOLUTIONS f/k/a THE HOLMES GROUP |
|  | By its Attorneys, |
| Dated:  December 22, 2006 | /s/Glenn T. Henneberger<br>Charles R. Hoffmann, Esq. (*Pro Hac Vice*)<br>CRHDocket@hoffmannbaron.com<br>Glenn T. Henneberger, Esq. (*Pro Hac Vice*)<br>GTHDocket@hoffmannbaron.com<br>Alan M. Sack, Esq. (*Pro Hac Vice*)<br>AMSDocket@hoffmannbaron.com<br>HOFFMANN & BARON, LLP<br>6900 Jericho Turnpike<br>Syosset, New York  11791-4407<br>Telephone:  (516) 822-3550<br>Facsimile:  (516) 822-3582<br>         and<br>Nicholas J. Nesgos (BBO No. 553177)<br>nnesgos@pbl.com<br>Posternak Blankstein & Lund LLP<br>Prudential Tower, 800 Boylston Street<br>Boston, Massachusetts  02199-8004<br>Telephone:  (617) 973-6100<br>Facsimile:  (617) 367-2315 |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 22, 2006.

/s/ Glenn T. Henneberger
Glenn T. Henneberger