## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,       :

                              :

     Plaintiff/Counterclaim-Defendant,   :     Civil Action No.  1: 05-CV-11367 WGY

                              :     (Alexander, M.J.)

                  v.             :

                              :

WEST BEND HOUSEWARES, LLC and  :

FOCUS PRODUCTS GROUP, L.L.C.,   :

                              :

     Defendants/Counterclaim-Plaintiffs.  :

**HOLMES' RESPONSE TO DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>ON INVALIDITY OF U.S. PATENT NOS. 6,573,483 AND 6,740,855</u>**

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
Alan M. Sack, Esq. (*Pro Hac Vice)*
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  516-822-3550
Facsimile:  516-822-3550

Nicholas J. Nesgos (BBO No. 553177)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  617-973-6100
Facsimile:  617-367-2315

*Attorneys for Plaintiff*

December 22, 2006

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ....................................................................................................i, ii, iii

I.     INTRODUCTION ...........................................................................................................1
       1.     Background of This Action....................................................................................1
       2.     The Invention at Issue ...........................................................................................2
       3.     Related Proceedings...............................................................................................2

II.    ARGUMENT ...................................................................................................................2

       1.     Legal Standard for Summary Judgment. ...............................................................2
       2.     Legal Standard for Patent Invalidity .....................................................................3
       3.     The Evidence Presented -A. West Bend's Expert
              Declaration Should be Excluded............................................................................4

              i.     Dr. Feinberg Has Insufficient Education, Training or Experience
                     to Testify as an Expert on Programmable Slow-Cookers..............................5
              ii.    Dr. Feinberg Has Been Found Unqualified to
                     Render Expert Testimony .............................................................................5

       B.     The Prior Art Relied Upon by West Bend ............................................................6
              i.     The Weiss Patent Does Not Anticipate or Render
                     Obvious Independent Claim 13 of The '483 Patent or
                     Independent Claim 20 of the '855 Patent ......................................................7

       C.     The Robotham Declaration Places West Bend's "Evidence" in Dispute ..................7

              i.     The Slow-Cooking Process...........................................................................7
              ii.    The Weiss '287 Patent Does Not Describe a Cooking Appliance
                     Consistent with a Slow-Cooking Process and Therefore Cannot
                     Anticipate Claim 13 of the '483 Patent, or Render Claim 20 of the
                     '855 Patent Obvious in Combination With Other References .......................8
              iii.   There is No Motivation to Combine the Disclosure of the Weiss
                     '287 Patent with the Rival® Crock•Pot® or Patents Disclosing
                     Slow-Cookers with Ceramic Cooking Units...............................................9
              iv.    There is No Motivation for One Skilled in the Art to Combine the
                     Disclosure of the Weiss '287 Patent with U.S. Patent No. 4,817,510
                     to Kowalics, 4,345,145 to Norwood and/or 6,191,393 to Park ..................10

       D.     The Trumper Declaration Further Places West Bend's "Evidence" in Dispute ........11
              i.     Dr. Feinberg's Analysis of the Cited References is Flawed.........................11
              ii.    The "Electric Cooking Appliance" of U.S. Patent No.
                     4,307,287 to Weiss........................................................................................16
       E.     Testimony Demonstrates No Motivation to Combine with Other Devices.............19

F.  Evidence of Secondary Considerations of Non-Obviousness ...................................19

III.    CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 2513 (U.S. 1986).............................................................3

*Carroll v. Otis Elevator Co.*,
896 F.2d 210, 212 (7th Cir. 1990) ..................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)..........................................4

*Fine*,
837 F.2d 1071, 1075 (Fed. Cir. 1988) ............................................................................4

*Graham v. John Deere Co.*,
383 U.S. 1, 17-18, 86 S.Ct. 684, 693-94, 15 L.Ed.2d 545 (1966) ..................................4

*John Doe and Jane Doe v. American Medical Systems, Inc.*,
96 Fed.Appx. 758 (C.A.2 Conn 2004)..............................................................................6

*Pfaff v. Wells Elecs., Inc.*,
5 F.3d 514 (Fed. Cir. 1993)..............................................................................................2

*PPG Industries, Inc. v. Guardian Industries Corp.*,
75 F.3d 1558, 1566, 37 USPQ2d 1618, 1624 (Fed.Cir.1996) .........................................3

*Quad Environmental Technologies Corp. v. Union Sanitary District*,
946 F.2d 870, 872 (Fed. Cir. 1991)..................................................................................3

*R.H. Murphy Co., Inc. v. Illinois Tool Works, Inc.*,
409 F.Supp.2d 53, 72 ...................................................................................................4, 5

*Richardson-Vicks Inc. v. Upjohn Co.*,
122 F.3d 1476, 1479, 44 USPQ2d 1181, 1183 Fed.Cir.1997).........................................3

*Rockwell Intern. Corp. v. U.S.*,
147 F.3d 1358, 1363 (C.A.Fed.1998) ..............................................................................3

*Scaccianoce v. Hixon Manufacturing and Supply Co.*,
1994 WL 113069 (N.D.Ill. 1994) ....................................................................................6

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
927 F.2d 1565, 1576, 18 U.S.P.Q.2d 1001, 1010 (Fed.Cir.1991) ...................................3

*SRAM Corp. v. AD-II Engineering, Inc.*,
465 F.3d 1351, 1360 (C.A. Fed. Ill. 2006) ......................................................................3

*WL Gore*,
  72 F.2d at 1553 ................................................................................................................4

