# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,                          :
                                                 :
    Plaintiff/Counterclaim-Defendant,       :       Civil Action No.  1: 05-CV-11367 WGY
                                                 :       (Alexander, M.J.)
                  v.                   :
                                                 :
WEST BEND HOUSEWARES, LLC and                    :
FOCUS PRODUCTS GROUP, L.L.C.,                    :
                                                 :
    Defendants/Counterclaim-Plaintiffs. :

## HOLMES' REPLY TO WEST BEND'S OPPOSITION
## TO HOLMES' MOTION FOR SUMMARY JUDGMENT
## OF NON-INFRINGEMENT OF WEST BEND'S DESIGN PATENTS

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
Alan M. Sack, Esq. (*Pro Hac Vice*)
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  516-822-3550

Nicholas J. Nesgos (BBO No. 553177)
Joseph W. Corrigan (BBO No. 647393)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  617-973-6100

*Attorneys for Plaintiff*

January 5, 2007

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION ............................................................................................................1

II.     ARGUMENT ....................................................................................................................2

        A.      Holmes' Proffered Claim Construction Should Be Adopted ...................................2

        B.      Holmes Properly Applied the Ordinary Observer Test............................................6

        C.      Holmes Use of Invariant Shape Analysis is Appropriate
                for the Ordinary Observer Test ...............................................................................9

        D.      The Accused Products Do Not Appropriate Any Potential
                Points of Novelty ..................................................................................................11

        E.      West Bend's Alleged Damages Should Be Limited...............................................16

III.    CONCLUSION ...............................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

*Best Lock Corp. v. Ilco Unican Corp*.
  94 F.3d 1563 (Fed. Cir. 1996)........................................................................2

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002)....................................................................8, 9

*Durling v. Spectrum Furniture Co.*,
  101 F.3d 100 (Fed. Cir. 1996)....................................................................2, 3, 4

*Eastern America Trio Prods., Inc. v. Tang Elec. Corp.*,
  97 F. Supp.2d 395 (S.D.N.Y. 2000)..............................................................3

*Elmer v. ICC Fabricating, Inc.*,
  67 F.3d 1571 (Fed. Cir. 1995)....................................................................2, 3, 4

*Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*,
  44 F. Supp.2d 1149 (D. Kan. 1999)..............................................................3

*Gorham Mfg. Co. v. White*,
  81 U.S. 511 (1871)....................................................................................6, 7, 10

*In re Webb*,
  916 F.2d 1553 (Fed. Cir. 1990)....................................................................8

*Lee v. Dayton-Hudson Corp.*,
  838 F.2d 1186 (Fed. Cir. 1988)....................................................................3

*Moore U.S.A., Inc. v. Standard Register Co.*,
  229 F.3d 1091 (Fed. Cir. 2000)....................................................................10

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997)....................................................................3

*Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*,
  203 F.3d 790 (Fed. Cir. 2000)....................................................................16

## I.     INTRODUCTION

West Bend's opposition to Holmes' motion for summary judgment of West Bend's design patents is fundamentally flawed both to matters of law and alleged issues of fact.  West Bend's opposition is based upon an improper claim interpretations which are so vague as to be readable on the prior art and wrongly criticizes Holmes' proffered construction as being "impermissibly narrow".  Holmes construction of the claimed inventions clearly and properly define the designs as shown in the figures of the patent which is wholly proper.

West Bend's primary contention is that the accused slow-cookers are substantially similar in overall appearance to the claimed designs ignoring all the ornamental features specifically shown in the patent figures.  Based upon West Bend's overall similarity analysis, even prior art slow-cookers would also be found to satisfy the test.  Such an analysis is clearly wrong, just like West Bend's impermissibly broad claim construction which does not adequately describe the slow-cooker shown in the patent figures.

West Bend also wrongly criticizes Holmes analysis with respect to the overall similarity test.  West Bend contends that Holmes compared the list of ornamental features from its proffered claim construction to the accused designs allegedly ignoring the overall visual impression created by all the figures of West Bend's design patents.  However, it is the claimed list of ornamental features which create the overall visual impression; and therefore, Holmes analysis is clearly proper.

