IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

Plaintiff,

vs.

WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT OF NON-WILLFULNESS**

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Best, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts  02110-1618
Telephone:    617-443-9292

January 5, 2007                                    *Attorneys for Defendants*

## <u>INTRODUCTION</u>

Since Holmes bears the burden to prove its allegation that West Bend's (WB) alleged infringement is "willful," Holmes, not WB, must present clear and convincing evidence that WB willfully infringed Holmes' patents. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993), *cert. denied*, 114 S. Ct. 1647 (1994). "Willfulness is a determination as to a state of mind." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992). Consequently, the core issue presented by WB's motion for summary judgment of nonwillfulness is whether Holmes has such clear and convincing evidence.

In its reply brief, Holmes ignores the fact that it, not WB, bears the burden of proof and presents no evidence, let alone clear and convincing evidence, of WB's bad faith. First, Holmes instead attacks the opinion of WB's patent attorneys. Without citing a single piece of actual evidence, Holmes pejoratively alleges that WB's opinion of counsel "<u>purposefully</u>" neglected the file history of the patents-in-suit and failed to construe claim terms. Second, directly contrary to the actual evidence presented by WB, Holmes disparages WB's opinion of counsel as "a rubber stamp" of WB's completed design, again without presenting a single piece of evidence to support its baseless accusation. Finally, Holmes resorts to attacking WB for what Holmes (without any supporting evidence) terms as WB's "litigation tactics." Holmes claims that WB in a manner that was "clearly intentional" 1) failed to produce documents (that WB does not possess), and 2) "refused to cooperate with Holmes" (by failing to produce a third-party witness from China whom Holmes failed to subpoena).

Holmes does not deny the basic facts that establish WB's good faith efforts to avoid infringement by obtaining and following the advice of patent counsel prior to committing any alleged act of infringement. Holmes' baseless derogatory characterizations of WB's opinion and

actions in this litigation are not evidence.  Holmes has not and cannot show any basis, let alone a

clear and convincing basis, that WB acted in willful disregard of Holmes' patent rights.

Summary judgment of non-willfulness should be granted.

## ARGUMENT

**I.    WB's Reliance On The Opinion Of Its Patent Counsel Establishes WB's Good Faith.**

It is undisputed that <u>before settling on a final design and offering the product to the market</u>, WB worked closely with its patent counsel over a ten-month period to carefully design

around the patents-in-suit.  Carpenter Dec. ¶ 3.  During this time, WB regularly consulted with

patent counsel providing detailed information on the development of its slow cooker, so that its

proposed designs could be evaluated by patent counsel against Holmes' patents.  *Id.*; Ex. B.

Heeding counsel's advice, WB settled on a design that was cleared by patent counsel in a

detailed and thorough 25-page report that included as exhibits:

1) relevant excerpts from the prosecution histories of Holmes' patents,

2) copies of the cited and important prior art patents, and

3) annotated photographs of WB's cooker.

These documents were attached so that WB could review and fully understand the record upon

which the opinion was based.  Carpenter Decl. ¶ 6; Ex. C.  The Court has now found that the

design cleared by WB's patent counsel does not literally infringe Holmes' patents.

Like the opinion letters in *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed.

Cir. 1993), the opinion of WB's counsel here "begins with a statement that the opinion letter is

based on a review of the file history of the patent, the prior art of record, and additional prior

art." *Id.* at 744.  Thus, WB's counsel's opinion evidences more than an adequate foundation.

Moreover, the opinion is not conclusory.  The "infringement issues are analyzed in detail,

including discussions of the prior art, the accused device, and the claim language." *Id.* Each independent claim of the patents-in-suit was analyzed separately by WB's counsel and compared to WB's prototype.

The undisputed evidence shows that WB made every effort to design around Holmes' patents, "the stuff of which competition is made and is supposed to benefit the consumer." *State Indus., Inc. v. A.O. Corp.*, 751 F. 2d 1226, 1236 (Fed. Cir. 1985). *See also London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed. Cir. 1991). Because one of the benefits of the patent system is the incentive provided to design around a competitor's product, such conduct "should not be discouraged by punitive damage awards except in cases where the conduct is so obnoxious as clearly to call for them." *State Indus.*, 751 F. 2d at 1236. WB's conduct here is anything but "obnoxious." WB worked for many months under the guidance of its patent counsel to avoid infringement, a course of conduct that paid due respect to Holmes' patent rights.

## A.    The Cases Upon Which Holmes Relies Do Not Support Holmes' Argument.

None of the cases Holmes cites support its argument that WB's counsel's opinion was deficient in any respect. Each case is readily distinguishable. For example, in *SRI International, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462 (Fed. Cir. 1997), the opinions were based on incorrect information about the structure of the accused device, merely repeated the patent examiner's arguments, which were successfully overcome by the patentee, and actually concluded that the accused product may infringe. This is not the case here. In *Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996), the opinion at issue contained no infringement analysis whatsoever under the doctrine of equivalents and the defendant continued to infringe after the arguments of its counsel regarding patent invalidity were considered and rejected by the Patent Office during reexamination of the patent-in-suit. Such facts have no bearing in this case.

