IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

        Plaintiff,

vs.

WEST BEND HOUSEWWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

        Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**WEST BEND'S REPLY MEMORANDUM SUPPORTING ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
INVALIDITY OF U.S. PATENT NOS. 6,573,483 AND 6,740,855**

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

January 5, 2007

*Attorneys for Defendants*

## INTRODUCTION

Holmes does not dispute the material facts as to the teachings of the prior art upon which West Bend ("WB") relies to show invalidity.  Instead, Holmes proposes new and unsupported claim constructions for the terms "programmable controller" and "programmable circuit" that disregard the Court's constructions for these terms.  Holmes' last-minute retreat to these new claim constructions highlights the fact that the Weiss prior art patent renders invalid, either alone or in combination with other prior art, all of the claims at issue under the Court's construction. While Holmes tries to characterize WB's prior art as not related to programmable slow cookers, the references themselves expressly state they are programmable slow cookers as construed by the Court.  Thus, there are no genuine issues of material fact as to the scope and content of the prior art and its disclosure of the claimed inventions.  Holmes also seeks to discredit WB's expert, Dr. Feinberg, arguing that Dr. Feinberg is not qualified to offer expert testimony here. Dr. Feinberg has a substantial background in electrical engineering and is more than qualified to offer expert testimony here.

The following claim charts summarize Holmes' positions and demonstrate that Holmes does not dispute the material facts establishing that summary judgment of invalidity is appropriate here.

| '483 Claims | Summary Of Holmes' Argument |
|---|---|
| 13.  A method of using a programmable slow-cooker appliance, the method comprising: | Argues that Weiss does not disclose a programmable slow cooker while ignoring fact that Weiss meets Court's "programmable slow cooker" construction. |
| providing a food item; | Does not dispute that Weiss discloses this limitation. |
| placing the food item into a cooking unit of the slow-cooker appliance; | Does not dispute that Weiss discloses this limitation. |

| | |
|---|---|
| selecting a cooking temperature and time using a programmable controller | Does not dispute fact that Weiss discloses a programmable controller under the Court's construction. <br><br> Instead, proposes new claim construction for "programmable controller" that is inconsistent with the Court's construction and then argues that Weiss does not disclose a programmable controller in accordance with this new, improper claim construction. |
| mounted to a housing fixedly mounted to a heating unit; and | Does not dispute that Weiss discloses this limitation. |
| changing the heating unit temperature automatically to a lower temperature after the selected time. | Does not dispute that Weiss discloses this limitation. |
| 14. The method of claim 13, further comprising notifying a user with illuminated indicators that the slow-cooker is powered and the timer is active. | Does not dispute that this limitation is taught by Norwood and Kowalics. Argues there is no motivation to combine these references with Weiss based upon incorrect assumption that references are not slow cookers. These arguments do not create an issue of fact. |
| 17. The method of claim 13, wherein the temperature and time are set in increments. | Does not dispute that Weiss discloses this limitation. |
| 19. The method of claim 13, further comprising emitting a sound. | Does not dispute that this limitation is taught by Norwood and Kowalics. Argues there is no motivation to combine these references with Weiss based upon incorrect assumption that references are not slow cookers. These arguments do not create an issue of fact. |

| '855 Claims | Summary Of Holmes' Argument |
|---|---|
| 20. A programmable slow-cooker appliance comprising: | Argues that Weiss does not disclose a programmable slow cooker while ignoring fact that Weiss meets Court's "programmable slow cooker" construction. |
| a heating unit including a bottom and a continuous sidewall extending from said bottom, said bottom and said continuous sidewall defining a well-like chamber, said continuous sidewall including an outer sidewall and an interior sidewall; | Does not dispute that Weiss discloses this limitation. |
| a heating element mounted to said heating unit and disposed between said outer sidewall and said interior sidewall; | Does not dispute that Holmes' prior art Crock Pot and Holmes' Scott patents disclose this limitation. Argues there is no motivation to combine these references with Weiss based upon incorrect assumption that Weiss is not a slow cooker. These arguments do not create an issue of fact. |
| a housing fixedly mounted to and projecting outside said continuous sidewall of said heating unit; | Does not dispute that Weiss discloses this limitation. |

