IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

              Plaintiff,

        vs.

WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

              Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**WEST BEND'S REPLY MEMORANDUM IN SUPPORT OF ITS SECOND
MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:    414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601-6710
Telephone:    312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:    617-443-9292

January 5, 2007

*Attorneys for Defendants*

## INTRODUCTION

The patents-in-suit, as confirmed by their prosecution histories, claim a precise arrangement of structural elements in a particular way to achieve a particular result. The asserted claims do not cover merely a general method of operating a slow cooker as Holmes asserts at page 10 of its brief. Holmes' claims are expressly limited by their own terms and prosecution histories to a cooker where the entire controller/circuit is mounted to or positioned within a housing outside the heating unit to protect the controller/circuit from heat damage. Holmes does not and cannot dispute that West Bend's (WB) entire controller/circuit is neither mounted to nor positioned within a housing that is mounted outside the heating unit. This undisputed and indisputable fact establishes that WB does not literally infringe Holmes' patents.

Because Holmes' doctrine of equivalents ("DOE") positions would vitiate claim limitations missing from WB's product and recapture subject matter that Holmes expressly disclaimed during prosecution of the patents, Holmes cannot, as a matter of law, resort to the DOE to establish infringement. Further, Holmes offered neither evidence nor argument that WB has structure equivalent to the claims' limitations literally missing from the accused products.

## ARGUMENT

### I.     The Court's *Markman* Rulings Should Not Be Reconsidered.

In its response brief at page 13, Holmes requests reconsideration of the Court's *Markman* rulings. For the third time Holmes argues that claims 13 and 20 each requires that only a portion of the controller/circuit need be mounted to or positioned within the claimed housing outside the heating unit. Holmes' current request simply repeats its formerly rejected arguments based on the same law and facts that were cited in its *Markman* brief and again in its first request for reconsideration. The Court should reject Holmes' arguments for the third time.

1

Proper claim construction requires that the entire "controller" of claim 13 and the entire "circuit" of claim 20, not just a portion of that controller/circuit,[1] be mounted to a housing outside the heating unit.  Neither the language of claim 13 nor that of claim 20 contains any qualification that would exclude any portion of the claimed controller/circuit from the housing outside the heating unit.  This conclusion is confirmed when the claims are read in the context of the specification as required by the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

As explained by the patents, the purpose of mounting the controller/circuit to an outside housing is to protect it from overheating.  Prior art cookers "suffer because the controller inevitably must be placed near the heating element."  J.A. at MKM0014, col. 1, ll. 23-27.  The patent then states that the patented cooker is better and different than the prior art because its "controller [is] mounted on its outside, and preferably mounted via a controller housing, which acts to insulate the controller from the heat of the appliance."  *Id.* at col. 1, ll. 38-43.  Insulating only a portion of the controller/circuit from overheating makes no sense.  If a portion of the controller/circuit overheats, the controller/circuit fails and the purpose at the very heart of Holmes' alleged invention fails.  Further, the only description of the invention set forth in the specification mounts **all** of the electronic components needed to be insulated from the heat to a housing outside the heating unit.  Nowhere does the specification suggest mounting only a

---

[1]      Because the Court construed claim 13's "controller" as an "electrical circuit," WB referred to the controller of claim 13 and the circuit of claim 20 in its opening brief collectively as the "circuit."  *See* WB's Opening Br. at 1.  Holmes erroneously criticizes WB for "improperly" using the term "circuit" for claim 13.  Holmes' position is at best superficial.  So that Holmes will not be confused in this brief, WB, where appropriate, refers to the claimed "controller" of claim 13 and the claimed "circuit" of claim 20 as the "controller/circuit."

portion of the controller/circuit outside the heating unit.  There simply is no intrinsic evidence supporting Holmes' position.[2]

## II.    WB's Product Does Not Include The Limitation of Claims 13 And 20 That The <u>Entire</u> Controller/Circuit Be Mounted To Or Positioned Within The Claimed Outside Housing.

### A.    West Bend Does Not Literally Infringe Claim 13.

Holmes stipulated at the 1st Summary Judgment Hearing that unless the Court changes its interpretation requiring that the entire controller/circuit be mounted to or positioned within the outside housing, West Bend does not literally infringe.  Following that stipulation, the Court entered summary judgment of no literal infringement.  Totally ignoring the Court's judgment, Holmes argues that "every claim limitation [of claim 13] is <u>literally</u> present" in West Bend's accused product.  Holmes' Br. at 4 (emphasis added).