*York v. American Medical Systems, Inc.*,
  166 F.3d 1216 (C.A.6 Ohio 1998) ...................................................................................6

**STATUTES**
Fed.R.Civ.P. 56(c) ............................................................................................................3

## I.      INTRODUCTION

Plaintiff, The Holmes Group, Inc. responds to defendants', West Bend Housewares, LLC and Focus Products Group, L.L.C. (hereinafter "West Bend"), Motion for partial summary judgment alleging that the asserted independent claims of U.S. Patent Nos. 6,573,483 (Claim 13 of "the '483 Patent") and 6,740,855 (Claim 20 of "the '855 Patent") are invalid as being anticipated or obvious over U.S. Patent No. 4,307,287 to Weiss ("the Weiss patent"), alone or in combination with various other references, including the Rival® Crock•Pot® Slow Cooker Model No. 3350/2. Additional references are asserted by West Bend with regard to alleged invalidity of certain features of the dependent claims.  In making its arguments for invalidity, West Bend, using impermissible hindsight, picks and chooses among the prior art references to attempt to reconstruct the elements of the claims of the Holmes Patents.

The Weiss patent does not disclose a programmable slow-cooker, and West Bend has not shown any motivation in the art of combining the features of the Weiss patent with the old mechanical Rival® Crock•Pot® Slow Cooker units.  In addition, West Bend ignores the programmability of the claimed method ('483 claim 13) and apparatus ('855 claims 20) of the asserted Holmes patents in controlling the slow-cooking process.  Furthermore, West Bend ignores the secondary consideration for non-obviousness proffered by Holmes,  including the undisputed commercial success of the Holmes programmable Rival® Crock•Pot® Slow Cookers embodying the construction of the asserted claims of the patents-in-suit, and  the widespread copying by West Bend and others of this innovative product.

1.      **Background of This Action -** Plaintiff, The Holmes Group, Inc., now known as Sunbeam Products, Inc., d/b/a/ Jarden Consumer Solutions, (hereinafter collectively referred to as "Holmes") brought this action against Defendants West Bend Housewares, LLC and Focus Products Group, LLC (collectively referred to as "West Bend") for infringement of Holmes' U.S.

Patent Nos. 6,573,483 and 6,740,855 entitled "Programmable Slow-Cooker Applicant" ("the '483 Patent" and "the '855 Patent," respectively).  (*See, Holmes' Counter-Statement of Counter-Statement Of Material Facts As To Which A Genuine Issue Of Dispute Exists In Support Of Holmes' Response To West Bend's Motion For  Partial Summary Judgment On Invalidity, @ page 1, paragraph 1, hereinafter referred to as "Holmes' Statement of Material Facts").*

2.      **The Invention at Issue -** The Holmes patents-in-suit U.S. Patent No. 6,573,483 ("the '483 Patent) and U.S. Patent No. 6,740,855 ("the '855 Patent") relate to a structure and method of using a programmable slow-cooker appliance.  Subsequent to the overwhelming success of the introduction of Holmes' programmable slow-cooker covered by the Holmes patents, West Bend began marketing and selling programmable slow-cookers which "knocked-off" Holmes programmable slow-cooker and infringe Holmes' '483 and '855 patents.  Additional details regarding the commercial sources of the Holmes programmable slow-cooker as provided in section "H. Evidence of Secondary Considerations of Non-Obviousness" of this memorandum and *Holmes' Statement of Material Facts, page 25, paragraph 67 - page 31.*

3.      **Related Proceedings -** A *Markman* Hearing was conducted on September 27, 2006.  At the *Markman* Hearing, the Court provided its interpretation of the disputed claim limitations in U.S. Patent Nos. 6,573,483 (the '483 Patent) and 6,740,855 (the '855 Patent).  A copy of the *Markman* Hearing transcript was attached as Exhibit E to Holmes' First Counter-Statement. West Bend has filed a motion for Summary judgment of Invalidity of U.S. Patent Nos. 6,573,483 and 6,740,855 to which Holmes responds in this Memorandum and supporting Declarations and documents.

## II.    ARGUMENT

1.      **Legal Standard for Summary Judgment -** Summary judgment is appropriate

when there is no genuine issue as to any material fact and the moving party is entitled to a

judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The burden of establishing that it is entitled to

summary disposition rests squarely on the movant.  *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 517

(Fed. Cir. 1993).  With regard to the issue of patent invalidity due to anticipation, 35 U.S.C §102,

or obviousness, 35 U.S.C. §103, the movant must overcome the statutory presumption of validity

by proving obviousness by clear and convincing evidence based on undisputed facts.  35 U.S.C.

§282.  However, all factual inferences must be drawn in favor of the opponent of the motion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513 (U.S. 1986).  Although

summary judgment can be found in patent cases, "when material facts are disputed, and

testimonial, documentary, and expert evidence are needed for their resolution, summary

adjudication is not indicated.  *Quad Environmental Technologies Corp. v. Union Sanitary District*,

946 F.2d 870, 872 (Fed. Cir. 1991).

     2.     **Legal Standard for Patent Invalidity - Anticipation under 35 U.S.C. § 102**

**requires a prior art reference to disclose every** element of the challenged claim and enable one

skilled in the art to make the anticipating subject matter.  *PPG Industries, Inc. v. Guardian*

*Industries Corp.,* 75 F.3d 1558, 1566, 37 USPQ2d 1618, 1624 (Fed.Cir.1996).  Whether such prior

art is anticipating is a question of fact.  *Rockwell Intern. Corp. v. U.S.*, 147 F.3d 1358, 1363

(C.A.Fed.1998); also see *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565,

1576, 18 U.S.P.Q.2d 1001, 1010 (Fed.Cir.1991).  Summary judgment can only be decided, based

on anticipation if there is no dispute of material facts as to what the prior art discloses.  *SRAM*

*Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1360 (C.A. Fed. Ill. 2006)(stating that given an

unclear record and indeterminate stipulations of the parties, issues of fact precluded summary

judgment based on anticipation).