Notwithstanding the fact that none of the accused slow-cookers satisfy the overall similarity test, West Bend fails to correctly identify the alleged points of novelty in view of the significant prior art.  Only unsupported, conclusory expert testimony is set forth to support its contention that the accused devices appropriate the points of novelty.  Both the overall similarity test and the points of novelty test must be satisfied to establish infringement.  Failure of West

Bend to satisfy either test mandates a finding of non-infringement as a matter of law.

A clearer case of non-infringement is difficult to imagine. After years of apparent lack of concern of the accused products being sold by Holmes, West Bend only counterclaimed infringement of its design patents after Holmes filed suit against West Bend for infringing its programmable slow-cooker patents. Without basis in law or fact, West Bend has continued to pursue its meritless claim of infringement and should be charged with costs and attorney's fees.

## II.    ARGUMENT

### A.    Holmes' Proffered Claim Construction Should Be Adopted

Before the infringement analysis can begin, the Court must undertake to construe the claims of the design patents at issue. When construing the claim of a design patent, the construction of the claim must be limited to what is shown in the drawings, for design patents have almost no scope. *Elmer v. ICC Fabricating, Inc*., 67 F.3d 1571, 1577 (Fed. Cir. 1995) (refusing to omit features shown in the drawings from the claim). Thus, each of the claims at issue, as in all design cases, is limited to the specific design set forth in the patent figures. Features that arguably have functional aspects (nearly every feature in the claimed designs at issue) will only be considered ornamental when they can be designed in several ways and yet still retain their functional aspect. See e.g., *Best Lock Corp. v. Ilco Unican Corp*., 94 F.3d 1563, 1566 (Fed. Cir. 1996). The Federal Circuit has found reversible error when a design patent claim is defined too broadly. *Durling v. Spectrum Furniture Co.,* 101 F.3d 100, 104 (Fed. Cir. 1996)

Courts have found that listing the ornamental features of a design patent is an effective way to translate the patent figures into a claim construction. In *Durling*, the Federal Circuit described the use of words when construing the meaning and scope of a design patent:

> Unlike the readily available verbal description of the invention and of the prior art that exists in a utility patent case, a design patent case presents the judge only with visual descriptions. Given the lack of a visual language, the trial court must first translate these

visual descriptions into words -- i.e., into a common medium of communication. From this translation, the parties and appellate courts can discern the internal reasoning employed by the trial court. . .

*Durling,* 101 F.3d at 103.

The *Durling* court further stated that "[w]hen properly done, this verbal description should evoke the visual image of the design." *Id.* at 103 n.2.

It is standard practice to make a listing of ornamental features when construing the scope of a design patent claim. See, e.g., *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396**,** 1405 (Fed. Cir. 1997) (recognizing that the district court was correct in "carefully not[ing] the ornamental features" of the claimed design); *Elmer*, 67 F.3d at 1577 (interpreting the design claim to include "among its ornamental features triangular vertical ribs and an upper protrusion"); *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988) (holding that the district court correctly used a listing of design aspects of the accused device in conducting the ordinary observer test); *Eastern America Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp.2d 395, 406 (S.D.N.Y. 2000) (listing ornamental features in construing the design patent claim); *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 44 F. Supp.2d 1149, 1155 (D. Kan. 1999) (presenting a numbered list of ornamental features to construe the scope of a design patent claim). Furthermore, the listing of the ornamental features facilitates an analysis of infringement of the design patent. Accordingly, a proper claim construction will identify in words a listing of the ornamental features shown in each of the patent figures which form the basis for the claimed design.

In the present case, Holmes has proffered a claim construction which distinctly describes the subject matter shown in the patent figures. Even though the focus of a design patent is the drawings, the law still requires that the patent applicant "distinctly [claim] the subject matter

- 3 -

which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  West Bend contends that

the claim construction proffered by Holmes is impermissibly narrow, but there is no feature in

Holmes claim construction which is not clearly shown in the patent figures.  As previously

noted, design patent claims are limited to what is shown in the drawings and have almost no

scope.  *Elmer*, 67 F.3d at 1577.  Thus, Holmes proffered claim construction is clearly appropriate

since it evokes a visual image of the design which, if reproduced in a drawing, would depict the

claimed design.  See *Durling*, 101 F.3d at 103.