3

In *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252 (Fed. Cir. 2000), the defendant did not follow its counsel's opinions because the designs for the accused product were finalized before the opinions were obtained.  In contrast, WB closely followed its counsel's advice to avoid infringement.

Rather than support Holmes' arguments, the cases it cites highlight the vast differences between WB's counsel's opinion and the type of opinion the courts have found to be inadequate to defeat a claim of willful infringement.  Unlike the detailed opinion here, that provided a comprehensive factual and legal analysis, the opinions in the cases upon which Holmes relies contained "merely conclusory statements without discussion of facts or obviously presenting only a superficial off-the-cuff analysis."  *See Read Corp.*, 970 F.2d at 829.

**B.     WB's Opinion Of Counsel Regarding The '483 Patent Is Not Deficient.**

Holmes' attack on the correctness of opinion of WB's patent attorney misses the point. "While an opinion of counsel is an important factor in determining the willfulness of infringement, its importance **does not depend on its legal correctness**."  *Ortho Pharm. Corp. v. Johnson & Johnson Corp.*, 959 F.2d 936, 940 (Fed. Cir. 1992) (emphasis added).  Rather, under the correct analysis, counsel's opinion must only be thorough enough to instill a belief in WB that a court would reasonably find the patents not infringed, regardless of whether the opinion ultimately proves to be correct.  *Id.*  Having conceded that there is no literal infringement in response to this Court's claim construction, Holmes cannot credibly claim that WB's opinion of counsel that reached the same conclusion as this Court's rulings is without merit, let alone that it does not provide an opinion thorough enough to instill a belief in WB that a court would reasonably find the patents not infringed.  These facts establish WB's good faith.

Holmes argues that WB's opinion of counsel "improperly construes the programmable controller and its location." Holmes' Br.[1] at 5. This argument is based on the assertion that the opinion is wrong because it excludes from the definition of the controller WB's touch sensors and LED displays, claiming that these elements "are circuit elements that clearly fall within the definition of a programmable controller since they are used to program desired cooking temperatures and times.'" *Id.*

First, Holmes again argues that the opinion is incorrect, not that one could not reasonably rely upon the opinion. Second, the opinion is not incorrect, even under Holmes' view of a "controller." WB's touch sensors correspond to the plastic push buttons of Holmes' patents which are not circuit elements. They are not electrical components and are not listed on Fig. 10 of the patents. The "displays" are not used to program "desired cooking temperatures and times." The displays provide information to the user concerning what programming selections have already been made.

Holmes next argues that the opinion's own definition of the "programmable controller" is not applied when the opinion concludes that there is no infringement. Holmes contends that the opinion's definition of a programmable controller, *i.e.*, a "circuit board which includes circuitry and logic to allow the user to electronically control and program cooking cycles and temperature," includes the push-button switches and LED display. The push button switches, however, are neither electrical components nor are they mounted on the circuit board. The display provides user information - it is not used to program the cooker. The opinion's definition of the "programmable controller" is applied correctly in reaching the conclusion of no infringement. Holmes simply disagrees with the opinion's claim construction.

---

[1]    "Holmes' Br." refers to Holmes' Memorandum In Opposition To West Bend's Motion For Summary Judgment Of Non-Willfulness.

Lastly, Holmes criticizes the opinion of WB's counsel because it "interprets the claims as essentially requiring the programmable circuit [*sic.* – the '483 patent uses the term 'controller'] to include elements all located in one place and all located outside the heating unit." Holmes' Br. at 6. Again, Holmes argues about the correctness of the opinion, not whether it provides a reasonable basis for WB's belief that it was not infringing Holmes' patents. The opinion's claim interpretation is identical to the Court's own construction that requires that the entire programmable controller be mounted to an outside housing, thereby placing the entire controller outside the heating unit. Holmes' arguments that there is no analysis to support "such a conclusory contention" is unfounded.

C.    **WB's Opinion Of Counsel Regarding The '855 Patent Is Not Deficient.**

Holmes begins its criticism of WB's opinion in regard to the '855 patent by arguing that the "opinion **makes it appear** as if ventilation was an important element of the claim." Holmes' Br. at 7 (emphasis added). That illogical conclusion is based upon the following single accurate statement made at page 17 in the opinion (WB 002372) that characterizes the claims present in Holmes' Second Preliminary Amendment: "These claims [including unamended claim 20], in contrast to the earlier filed claims, focus on the convection feature, describing the location of the vents . . . ." WB's Opinion at 17 (WB 002372). Holmes complains that the opinion "fails to state that claim 53 [issued claim 20] was amended to delete from the claim the 'means for ventilating said housing' limitation" and is "silent" on the keep warm feature upon which the applicants purportedly relied. Holmes' Br. at 6.