| | |
|---|---|
| a programmable circuit positioned within said housing and configured to automatically switch said heating element from a cook mode to a lower temperature warm mode at the end of a set cooking time; | Does not dispute that Weiss discloses a programmable circuit under the Court's construction.<br><br>Instead, proposes new claim construction for "programmable circuit" that is inconsistent with the Court's construction and then argues that Weiss does not disclose a programmable circuit in accordance with this new, improper claim construction. |
| a control panel mounted to said housing and including a user interface connected to said programmable circuit for selecting a cooking temperature and cooking time; and | Does not dispute that Weiss discloses this limitation. |
| a cooking unit removably positioned in said well-like chamber. | Does not dispute that Weiss discloses this limitation. |
| 24.  A programmable slow-cooker appliance as described in claim 20 wherein said housing is comprised of a thermoplastic material and said cooking unit is comprised of a ceramic material, said cooking unit being removably positioned in said well-like chamber. | Does not dispute that Holmes' prior art Crock Pot and Holmes' Scott patents disclose this limitation.  Argues there is no motivation to combine these references with Weiss based upon incorrect assumption that Weiss is not a slow cooker.  These arguments do not create an issue of fact. |
| 26.  A programmable slow-cooker appliance as described in claim 20 wherein said programmable circuit is configured such that a user cannot initially set a lower temperature warm mode. | Does not dispute that Weiss discloses this limitation. |
| 27.  A programmable slow-cooker appliance as described in claim 20 including a switch operatively associated with said control panel, said programmable circuit being configured such that subsequent pushes of said switch activates different cook modes. | Does not dispute that Norwood and Park patents disclose this limitation.  Argues there is no motivation to combine these references with Weiss based upon incorrect assumption that references are not slow cookers.  These arguments do not create an issue of fact. |
| 29.  A programmable slow-cooker appliance as described in claim 20 wherein said housing includes a thermoplastic portion adjoining and extending into said continuous sidewall of said heating unit. | Does not dispute that Holmes' prior art Crock Pot discloses this limitation.  Argues there is no motivation to combine this references with Weiss based upon incorrect assumption that Weiss does not disclose a slow cooker.  These arguments do not create an issue of fact. |

The asserted claims from Holmes' 483 and '855 patent are invalid.  Holmes failed to demonstrate that any material facts exist regarding the invalidity of these patents.  The Court should grant summary judgment that these claims are invalid.

<u>**ARGUMENT**</u>

**I.      Weiss Discloses A Programmable Controller/Circuit In Accordance With The Court's Constructions.**

The only limitation from claims 13 and 20 that Holmes argues is not present in Weiss is the programmable controller/circuit.  Holmes bases its entire argument upon new, unsupported claim constructions for the terms "programmable controller" and "programmable circuit" in a transparent attempt to improperly narrow the construction for these terms and thereby save the validity of the asserted claims.

**A.      Holmes Offers No Evidence To Dispute That Weiss Has A Programmable Controller/Circuit In Accordance With The Court's Claim Constructions.**

The control circuit 22 of U.S. Patent No. 4,307,287 to Weiss ("Weiss") meets the Court's constructions for "programmable controller" and "programmable circuit."  Ex. A, col. 2, ll. 61-68 and col. 4, ll. 47-57.  Holmes offers no evidence to dispute these facts and instead relies upon new, impermissibly narrow constructions for these terms that ignore the Court's constructions, as detailed in section I.B. below.

The Court construed the "programmable controller" of claim 13 of the '483 patent as "a form of electrical circuit or circuits including input and output devices which permit an operator to select a cooking temperature and cooking time."  *Markman* Transcript (hereinafter "MKM Tr.") 20:19-22.  Weiss' control circuit 22 meets this construction and includes input and output devices which permit an operator to select a cooking temperature and cooking time.  Ex. A, col. 2, ll. 61-68 and col. 4, ll. 47-57.  With references to Figs. 1, 3, 4, and 5 from Weiss, reproduced below, "the control circuit 22 [programmable controller/circuit] has three regulating knobs, namely a first knob 24 intended for setting . . . the average power [cooking temperature] . . . and a second knob 26 and a third knob 28, which are intended for setting . . . the hours and the minutes [cooking time]."  Ex. A, col. 2, ll. 61-68.

4



Control Circuit 22

As further explained by Weiss, "[t]o operate the appliance, the vessel 12 containing the food to be cooked is placed in the casing 10, the user sets the power-regulating [temperature] knob 24 to a position suitable for the food to be cooked (for example position 5, corresponding to an average power of 800 watts, as shown in Fig. 3), and then the user sets the knobs 26 and 28 to the positions corresponding to the desired time for normal cooking (for example 1 hour 20 minutes)." Ex. A, col. 4, ll. 47-54.