It is undisputed that WB's microprocessor, the central and only programmable component of WB's controller, is not mounted to the combined structures that Holmes claims is WB's outside housing.  WB's microprocessor is mounted and positioned within a separate housing that is mounted to and located entirely inside the heating unit.  Consequently, WB's **<u>entire</u>** controller is not mounted to an outside housing and therefore does not literally infringe claim 13.  Additionally, as explained *infra*, WB has no controller housing that is mounted overwhelmingly, generally and largely outside the heating unit and does not literally infringe claim 13 for that additional reason.

---

[2]    Contrary to Holmes' argument, claim 20 itself and dependent claims 22 and 27 describe components (such as the LED indicators 262, digital readout 57, Triac 304, and switches S1 and S2 and 227, 229, 231, 233) shown in patent Figures 10 and 13 as separate components apart from the claimed circuit.  Moreover, a claim need not recite every component necessary to enable operation of the claimed invention, *Rambus, Inc. v. Infinion Techs. AG,* 318 F.3d 1081, 1093 (Fed. Cir. 2003), but should be read for its "meaning independent of any working embodiment." *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1303 (Fed. Cir. 1999).

Accordingly, as the Court has already found, WB does not literally infringe claim 13.

**B.    WB Does Not Infringe Claim 13 or 20 Under the Doctrine of Equivalents.**

Holmes agrees that unless the Court changes its claim construction rulings, WB does not literally infringe claim 20.  "Holmes does not dispute that a portion of WB's circuit resides outside the housing."  Holmes' Br. at 13-14.  This section explains why Holmes' claim of infringement cannot prevail under the DOE in regard to claims 13 and 20.

### 1.    *Holmes' DOE arguments are barred as a matter of law.*

First, as explained in WB's opening brief, when a claim limitation is binary in nature, like the requirement that the **entire** controller/circuit, not just a portion of it, be mounted to or positioned within a housing outside the heating unit, the DOE is inapplicable because its application would vitiate the "entire controller/circuit limitation."  *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005).  The case cited by Holmes, *Depuy Spine, Inc. v. Medtronic Sofabor Danek, Inc.*, 469 F.3d 1005 (Fed. Cir. 2006), does not alter the law in regard to claim vitiation or the conclusion that the DOE cannot be applied in this case.  The Court in *Depuy Spine* simply explained that:

> A holding that the doctrine of equivalents cannot be applied to an accused device because it "vitiates" a claim limitation is nothing more than a conclusion that the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency.

*Id.* at 1018-19.  The Federal Circuit earlier applied this concept in *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000), and rejected the patentee's argument that strips of adhesive that extend less than the claimed majority of the length of a form are infringements under the DOE.  *Id.* ("[I]t would defy logic to conclude that a minority—the very

4

antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.").

In this case, mounting or positioning only a portion of the controller/circuit to or within the claimed outside housing is the antithesis of mounting or positioning the entire circuit in the claimed outside housing as required by the literal application of claims 13 and 20.   No reasonable jury could conclude that "a portion" of the controller/circuit is the equivalent of "not just a portion."  A finding that WB's cooker (that mounts and positions its microprocessor, as well as all other portions of the controller/circuit in a housing <u>inside the heating unit</u>), is equivalent to the limitation requiring that the entire controller/circuit must be mounted to and positioned within a housing <u>outside the heating unit</u> would vitiate this claim limitation.  *Aysyst*, 402 F.3d at 1195; *Searfoss v. Pioneer Consolidated Corp.*, 374 F.3d 1142 (Fed. Cir. 2004).  As a matter of law, the DOE cannot be used to extend the claims' coverage to WB's product.

Second, at pages 3-4 of WB's opening brief, WB explained that when a patent's specification criticizes and disclaims the shortcomings of the prior art the DOE cannot be used to recapture these disclaimed shortcomings.  *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1368 (Fed. Cir. 2001)  Holmes specifically identified, criticized, and disclaimed the prior art practice of not mounting or positioning the entire circuit in a housing outside the heating unit.  Consequently, Holmes is estopped from claiming that mounting or positioning any portion of the controller/circuit (particularly the microprocessor) in a housing located inside the heating unit is equivalent to mounting or positioning the entire controller/circuit outside the heating unit.