**Obviousness under 35 U.S.C. § 103** is ultimately a determination of law based on underlying determinations of fact. *See Richardson-Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1479, 44 USPQ2d 1181, 1183 Fed.Cir.1997). These underlying factual determinations include: (i) the scope and content of the prior art; (ii) the level of ordinary skill in the art; (iii) the differences between the claimed invention and the prior art; and (iv) the extent of any proffered objective indicia of nonobviousness. *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 693-94, 15 L.Ed.2d 545 (1966). These indicia of nonobviousness include long-felt, but unresolved need, commercial success, failure of others, copying and unexpected results. *R.H. Murphy Co., Inc. v. Illinois Tool Works, Inc.,* 409 F.Supp.2d 53 (D.Mass. 2006)(citing *Graham v. John Deere*). Thus, to make a determination regarding summary judgment on obviousness, the court first determines whether the record raises any genuine issues with regard to these critical facts. Hindsight reconstruction of the claimed invention should be avoided. The Federal Circuit has warned that "to imbue one of ordinary skill in the art with knowledge of the invention. . ., when no prior art reference or references of record convey or suggest that knowledge, is to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher. *WL Gore*, 72 F.2d at 1553, " *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988).

**3.    The Evidence Presented - A.  West Bend's Expert Declaration should be excluded:**    As evidence in support of their motion, West Bend relies heavily upon the declaration of their Expert, Barry Feinberg (referred to hereinafter as "Dr. Feinberg"). However, a preliminary determination must first be made as to whether this expert is qualified to testify and whether the proffered expert testimony is reliable. The Court must act as a gatekeeper to exclude unreliable expert testimony whether on scientific or non-scientific matters. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior

knowledge, skill, experience, or education with the subject matter of the witness's testimony."

*Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990); also see, *R.H. Murphy Co., Inc. v. Illinois Tool Works, Inc.,* 409 F.Supp.2d 53, 72 (D.Mass. 2006)(Judge Stearns holding that a designer of storage trays for integrated circuits is a specialized art requiring one of ordinary skill to stay abreast of developments in the chip manufacturing industry). Thus, the Court must first determine whether Dr. Feinberg has the proper expertise to testify regarding the design and operation of programmable slow cookers. However, it is clear that Dr. Feinberg is not properly qualified as an expert to testify as to the level of ordinary skill or what was known at the time of the invention.

       **i.     Dr. Feinberg Has Insufficient Education, Training or Experience to Testify as an Expert on Programmable Slow-Cookers**

One of the key elements being argued in the subject case is the design, programming and configuration of the programmable controller, and in particular the microprocessor-based programmable circuit of the slow cooker. However, Defendant's expert, Dr. Feinberg, is not qualified to testify as an expert on this subject matter. Dr. Feinberg's C.V. indicates he has a B.S. in electrical engineering and an unspecified doctorate in "engineering." (*See, Resume of Barry N. Feinberg, P.E.*). In fact, when he received his degrees in 1962 and 1968 microprocessors were just being invented. Dr. Feinberg admitted that he has never taken or taught a course relating to the design or programming of microprocessors or the design of electronic appliances that are controlled by microprocessors (*Feinberg Depo[1]., see 12:20 - 14: 9 and  33:1-34:25*). Although he alleges his Ph.D. is in "systems analysis and biomedical engineering," his thesis related to the "detection and diagnosis of obstructive lung disease" (*Feinberg Depo.18:15 - 19: 12*). Also, he has never published an article regarding the design of microprocessors or electronic appliances.

---

[1] Exhibit A to the Sack Declaration; Ex. 1-Holmes' Statement of Material Facts.

Virtually all his published works relate to medicine, biology or the application of engineering science to the health care industry (see, *Feinberg CV and Feinberg Depo. 18:15 - 19:12; 60: 14-17*).  He has no experience relating to programmable slow-cookers. (see, *Feinberg CV*).

### ii.    Dr. Feinberg Has Been Found Unqualified to Render Expert Testimony

Dr. Feinberg has been found unqualified to render expert testimony in a number of cases. In particular, his testimony relating to the adequacy of product warning labels was not considered by the court in *Scaccianoce v. Hixon Manufacturing and Supply Co.*, 1994 WL 113069 (N.D.Ill. 1994).  Similarly, he was twice found to lack "the knowledge, skill, experience, training, or education needed to testify" regarding penile implants.  *John Doe and Jane Doe v. American Medical Systems, Inc.*, 96 Fed.Appx. 758 (C.A.2 Conn 2004)(the district court went on to find that his methods were inherently unreliable); *York v. American Medical Systems, Inc.*, 166 F.3d 1216 (C.A.6 Ohio 1998).  In the present case, he lacks the requisite education and experience to testify as an expert.