To the contrary, West Bend attempts to impermissibly broaden the scope of its design

patents to capture the ornamentally distinct Holmes slow-cookers.  To this end, West Bend's

proposed claim construction uses vague and ambiguous terms which do not provide sufficient

detail to evoke the visual image of the claim design.  For example, West Bend proposes that the

shape of the heating unit, cooking vessel and lid are oval.  However, the term "oval" does not

sufficiently describe the claimed shape of the components.  As is clearly evident from Figures 6

and 7 of the West Bend patents, the shape of the heating unit, cooking vessel and lid is a

rounded-off rectangle having nearly straight front and back side surfaces.  (Exhibits A-C).[1]  It is

not a smooth flowing ellipse as shown in prior art U.S. Patent No. Des. 420,246 which is also

considered oval.  (Exhibit L).  Similarly, West Bend loosely defines its handle on the lid as

defined in the '266 Patent as a "somewhat mushroom shaped knob."  (WB Opp. Memo., p. 2).

Such a construction does not adequately describe the particular shaped knob chosen in the patent.

Does the knob have a domed or flat surface?  Is the pedestal elongated or short?  What is the

relationship between the knob and pedestal?  The patented invention discloses this information in

the drawings, but West Bend ignores the details of its design in its proposed claim construction

---

[1]  Reference to Exhibits A-T refer to Exhibits submitted in Support of Holmes' Motion for Summary Judgment of
Non-Infringement of West Bend's Design Patents filed in the Court on December 1, 2006.

in direct contrast to established case law.  Furthermore, West Bend's claim construction impermissibly ignores ornamental features shown in the patent drawings, such as the smooth, flat bottom surface which West Bend chose to include in its patent claim.

Likewise, West Bend's alleged construction of a ceramic insert "having a material thickness that thins around the insert's entire perimeter" is vague and indefinite.  (WB Opp. Memo, p. 2).  Based upon West Bend's construction, it is impossible to envision how the allegedly claimed insert perimeter visually appears.  Does the material thickness that thins around the perimeter thin from both the top and bottom to create the visual appearance of a sideways "V"?  Does the material thickness thin in only one direction e.g., top to bottom or from bottom to top?  Again, as clearly and distinctly shown in the patent figures, Holmes proffered claim construction that the "lip of the cooking vessel slop[es] from a top surface to a bottom surface downwardly and outwardly throughout its perimeter and including a slight concave shape from the top surface to the bottom surface, the bottom surface being substantially flat, the flat bottom surface of the lip of the cooking vessel overhanging and being positioned adjacent to the upper edge of the heating unit" evokes a clear and unmistakable visual image.  Accordingly, Holmes proffered claim construction places the patented design as shown in the figures of the patents into words which evoke the visual image of the design and should be adopted by the Court.  West Bend's vague and ambiguous claim construction does not state with particularity the scope of the claimed invention, thereby frustrating the notice function of patent claims as well as violating the written description requirement of 35 U.S.C. § 112.

### B.     Holmes Properly Applied the Ordinary Observer Test

The ordinary observer test established in *Gorham Co. v. White*, 81 U.S. 511 (1871) states:

> [If] in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id*. at 528.

This is precisely the test that Holmes applied. Viewing the design as a whole by an analysis of all the patent figures defining each of the ornamental features of the claimed design and comparing them to the accused designs clearly leads to the conclusion that the designs are not "substantially the same." The differences in the ornamental appearance of the claimed features, i.e., the shape of the slow-cooker, the lid and knob, the insert lip and contour and bottom surface as shown in the figures create the overall visual impression. Comparing the claimed ornamental features to the accused devices leads to the conclusion that the ordinary observer would not be induced to purchase the accused devices supposing it to be the patented design as defined by the Court in its claim construction. A comparison of the bottom surfaces of the accused devices and the claimed designs shown in Figure 7 of the design patents alone warrants such a finding. (See Holmes Amended Memo., p. 12).

West Bend's opposition seeks the Court to conclude that all oval slow-cookers would satisfy the substantial similarity test. In fact, under West Bend's proposed claim construction, the prior art oval slow-cookers shown in U.S. Patent Nos. Des 420,246 to Alonge and Des. 429,596 to Hlava shown below would satisfy the overall similarity test.