First, characterizing the unamended claims can hardly create an appearance concerning the actual issued claims. Second, the opinion clearly sets forth the reasons why WB's product does not infringe claim 20 of the '855 patent on page 23 of the opinion (WB 002378) without any mention of a "means for ventilation." *See* WB's Opinion at 23 (WB 002378). Third, the

opinion is not silent on the keep-warm feature. On the very page referenced by Holmes, when discussing Holmes' response to a subsequent office action, the opinion specifically notes: "[I]ndependent claims 53 [issued claim 20], 64, and 70 are, according to the applicant, 'directed to slow cookers that are caused to automatically switch from a cook mode to a lower temperature warm mode at the end of a set cooking time.'" *Id.* at 17 (WB 002372). Holmes' argument regarding ventilation is nothing less than a deliberate mischaracterization of WB's opinion. Contrary to Holmes' statements, the opinion did **not** rely "on features of the invention clearly not found in Claim 20." *See id.* at 23 (WB 002378).

Holmes' final attack on WB's opinion regarding the '855 patent is that the opinion at page 18 (WB 002373) uses the term "controller" while the claim actually uses the term "circuit," which Holmes characterizes as a "critical error." From the use of these words, Holmes concludes that the opinion "improperly excluded" WB's push-buttons and LED display from the circuit of claim 20.

Holmes' argument is at best specious. First, as this Court has already concluded and as Holmes' patent teaches, the "controller" is a "circuit." Second, the opinion's conclusion of non-infringement is clearly based on the location of the claimed housing outside the heating unit and specifically addresses Claim 20's "circuit" in relation to that housing:

> In our opinion, West Bend's cooker does not infringe claims 1-30 because its controller housing is located inside the bottom of the heating unit (in the heating cavity between an outer and interior bottom wall); it does not project outside the sidewall. Further, the West Bend control panel on the front of the heating unit does not house a **programmable circuit** or controller to control and program cooking cycles and temperature. The West Bend control panel is associated with a non-programmable circuit board that, like West Bend's programmable controller, is located *within* the heating unit.

WB's Opinion at 23-24 (WB 002378-79) (emphasis added).

Third, the opinion's exclusion of the push buttons and LED display from claim 20's programmable circuit is hardly error. Claim 20 itself specifically excludes the control panel from the "programmable circuit" by requiring that it be "connected to said programmable circuit." Holmes' patent teaches that the control panel "includes a plurality of indicator lights, such as LEDs . . . [and] a plurality of cantilevered portions [user push buttons]. " It was that claim language and patent teachings that led the Court to conclude that "[t]he programmable circuit [of claim 20] does not include the heating element, the control panel, displays and buttons." Holmes' argument that the opinion is in error for excluding these structures from the programmable circuit in reaching its conclusion of non-infringement is wrong. Even if it were not, Holmes again argues about the correctness of the opinion, not whether it formed a reasonable basis upon which WB concluded that Holmes' patents did not preclude WB from selling its cookers.

## II.    WB's Patent Counsel's Opinion Was Not A Rubber Stamp Of A Completed Design.

WB's patent counsel's opinion was not a "rubber stamp" as Holmes argues. It was the result of months of careful work and study by both patent counsel and WB to steer clear of Holmes' patents. This is the very type of conduct that the Federal Circuit has commended as the antithesis of willful infringement. *See Westvaco*, 991 F.2d. at 743-44. Holmes offers not a shred of evidence to support its reckless statement that patent counsel "was given a design he had to clear, and drafted an opinion accordingly." Holmes' Br. at 10. Patent counsel's clearance of the WB product after counsel and WB had been working together for almost a year to develop a design-around cooker can hardly be called a "rubber stamp." Holmes' entire argument that the opinion was a "rubber stamp" is based on misrepresentations of the undisputed documentary evidence presented by WB.

First, citing WB Ex. A at WB 2831, Holmes argues that "[d]uring the development process, both OEM and West Bend, through at least Bill Dobson . . . were aware that Holmes had patents covering its programmable slow-cooker and still continued to pursue the design." Holmes' Br. at 9.[2]  Holmes' statement is not true or, at best for Holmes, is patently misleading. WB Ex. A is an email string beginning on April 13, 2004 with an email from OEM to WB – more than a year after WB's project to develop a slow cooker began.  OEM's email specifically states:

> We have always known that Holmes had some sort of patent or patents for their electronic slow cookers.[3]  Bill Dobson tried many times to search for this Holmes patent, but he **was unsuccessful in finding it**.  We have now [April of 2004] found the Holmes patents . . . ."

During the early stages of the development process neither OEM, West Bend nor Bill Dobson had knowledge of Holmes' patent – they did not discover it until April of 2004 as the undisputed documentary evidence cited by Holmes states.  WB Ex. A also establishes that on April 14, 2004, the very next day after learning of it, WB forwarded the '483 attached to OEM's email to its patent counsel for advice.

Citing the deposition testimony of WB employee, Howard Kaney, Holmes next argues that "West Bend through at least . . . Howard Kaney was aware of the '483 patent in 2003 and continued to develop the slow-cooker <u>without seeking the opinion of counsel</u>."  Holmes' Br. at 9.  Holmes' statement is again shown false by the very testimony it cites.  While Mr. Kaney testified that he believed he became aware of the '483 patent in 2003, he also specifically testified that he sought the advice of counsel when he first learned of the patent.