Weiss' use of power settings to set the desired cooking temperature is the selection of a cooking temperature under the Court's construction. The claimed cooker of the '483 and '855

5

patents operate in the same way as Weiss by selectively applying power to the heating element to set the desired cooking temperature. As stated in the '483 and '855 patents, "[t]he heating element . . . may be powered on and off as necessary to supply heat at a maintained temperature to the cooking unit 39 and the heating chamber via a programmable control 200." '483 patent, J.A. at MKM0015, col. 3, ll. 9-12. "In general, full power will be applied to the heating element 24 until the time corresponding to the illuminated LED elapses, after which the power to the heating element is reduced by half . . . . Once the time setting has expired, the appliance 10 automatically reduces power to the heating element 24 to put the unit into a WARM setting. . . ." J.A. at MKM0016, col. 6, ll. 8-17. Weiss' selection of a power setting is thus the selection of a cooking temperature.

Weiss therefore includes a "programmable controller" in accordance with the Court's construction because the Weiss control circuit 22 is "a form of electrical circuit or circuits including input and output devices which permit an operator to select a cooking temperature and cooking time." Holmes failed to introduce any evidence to dispute this fact.

The Court construed the "programmable circuit" of claim 20 of the '855 patent as "a circuit, including an assemblage of electronic components, which allows the user to program both the temperature and desired time for cooking and which can automatically change the heating element from a cooking mode to a warm mode once the set cooking time has expired." MKM Tr. 38:12-17. Weiss control circuit 22 meets this construction as well. Ex. A, col. 2, ll. 61-68 and col. 4, ll. 47-57. As explained above, Weiss' control circuit 22 allows the user to program both the temperature and desired time for cooking. *Id.* Additionally, Weiss' control circuit 22 can automatically change the heating element from a cooking mode to a warm mode once the set cooking time has expired. *Id.* When Weiss is set to its cooking mode "II," after the food is cooked for the selected time and at the selected temperature, referred to as "cooking

6

phase C," this cooking phase is automatically "followed by the phase M, at reduced power, in which the food is kept hot." *Id.*, col. 4, ll. 66-68. Thus, when the cooking time set by the user expires, Weiss' control circuit 22 automatically reduces power to put the cooker in a warm mode during which the food is maintained at a predetermined temperature less than the cooking temperature. *Id.* This is precisely the same way in which the "programmable circuit" of claim 20 operates to reduce power to the warm mode after the selected cooking time has expired. J.A. at MKM016, col. 6, ll. 8-17. Weiss thus discloses the programmable controller of claim 13 of the '483 patent and the programmable circuit of claim 20 of the '855 patent.

### B.    Holmes Now Retreats To New, Unsupported Narrow Constructions For "Programmable Controller" And "Programmable Circuit."

Instead of raising any factual issues to refute the conclusion that Weiss discloses a programmable controller/circuit in accordance with the Court's constructions, Holmes now ignores the Court's claim constructions and seeks to introduce a new, impermissibly narrow construction for these terms in an effort to save its patents. The fact that Holmes is forced to retreat to these unsupported, narrow constructions only serves to highlight the fact that Weiss discloses a programmable controller/circuit in accordance with the Court's constructions. Even more telling is the fact that Holmes does not rely upon its new claim constructions in its brief opposing WB's Second Motion For Summary Judgment of Noninfringement. This further demonstrates that these new, unsupported claim constructions are contrived solely to avoid the undisputed teachings of Weiss and the other prior art in a last-ditch effort by Holmes to save its patents.

Holmes' new and improper constructions are:

The programmable controller and/or programmable circuit, as construed by the Court in the claims of the patents-in-suit: a) is programmable and b) controls time and temperature.

Feature a) requires that the programmable circuit encompasses a microprocessor, microcontroller, or equivalent programmed computational capability in an integrated circuit.

Feature b) requires that both time and temperature be measured and that control action be taken on the basis of these measurements.

Holmes' Br. at 12.

Neither the Court's claim constructions, the language of claims 13 and 20, nor the '483 and '855 patent specifications requires that the programmable controller/circuit "encompasses a microprocessor, microcontroller, or equivalent programmed computational capability in an integrated circuit" as suggested by Holmes.  Holmes commits a cardinal sin of claim construction by trying to limit the claims to the preferred embodiment.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20, 1323 (Fed. Cir. 2005).  Here, Holmes is simply trying to read into the constructions for "programmable controller" and "programmable circuit" extraneous features that are not required to interpret the claims in a transparent attempt to preserve their validity.  *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433-34 (Fed. Cir. 1988).