The patents' specifications drive home the significance of this difference by emphasizing the importance of mounting or positioning the entire controller/circuit in a housing outside the heating unit, repeatedly describing that placing the entire controller/circuit outside the heating

unit protects the programmable controller/circuit from heat damage. J.A. at MKM0015, col. 3, ll. 28-30, 60-61. No alternative locations for the controller/circuit are described or contemplated by the patents. Such repeated statements describing the location of the entire controller/circuit outside the heating unit "are not limited to describing a preferred embodiment, but more broadly describe the overall" invention of Holmes' patents. *Microsoft Corp. v. Mulit-Tech Sys., Inc.*, 357 F.3d 1340,1348 (Fed. Cir. 2004), *cert. denied* 125 S. Ct. 61. <u>Holmes does not even address, let alone rebut, this conclusion in its responsive brief</u>.

Third, Holmes is barred as a matter of law by the doctrine of prosecution history estoppel from asserting the DOE regarding the "entire controller/circuit limitation." Calling WB's argument "pure fiction," Holmes asserts that "WB's proposed estoppel is barred on an incorrect theory that the amendments related to the housing required that the programmable circuit be located entirely within the housing and Holmes disclaimed a circuit having any portion within the heating unit." Holmes' Br. at 16. This is not fiction. The claim amendments made by Holmes during prosecution of the patents relating to the location of the housing necessarily required that the entire controller/circuit be located outside of the heating unit.

During prosecution of claim 13, Holmes initially sought to patent a slow cooker where the controller was simply "mounted to the heating unit," without any requirement that the controller be mounted to a housing or be located inside or outside the heating unit. J.A. at MKM0041-43. After this proposed claim was rejected, Holmes amended claim 13 to require that the controller be mounted to a housing and that housing itself be mounted outside the heating unit. J.A. at MKM0092-98. Holmes then argued that the amendment was made to better describe the location of the controller housing <u>and, therefore, the location of the controller</u>, **<u>outside</u>** the heating unit. J.A. at MKM0095. As noted, the very purpose of mounting the

controller to an outside housing is to locate the controller outside the heating unit to protect it from overheating.  Protecting only a portion of the controller from overheating makes no sense.  By requiring that the controller be mounted to the outside housing, Holmes disclaimed locating the controller, or any portion of it, inside the heating unit.

Holmes made the same amendment during the prosecution of claim 20.  The Patent Office rejected claim 20 as invalid in view of Rivelli because at that time claim 20 required only that the circuit housing be "mounted to" the heating unit.  J.A. at MKM0213.  To overcome this rejection, Holmes amended claim 20 to require that the housing be mounted so that it was "projecting outside" the heating unit.  J.A. at MKM0242.  And as with claim 13, Holmes argued that this amendment, that located the controller/circuit and its housing outside the heating unit, distinguished the claimed structure over Rivelli.  Locating the circuit by positioning it within an outside housing necessarily located the entire circuit outside the heating unit.  By requiring that the circuit be so located, Holmes disclaimed coverage of cookers that do not locate the circuit entirely outside the heating unit.

These clear and unmistakable prosecution history arguments and amendments disclaiming mounting or positioning any portion of the controller/circuit inside the heating unit presumptively estop Holmes from establishing infringement under the DOE.  *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998).  In order to rely upon the DOE with regard to this limitation, *Festo* requires that Holmes rebut the presumption that it disclaimed mounting or positioning **any portion** of the controller/circuit in a housing located inside the heating unit.  "[N]arrowing amendment[s] made for a substantial reason relating to patentability [such as made by Holmes in this matter] give rise to a presumption that the patentee has surrendered all subject matter between the original claim limitation and the amended claim

limitation." *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1305 (Fed. Cir. 2005). Holmes, not WB, shoulders the burden of overcoming this presumption.

Holmes has not even attempted to overcome that presumption.  It has presented neither argument nor evidence that:

1.  the alleged equivalent would have been unforeseeable at the time of the narrowing amendment;
2.  the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question; or
3.  there was 'some other reason' suggesting that [Holmes] could not reasonably have been expected to have described the alleged equivalent.

As explained by the Federal Circuit in *Biagro*, the determination of whether the patentee has met his burden of overcoming the *Festo* presumption is an issue of law for the Court to decide and properly determine on summary judgment.  *Biagro*, 423 F.3d at 1305.  Clearly, Holmes has failed to meet its burden.  *See* WB Opening Br. at 7-9.  Consequently, WB's motion for summary judgment of no infringement under the DOE should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> **2.    Holmes has failed to meet its burden of establishing infringement under the DOE.**

Apart from being precluded, as a matter of law, from relying on the DOE, Holmes has failed to present any evidence of equivalents.  Because the DOE is applied on a limitation-by-limitation basis, the analysis of whether a missing limitation is present under the DOE begins with the identification of the claim limitation not literally present.  Here, that limitation is the requirement that the <u>entire</u> controller/circuit, not just a portion of such controller/circuit, be mounted to or positioned within the outside housing.