### B.    The Prior Art Relied Upon by West Bend - West Bend relies on the

Weiss '287 Patent, alone or in combination with various other references, including the Rival® Crock•Pot® Slow Cooker Model No. 3350/2.  Additional references are asserted by West Bend with regard to alleged invalidity of certain features of the dependent claims, namely  Kowalics U.S. Patent No. 4,817,510; Norwood U.S. Patent No. 4,345,145; Holmes' U.S. Patent Nos. 3,806,701 and 3,881,090; and Park U.S. Patent No. 6,191,393.  Holmes' evidence disputes West Bend's interpretation of these references and establishes by competent expert testimony that there are genuine issues of material fact as to teaching and interpretation of the references.  Accordingly, West Bend should not prevail in this motion.[2]

---

[2] For the purpose of this motion, Holmes will primarily rely on arguments with regard to the independent claims asserted in this case; namely, claim 13 of the '483 patent and claim 20 of the '855 patent.  While the features of the

     **i.**    **The Weiss Patent Does Not Anticipate or Render Obvious Independent Claim 13 of The '483 Patent or Independent Claim 20 of the '855 Patent, either alone or in Combination With Other References**

The Court has construed the preamble of claim 13 of the '483 patent "A method of using a programmable slow-cooker appliance." (*Markman* transcript @ p. 3, lines 8-12) and the same term in Claim 20 of the '855 patent, namely "A programmable slow-cooker," as a "*cooking device designed for cooking food at a constant, relatively low cooking temperature for relatively long period of time, being programmable to operate in a variety of different cooking modes and cooking times.*" *Markman* transcript @ p. 25, lines 8-15.[3] Weiss, however, does not disclose a programmable slow-cooker. The Weiss device first heats up in its high power setting, up to 347°F (175°C) for a time interval D (about 5 minutes) and then cooks at an undisclosed "normal" cooking temperature. Weiss, therefore, teaches away from the use of the slow-cooking process.

     **C.**    **The Robotham Declaration Places West Bend's "Evidence" in Dispute -**

Professor Ronda J. Robotham, MAT, Holmes' Culinary expert has submitted a Declaration, in support of Holmes' opposition to this motion (*see, Declaration of Professor Ronda J. Robotham, MAT in Support of Holmes' Opposition to Defendants' Motion for Partial Summary Judgment on Invalidity filed as **Exhibit 2** to Holmes' Statement of Material Facts*). Professor Robotham's Declaration explains the slow-cooking process in detail, and the difference between the slow-cooking process and the process utilized in the cooking device disclosed in the Weiss patent. Professor Robotham's testimony provides undisputed factual basis for denying summary judgment with regard to invalidity of both claim 13 of the '483 patent and the claim 20 of the '855 patent.

     **i.**    **The Slow-Cooking Process -** The principle of slow cooking is generally

---

dependent claims may add novelty to these claims, Holmes will not rely upon them in responding to this summary judgment motion.

[3] The Markman Hearing transcript is part of the record in this case, filed with the Court on October 12, 2006, as Exhibit E to Plaintiff's Counter-Statement of Facts supporting Plaintiff's Response to Defendants' Memorandum in

accepted as the cooking process of applying low heat to a (food) product for an extended period of time in order to render the product tender and flavorful. This low heat application is carried out in a moist environment so that in the case of certain proteins, the collagen present will effectively convert to gelatin yielding a succulent product. (*Robotham Decl. @ p. 3, ¶ 12*). The extended cooking time at a low heat then allows the proteins to relax enough to redistribute the cooking liquid into the now loosened fibers resulting in the desired outcome. In considering doneness of a slow cooked product, the temperature and texture are of prime importance. Even though the slow cooking process is a relatively gentle cooking method, there is still the possibility of overcooking. The result is most often a tender but very dry product. *(Robotham Decl. @ p. 3, ¶ 13).*

It is important to note that the slow-cookers described in U.S. Patents 6,573,483 and 6,740,855 ("the '483 and '855 Patents") have the capability to be programmed to automatically switch from a cooking mode to a "keep warm" mode which ensures the user of the desired results by automatically switching to a lower temperature. The temperature still remains high enough to prohibit harmful bacterial growth, but not so high as to further dry proteins. *(Robotham Decl. @ p. 3, ¶ 14).*

      **ii.**    **The Weiss '287 Patent Does Not Anticipate or Render Obvious Claim 13 of the '483 Patent or Claim 20 of the '855 Patent, either alone or in Combination With Other References**

U.S. Patent No. 4,307,287 to Weiss does not anticipate Claim 13 of the '483 Patent, or render Claim 20 of the '855 Patent obvious, as it structurally and functionally differs from the claims of the '483 and '855 Patents. The Weiss patent describes a cooking appliance which has a cooking range that exceeds that recommended in the slow cooking process. It can achieve temperatures that are sufficient for a deep frying technique. Weiss describes use in connection which temperature ranges from simmering up to175°C (Col. 4, ll. 43-46), which converts to

Support of Their First Motion for Partial Summary Judgment of Non-Infringement.

- 8 -

approximately 347°F, a setting suitable for deep frying capabilities. The heating capabilities of the Weiss Patent also are described for potential browning of proteins prior to the low heat process. *(Robotham Decl. @ pp. 3-4, ¶ 15).*

In the background of the Weiss patent, col. 1, ll. 23-28, the statement that the items would cook correctly without supervision is a concern when working with temperatures reached in that method. In col. 1, ll. 56-61, it speaks of an initial cooking phase which causes accelerated heating allowing browning prior to prolonged cooking. While this is sometimes performed in braising or stewing, it is an additional step which differs from the '483 and '855 Patents where a relatively low heat is applied to the food product. *(Robotham Decl. @ p. 4, ¶ 16).* Although accelerated heating to high temperatures that sear the food is accepted as a norm for many braised and stewed dishes, this process moves away from the simple slow cooker and the low conductive properties of the ceramic cooking vessel. Weiss does not provide a specific temperature range to address the "hot" setting, which could also be a concern. *(Robotham Decl. @ p. 4 ¶ 17).*