- 6 -



Fig. 1 of U.S. Patent No. D444,664 (Exhibit C)





Fig. 7 of U.S. Patent No. Des. 420,246
(Exhibit L)

Fig. 1 of U.S. Patent No. Des 434,940
(Exhibit K)

The prior art in the '246 and '940 patents illustrates oval slow-cookers which include a heating

unit, a cooking vessel having a lip resting upon an upper edge of the heating unit and a dome-

shaped lid having a knob and skirt which, according to West Bend, would be substantially

similar to the claimed design. This is clearly not the test envisioned by the Supreme Court in

*Gorham* since such a test would in theory, invalidate the patented design. The only similarity

between the accused slow-cooker designs and the patented designs are that they are all slow-

cookers. No claimed ornamental feature has been appropriated by the accused designs.

With respect to West Bend's comparison of Figure 6 of the patented design to the

representative samples of the Holmes devices, (WB Opp. Memo., p. 8), it is without question

that the overall shapes of the patented and accused design are not substantially similar. No expert testimony is necessary to see the clear difference between the elliptically-shaped accused design and elongated, rounded-off rectangle shape of the patented design. The same holds true with respect to West Bend's comparison with Figure 4 of the patented design (WB Opp. Memo., p. 9) to that of the accused designs. It is abundantly obvious that the lip of the cooking vessel of the accused design is shaped significantly different from that shown in the patented design.

When comparing the bottom plan view, Figure 7 of the patented design, to the accused designs, West Bend conveniently alleges that the substantial differences including fastening devices, holes and stamped depressions are functional. (WB Opp. Memo., p. 9). However, just as a knob on a lid or a shape of a cooking vessel lip can be made in a variety of shapes, so can the fastening devices, holes, arrangement of holes, and stamped depressions or projections be made in a variety of shapes and sizes to create different visual impressions and thus have an ornamental appearance. Accordingly, these elements clearly play a role in the ornamental appearance of the bottom surface of the accused slow-cookers and under controlling case law, are no less important than any other claimed features in applying the ordinary observer test as discussed below.

West Bend does not dispute that all figures in the patent must be considered when determining overall similarity. Even surfaces which are not readily visible must be considered if they form a part of the patented design. See *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002) (the comparison must extend to all ornamental features visible during normal use of the product, i.e., "beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss or disappearance of the article." *citing In re Webb*, 916 F.2d 1553, 1557-58 (Fed. Cir. 1990). The Federal Circuit in *Contessa* concluded that "the

underside of the tray is fully revealed when the packaging is removed and thereafter is visible to the consumer during use of the accused product, [therefore] it was error for the district court to discount and overlook Figure 4 of the '612 patent, illustrating the underside of the tray." *Contessa,* 282 F.3d at 1381.  Likewise, in the case at bar, the ornamental features of the arrangement of holes and the size and shapes of depressions and/or projections on the bottom surface of the accused designs cannot be ignored in applying the ordinary observer test.  Based upon these clearly substantial differences alone, a finding that the ordinary observer would not be induced to purchase the accused design supposing it to be the patented design is more than appropriate and no reasonable juror could reach a finding to the contrary.

Holmes clearly applied the proper ordinary observer test.  Based upon a claim construction which lists the ornamental features defined by the patent figures, Holmes compared the features to the accused designs.  The substantial differences between each of the claimed ornamental features and the accused designs as discussed in Holmes opening memorandum, pp. 7-12, leads to the conclusion that the patented designs and the accused designs are substantially different in overall visual impression to an ordinary observer.  Thus, the ordinary observer test is not satisfied as a matter of law, and the Court need not continue the infringement analysis.

C.    **Holmes Use of Invariant Shape Analysis is Appropriate for the Ordinary Observer Test**

West Bend's attack on the invariant shape analysis is entirely baseless.  Invariant shape analysis is a framework for the analysis of the visual impression of shapes and is a widely accepted methodology to determine how individuals perceive the shape of an object.  The very presence of the examples of applications for invariant shape analysis included in West Bend's opposition verifies the wide acceptance and appropriate selection of the invariant shape analysis methodology for this case.  It is clear that West Bend's expert lacks an understanding of the

fundamental aspects of invariant shape analysis.  Invariant shape analysis is used as a method for bringing understanding and structure to the question of how humans process images providing a sound scientific basis for the conclusions of Holmes' expert, Mr. Mauro related to the design patent infringement tests.  (Mauro Reply Decl., ¶ 3 attached hereto as Exhibit 1).  To the contrary, West Bend's expert Mr. Woodring, merely provides unsupported conclusory opinions that although each ornamental feature is different in the accused devices, the differences in his mind are "minor."  (Mauro Reply Decl., ¶ 5).  Such conclusory opinions cannot create a genuine issue of material fact prohibiting summary judgment.  *See Moore U.S.A., Inc. v. Standard Register Co*., 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements.")