Q.  Do you recall what you did with the information gleaned from the patent?
A.  I believe **I discussed the patent with counsel**.

---

[2]    Even if true, the pursuit of the non-infringing design would hardly establish a willful infringement.
[3]    The '483 patent is the first of the asserted Holmes patent to issue.  It issued June 3, 2003.

Q. And why would you discuss it with counsel?
A. I think it's prudent for any person who is developing a product to make sure that they develop a unique product, if possible one that's completely unique, and at least does not infringe on anybody else's patents or claims.

Ex. F, Kaney Dep. 95:15-96:17 (emphasis added). Mr. Kaney was not shown WB Ex. A discussed above and may well have been in error as to the date upon which he learned of the '483 patent. What is clear, nonetheless, is that whenever Mr. Kaney learned of the patent, contrary to Holmes' statement, he consulted with patent counsel.

Holmes next argues that "renderings" of WB's product submitted to patent counsel when WB "first became aware of the '483 patent in April of 2004" show that WB's design had already been completed. Holmes' Br. at 9-10. Holmes cites the Court to WB Ex. B. at 3146-49 for these renderings. WB Ex. B are emails that enclose a copy of WB's proposed user manual dated in June of 2004, not renderings of WB's proposed designs, and they are not dated before WB became aware of the '483 patent. They are dated more than a month after WB's patent counsel began assisting WB in designing around the '483 patent. More significantly, however, the proposed user manual shows only WB's proposed control panel. The manual does not disclose the arrangement of this control panel on the heating unit nor does the manual even depict any portion of the electrical components of the proposed cooker or how those components are mounted to the heating unit. Holmes' mischaracterization of this exhibit and its argument that there "were very few changes to the design" after WB learned of the '483 patent is totally false and unsupported.

Holmes' last attempt to discredit the opinion letter is its statement that "[t]here is no reliable evidence establishing that any significant guidance was given during the design stage." Holmes' Br. at 10. Whether the evidence presented by WB of its good faith is or is not reliable in Holmes' view is irrelevant – such evidence is undisputed. Additionally, Holmes, not WB,

bears the burden on this issue. Holmes must prove that WB had no reasonable basis for

believing it had a right to market and sell the accused product. Holmes has offered no such

evidence and cannot rely on what it considers to be unreliable evidence of WB's <u>good faith</u> to

meet its burden of proving <u>bad faith</u> by clear and convincing evidence.

**III.    WB Did Not Engage In Litigation Misconduct.**

Desperately seeking any grounds to avoid summary judgment, Holmes accuses WB of

intentionally withholding documents in this case. Holmes knows that such is not the case.

After receiving Holmes' document request in this case, WB searched for and produced to

Holmes all of the documents that it could locate regarding the design and development of the

accused product. Miotke Decl., ¶ 2. Following that production, Holmes took the 30(b) (6)

deposition of WB, the deposition of the president of WB and the deposition of Howard Kaney,

the lead WB engineer on the project. *Id.* ¶3. No issues were raised by Holmes that WB was

withholding any documents at the time of the depositions or for several months thereafter. *Id.* It

was not until December 7th (after WB had filed its summary judgment motions) that Holmes

began complaining that WB had withheld design documents. *Id.* ¶ 4.

On December 8, 2006, WB wrote to Holmes responding to its allegations. Miotke Decl.,

¶ 4; Ex. A. WB informed Holmes that:

> Holmes requested and received all of the development documents that West Bend
> has including communications with OEM. West Bend simply does not have any
> other responsive documents. We have made diligent searches several times for
> these documents because we believe they would be helpful to West Bend's case.
> Unfortunately, as previously explained, many documents were not retained when
> West Bend relocated its facilities after Focus purchased West Bend. As you
> might recall, West Bend also questioned why Holmes had very few development
> documents of its own including correspondence with a Chinese entity involved in
> that process . . . . We were told that no additional documents were retained and
> many were discarded after Holmes' purchase of Rival. Whether the reasons of
> either party's lack of documents are or are not "credible," are irrelevant, since the
> documents were not retained and cannot be produced.

Miotke Decl., Ex. A at 1-2. Holmes' only response to WB's letter was its continued unsupported accusations and its unfulfilled threats to file a motion to compel. *Id.* ¶ 5.

Holmes still has not presented any legitimate basis for its accusation. The fact that WB has documents relating to its design patents that predate its documents relating to the development of the accused slow cooker is irrelevant. As stated in the letter quoted above, WB changed facilities after Focus Products purchased the company in 2003 and many documents were not retained in the move. Miotke Decl., Ex. A. West Bend cannot produce documents that it does not have.

If Holmes actually believed that such documents were important to its case, it should have followed the requirements of Rule 56(f) of Federal Rules of Civil Procedure. A motion for additional discovery under Rule 56(f) must:

1) be presented in a timely manner;
2) show good cause for the failure to discover the necessary facts sooner;
3) set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time; and
4) establish that the sought facts, if found, will influence the outcome of the pending motion for summary judgment.

*See Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 127 (1st Cir. 2006). Clearly, Holmes did not file a 56(f) motion because it cannot make the showing the rule requires.