This is the first time Holmes has argued for such a narrow construction of the programmable controller/circuit limitation.  In its claim construction brief, Holmes proposed the following constructions:

**Programmable Controller**  A programmable controller in the form of an electrical circuit including user actuated input devices and output devices which permits an operator to select a cooking temperature and cooking time.

**Programmable Circuit**  A circuit including an assemblage of electronic components which allows the user to program both the temperature and desired time for cooking and which can automatically change the heating element from a cooking mode to a warm mode one a set cooking time has expired, the circuit being positioned within the enclosure in that at least a portion of the circuit resides in the enclosure.

Holmes' MKM Br.[1] at 12-14 and 24-26.

Indeed, in its claim construction brief, Holmes actually quoted the specification of the '483 and '855 patents in support of the above proposed constructions to show that the programmable controller/circuit is not limited to a microprocessor, an integrated circuit or any specific configuration:

> "[t]he [schematic] diagram shows a preferred exemplary circuit incorporating preferred components as utilized in the preferred embodiment of the present invention. One skilled in the art will recognize that the componentry illustrated herein is exemplary only and that **many other components may be substituted to achieve the functions described herein**."

Holmes' MKM Br. at 13 (quoting '483 patent, MKM0016, col. 5, ll. 16-19) (emphasis added).

Holmes further emphasized this position, noting:

> The specification also states that while examples of the circuitry have been provided, "the circuitry may be implemented in **numerous ways**, as is well-known in the art, to accomplish the varying programming modes described."

Holmes' MKM Br. at 13 (quoting '483 patent, MKM0016, col. 5, ll. 16-19) (emphasis added).

Thus, Holmes own proposed claim constructions and the specifications of the '483 and '855 patent, as quoted by Holmes, confirm that the terms "programmable controller" and "programmable circuit" are not limited to the specific features now proposed by Holmes.

The Court's claim constructions for programmable controller/circuit and the '483 and '855 patents likewise do not require the "feedback control" (identified by Holmes as feature "b)") as Holmes now asserts. As with its new microprocessor-based programmable controller/circuit arguments, Holmes merely seeks to improperly limit the scope of its claims to a preferred embodiment to avoid the prior art. *Phillips*, 415 F.3d at 1319-20, 1323. Again, this is the first time that Holmes has attempted to narrowly define the programmable controller/circuit as requiring "feedback control." Holmes did not argue for such a narrow construction in its

---

[1]      "Holmes' MKM Br." refers to Plaintiff's Claim Construction Brief filed on September 5, 2006.

claim construction brief. Holmes' MKM Br. at 12-14 and 24-26. The above-quoted portions from the '483 and '855 specification demonstrate that the claimed programmable controller/circuit is not limited to one having "feedback control" as now asserted by Holmes.[2]

It is undisputed that Weiss discloses a "programmable controller" and "programmable circuit" as construed by the Court. Holmes has not demonstrated any factual dispute as to the disclosure of these elements by Weiss. The new claim constructions proposed by Holmes solely to avoid the Weiss patent should be rejected. Summary judgment of invalidity is warranted here.

## II.    Weiss Discloses A "Programmable Slow Cooker" In Accordance With The Court's Construction.

Weiss discloses a "programmable slow cooker" in accordance with the Court's claim construction for this term.[3] The Court construed "programmable slow cooker" to mean "a cooking device designed for cooking food at a constant, relatively low cooking temperature for a relatively long period of time, being programmable to operate in a variety of different cooking modes and cooking times." MKM Tr. 3:8-12. Weiss discloses such a cooking device, and indeed states that "with the cooking appliance described, it is possible to carry out, in total safety, diverse types of cooking ranging from **simmering at low temperature for a prolonged period of time** to deep frying at high temperature." Ex. A, col. 5, ll. 23-27 (emphasis added). Weiss' "simmering at a low temperature for a prolonged period of time" is the same thing as "cooking food at a constant, relatively low cooking temperature for a relatively long period of

---

[2]    Even if such "feedback control" were required by the Court's claim construction – and it is not – Weiss discloses a programmable controller/circuit that employs such feedback control. Weiss includes a temperature-detecting sensor 68 connected to a thermostat 66 for regulating the temperature of the cooker. Ex. A, col. 4, ll. 6-21 and 40-46. Weiss states that "for low powers, the thermostat 66 acts as a safety device capable of switching off the appliance when the temperature of the vessel rises above a predetermined value, whereas, for higher powers, the thermostat 66 acts as a control device capable of maintaining the vessel at the predetermined temperature (about 175°C)." *Id.*, col. 4, ll. 40-46.