Holmes' patents clearly teach that the function of mounting and positioning the controller/circuit in a housing outside the heating unit is to protect the circuit from heat generated

inside the heating unit. The way in which this function is accomplished is to distance the controller/circuit from the heat and place it in the ambient temperature that surrounds the appliance. J.A. at MKM0014, col. 1, ll. 38-43. <u>Holmes never disputes these facts</u>.

Holmes' arguments for infringement under the DOE entirely ignore the missing limitation, *i.e.*, the "<u>entire</u> controller/circuit limitation," addressing instead the limitation that merely requires the presence of a controller/circuit. Holmes' DOE analysis is set forth on page 15 of its brief.

> Merely splitting one circuit board component of the programmable circuit into two circuits [sic] boards connected by wires does not change the way in which the circuit operates or the result thereof. Thus, the way in which the programmable circuit operates, although using different electronic components as contemplated by the inventors in the specification, is substantially the same. The West Bend programmable circuit unquestionably achieves substantially the same result. *Id.* Accordingly, this limitation is satisfied either literally or equivalently.

Holmes' Br. at 15. The missing limitation is not merely the presence of a controller/circuit. It is the **<u>location</u>** of the **<u>entire</u>** controller/circuit as required by the claims, *i.e.*, mounted to or positioned within a housing located outside the heating unit. Holmes has presented no evidence that WB's cooker has an equivalent to the actual missing limitation, *i.e.*, the "entire controller/circuit limitation." WB is, therefore, entitled to summary judgment of no DOE infringement.

Holmes and its expert simply argue that "splitting the printed circuit board component of the circuit into two circuit boards connected by wires is an insubstantial change readily apparent to a person of ordinary skill in the art." Such generalized arguments that WB's controller/circuit operates in a fashion generally similar to that described in Holmes' patents is insufficient as a matter of law to raise a question of fact precluding summary judgment. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). For these reasons, WB's

motion for summary judgment of no infringement under the DOE should be granted. *Celotex*

*Corp.*, 477 U.S. at 323.

**III.    WB's Product Does Not Include The Limitation of Claims 13 And 20 That The Claimed Housing Be Positioned Overwhelmingly, Generally, Largely Outside Of The Heating Unit.**

As explained in WB's opening brief, Holmes argued for a Markman ruling that "the

housing doesn't have to be limited to being on the outside.  It can also **extend inward**."

*Markman* Tr. 21:6-8.  After hearing argument from Holmes, and explaining that "[t]he fact that

you've got that little lip through the wall doesn't change anything in my view," the Court held

that "the way you teach this [claim 13's housing] is outside, or at least overwhelmingly or

generally outside, and I'm sticking to it for now."   *Id.* at 23:14-16, 24:1-3.  The Court then

further construed claim 20's housing to be "largely" outside the heating unit.  Holmes now

argues that "[i]t is unclear whether the Court's claim construction related to the housing of Claim

13 includes the limitation of being 'at least overwhelmingly or generally outside' the outer

sidewall of the heating unit."  Holmes' Br. at 5.

There is no ambiguity.  Following the *Markman* hearing Holmes itself presented its

expert report in which it detailed the Court's *Markman* rulings and stated, in pertinent part, as to

the outside housing required by claim 13:  "The housing is mounted to and located on the

…outside, **or at least overwhelmingly or generally** outside …of the heating unit."  App. D to

Trumper Report (filed October 12, 2006) at 3 (emphasis added).  Holmes next mischaracterizes

its own *Markman* argument and the Court's resulting claim construction ruling.  Holmes argues

that its purported combined housing in the accused product meets the Court's claim

interpretation that the housing structure be "overwhelmingly or generally outside" simply

because it projects outwardly.   "The entire outer shell portion and part of the inner shell portion

**project outwardly** beyond the outer surface of the heating unit."  Holmes' Br. at 5 (emphasis added).

The Court's ruling that the housing be "overwhelmingly or generally outside" allowed the housing to **project slightly inwardly**, not that it be located largely inside so long as it has an outward projection.  The Court's ruling was made to account for the "little lip through the wall" argued by Holmes.  Holmes' current argument that anything that projects outwardly is "overwhelmingly or generally outside" is pure sophistry.