Based on the interpretation of claim 13 of U.S. Patent No. 6,573,483 or claim 20 of U.S. Patent No. 6,740,855 the cooking process of a slow cooker is designed to use the benefits of a simple process using relatively low heat for a relatively long time. Accordingly, a person seeking optimal temperature range for slow cooking would not look to a device which lists the temperatures identified nor look toward the Weiss '287 Patent to serve this purpose. *(Robotham Decl. @ p. 4, ¶18).*

### iii.    There is No Motivation to Combine the Disclosure of the Weiss '287 Patent with the Rival® Crock•Pot® or Patents Disclosing Slow-Cookers with Ceramic Cooking Units

West Bend's Memoranda relies on paragraph 11 of Dr. Feinberg's Declaration, in which he stated that the material for the cooking vessel in the Weiss patent is not identified. In paragraph 12, he states that the Rival® Crock•Pot® discloses the use of a ceramic cooking unit. One skilled

in the art of slow cooking would be motivated to use ceramic because of its, relatively ineffective conductive properties.  Based on the information presented in the Weiss patent, the cooking device appears to be a metallic cooking vessel sitting on an electronic heating element, similar to an electric griddle, which could also be a negative factor when considering slow cookers.  *(Robotham Decl. @ pp. 4-5, ¶19).*

> ### iv.    There is No Motivation for One Skilled in the Art to Combine the Disclosure of the Weiss '287 Patent with U.S. Patent Nos. 4,817,510 to Kowalics,  4,345,145 to Norwood and/or 6,191,393 to Park

West Bend's Memoranda improperly relies on paragraph 9 of Dr. Feinberg's Declaration regarding the motivation for combining Weiss with any one of U.S. Patent Nos. 4,817,510 to Kowalics, 4,345,145 to Norwood and/or 6,191,393 to Park.  In contrast, Prof. Robotham and Holmes' Technical expert, Dr. Trumper, have testified that there is no teaching or suggestion for combining Weiss with Kowalics (*see, Robotham Decl. p. 5, ¶¶ 20-21; also see, Declaration of Professor David L. Trumper, Ph.D.  in Support of Holmes' Opposition to Defendants' Motion for Partial Summary Judgment on Invalidity filed as **Exhibit 3** to Holmes' Statement of Material Facts, @  p. 12, ¶¶39-41 and p. 13, ¶¶ 41-44 of declaration; further see Holmes' Statement of Material Facts, page 9, paragraph 28).*  Also, Prof. Robotham has further testified that there is no teaching or suggestion for combining Weiss with Norwood or Park.  (*see, Robotham Decl. p. 5, ¶ 22 and p. 6, ¶ 23; also Holmes' Statement of Material Facts page 9, paragraph 29*).

Weiss does not disclose a structure required for claim 13 of the '483 and specifically does not have a "programmable controller," namely, *"a form of an electric circuit or circuits including input and output devices which permit an operator to select a cooking temperature and cooking time" "a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a low temperature warm mode at the end of said cooking time"* (*Markman* TR, p. 20, lines 19-22) as interpreted by the Court in its *Markman*

Hearing transcript dated September 27, 2006.  At p. 38 of the *Markman* Transcript, the Court defined the programmable circuit as "a circuit, including an assembly of electronic components, which allows the user to program both the temperature and the desired time for cooking and which can automatically change the heating element from a cooking mode to a warm mode once the set cooking time has expired."   For claim 20, in particular, the Court's interpretation adds "The circuit, not just a portion of the circuit, is positioned within the housing.  The programmable circuit does not include the heating element, the control panel, displays, and buttons."  (*Markman* TR, p. 38, lines 12-21).

> **D.    The Trumper Declaration Further Places West Bend's "Evidence" in Dispute**

Professor David L. Trumper, Ph.D., Holmes' Technical expert has also submitted a Declaration in support of Holmes' response to this instant summary judgment motion.  Dr. Trumper has testified that neither the Weiss, Kowalics nor the Rival reference cited by West Bend, describe such a "programmable controller," as required in claim 13 of the '483 patent or a "programmable circuit," as required in claim 20 of the '855 patent.  Dr. Trumper has established the following material facts in controversy, which militate against summary judgment of invalidity of the patents-in-suit.

**i.    Dr. Feinberg's Analysis of the Cited References is Flawed -** Dr. Feinberg's invalidity analysis is flawed because it is based upon an incorrect interpretation of the terms "programmable controller" (`483 patent, claim 13), and "programmable circuit" (`855 patent, claim 20).  The requirement that these terms include a controller or circuit which is programmable is inherent in the language of the terms themselves, and made clear in the specification and prosecution histories of the `483 and `855 patents. Dr. Feinberg does not apply the requirement for programmability in his invalidity analysis, and thus he reaches the wrong conclusions.  (*Trumper Decl. @ p. 4, ¶ 15).*

The programmable controller and/or programmable circuit, as construed by the Court in the claims of the patents-in-suit: a) is programmable and b) controls time and temperature. Feature a) requires that the programmable circuit encompasses a microprocessor, microcontroller, or equivalent programmed computational capability in an integrated circuit. Feature b) requires that both time and temperature be measured and that control action be taken on the basis of these measurements. (*Trumper Decl. @ pp.4-5, ¶ 16*).