West Bend's contention that invariant shape analysis is only used when humans cannot determine differences between shapes is inaccurate.  The military applications mentioned in West Bend's opposition paper are, at best, early attempts to improve the discrimination of hostile weapon platforms in conditions where basic human perception is not effective, such as low light, poor atmospheric conditions and other visual conditions which have no relevance to the matters in this case.  Suggesting that invariant shape analysis only applies when humans cannot detect differences between objects is untrue and taken out of context in this matter.  (Mauro Reply Decl., ¶ 4).

Furthermore, Mr. Woodring's reliance on the *Gorham* case to arrive at a conclusion of substantial similarity in the present case is inappropriate.  Specifically, although differences are noticeable in the Gorham and White designs as illustrated in the published Supreme Court decision, the differences are merely a re-scaling of like shapes.  To the contrary, in the present case, the accused slow-cookers are not substantially similar in overall appearance because the

fundamental shapes and details of the ornamental features are significantly different, not just a like design in a different scale.  (Mauro Reply Decl., ¶ 6).

Moreover, West Bend's criticism of Holmes' analysis not focusing on Figure 1 of the patents is misplaced.  In conducting his analysis to determine overall similarity, Mr. Mauro studied each respective view of the slow-cooker shown in all the patent drawings.  Mr. Mauro did not ignore Figure 1 in his analysis.  The orthographic views of Figures 2-7 provide the most accurate representation of the details of the design.  Figure 1 of the West Bend design patents does not provide sufficient detail to determine the ornamental features of the design in the eyes of the ordinary observer.  For example, one cannot readily determine the overall shape of the slow-cooker from Figure 1, but the shape can be determined from the orthographic views of Figures 6 and 7.  Likewise, an ordinary observer cannot determine that the lip of the cooking vessel has a specific contour which is readily apparent from the orthographic views of Figures 2-5.  (Exhibits A-C).  Accordingly, West Bend's reliance on the perspective view of Figure 1 is misguided and exposes West Bend's meritless allegation of infringement.  (Mauro Reply Decl., ¶ 7).

> **D.**    **The Accused Products Do Not Appropriate Any Potential Points of Novelty**

Since the ordinary observer test cannot be satisfied, the infringement analysis is concluded.  Should the Court hold that the ordinary observer test is somehow met, the accused slow-cookers clearly do not appropriate any potential points of novelty.  West Bend's improper, vague and ambiguous claim construction also render its alleged points of novelty which are taken directly from its claim construction meaningless.  To determine the points of novelty, the claimed ornamental features which distinguish the patented design from the prior art must be identified.  It is these points of novelty which must be specifically present in the accused device to satisfy the test.

West Bend presents its alleged points of novelty in a chart on p. 14 of its opposition memorandum.  West Bend identifies the same two points of novelty with respect to the lid and cooking vessel insert for all the patents at issue.  The '664 patent further includes an alleged point of novelty directed to the feet.  West Bend's common proposed points of novelty alleged to be present in the accused devices are disclosed in the prior art as shown below and therefore cannot be points of novelty as a matter of law.

| West Bend's Proposed Point of Novelty | Prior Art |
| --- | --- |
| **Lid:**    a translucent and oval shaped lid having no integral skirt or knob | U.S. Patent No. Des. 434,940 discloses and claims a translucent and oval shaped lid.  The knob on the lid is depicted in broken lines and does not form a part of the claimed design.  Thus, a translucent and oval shaped lid having no integral skirt or knob is disclosed. |



Figs. 1 and 4 of U.S. Patent No. Des. 434,940 (Exhibit K)

| West Bend's Proposed Point of Novelty | Prior Art |
|---|---|

**Insert:**  an opaque and oval shaped insert separating a lid from a body having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared end handles

Each of U.S. Patent Nos. Des 420,246 (Fig. 4); Des. 429,596 (Fig. 4) and Des. 434,940 (Fig. 4) disclose an opaque and oval shaped insert separating a lid from a body and having a generally oval shaped perimeter that has slight concave curves transitioning to outwardly flared handles as defined by West Bend.