Holmes has known about the extent of the documents WB produced concerning the development of the accused product since at least as early as August 2006 when Holmes deposed WB. Yet Holmes took no action and has yet to act on its repeated threats to file a motion to compel. Even now, Holmes merely asserts in its brief (filed two weeks ago) that it is "preparing" a motion to compel. Holmes' belated complaint shows a lack of belief and diligence in pursuing the alleged missing documents, contrary to the requirements of Rule 56(f).

Holmes cannot show a plausible basis for believing the documents even exist, let alone that they will show facts that will assist Holmes in its defense of the current summary judgment motion.  West Bend does not have any more design documents.

Holmes has failed to establish that the sought facts, if found, will influence the outcome of the pending motion for summary judgment.  All of the documents Holmes alleges are missing predate any act by WB that Holmes alleges constitutes an act of infringement and additionally predate the critical 10-month period when WB was working with its counsel to design around the patents-in-suit.  These "missing" documents would shed no light on the willfulness issue presented here:  <u>After WB learned of Holmes' patents (April of 2004)</u> did WB sell the accused product without a reasonable belief that it had a right to do so?  It is WB's state of mind when it began selling the accused product after learning of the patents that is relevant, not what it might have done several years before that time.

Holmes' claim of litigation misconduct against WB for supposedly withholding documents is factually and legally without merit.

Next, Holmes complains that WB "refused to cooperate with Holmes in its efforts to obtain information and witnesses from OEM."  Holmes' Br. at 11.  OEM, as stated in Holmes' brief at 9, is "<u>one of Holmes' own Chinese manufacturers</u>."  If Holmes needed information or witnesses from OEM, Holmes knew where OEM was located and how to contact OEM.  WB's alleged failure to cooperate arose out of Holmes' noticing the deposition of a former employee of OEM, Hugh MacKay, and its request that WB's counsel accept service of a subpoena for Mr. MacKay.  Miotke Decl., ¶ 6.  WB's counsel informed Holmes that it did not represent Mr. MacKay and could not therefore accept service for him.  *Id.* ¶ 7; Ex. B at 1.  Counsel for Holmes indicated that it would proceed under the Hague Convention for a deposition

in Australia. *Id.* ¶ 8. WB heard nothing further about any deposition of Mr. MacKay or OEM

until Holmes filed its brief in response to WB's current summary judgment motion. *Id.* ¶ 9.

WB's actions cannot be considered litigation misconduct.

Holmes' claims of litigation misconduct lack merit.

## **CONCLUSION**

Rather than disregarding Holmes' patent rights, WB took affirmative action upon

learning of the patents to ensure that it did not infringe those patents. WB retained experienced

patent counsel early in the development stages of the accused product. Patent counsel advised

WB throughout development of the accused product to ensure that the product did not infringe

Holmes' patents and rendered oral and written non-infringement opinions to WB. WB relied on

those opinions and took no action in disregard of Holmes' patent rights. Holmes has no

reasonable case of infringement, let alone a "clear and convincing" case of willful infringement.

The undisputed facts show that WB took appropriate steps to avoid infringement and had a good-

faith basis based on advice of patent counsel to believe that its accused product did not infringe.

For the foregoing reasons, West Bend respectfully requests that the Court grant summary

judgment that West Bend has not willfully infringed the '483 and '855 patents.

Dated: January 5, 2007     WEST BEND HOUSEWARES, LLC
               FOCUS PRODUCTS GROUP, LLC
               By their attorneys,


               /s/ Erik P. Belt
               Michael E. Husmann
               Joseph T. Miotke
               MICHAEL BEST & FRIEDRICH LLP
               100 East Wisconsin Avenue, Suite 3300
               Milwaukee, Wisconsin 53202-4108
               Telephone:  414-271-6560
               Facsimile:  414-277-0656

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02100-1618
Telephone:    617-443-9292
Facsimile:    617-443-0004
E-mail:ebelt@bromsun.com

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601-6710
Telephone:    312-222-0800
Facsimile:    312-222-0818

## CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants

/s/ Erik P. Belt
Erik Paul Belt

# Exhibit F

Page 1

```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,
        Plaintiff/Counter-Defendant,

    -vs-                        Case No. 05-CV-11367 WGY
                                (Alexander, M.I.)
WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,
        Defendants/Counter-Plaintiffs.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

                    EXAMINATION OF

                    HOWARD KANEY

                    August 23, 2006
                       9:10 a.m.

            100 East Wisconsin Avenue
                Milwaukee, Wisconsin

              Karen L. Howell, RPR

1    slow cooker with certain features that are

2    embodied as shown in the illustrations, and,

3    I believe, the independent claims in the

4    patent.

5        Q.    Mr. Kaney, are you an inventor of

6    any patents?

7        A.    Yes, I have one patent.

8        Q.    An issued patent?

9        A.    Yes.

10       Q.    What was that directed to?

11       A.    It was a terminal block for a

12   small appliance.

13       Q.    Any others?

14       A.    No.

15       Q.    Do you recall what you did with

16   the information gleaned from the patent?

17            MR. MIOTKE:  Object as to vague.

18   What patent?

19            MR. HENNEBERGER:  The 483 patent.

20            THE WITNESS:  I believe I

21   discussed the patent with counsel.

22   BY MR. HENNEBERGER:

23       Q.    And why would you discuss it with

24   counsel?

25       A.    I think it's prudent for any

Page 96

1    person who is developing a product to make

2    sure that they develop a unique product, if

3    possible one that's completely unique, and at

4    least does not infringe on anybody else's

5    patents or claims.

6        Q.    Did counsel give you advice as to

7    what this patent meant?

8        A.    Yes.

9        Q.    And what was your understanding

10   from the -- from counsel as to what that

11   patent meant?

12       A.    I remember some discussions about

13   the patents and trying to understand some of

14   the claims in the patent, whether or not

15   those claims were interpretable by counsel and

16   how to avoid any of the claims that were

17   considered in the patent.

18       Q.    Are you aware of an opinion of

19   counsel regarding the West Bend design and

20   the Holmes' patents?

21       A.    Yes.

22       Q.    Did you receive a copy of the

23   opinion of counsel?

24       A.    Yes.

25       Q.    Did you understand it?

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE HOLMES GROUP, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 05-CV-11367 WGY<br>(Alexander, M.J.) |
| WEST BEND HOUSEWARES, LLC and<br>FOCUS PRODUCTS GROUP, LLC, | |
| Defendants. | |

## <u>DECLARATION OF JOSEPH T. MIOTKE</u>

I, Joseph T. Miotke, hereby give the following declaration based on personal knowledge, and if called to testify, would state:

1.  I am a partner at the law firm of Michael Best & Friedrich LLP, and I have been involved in the representation of West Bend (WB) in this matter since 2005.

2.  After receiving Holmes' document request in this case, WB searched for and produced to Holmes all documents that it could locate regarding the design and development of the accused product.

3.  Following that production, Holmes took the 30(b)(6) deposition of WB, the deposition of the president of WB, and the deposition of Howard Kaney, the lead WB engineer on the project. No issues were raised by Holmes that WB was withholding any documents at the time of the depositions or for several months thereafter.

4.  It was not until December 7, 2006 (after WB filed its summary judgment motions) that Holmes began complaining that WB had withheld design documents. On December 8, 2006, WB responded to Holmes' allegations. A true and correct copy of this December 8, 2006 letter from me to Alan Sack is attached as Exhibit A.

5.   Holmes' only response to my December 8 letter was continued unsupported accusations and an unfulfilled threat to file a motion to compel.

6.   Holmes attempted to obtain information and witnesses from OEM by noticing the deposition of a former employee of OEM, Hugh MacKay, and requesting that WB's counsel accept service of a subpoena for Mr. MacKay.

7.   WB's counsel informed Holmes that it did not represent Mr. MacKay and could not therefore accept service for him.  A true and correct copy of a letter dated November 8, 2006 from me to Alan Sack reflecting this is attached as Exhibit B.

8.   Counsel for Holmes then indicated that it would proceed under the Hague Convention for a deposition in Australia.

9.   WB heard nothing further about any deposition of Mr. MacKay or OEM until Holmes filed its brief in response to WB's current motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2006.

/s/ Joseph T. Miotke_____
Joseph T. Miotke

# EXHIBIT A

# MICHAEL BEST
## & FRIEDRICH LLP

Michael Best & Friedrich LLP
Attorneys at Law
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Phone 414.271.6560
Fax 414.277.0656

Joseph T. Miotke
Direct 414.225.4976
Email jtmiotke@michaelbest.com

December 8, 2006

**VIA E-MAIL**

Alan M. Sack, Esq.
HOFFMAN & BARON, LLP
6900 Jericho Turnpike
Syosset, NY 11791-4407

Re:     The Holmes Group, Inc. v. West Bend Housewares, LLC
        and Focus Products Group, LLC
        <u>Civil Action No. 05-CV-11367 WGY</u>

Dear Alan:

This letter responds to your letter dated December 7, 2006.

We fail to see the need to reschedule the depositions of the three Defendant employees, Richard Day, Kathi Benson, and Jeff Wellek.

These depositions were first scheduled at Holmes' request on dates agreeable to Holmes. They were rescheduled at Holmes' request for next week again at Homes' request and have been scheduled for nearly a month. The witnesses and the attorneys for West Bend involved in these depositions have arranged and rearranged their calendars to accommodate Homes' requests. Asking for everyone to again rearrange their calendars, at this late date, *i.e.,* three business days before they are to begin, is not reasonable.