[3]    WB still maintains that the term "programmable slow cooker" from the preamble of the asserted '483 and '855 patent claims is not a claim limitation. *See* Defendants' Memorandum In Support Of Their Proposed Claim Construction at 3-4, 14.

time" in accordance with the Court's construction. Holmes does not dispute that Weiss functions as a "programmable slow cooker" as construed by the Court. Instead, Holmes argues that Weiss discloses additional functionality. Weiss' additional functions, however, do not raise an issue of fact that it is a "programmable slow cooker."

Holmes attempts to create a factual issue by noting that Weiss also can be used for additional types of cooking, such as browning and deep frying. Holmes' Br. at 8-9. Nothing in the Court's construction for "programmable slow cooker" precludes these additional types of cooking such as browning or deep frying. Holmes' Br.[4] at 7-9. These additional features do not alter the conclusion that Weiss is a programmable slow cooker. *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1325 n.6 (Fed. Cir. 2003) ("The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed."); *Powdermagic, Ltd. v. Rossignol Ski Co., Inc.*, 2005 WL 3981617, at *6 (D. Utah Aug. 4, 2005) ("[T]he fact that a prior art reference teaches additional or alternate features will not diminish the reference's satisfaction of the limitations of [a] claim.")

Indeed, Holmes admits that "Weiss describes use in connection [with] temperature ranges from **simmering** up to 175°C (Col. 4, ll. 43-46), which converts to approximately 347°F, a setting suitable for deep frying capabilities." Holmes' Br. at 8-9. Holmes does not dispute that the "simmering" disclosed in Weiss is the same as the "relatively low cooking temperature" of the Court's construction. *Id.* Holmes likewise does not dispute that Weiss discloses cooking at this relatively low temperature for a relatively long period of time. *Id.*

---

[4]    "Holmes' Br." refers to Holmes' Response To Defendants' Memorandum In Support Of Their Motion For Partial Summary Judgment On Invalidity Of U.S. Patent Nos. 6,573,483 and 6,740,855.

Thus, it is undisputed that Weiss discloses a programmable slow cooker in accordance with the Court's construction.

### III.    It Is Undisputed That Weiss Discloses All Remaining Limitations Of Claims 13 And 17 Of The '483 Patent And, Therefore, These Claims Are Anticipated.

Aside from its failed arguments regarding Weiss' disclosure of a "programmable slow cooker" and "programmable controller," Holmes does not dispute that the remaining limitations of claims 13 and 17 of the '483 patent are disclosed by Weiss as identified in the claim chart above.  As to claim 13, Holmes does not dispute that Weiss discloses providing a food item, placing the food item into a cooking unit, selecting a cooking time and temperature using control circuit 22 that is mounted to a housing fixedly mounted to a heating unit, and changing the heating unit temperature automatically to a lower temperature after the selected time.  Likewise, Holmes does not dispute that Weiss discloses setting the temperature and time in increments as called for by claim 17.  In the Weiss cooker, the temperature control disc 24 is marked in ten power or temperature increments, and the time control discs 26 and 28 are incrementally marked with time settings.  Ex. A at col. 3, ll. 62-65.

Accordingly, there is no question of fact that Weiss discloses each limitation required by claims 13 and 17 of the '483 patent.  Therefore, Weiss anticipates and renders invalid claims 13 and 17 under Section 102(b).

### IV.    It Is Undisputed That Claim 20 Of The '855 Patent Would Have Been Obvious.

Claim 20 of the '855 patent is invalid because it would have been obvious in view of Weiss combined with Holmes' own prior art Crock Pot or Holmes' U.S. Patent Nos. 3,806,701 and 3,881,090, both to Scott (collectively the "Scott patents").  The only limitation of claim 20 missing from Weiss is disposing a heating element between the outer and interior sidewalls of the heating unit, which Holmes' '855 patent itself admits is nothing new.  J.A. at MKM0133, col. 2, ll. 37-51.  Indeed, the '855 patent describes a "prior art embodiment of a food-heating slow-

cooker appliance" as having a heating element "mounted to the heating unit 12, either under the bottom 16 or additionally **between the outer sidewall 18 and interior sidewall 17**." *Id.* (emphasis added). In addition, each of Holmes' prior art Crock Pot and the Scott patents disclose a heating element mounted between an outer and interior sidewall of a slow cooker's heating unit, which Holmes does not dispute. Ex. B, 182:2-183:1; Ex. D, Fig. 1; Ex. E, Fig. 2.