     **A.**     **WB Does Not Literally Infringe.**

At page 16 of its brief in opposition to WB's first motion for summary judgment, Holmes admitted that WB did not literally infringe under the Court's *Markman* rulings.  "Accordingly, should the Court require the housing to be 'overwhelmingly' or 'largely' outside of the heating unit, the WB device would still infringe under the doctrine of equivalents."  Holmes' Opp'n Defs.' 1st Mot. Summ. J. at 16.  Holmes, doing a complete about face on this issue, now argues: "If the Court requires the housing to be 'largely' outside, the WB slow-cooker literally meets this limitation."  Holmes' Br. at 6.  WB does not literally infringe.

Without explanation and in the absence of any argument, Holmes simply postulates that the claimed housing is a so-called combination of WB's first circuit board housing and its control panel, calling these components "inner" and "outer" housing shells.  Simply changing the names of these separate components of WB's cooker does not change the following undisputed facts about the actual structure of WB's cooker.

- WB's first circuit board housing (which Holmes calls the "inner housing shell") <u>alone</u> cannot be the claimed outside "housing" because it is neither mounted to nor located overwhelmingly, generally, largely outside of the heating unit.

11

- The second circuit board housing, to which the microprocessor controller is mounted, cannot be the claimed outside "housing" because it is neither mounted to nor located overwhelmingly, generally, largely outside the heating unit.

- WB's control panel (which Holmes calls the "outer housing shell") <u>alone</u> cannot be the claimed outside "housing" because it:
    1) does not house any portion of the controller/circuit;
    2) is not mounted to the first circuit board housing; and
    3) is mounted to and removed from the outside of the heating unit independent of and separate from the first circuit board housing.

Holmes argues that there is "a fundamental disagreement as to what components form the housing." Holmes' Br. at 6. There is no dispute, however, concerning the basic fact that WB does not make, use or sell a product in which it combines the control panel and first circuit board housing. The supposed fundamental disagreement is between Holmes' contrived combined housing and WB's actual cooker. This supposed fundamental disagreement does not raise an issue of material fact precluding summary judgment.

Even if WB were to make a product with the contrived combination housing Holmes suggests, WB would not infringe Holmes' patents. Holmes' contrived combination housing would be only about 50% outside, with the outside portion housing none of the components of the controller/circuit. Holmes for the first time now argues that more than 50% of the contrived housing would be outside the heating unit. Holmes' Br. at 5. Holmes' expert disagrees with Holmes' new argument:

> Q.  You then, you say, "Therefore, the combined housing extends largely beyond the outer surface of the side wall, 18.["]  Would you explain to me how you reached that conclusion?
> A.  The combined unit's about 50 percent outside, about 50 percent inside.

Trumper Tr., Ex. C, at 210:6-12.

Holmes' baseless argument cannot change the undisputed facts. A housing mounted 50% inside is not overwhelmingly, generally and largely outside – it is half inside and half outside. A

housing located only 50% outside the heating unit and having all of the components of the controller/circuit that it houses inside the heating unit (as the accused product would be constructed with the contrived combination housing) does not meet the outside controller/circuit housing limitation required by claims 13 and 20. Holmes' contrived combination housing is not overwhelmingly, generally and largely outside the heating unit as required by claims 13 and 20.

Additionally, as noted above, Holmes told the Patent Office that a housing such as Rivelli's controller/circuit housing module 26 that mounts only its control panel outside the heating unit, as does Holmes' contrived combination housing for WB's cooker, is not outside the heating unit as called for by claims 13 and 20. In accordance with what Holmes told the Examiner, it is "within" the heating unit. That is how Holmes convinced the Examiner that claims 13 and 20 were allowable over the prior art. Holmes' current argument, that the supposed WB combination housing is outside the heating unit, is directly contrary to the argument it made to the Patent Office in order to gain allowance of claims 13 and 20 and should be rejected. *Southwell Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

There is no factual dispute concerning the location of Holmes' alleged combination of WB's control panel and first circuit board housing. It is not located overwhelmingly, generally and largely outside the heating unit. WB's product does not literally infringe claims 13 and 20.

       **B.**      **WB Does Not Infringe Under The DOE.**

       *1.*      *Holmes is precluded from relying upon the DOE to prove infringement.*

First, as noted above, the DOE cannot be used to vitiate a claim limitation. Like the "entire controller/circuit" limitation, the limitation that the claimed housing must be "overwhelmingly, generally and largely" outside the heating unit is binary in nature. Either a housing is "overwhelmingly, generally and largely" outside the heating unit or it is not. Any

argument that Holmes' supposed combined housing (WB's control panel and first circuit board housing), which admittedly is not largely outside the heating unit, is equivalent would thus vitiate this claim limitation.  For the reasons explained in the *Asyst Technology*, *Searfoss*, and *Moore U.S.A* cases cited above, Holmes' claim of infringement under the DOE is barred as a matter of law.