The a) programmability and b) control requirements are clearly spelled out in the patent specifications and specified in the claims in suit. For example:

> The heating element 24 (not shown) may be powered on and off as necessary to supply heat at a maintained temperature to the cooking unit 39 and the heating chamber via a programmable control 200. (`483 patent, Col. 3, ll. 8-12), and The circuit board 254 mounts circuitry and logic allowing the user of the appliance 10 to electronically control and program cooking cycles and temperature. (`483 patent, Col. 4, ll. 48-50) (*Trumper Decl. @ p. 5, ¶17*).

This analysis is also consistent with the Court's *Markman* interpretation of the claim language. Claim 13 of the '483 Patent recites "**A method of using *a programmable slow-cooker appliance***." This element appears in Claim 13, lines 1-2 of the '483 Patent. The Court construed the italicized portion of this claim element as "*a cooking device designed for cooking food at a constant relatively low cooking temperature for a relatively long period of time [being], being programmable to operate in a variety of different cooking modes and cooking times*." (*See*, the Court's *Markman* Hearing Transcript @ p. 3, lines 7-12.) (*Trumper Decl. @ p. 5, ¶ 18*).

Dr. Feinberg also has an incorrect understanding of feedback control as it applies to the patents-in-suit and the cited prior art references. The terms "maintain temperature" and "control… temperature" refer to a feedback control process which is clearly described in the patent specification:

> "The temperature of the cooking appliance is measured using a thermistor 310, which is connected externally of the circuit board to the underside of the bottom of the heating chamber." (`483 patent, Col. 5, ll. 19-22), and "In all modes, the

- 12 -

> temperature is read periodically by the thermistor or other temperature element
> and relayed to the controller. The reading is checked at 4-second intervals. If the
> temperature is above or equal to the set point, power is removed. If it is below
> the set point, power is applied to the heating element 32. Of course, the circuitry
> can be modified as desired to achieve various program methods and modes."
> ('483 patent, Col. 7, ll. 3-9)  (*Trumper Decl. @ p. 6, ¶ 19*).

As specified above, temperature measurement and feedback control of temperature by application of power to the heating element is used in all modes of the invention. Accordingly, the control of temperature in the patents-in-suit requires measurement of temperature and a feedback control action on the basis of this measurement. (*Trumper Decl. @ p. 6, ¶ 20*). In addition, the patent specifies that temperature measurement and thus the associated control action take place on a periodic interval (for example, 4 seconds). Such sampled control is characteristic of microprocessor systems, and confirms that the controller of the invention utilizes a microprocessor, microcontroller, or equivalent. Accordingly, temperature sensor data are gathered in the programmable slow-cooker of the patents-in-suit. (`483 patent, Col. 7, ll. 3-9). This data is gathered at a fixed time interval (e.g., 4 seconds) to facilitate real-time control (maintaining) of a user-programmed temperature and cooking time. (*Trumper Decl. @ p. 6, ¶ 21*).

The programmable circuit of the patents-in-suit uses closed-loop feedback to control the cooking temperature. The microprocessor controller of the programmable circuit achieves this function by measuring the temperature with a thermistor and then applying power to the heating element on the basis of this feedback. (*Trumper Decl. @ p. 6, ¶ 22*). By contrast, the Weiss `287 patent, in Figures 6 and 7 provides an open-loop control where the heating element is driven with a fixed on/off timer-based pattern. This is confirmed by the observation that the "controller" 22 of Weiss (shown in Fig. 8) has no measurement input for a temperature sensor. It is an open-loop timer which sets the on/off pattern applied to the heating element without regard for the resulting temperature. The "controller" 22 of Weiss is open-loop; it is unable to exert control over the

- 13 -

temperature of the cooking process, and thus is unable to control the quality of the cooking result. The responsibility for a correct cooking temperature and cooking result is left to the user of the device shown in Weiss. This is quite distinct from the closed-loop control of the patents-in-suit, in which temperature is maintained via feedback control. (*Trumper Decl. @ p. 7, ¶ 23*).

Dr. Feinberg makes a significant error by failing to distinguish between open loop and closed loop control. As near as can be understand, he views anything which affects temperature as being a form of programmable temperature control. This is simply incorrect in the context of the patents-in-suit. (*Trumper Decl. @ p. 7, ¶ 24*). Dr. Feinberg also makes a significant error in that he seems to view anything which can be set as a programming input to a programmable controller. For example, he views an oven with a manually-settable thermostat and mechanical timer to turn the oven on and off as a programmable controller within the scope of the claims in suit. (*Feinberg dep.* 247:8-22.) In this incorrect view, the knobs of the thermostat and timer are programmable inputs. However, such oven thermostats and mechanical timers have been available on the market since the early part of the last century. They cannot be considered a programmable controller within the context of the patents-in-suit. Dr. Feinberg asserts an unreasonable position, which is unsupportable in light of the specifications of the patents-in-suit and their file histories. (*Trumper Decl. @ p. 7, ¶ 25*).

Dr. Feinberg also takes inconsistent positions in two of the pending motions. In arguing non-infringement in his Declaration (signed on July 18th) filed on July 19, 2006, he indicates that the digital logic and circuitry of the accused West Bend device is not programmable. In Photo 9 of this declaration, he identifies the microprocessor of the West Bend device as the "programmable controller" and says that it is "the only component… that is programmed to operate the heating element in accordance with the selected cooking parameters (*i.e*., cooking time and temperature) and to automatically lower cooking temperature to a warm mode after the selected time elapses."