Fig. 4 of the '246 Patent (Exhibit L)

Fig. 4 of the '596 Patent (Exhibit J)

Fig. 4 of the '940 Patent (Exhibit K)

The prior art Rival® Crockpot® brand slow-cooker Model No. 3755 HG also discloses an opaque oval shaped insert having outwardly flared handles as defined by West Bend.



Henneberger Decl., ¶ 13.

- 13 -

| West Bend's Proposed Point of Novelty | Prior Art |
|---|---|
| [the cooking vessel insert as described above] and having a material thickness that thins around the insert's entire perimeter | At least the prior art Rival® Crockpot® brand slow-cooker Model No. 3755 HG discloses a cooking vessel insert having a material thickness that thins around the insert's entire perimeter, i.e., the insert has a slight downward and inward taper from a top surface to a bottom surface of the lip as shown below. |

 

(Henneberger Reply Decl., ¶ 2 attached hereto as Exhibit 2)

Importantly, West Bend has asserted infringement of slow-cookers having a nearly identical cooking vessel lip profile to that shown in the prior art which clearly illustrates the frivolousness of West Bend's claim of infringement. Below is a photograph of the cooking vessel lip of an accused Holmes slow-cooker next to the prior art Rival® Model No. 3755 HG slow-cooker which clearly shows an identical slight taper downwardly and inwardly from a top surface to a bottom surface of the cooking vessel lip. An ornamental feature shown in the prior art cannot be the basis of an infringement allegation under the point of novelty test.

  

(Exhibit T4)                                    (Henneberger Reply Decl., ¶ 2)

Accordingly, each of these alleged points of novelty are shown in the prior art, and therefore, cannot form the basis for the point of novelty test.

With respect to West Bend's alleged point of novelty regarding the feet in the '664 patent, West Bend concedes that none of the accused slow-cookers appropriate this alleged point of novelty. (West Bend Opp. Memo. p. 15). Also of interest is the fact that West Bend's expert has significantly modified his position regarding the alleged points of novelty. In his expert reports dated November 3 and November 21, 2006, Mr. Woodring identified points of novelty with respect to the knob and skirt on the lid for the '266 and '664 patents and the skirt on the lid for the '993 patent. (See e.g., WB Opp. Memo. Exhibit 1, Part 4). In its opening memorandum, Holmes clearly identified that the knob and skirt were disclosed in the prior art and could not be a point of novelty. (Holmes Amended Memo., p. 17). West Bend now obviously concedes this fact.

In view of the foregoing, the only potential points of novelty are those specifically identified by Holmes in its opening memorandum. These potential points of novelty are clearly not present in any of the accused designs. (Holmes Amended Memo., pp. 14-15).

West Bend tries in vain to create an issue of fact. West Bend argues that because Holmes and West Bend disagree on the points of novelty, an issue of fact exists. However, West Bend fails to understand that the points of novelty come directly from the claim as construed by the Court as a matter of law. Since West Bend's proposed claim construction would not include any points of novelty, such a construction is clearly improper. To the contrary, Holmes proffered claim construction clearly defines the invention as set forth in the drawings and identifies potential points of novelty not disclosed in the prior art. If the Court adopts Holmes' claim construction and potential points of novelty, no reasonable juror could conclude either that the accused products are (1) substantially similar in overall appearance and/or (2) that the accused

products appropriate the points of novelty not disclosed in the prior art.

Thus, despite West Bend's banter, not only is summary judgment clearly appropriate in this case, the frivolous nature of West Bend's counterclaim warrants an award of costs and attorney's fees to Holmes.  It is beyond doubt that West Bend only asserted its design patents in an attempt to obscure its willful infringement of Holmes' programmable slow-cooker patents which are the subject of Holmes' complaint against West Bend.

### E.    West Bend's Alleged Damages Should Be Limited

35 U.S.C. § 287(a) places a burden upon a patentee who has failed to mark their product to provide actual notice to a suspected infringer in order to obtain monetary damages.  While the last sentence indicates that filing an action for infringement shall constitute such notice, it presupposes that the pleading in such an action would comply with Fed. R. Civ. P. Rule 8(a).  Rule 8(a) does not require a patentee to set forth how every element of every claim is infringed; however, it does require that "a patentee…plead facts sufficient to place the alleged infringer on notice."  *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).  This requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.  *Id*.  It is clear that West Bend's counterclaims did not provide sufficient information or actual notice.  In fact, upon receipt of the counterclaims, Holmes requested that West Bend identify infringing models, due to the vast number and large variety of slow-cookers sold by Holmes.