Your stated reason for asking to postpone these depositions is fallacious. West Bend has not "withheld" any documents. Your allegation of West Bend's intentional failure to comply with its discovery obligations is without any basis.

Holmes requested and received all of the development documents that West Bend has including communications with OEM. West Bend simply does not have any other responsive documents. We have made diligent searches several times for these documents because we believe they would be helpful to West Bend's case. Unfortunately, as previous explained, many documents were not retained when West Bend relocated its facilities after Focus purchased West Bend. As you might recall, West Bend also questioned why Holmes had very few development documents of its own including correspondence with a Chinese entity involved in that process, e.g., focus group studies, communications with Sherwood Engineering, and communications with the Chinese entity that determined how to manufacture the circuit designed by Sherwood. We were told that no additional documents were retained and many were discarded after Holmes' purchase of Rival. Whether the reasons for either party's lack of

# MICHAEL BEST

## & FRIEDRICH LLP

Alan M. Sack, Esq.
December 8, 2006
Page 2

documents are or are not "credible," are irrelevant, since the documents were not retained and cannot be produced.

Similarly, with respect to the confidentiality agreements with OEM and the photographer of West Bend's oval slow-cooker, we have made diligent searches several times for these documents because we believe they would be helpful to West Bend's case. West Bend responded that it has no responsive documents related to Holmes' production request No. 67, which requested "[a]ll documents referring or relating to any photographer hired to photograph the slow-cookers depicted in West Bend production numbers WB000516-17; WB000080-81; WB001165 and WB001167." That response was true when made and remains true.

We do not understand your claim that the documents that you assert are being "withheld by West Bend go to the very heart of Homes' claim of willfulness in this case." Given the extensive documentation concerning West Bend's design around efforts during the development process that have been produced and the resulting opinion letter provided by its patent counsel, what could Holmes reasonably expect to discover? Holmes has had West Bend's document production for many months. Holmes took a 30(B)(6) deposition of West Bend in August of this year on the topic of willfulness. No claim of lack of documents was made then or thereafter on the topic of willfulness until yesterday. None of the three witnesses noticed for deposition next week were involved in the development of West Bend's accused cooker nor did they decide on behalf of West Bend to proceed with its slow-cooker after learning to Holmes' patents. Consequently, we see no basis for again rescheduling these depositions. In any event, West Bend cannot produce documents that it does not have.

Because of the absence of a valid reason for postponing the depositions of Dick Day, Kathi Benson, and Jeff Wellek scheduled for December 13, 14, and 15, respectively, these witnesses will be available for their depositions at Michael Best's Milwaukee office as requested by Holmes. If Holmes does not intend to depose these witnesses, please advise to eliminate any further inconvenience to those involved.

We understand Holmes' desire to depose West Bends' expert on the design patents, Mr. Woodring, "with all of his expert reports and declarations in hand." Because we have yet to see and digest Holmes' actual brief on its motion for summary judgment of no infringement of the design patents, we cannot at this time confirm whether or not Mr. Woodring will be submitting a declaration in response to Holmes' motion. Consequently, we agree to the postponement of his deposition. We will be in contact with you concerning an alternate date and any costs associated with Holmes' last minute request.

# MICHAEL BEST
## & FRIEDRICH LLP

Alan M. Sack, Esq.
December 8, 2006
Page 3

Sincerely,

Michael Best & Friedrich LLP

Joseph T. Miotke

# EXHIBIT B



Michael Best & Friedrich LLP
Attorneys at Law
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI  53202-4108
Phone  414.271.6560
Fax  414.277.0656

Joseph T. Miotke
Direct  414.225.4976
Email  jtmiotke@michaelbest.com

November 8, 2006

**VIA E-MAIL**

Alan M. Sack, Esq.
HOFFMAN & BARON, LLP
6900 Jericho Turnpike
Syosset, NY  11791-4407

Re:    The Holmes Group, Inc. v. West Bend Housewares, LLC
       and Focus Products Group, LLC
       Civil Action No. 05-CV-11367 WGY
       File No. 095511-9088

Dear Alan:

I am writing in accordance with our telephone conference of yesterday concerning deposition scheduling and in response to your letter of last evening.

We are confirming the depositions of the West Bend employees which you have requested as follows.  Gary Sarauer's deposition will take place at our Milwaukee office on December 4, 2006 at 9:00 A.M.  Gary Shabino's deposition will take place at our Milwaukee office on December 5, 2006 at 9:00 A.M.

At Holmes' request, we have contacted the following West Bend employees and cleared the following dates for their depositions as requested.  Mr. Richard Day and Ms. Kathi Benson are available on December 13th and 14th.  Mr. Jeff Wellek, an employee of Focus, is available on December 15th.  Please confirm these dates for your depositions of West Bend's and Focus' employees so that they can reschedule their other commitments.

As you are aware, Mr. Hugh Mackay is not and never has been an employee of West Bend or Focus and resides, we believe, in Australia.  We have no contact information for him other than the information included with the documents produced in this matter.  We also understand that he is no longer employed by OEM.  We have not spoken to him and have no authorization to accept a subpoena on his behalf.

Your letter of yesterday (November 7th) came as quite a surprise given our past conversations regarding the scheduling of depositions in this case and particularly in light of our telephone conversation of yesterday which preceded your November 7th letter.