Holmes also does not dispute that one skilled in the art would have been motivated to combine Weiss with any of Holmes' prior art Crock Pot or Scott patents to place the heating element between the outer and interior sidewall of the heating unit to achieve the purported invention of claim 20.

Holmes' only arguments regarding claim 20 of the '855 patent are based upon its positions that Weiss does not disclose a "programmable slow cooker" and "programmable circuit." As explained above, it is undisputed that Weiss does disclose these limitations. Claim 20 is thus invalid as obvious under Section 103(a).

**V.    It Is Undisputed That One Skilled In The Art Would Have Been Motivated To Combine Weiss With Various Prior Art References To Render Obvious The Remaining Claims Of The '483 And '855 Patents.**

Holmes does not dispute that the prior art relied upon by WB supplies those claim limitations that are not explicitly disclosed by Weiss to render obvious Holmes' remaining asserted claims.  Holmes states in its brief that "Holmes will primarily rely on arguments with regard to the independent claims asserted in this case, namely claim 13 of the '483 patent and claim 20 of the '855 patent.  While the features of the dependent claims **may** add novelty to these claims, Holmes will not rely upon them in responding to this summary judgment motion."  Holmes' Br. at 6-7 n.2 (emphasis added).  Holmes thus concedes that the asserted dependent claims stand or fall with independent claim 13 of the '483 patent and independent claim 20 of the '855 patent.

Instead, Holmes only argues that there would not have been a motivation to combine these prior art references because they supposedly do not relate to slow cookers.[5]  Holmes ignores the indisputable facts that these references in fact do disclose slow cookers.  As detailed above, the Weiss patent discloses a slow cooker.  In addition, U.S. Patent Nos. 4,817,510 to Kowalics ("Kowalics"), 4,345,145 to Norwood ("Norwood"), and 6,191,393 to Park ("Park") disclose slow cookers.  Kowalics discloses a slow cooker having a cooking cycle in which a low simmer temperature can be selected for a preselected time.  Kowalics, Ex. C, col. 7, ll. 53-58, col. 8, ll. 1-12.  Kowalics thus discloses a programmable slow cooker under the Court's construction.  Norwood likewise discloses a cooker in which a user can select a cooking time and cooking temperature and that further includes a slow cook mode.  Norwood, MKM0331, col. 4, ll. 7-13; MKM0341, col. 24, ll. 59-63; MKM0343, col. 27, ll. 42-47.  Finally, Park discloses a cooker that includes a controller in which the temperature and cooking time can be set, allowing

---

[5]    Holmes does not, and cannot, argue that its prior art Crock Pot and Scott patents are not slow cookers.

slow cooking.  Park, MKM0610, col. 5, ll. 35-38.  Thus, all of the prior art upon which WB relies are programmable slow cookers within the Court's claim construction.[6]

Aside from its broad-brushed, and incorrect, assertions that these prior art references are unrelated to slow cookers, Holmes offers no evidence whatsoever to explain why these references would not have been combined with Weiss to supply those claim limitations not disclosed by Weiss.  Here, the prior art references expressly disclose the use in a programmable slow cooker of all the claimed features not disclosed by Weiss.  Holmes does not dispute such teachings of the prior art.  Thus, the prior art itself provides the express motivation to combine these missing features with Weiss.  Where, as here, the prior art itself teaches the combination, such as the use of illuminated indicators (claim 14 of the '483 patent) and sound (claim 19 of the '483 patent) in Kowalics and Norwood, "the straight-forward quality of the invention and art involved make the required combination quite apparent."  *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1025 (Fed. Cir. 1985).  Indeed, it is undisputed that the prior art references demonstrate the widespread knowledge of the use of such features with programmable slow cookers.  *Id.*  In light of the undisputed teachings of the prior art, "consideration of common knowledge and common sense" leads to the inescapable conclusion that those claims not anticipated by Weiss would have been readily obvious in view of the prior art.  *Dystar Textilfarben GMBH & Co. v. C.H. Patrick Co.*, 464 F.3d 1356, 1367 (Fed. Cir. 2006).