Second, Holmes is barred as a matter of law by the doctrine of prosecution history estoppel from asserting the DOE regarding the limitation requiring that the controller/circuit housing be located overwhelmingly, generally and largely outside the heating unit.  Holmes does not dispute that it amended claims 13 and 20 to specify the location of the claimed housing and that it thereby disclaimed some claim coverage.  Holmes' disclaimer argument concerns not the fact of the disclaimer, but rather the scope of the disclaimer.  Holmes' argument is legally flawed.

> Ignoring *Festo* and its progeny, Holmes argues at page 7 of its brief that:
>
> Holmes, at best, disclaimed a (1) hinged controller housing, such as disclosed in Skutt (MKM0546-54) and (2) a control module which is positioned entirely within the exterior surface of the heating element [sic] such as disclosed in Rivelli (MKM0291-96).

Holmes' Br. at 7.

The Federal Circuit has made clear that disclaimers made during prosecution of a patent are not limited simply to the particular structures of the prior art which the patentee is seeking to overcome, as Holmes now argues.  A "narrowing amendment made for a substantial reason relating to patentability gives rise to a presumption that the patentee has **surrendered all subject matter between the original claim limitation and the amended claim limitation**." *Biagro*, 423 F.3d at 1305  (emphasis added). *See Festo*, 344 F.3d at 1367.  Here, Holmes is presumed to have surrendered all subject matter between the original claims, *i.e.*, a housing simply mounted

to the heating unit, and the amended claims that require a housing mounted overwhelmingly, generally and largely outside the heating unit.  Holmes bears the burden of rebutting this presumption, the determination of which is an issue of law for the Court to decide and properly determine on summary judgment.  *Biagro*, 423 F.3d at 1305.

During prosecution of the patents-in-suit, Holmes amended claim 13 to require that the controller be mounted to a housing **outside** the heating unit and amended claim 20 to require that the circuit housing was "fixedly mounted to **and projecting outside**" the heating unit.  Holmes repeatedly argued that as amended, the **location** of the claimed controller/circuit housing outside the heating unit was different than the **location** of the prior art because the housings of the prior art were not located outside the heating unit.  J.A. at MKM0251.[3]

- "[T]he combination [of prior art references] does not yield the claimed invention of Claims 1, 11 and 13, which is a programmable slow-cooker appliance comprising a heating unit, a cooking unit, a controller housing **mounted outside the heating unit, and a programmable controller mounted to the housing . . . .**"

- "As mentioned above, neither Rivelli nor Frey [prior art references] describe [sic] a housing for a programmable controller fixedly **mounted to the outside of the heating unit**."

- "Therefore, even an improper combination of [prior art references] does not describe or suggest the claimed invention, including a controller housing **mounted fixedly to the outside of the heating unit**."

J.A. at MKM0094-96 (emphasis added).

These clear and unmistakable arguments and amendments concerning the location of the claimed housing outside the heating unit presumptively bar Holmes from resorting to the DOE with respect to this limitation.  *Festo*, 344 F.3d at 1367.

---

[3]     Holmes is wrong when it asserts at page 16 of its brief that arguments it made during prosecution of the '483 patent do not affect the scope of claim 20 in the '855 patent.  *Watts v. XL Sys. Inc.*, 232 F.3d 877, 884 (Fed. Cir.  2000); *See also Microsoft Corp.*, 357 F.3d at 1349-50.

Holmes has not and cannot meet its burden of overcoming the *Festo* presumption. As explained above, there are only three ways that Holmes can meet its burden, none of which it has satisfied.

First, the alleged equivalent, WB mounting its housing inside the heating unit with only the control panel located outside the heating unit, was known. The Rivelli prior art reference discloses that identical structure. Rivelli has a housing comprising a control panel mounted outside the heating unit with an associated box-like section located inside the heating unit in which the controller/circuit is housed. Holmes' contrived combination housing for WB's cooker has this identical structure. Consequently, even accepting *arguendo* Holmes' contrived combination housing, Rivelli discloses that alleged equivalent, which was thus clearly foreseen.