- 14 -

Feinberg Non-Infringement Decl. at Para. 13.  This is far different than the broad position taken in his subject declaration and in his deposition; for example under his interpretation, the interface logic and circuits in West Bend's first printed circuit board could seemingly constitute a programmable controller in their own right.  (*Trumper Decl. @ p. 8, ¶ 26*).

This inconsistent analysis may be based upon Dr. Feinberg's lack of education or current expertise with regard to microprocessor based circuits.  None of Dr. Feinberg's educational and teaching background relates to microprocessor control systems.  (*Feinberg dep.* 14:5-15:6.)   Dr. Feinberg's sole teaching and research background with regard to computer control appears to be more than 20 years old.  In view of his lack of background in microprocessor controlled systems, Dr. Feinberg has apparently made an incorrect interpretation of the Court's Markman interpretation of the claims at issue.  (*Trumper Decl. @ p. 8, ¶ 27*).

In addition, Dr. Feinberg takes an unrealistic position on the background of one of ordinary skill in the art.  Dr. Trumper testified that  one of ordinary skill in the art which pertains to the patents-in-suit has a Bachelors degree in engineering, and with one or two years of experience designing electronic control circuits for slow-cookers, and is familiar with the cooking process requirements of slow-cookers.  (*Trumper Decl. @ p. 8, ¶ 28*).  By contrast, Dr. Feinberg believes that one of ordinary skill in the art does not even need an engineering degree.  (*See*, *Feinberg dep.*186:9-187:8)  Alternatively, Dr. Feinberg claims that an electrical engineer with no experience in the design or manufacture of cooking devices could be considered as one of ordinary skill in the art (*See, Feinberg dep.*187:9-19)  (*Trumper Decl. @ p. 9, ¶ 29*).

Given the inconsistencies and significant inaccuracies in his declarations and deposition, it is evident that Dr. Feinberg has insufficient background to qualify as an expert in the fields relevant to the patents-in-suit.  Based upon a review of Dr. Feinberg's resume, his reports, his lack of publications (no journal publications for more than 20 years), and his deposition transcript, there

is insufficient evidence that Dr. Feinberg is an expert in the fields to which he is testifying. Furthermore, Dr. Feinberg does not even qualify as one of ordinary skill in the art of this case. Dr. Feinberg's education precedes modern microprocessor control, and he clearly has no clear idea of what constitutes a programmable controller. Neither does Dr. Feinberg make any distinction between closed-loop and open-loop control. Ignorance of this distinction is an overwhelming fault which renders his opinions flawed and unreliable. (*Trumper Decl. @ p. 9, ¶ 30*).

In the following sections Dr. Trumper's testimony is relied upon in responding to Dr. Feinberg's analysis of the references cited in his Declaration, and provide material facts that support Holmes' contention the patents are valid despite the flawed arguments set forth by Dr. Feinberg. (*Trumper Decl. @ p. 9, ¶ 31*).

ii.        **The "Electric Cooking Appliance" of U.S. Patent No. 4,307,287 to Weiss**

The focus of this patent is a high-temperature cooker with a fixed timer-based controller. The unit has an initial cooking phase which starts automatically, and during which "the vessel 12 rapidly reaches a high temperature which, for example, enables the user suitably to brown pieces of meat in fat…" As established in Prof. Robotham's Declaration, such high temperatures are not consistent with the processes required in a slow-cooker. The high-temperature cooker of Weiss is clearly not a slow-cooker, because in the initial high-power cooking phase it rapidly raises the temperature to a value only limited to 347 °F when the safety shutoff thermostat intervenes. Further, during normal cooking, nothing limits the temperature to values consistent with slow cooking. (*Trumper Decl. @ p. 9-10, ¶ 32*).

The Weiss patent shows a metal cooking vessel in contact with a bottom-mounted heating element. (Although the body of the Weiss patent does not explicitly state the cooking vessel material, it is clear from mechanical and thermal considerations that the vessel is made of metal. For example, examining the cross-sectional view of Figure 2 of Weiss, the cooking vessel has thin

walls which could not be made of a ceramic material; only a metal vessel could have this

configuration.  The attachment of the handles confirms this; a ceramic vessel could not tolerate the

associated mechanical stresses.   Finally, the high thermal gradients resulting from direct contact

with the bottom-mounted heating elements would crack a ceramic vessel with such thin walls.)

The high thermal conductivity of the configuration of Weiss creates direct heat transfer and rapid

temperature rise of the items being cooked.  This high thermal conductivity also facilitates

browning, which process is one of the key features of this device.  The cited high cooking

temperatures of up to 347 °F are clearly far above the relatively low temperatures typical of a

slow-cooker.  Such high-temperature cooking processes and configuration do not correspond with

and teach against the use of a ceramic cooking unit with less direct heat transfer and relatively low

cooking temperatures characteristic of a slow-cooker.  (*Trumper Decl. @ p. 10, ¶ 33*).

The Weiss patent does not show a programmable controller or programmable circuit. The

control circuit 22 is just a simple timer circuit.  Nothing in the patent suggests that it is

programmable. The knobs 24, 26, 28 simply set the duration of timing signals emitted by the

control circuit. Such a manually settable control circuit clearly cannot constitute a programmable

controller.  Further, the Weiss "controller" 22 has no input for temperature measurement, and thus

cannot control temperature.  It also has no input for measuring power either, and thus cannot

control power.  It is an open-loop device. It is an incorrect interpretation to suggest that the fixed

on/off timer signals somehow control temperature; there is no way to determine what temperature

will result in the Weiss device.  In fact by using such a simple fixed timer circuit, this reference

teaches away from the concept of using a programmable controller.  Dr. Feinberg's analysis of the

Weiss patent incorrectly refers to the control circuit 22 as a programmable controller, when control

circuit 22 clearly does not include the features of a programmable controller.  (*Trumper Decl. @ p.
10, ¶ 34).*

- 17 -

Dr. Feinberg's Declaration at paragraph 5 states: "U.S. Patent No. 4,307,287 to Weiss' ("Weiss") selection of cooking temperature and method of maintainaining [sic] the cooking temperature through application of adjustable power to the heating element is the same method described in both the '483 and '855 patents, in which power is supplied to the heating element to select and maintain the cooking temperature.  ('483 patent, col. 3, ll. 9-12 and col. 6, ll. 1-12.)" (*Trumper Decl. @ p. 11, ¶ 35*).