The clear intent of § 287(a) is to place an added burden of providing actual notice upon patentees who fail to mark their products.  The date upon which damages accrue is not at issue in most patent cases since patentees either properly mark their products or otherwise plead sufficient facts to constitute actual notice.  Thus, damages cannot accrue until such actual notice is provided.

In the present case, after a request for clarification by Holmes, West Bend initially identified two models of Holmes slow-cookers which were similar in their overall appearance alleged to infringe its design patents. However, a large majority of the models more recently identified by West Bend are not so similar in appearance to the initially identified accused products. Some have very different handles, i.e., loop type handles creating a very different overall visual appearance. In contrast, although Holmes initially only identified one infringing West Bend model of slow-cooker, the few additional West Bend models accused of infringement are functionally exactly the same, only their external appearance differs. Thus, West Bend was fully aware that Holmes' claim of infringement of its utility patents applied equally to the functionally identical models. In contrast, the newly identified Holmes accused products vary in both function and ornamental appearance and thereby Holmes was not placed on notice that these devices were the subject of West Bend's counterclaim.

III.    CONCLUSION

For the foregoing reasons, the Court should adopt Holmes' claim construction, grant

Holmes' motion for summary judgment of non-infringement and award Holmes its costs and

attorney fees related to this frivolous counterclaim.

Respectfully submitted,

THE HOLMES GROUP
By its Attorneys,

Dated:  January 5, 2007            /s/ Glenn T. Henneberger
                                  Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
                                  CRHDocket@hoffmannbaron.com
                                  Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
                                  GTHDocket@hoffmannbaron.com
                                  Alan M. Sack, Esq. (*Pro Hac Vice*)
                                  AMDocket@hoffmannbaron.com
                                  Hoffmann & Baron, LLP
                                  6900 Jericho Turnpike
                                  Syosset, New York  11791-4407
                                  Telephone:  (516) 822-3550
                                  Facsimile:  (516) 822-3582

                                  and

                                  Nicholas J. Nesgos (BBO No. 553177)
                                  nnesgos@pbl.com
                                  Joseph W. Corrigan (BBO No. 647393)
                                  jcorrigan@pbl.com
                                  Posternak Blankstein & Lund LLP
                                  Prudential Tower, 800 Boylston Street
                                  Boston, Massachusetts  02199-8004
                                  Telephone:  (617) 973-6100
                                  Facsimile:  (617)-367-231

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on January 5,

2007.

/s/ Glenn T. Henneberger

Glenn T. Henneberger

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**


THE HOLMES GROUP, INC.,          :
                                  :

       Plaintiff/Counterclaim-Defendant,  :     Civil Action No.  1: 05-CV-11367 WGY
                                  :     (Alexander, M.J.)

                       v.             :
                                  :

WEST BEND HOUSEWARES, LLC and  :
FOCUS PRODUCTS GROUP, L.L.C.,   :
                                  :

       Defendants/Counterclaim-Plaintiffs. :


**DECLARATION OF CHARLES L. MAURO CHFP IN SUPPORT OF HOLMES
REPLY TO WEST BEND'S OPPOSITION TO HOLMES' MOTION FOR SUMMARY
<u>JUDGMENT OF NON-INFRINGEMENT OF WEST BEND'S DESIGN PATENTS</u>**


     I, Charles L. Mauro, hereby declare as follows:

     1.     I have prepared an expert report dated November 3, 2006 and rebuttal expert

report dated November 21, 2006 in this matter which has been provided to opposing counsel.  I

have also prepared a declaration in support of Holmes' motion for summary judgment of non-

infringement of West Bend's design patents which was filed with the Court on December 1,

2006.  A copy of my C.V. was previously attached to my expert report, Exhibit S to my

declaration of December 1, 2006.

     2.     In forming my opinions for this declaration, I have reviewed West Bend's

Memorandum in Opposition to Holmes' Motion for Summary Judgment of Non-Infringement of

West Bend's Design Patents, as well as supporting documents, including but not limited to the

Declaration of Cooper C. Woodring in Support of West Bend's Opposition to Holmes' Motion

for Summary Judgment of Non-Infringement of West Bend's Design Patents.