Your November 7th letter is the first time Holmes has ever suggested that it needs to depose William Dobson or Scott Pollnow, inventors on West Bend's design patents that are the subject

# MICHAEL BEST

& FRIEDRICH LLP

Alan M. Sack, Esq.
November 8, 2006
Page 2

of the counterclaim in this case, prior to the December 1$^{st}$ date for filing summary judgment motions. Yesterday, before we received your letter, we discussed scheduling the depositions of these inventors. Specifically, I suggested that Mr. Dobson be deposed on December 19$^{th}$ and that we work to schedule Mr. Pollnow on December 18$^{th}$ or 20$^{th}$ so that Holmes would only need to make one trip for their depositions. You made no objection to that proposal and made no mention of any need to depose these inventors prior to December 1$^{st}$.

We do not understand Holmes' claim that it needs to depose the West Bend inventors prior to the date for filing summary judgment motions. Holmes was able to meet the deadline for filing expert reports on issues pertaining to West Bend's design patents (both infringement and validity) without these depositions. What information does Holmes need and expect to get from West Bend's inventors that relate to the filing of summary judgment motions? Why did Holmes wait until October 30$^{th}$ to make any serious attempt to schedule these depositions? Without answers to these questions, we are in no position to discuss an agreement to extend the deadline for Holmes to file summary judgment motions addressing West Bend's counterclaim in this case. While we do not believe that Holmes has or will suffer any prejudice if these depositions are not taken in November, we do believe that any alleged prejudice is the result of Holmes' procrastination, not West Bend's failure to cooperate as alleged in your letter.

As we have previously discussed, neither William Dobson nor Scott Pollnow is an employee of West Bend, and we have no authorization to accept subpoenas on their behalf. At your request, we agreed to attempt to arrange dates for their depositions and have done so as best we can. As you can imagine (and no doubt you have experienced in this case with Holmes' inventors who are no longer employees), these witnesses are not eager to drop what they are doing to accommodate the attorneys' schedules. Your last minute November 7$^{th}$ claim of a need for these depositions in November does not make the scheduling any easier. We have had, and continue to have, difficulties in contacting these former employees.

Nonetheless, in an effort to accommodate Holmes, we have been able to schedule Mr. Dobson's deposition for November 21$^{st}$ at our Milwaukee office. Unless we hear otherwise, Mr. Dobson will be prepared to go forward with his deposition at 9:00 A.M. on November 21, 2006 at our Milwaukee office. We also have been able to schedule Mr. Pollnow's deposition for November 28$^{th}$ at our Milwaukee office. Unless we hear otherwise, Mr. Pollnow will be prepared to go forward with his deposition at 9:00 A.M. on November 28 at our Milwaukee office. Mr. Pollnow will be traveling and not available from November 17-26, 2006. I'm sure that you can understand his unavailability given the unavailability of Holmes' inventor, Mr. DeCorbert, for three months after November 18$^{th}$, which you first advised us yesterday.

Yesterday, for the first time, Holmes also raised a claim that Holmes needed to depose West Bend's technical experts on both Homes' and West Bend's patents prior to the response date for responding to any summary judgment motions West Bend might file. First, as I stated in our telephone conference, West Bend is willing to accommodate this last minute claim of Holmes. Secondly, your letter is inaccurate in its statement that: "we [Holmes] have also noticed West

# MICHAEL BEST
& FRIEDRICH LLP

Alan M. Sack, Esq.
November 8, 2006
Page 3

Bend's experts to allow sufficient time for their examination prior to responding or replying to Summary Judgment motions." Your October 30th letter in which you for the first time request dates for West Bend's experts states:

> We would like to schedule the deposition of West Bend's technical expert for **December 20, 2006** and West Bend's design expert for **December 21, 2006**. Please confirm these dates or provide us with alternative dates for their examination. We will then issue a deposition notice for these witnesses.

Your requested dates of December 20th and 21st are after the long-scheduled December 1 Summary Judgment deadline and December 15th Summary Judgment response deadline. As you are aware, the Court has yet to set reply dates.

In yet another attempt to accommodate Holmes' last minute claims, we have again contacted our experts and had both them and us rearrange our calendars. West Bend's technical expert, Dr. Feinberg, and design expert, Mr. Woodring, are available for their depositions at our Milwaukee office on December 7th, 8th, 11th or 12th. Please advise on which of these two dates Holmes will take these depositions. Because our experts have other matters that must also be scheduled, as do we, we ask that you promptly inform us of the selected deposition dates.

Finally, we confirm the dates for two of Holmes' inventors, James DeCorbert and Lorens Hlava, who both are former employees that we have had difficulty in scheduling. Mr. DeCorbert's deposition will take place at 9:00 A.M. on November 16, 2006 in Providence, Rhode Island. We will serve an updated deposition notice confirming the November 16 date along with the specific location in Providence for the deposition. You advised me for the first time yesterday that Mr. DeCorbert will be unavailable for three months commencing on November 18, 2006.

We also confirm that Mr. Hlava's deposition will take place at 9:00 A.M. on December 14, 2006 in Tulsa, Oklahoma. We will serve an updated deposition notice confirming the December 14 date along with the specific location in Tulsa for the deposition.

If you have any questions, please contact me.

Sincerely,

**MICHAEL BEST & FRIEDRICH LLP**

Joseph T. Miotke