Failing to dispute the teachings of the prior art or the motivation to combine such teachings, Holmes argues that the prior art teaches away from the claimed inventions of the '483 and '855 patents.  *See, e.g.*, Holmes' Br. at 17.  A reference "teaches away" only when the reference affirmatively steers one skilled in the art away from the objective of the claimed

---

[6]    Certainly, at a minimum, Holmes cannot dispute that these references are relevant prior art, as demonstrated by the Patent Examiner's citation of a kiln, deep fat fryer and other types of cookers as pertinent prior art during prosecution of the '483 and '855 patents.

invention. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1308 (Fed. Cir. 2006). "A references may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a path divergent from the path that was taken by the applicant." *Id.*

Here, Holmes fails to identify anything in the prior art references that criticizes, discredits or steers a skilled artisan away from the claimed inventions. *See, e.g.*, Holmes' Br. at 17. To the contrary, the prior art relied upon by WB explicitly teaches the combination of the claimed invention. *See* WB's Opening Br. at 9-13 and 15-18.[7]

None of the underlying facts are in dispute showing that claims 14 and 19 of the '483 patent and claims 20, 24, 26, 27, and 29 of the '855 patent would have been obvious. Thus, no issue of fact remains requiring a trial under 35 U.S.C. § 103. Accordingly, where, as here, the only issue is the application of the statutory standard of obvious to an established set of facts, summary judgment that these claims are invalid under § 103 should be granted. *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 762 (Fed. Cir. 1988).

## VI.    Holmes' Purported Evidence Of Secondary Considerations Is Irrelevant Because It Is All Based Upon A Feature Found In The Prior Art.

Holmes purported evidence of secondary considerations fails to demonstrate the nonobviousness of the asserted claims of the '483 and '855 patents. Commercial success is relevant only if the features that create the commercial success were not known in the prior art. *Ormco*, 463 F.3d at 1312. Holmes admits that "the overwhelming commercial success of the programmable slow cookers was due to the programmable auto shift to keep warm feature." Holmes' Br. at 19-20. This "programmable auto shift to keep warm feature" is present in the

---

[7]    The prior art that Mr. Hlava actually referred to in developing the claimed invention is irrelevant. Holmes' Br. at 18-19. For purposes of determining obviousness, a person of ordinary skill is presumed to have knowledge of all references related to the pertinent art. *In re Sernaker*, 702 F.2d 989, 994 (Fed. Cir. 1983).

prior art Weiss cooker.  Ex. A, col. 3, ll. 23-46 and col. 4, ll. 66-68.  Accordingly, any commercial success purportedly stemming from this feature is not evidence of the nonobviousness of the asserted claims of the '483 and '855 patents.  *Ormco*, 463 F.3d at 1312.  Additionally, the purported evidence relied upon by Holmes to demonstrate a long-felt need is irrelevant because this purported need likewise stems from the auto warm feature, which was already present in the prior art.  *Id.* at 1311-12.  Holmes cites no evidence to support its argument of copying by others, instead relying only upon attorney argument.  Moreover, any inferences to be drawn from this purported copying do not alter the conclusion that the asserted claims from the '483 and '855 patent are invalid as obvious.  *Newell*, 864 F.2d at 768.  *See B.F. Goodrich Co. v. Aircraft Sys. Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996) (secondary considerations not compelling where there was only minor difference between the claimed invention and the prior art).

Holmes' alleged evidence of secondary considerations does not raise a genuine issue of material fact as to the obviousness under Section 103(a) of claims 14 and 19 of the '483 patent or claims 20, 24 26, 27 and 29 of the '855 patent.[8]

## VII.    West Bend's Expert Witness, Dr. Feinberg, Is More Than Qualified To Provide Expert Testimony In This Case.

Holmes contends that Dr. Feinberg's declaration should be excluded because he is not qualified to testify regarding the "design and operation of programmable slow cookers."  Pursuant to Fed. R. Evid. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto…."  Fed. R. Evid. 702.  *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

---

[8]    Of course, such secondary considerations of nonobviousness have no bearing on the anticipation of claims 13 and 17 of the '483 patent under Section 102(b).

17

592-93 (1993); *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The trial judge has broad discretion to determine the qualifications of expert witnesses and admissibility of expert witness testimony. *Diefenbach v. Sheridan Transp.*, 229 F.3d 27, 30 (1st Cir. 2000); *DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988). Dr. Feinberg is well qualified based on his skill, training, education, and knowledge, and as such, his declaration should not be excluded.