Holmes argues that the prior art does not show a "housing formed of an inner and outer housing shell fixedly mounted to and projecting outwardly from the outer sidewall of the heating unit." Holmes' Br. at 19. Changing the name of WB's control panel to an "outer housing shell" does not change its structure. It is still a control panel. Rivelli



undisputedly shows a controller/circuit housing 26 that locates its control panel, including control buttons and knobs, mounted to and projecting outside the heating unit. Rivelli's housing is identical to Holmes' contrived combination housing for WB's cooker, which housing structure Holmes told the Patent Office did not fall within the scope of the claims. As to claim 20, Holmes said that, "[t]he module 26 [of Rivelli] housing the circuit board is mounted **within** the

compartment rather than projecting from an outer sidewall as described in the independent claims of the present application." J.A. at MKM0251 (emphasis added). Holmes and its expert, Dr. Trumper, cannot change Rivelli by simply ignoring what it clearly shows and blindly repeatedly saying that Rivelli's housing is "entirely inside." It is not, the Rivelli housing's control panel (which in WB's cooker Holmes calls the "outer housing shell") is mounted and located outside the heating unit.

Second, the rationale underlying Holmes' narrowing amendments bore a direct, not a tangential, relation to the equivalent in question. "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to the allowance of the claim." *Festo*, 344 F.3d at 1369. As explained above, this is precisely the case here. Holmes amended claims 13 and 20 to avoid the Rivelli structure that is identical to the alleged WB equivalent structure. Third, "a patentee may not rely on the third rebuttal criterion if the alleged equivalent is in the prior art, for then 'there can be no other reason the patentee could not have described the substitute in question.'" *Festo*, 344 F.3d at 1370. As noted above, the alleged WB equivalent structure in this case is in the prior art, *i.e.*, the Rivelli patent.

Clearly, Holmes has failed to meet its burden to rebut the presumption that prosecution history estoppel based on its claim amendments and arguments made to distinguish claims 13 and 20 from the prior art bars all use of the DOE by Holmes with respect to the limitations requiring that the controller/circuit housing must be overwhelmingly, generally and largely outside the heating unit. Summary judgment of no infringement under the DOE should be granted.

2.    *Holmes has failed to meet its burden of establishing infringement under the DOE.*

Whether or not Holmes is precluded from relying on the DOE as a matter of law, Holmes has failed to present any evidence to show infringement under the DOE. *Texas Instruments*, 90 F.3d at 1567.

A review of Holmes' argument of equivalents set forth at page 12 of its brief establishes that Holmes again addresses the wrong limitation. Holmes argues:

> Whether the housing extends 51% or 75% from the outer sidewall does not affect the function of the housing, i.e., to provide an enclosure for at least a portion of an electrical circuit. The way in which the function is accomplished is by providing housing portions which are fixedly mounted to the outer sidewall to form an enclosure. The result is substantially the same since the enclosure projects outwardly beyond an outer surface of the sidewall.

Holmes' Br. at 12.

Once again, Holmes' analysis fails to address the missing limitation – the **location** of the housing outside the heating unit. The missing limitation is not the existence of the housing or its general function. The missing limitation is the requirement that the housing be **located outside** the heating unit. Consequently, Holmes has presented no particularized DOE infringement evidence or linking argument upon which a reasonable jury could conclude that WB infringes under the DOE.

As noted above, Holmes' patents clearly teach that the function of locating the controller/circuit housing outside the heating unit is to protect the controller/circuit from the heat generated inside the heating unit. Holmes argues that WB "improperly attempts to read a cooling function into the housing limitation for purposes of the DOE." Holmes' Br. at 9. This argument is without merit. The DOE requires that the patentee establish equivalents by showing that the function performed by the missing limitation is substantially the same as the function

18

performed by the alleged equivalent. Here the missing limitation is not the housing itself – it is the **location** of the housing outside the heating unit. The equivalent issues then are: 1) What function is performed by locating the housing outside the heating unit as required by the claims? and 2) Does the alleged equivalent perform substantially that same function in substantially the same way to achieve substantially the same result?

WB is not improperly reading a "cooling function" into the claims. WB is properly following the well-settled law pertaining to the DOE. It is Holmes that is ignoring the DOE law by failing to acknowledge that the missing limitation is not the housing itself but the location of the housing outside the heating unit. To understand the legal effect of Holmes' claim amendments and arguments about locating the controller/circuit housing outside the heating unit as estopping Holmes from using the DOE with respect to this limitation, the purpose or function of locating the claimed housing outside the heating unit must be analyzed. The purpose of locating the controller/circuit housing outside the heating unit is not merely to provide an enclosure for the controller/circuit, it is to protect the controller/circuit from the heat generated by the appliance. Thus, the function of this limitation added to claims 13 and 20 to distinguish the prior art goes to the heart of Holmes' infringement argument under the DOE.