This paragraph of is factually Incorrect and contains numerous misrepresentations. The Weiss patent does not discloses a means for selecting cooking temperature. Additionally, Weiss does not disclose means to maintain (control) temperature. Accordingly, since Weiss does not disclose cooking temperature selection means nor temperature control means, Weiss cannot describe the same methods as claimed in the patents-in-suit. The adjustable power in Weiss is set via the thumbwheels by the user; in this context the user functions as the temperature controller who must act to adjust the power to a suitable level.  (*Trumper Decl. @ p. 11, ¶ 36*).

The Weiss patent does not provide motivation to combine the teachings of this high-temperature cooker with a prior art slow-cooker or any of the other references to yield a programmable slow-cooker as described in claim 13 of the `483 patent, or claim 20 of the `855 patent, or the asserted dependent claims.  One of ordinary skill would not look to the Weiss patent for adapting to slow-cooker design.  (*Trumper Decl. @ p. 11-12, ¶ 37*).  Dr. Feinberg's analysis of the Weiss patent with respect to invalidity of the patents-in-suit is incorrect for at least the reasons cited above.  (*Trumper Decl. @ p. 12, ¶ 38*).  Accordingly, whether taking alone or combination, the references cited by West Bend do not anticipate nor render obvious either claim 13 of the '483 patent or claim 20 of the '855 patent.  Because these claims are not invalid, the dependent claims upon which they depend also are not invalid.

**E.    Testimony Demonstrates No Motivation to Combine with Other Devices**

- 18 -

The testimony of Mr. Lorens Hlava, a named inventor of the Holmes patents underscores the differences in the asserted prior art from the claimed invention. Mr. Hlava testified that he had not looked other appliances because they were so different from slow-cookers, due both to the heat generated by slow cookers and, due to these appliances not being made to operate for 8, 10 or 12 hours continuously, as is the case with slow cookers. (Hlava dep. Tr.. 71:12-73:9; Exhibit B to the Sack Declaration; Ex. 1-Holmes' Statement of Material Facts).


### F.    Evidence of Secondary Considerations of Non-Obviousness

Contrary to West Bend's assertions, Holmes has provided documents showing overwhelming evidence of secondary consideration which support non-obviousness of the asserted claims of the '483 and '855 patents. Holmes provided the underlying documents supporting such secondary considerations and a Declaration under oath of Mr. Bart Plaumann, dated October 6, 2006, filed in the U.S. Patent and Trademark Office in prosecuting a related patent application. Mr. Plaumann is the former Senior Vice President and General Manager of Kitchen SBU of Jarden Consumer Solutions, formerly known as The Holmes Group, (*Plaumann's Dec. & Exhibits; Exhibit C to Sack Declaration; Ex. 1-Holmes' Statement of Material Facts*)  provided to Defendants in discovery. In addition, Mr. Plaumann, was designated by Holmes to testify under Rule 30(b)(6) on Holmes' counterclaims regarding secondary considerations of non-obviousness. (See Holmes' Statement of Material Facts, page 28, paragraph 67 - page 34). Mr. Plaumann was extensively examined on his Declaration marked as Exhibit 19, for more than 100 pages of the transcript. *Plaumann's Dec., Ex. C to **Ex. 1**).*

During the deposition, Mr. Plaumann testified regarding the correlation between the claimed subject matter and the commercial success of the Holmes slow-cookers. West Bend examined Mr. Plaumann who testified that the overwhelming commercial success of the

programmable slow cookers was due to the programmable auto shift to keep warm feature. *(See, Holmes' Statement of Material Facts, paragraph 82, pages 30-31).*

Accordingly, secondary consideration of long felt need, commercial success and copying by others all support Holmes' contention that it would not have been obvious to combine the prior art Rival and any other slow-cookers with any of the cooking devices cited by West Bend, such as Weiss or Kowalics patents, even if the combination would result in a programmable slow-cooker in accordance with the claims of the '483 and '855 patents. However, as supported by the expert Declarations of Professor Robotham and Dr. Trumper, even if such combination were made, it would not result in the claimed programmable slow-cooker of claim 20 of the '855 patent, or the method of using same as recited in claim 13 of the '483 patent.

## III.  CONCLUSION

For the foregoing reasons, clear material issues of fact exist sufficient to deny West Bend's Motion for Partial Summary Judgment on Invalidity of U.S. Patent Nos. 6,573,483 and 6,740,855.

Respectfully submitted,

SUNBEAM PRODUCTS, INC.,
f/k/a THE HOLMES GROUP
By its Attorneys,

Dated:  December 22, 2006

*/s/ Alan M. Sack/*

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Alan M. Sack, Esq. (*Pro Hac Vice*)
AMSDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com

Counsel:
Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004

Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 22, 2006.

/s/ Alan M. Sack
Alan M. Sack