3.    Invariant shape analysis is a framework for the analysis of the visual impression of shapes and is a widely accepted methodology to determine how individuals perceive the shape of an object.  The very presence of the examples of applications for invariant shape analysis included in West Bend's opposition verifies the wide acceptance and appropriate selection of the invariant shape analysis methodology for this case.  It is clear that West Bend's expert lacks an understanding of the fundamental aspects of invariant shape analysis.  Invariant shape analysis is used as a method for bringing understanding and structure to the question of how humans process images providing a sound scientific basis for my conclusions related to the design patent infringement tests discussed in my expert reports and prior declaration.

4.    The point that invariant shape analysis is only used when humans cannot determine differences between shapes is inaccurate.  The military applications mentioned in West Bend's opposition paper are, at best, early attempts to improve the discrimination of hostile weapon platforms in conditions where basic human perception is not effective, such as low light, poor atmospheric conditions and other visual conditions which have no relevance to the matters in this case.  Suggesting that invariant shape analysis only applies when humans cannot detect differences between objects is untrue and taken out of context in this matter.

5.    West Bend's expert, Mr. Woodring, merely provides unsupported conclusory opinions that although each ornamental feature is different in the accused devices, the differences in his mind are "minor."

6.    Mr. Woodring's reliance on the *Gorham* case to arrive at a conclusion of substantial similarity in the present case is inappropriate.   In reviewing the figures illustrated in the published *Gorham* decision, although differences are noticeable between the Gorham and

White designs, the differences are merely a re-scaling of like shapes.  To the contrary, in the present case, the accused slow-cookers are not substantially similar in overall appearance because the fundamental shapes and details of the ornamental features are significantly different, not just a like design in a different scale.

7.     In conducting my invariant shape analysis to determine overall similarity, I studied each respective view of the slow-cooker shown in all the patent drawings.  I did not ignore Figure 1 in my analysis.  The orthographic views of Figures 2-7 provide the most accurate representation of the details of the design.  Figure 1 of the West Bend design patents does not provide sufficient detail to determine the ornamental features of the design in the eyes of the ordinary observer.  For example, one cannot readily determine the overall shape of the slow-cooker from Figure 1, but the shape can be determined from the orthographic views of Figures 6 and 7.  Likewise, an ordinary observer cannot determine that the lip of the cooking vessel has a specific contour which is readily apparent from the orthographic views of Figures 2-5.  It is my opinion that West Bend's reliance on the perspective view of Figure 1 is misguided.

I declare under penalty of perjury that the foregoing is true and correct and, as to matters stated to be alleged on information and belief, I believe them to be true.

Executed this 5th day of January, 2007.

Charles L. Mauro CHFP

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 5, 2007.

/s/ Glenn T. Henneberger
Glenn T. Henneberger

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**


THE HOLMES GROUP, INC.,        :
        :
    Plaintiff/Counterclaim-Defendant,   :
        :     Civil Action No.  1: 05-CV-11367 WGY
        v.        :     (Alexander, M.J.)
        :
WEST BEND HOUSEWARES, LLC and  :
FOCUS PRODUCTS GROUP, L.L.C.,  :
        :
    Defendants/Counterclaim-Plaintiffs. :


**DECLARATION OF GLENN T. HENNEBERGER, ESQ.
IN SUPPORT OF HOLMES' REPLY TO WEST BEND'S
OPPOSITION TO HOLMES' MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT OF WEST BEND'S DESIGN PATENTS**


I, Glenn T. Henneberger, counsel for The Holmes Group, Inc. ("Holmes") in the above-identified litigation, hereby make the following declaration:

1.      I am an attorney for the Plaintiff, Holmes.  I submit this Declaration in Support of Holmes' Reply to West Bend's Opposition to Holmes' Motion for Summary Judgment of Non-Infringement of West Bend's Design Patents.

2.      Paragraph 13 of my prior Declaration of December 1, 2006 includes photographs of a prior art Rival® Crockpot® brand slow-cooker Model No. 3755 HG.  Additional photographs of a side view and close-up of the cooking vessel lip from the side view of this prior art slow-cooker are shown below:

 

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January, 2007.

/s/Glenn T. Henneberger
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 5, 2007.

/s/ Glenn T. Henneberger
Glenn T. Henneberger