Holmes' chief complaint seems to be that Dr. Feinberg has no background in designing microprocessors or slow-cookers. First, Rule 702 encompasses a flexible inquiry and "is not so wooden as to demand an intimate level of familiarity with every component of a . . . device as a prerequisite to offering expert testimony." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 80 (1st Cir. 2004); *Daubert*, 509 U.S. at 594-95. When an expert is qualified by knowledge, skill, experience, training or education, "he need not have had first-hand dealings with the precise type of [device] that is at issue." *Microfinancial*, 385 F.3d at 80 (citing *Diefenbach*, 229 F.3d at 31). Indeed, Holmes' expert Dr. Trumper has no background in designing slow cookers.

Dr. Feinberg is more than qualified to testify as an expert here based upon his 33 years of experience as a consulting engineer and as a professor of electrical engineering. (Feinberg Decl. ¶1.) Among other things, Dr. Feinberg:

- Is a registered professional engineer, licensed to practice engineering in the state of Illinois, a Life Fellow of the Institute of Electrical and Electronics Engineers (IEEE), and a Fellow of the American Institute for Medical and Biological Engineering. (Feinberg Decl. ¶1.).

- Has a Ph.D. degree in Engineering from the Case School of Engineering, Case Western Reserve University, a Masters of Electrical Engineering degree from the University of Louisville, and Bachelor of Science degrees in Electrical Engineering and Mathematics from the University of Michigan. (Feinberg Decl. ¶2.).

18

- Has written a university textbook, *Applied Clinical Engineering*, that covers the subject of the engineering of electrical devices. (Feinberg Decl. ¶3.).

Thus, Dr. Feinberg is skilled, trained, educated and knowledgeable about fundamental engineering principles of electrical design and has extensive experience dealing with electrical design. Dr. Feinberg is qualified to testify as to the structure and operation of electrical devices such as programmable slow cookers.

This case is not about the design or programming of microprocessors. *See* Holmes' Br. at 11-16. Neither the claims nor the specification of Holmes' patents discloses anything about programming a microprocessor. This case is about the basic structure of a slow cooker. More specifically, this case is about the mounting of a programmable controller outside of the cooker's heating unit to protect the controller from heat damage. Dr. Feinberg's background's provides more than a sufficient basis for him to offer expert testimony on this subject matter.[9]

Holmes does not dispute Dr. Feinberg's description of the prior art and what it teaches to one skilled in the art under the Court's claim constructions. Holmes fails to identify any problem with the methodology or reliability of Dr. Feinberg's opinions. Dr. Feinberg is qualified to render an opinion and testify in this case.

---

[9] Holmes complains that Dr. Feinberg was found not qualified to testify in other litigation relating to product warning labels and penile implants. Holmes' Br. at 6. Those cases and Dr. Feinberg's testimony therein are completely irrelevant as to his qualifications in this case to testify regarding the structure and operation of slow cookers.

## CONCLUSION

It is undisputed that there was nothing new about the asserted claims of the '483 and '855 patents. Weiss anticipates claims 13 and 17 of the '483 patents, and the remaining asserted claims would have been obvious in view of Weiss combined with any of several other prior art references upon which WB relies. For the foregoing reasons, WB respectfully requests that the Court grant WB's motion for summary judgment that the asserted claims of the '483 and '855 patent are invalid.

Dated: January 5, 2007                    WEST BEND HOUSEWARES, LLC
                                          FOCUS PRODUCTS GROUP, LLC
                                          By their attorneys,


                                          /s/ Erik P. Belt_____
                                          Michael E. Husmann
                                          Joseph T. Miotke
                                          MICHAEL BEST & FRIEDRICH LLP
                                          100 East Wisconsin Avenue, Suite 3300
                                          Milwaukee, Wisconsin 53202-4108
                                          Telephone:    414-271-6560
                                          Facsimile:    414-277-0656

Lee Carl Bromberg, BBO #058480            Martin L. Stern
Erik Paul Belt, BBO #558620               MICHAEL BEST & FRIEDRICH LLP
BROMBERG & SUNSTEIN LLP                    180 North Stetson Avenue, Suite 2000
125 Summer Street                         Chicago, Illinois 60601-6710
Boston, Massachusetts 02100-1618          Telephone:    312-222-0800
Telephone:    617-443-9292                Facsimile:    312-222-0818
Facsimile:    617-443-0004
E-mail:ebelt@bromsun.com


### CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants


                                          /s/ Erik P. Belt_____
                                          Erik Paul Belt