While WB does protect its circuit from heat, it does not do so by mounting or positioning its controller/circuit in a housing outside the heating unit as required by the asserted claims. As explained in WB's opening brief, WB protects its circuit in a manner specifically disclaimed by Holmes – mounting the controller/circuit inside the heating unit and using thick insulation to protect the controller/circuit from heat damage. WB Opening Br. at 19-20; Defs.' 1st Mot. Summ. J. Ex. M, Feinberg Decl. ¶¶ 10, 12, 14. Having acknowledged that using thermal insulation to protect a controller/circuit housed inside the heating unit is a substantially different

way from the claimed invention, Holmes cannot now argue that WB's use of thermal insulation to protect its inside-mounted controller/circuit is equivalent to locating the controller/circuit in a housing outside the heating unit. *See Acco Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1081 (Fed. Cir. 2003)  Therefore, as a matter of law, WB does not infringe under the DOE.

<u>**CONCLUSION**</u>

In an attempt to preclude summary judgment, Holmes pleads that "the Court conduct a full evidentiary hearing on the issues" pertaining to whether Holmes has rebutted the *Festo* presumption.  Holmes' Br. at 20.  WB spent considerable time, money, and effort to ensure that it did not infringe Holmes' patents before it introduced its product to the market.  <u>Twice</u> now Holmes has been provided an opportunity to present satisfactory evidence to preclude summary judgment and twice it has failed to present such evidence.  Since Holmes cannot resort to the DOE as a matter of law and also failed to meet its burden of overcoming the *Festo* presumption, Holmes' plea should be summarily denied and summary judgment dismissing Holmes' infringement claims against WB should be granted.

For the foregoing reasons, WB respectfully requests that the Court grant its motion for summary judgment of no infringement.

Dated: January 5, 2007                    WEST BEND HOUSEWARES, LLC
                                          FOCUS PRODUCTS GROUP, LLC
                                          By their attorneys,


                                          /s/ Erik P. Belt
                                          Michael E. Husmann
                                          Joseph T. Miotke
                                          MICHAEL BEST & FRIEDRICH LLP
                                          100 East Wisconsin Avenue, Suite 3300
                                          Milwaukee, Wisconsin 53202-4108
                                          Telephone:    414-271-6560
                                          Facsimile:    414-277-0656

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02100-1618
Telephone:    617-443-9292
Facsimile:    617-443-0004
E-mail:ebelt@bromsun.com

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601-6710
Telephone:    312-222-0800
Facsimile:    312-222-0818

## CERTIFICATE OF SERVICE

I certify that, on the above date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants

/s/ Erik P. Belt
Erik Paul Belt

Exhibit C

DAVID L. TRUMPER, Ph.D.        NOVEMBER 10, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
THE HOLMES GROUP, INC.,    )
                           )
            Plaintiff,     )
                           )
          vs.              ) Civil Action No.
                           ) 05-CV-11367 WGY
West Bend HOUSEWARDS, LLC  )
and FOCUS PRODUCTS GROUP,  )
LLC,                       )
                           )
            Defendants.    )
--------------------------)
```

VIDEOTAPED DEPOSITION OF

DAVID L. TRUMPER, Ph.D.

Syosset, New York.

Friday, November 10, 2006

Reported by:
JEAN VALERIE GAFA
JOB NO. 188976

ESQUIRE DEPOSITION SERVICES, LLC – CHICAGO
312.782.8087  800.708.8087  FAX: 312.704.4950

ef50853d-6408-41af-9876-89a97b23f248

DAVID L. TRUMPER, Ph.D.      NOVEMBER 10, 2006

Page 210

```
 1                   Trumper
 2   inner shell and the entire outer shell extend
 3   outwardly beyond the outer surface of the
 4   side wall," correct?
 5        A.    Yes.                          15:25:12
 6        Q.    You then, you say, "Therefore, the
 7   combined housing extends largely beyond the
 8   outer surface of the side wall, 18.
 9        Would you explain to me how you reached
10   that conclusion?                         15:25:24
11        A.    The combined unit's about
12   50 percent outside, about 50 percent inside.
13        Q.    Okay.
14        You didn't include that, you concluded
15   that it extends largely beyond the outer   15:25:39
16   surface from the fact that a portion of that
17   comes out and the entirety of this goes out?
18        A.    Yes.
19        Q.    In your report.
20        Now you're saying that if you take a look 15:25:52
21   at it, it's half and half, about, correct?
22        A.    Yes.
23        Q.    Okay, and you say it extends
24   largely beyond the outer surface of the side
25   wall, correct?                           15:26:04
```

ef50853d-6408-41af-9876-89a97b23f248