**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | |
| Plaintiff/Counterclaim-Defendant, | : | Civil Action No.  1: 05-CV-11367 WGY |
| | : | (Alexander, M.J.) |
| v. | : | |
| | : | |
| WEST BEND HOUSEWARES, LLC and | : | |
| FOCUS PRODUCTS GROUP, L.L.C., | : | |
| | : | |
| Defendants/Counterclaim-Plaintiffs. | : | |

**MEMORANDUM IN SUPPORT OF
HOLMES' MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS BY WEST BEND**

Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
Alan M. Sack, Esq. (*Pro Hac Vice)*
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  516-822-3550
Facsimile:  516-822-3550

Nicholas J. Nesgos (BBO No. 553177)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  617-973-6100
Facsimile:  617-367-2315

*Attorneys for Plaintiff*

January 11, 2007

**<u>TABLE OF CONTENTS</u>**

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

I.    WEST BEND STARTED DEVELOPMENT OF ITS PROGRAMMABLE
      SLOW-COOKERS IN 2002, IN COLLABORATION WITH OEM, A
      CHINESE COMPANY AND HAD A PRODUCT THAT WAS
      SUBSTANTIALLY COMPLETED IN APRIL 2004.  HOWEVER, WEST
      BEND HAS FAILED TO PRODUCE ANY COMMUNICATIONS OR
      OTHER DOCUMENTS PRIOR TO APRIL 2004 THAT DEMONSTRATE
      THE EARLIER DEVELOPMENT OF THIS PRODUCT .................................................... 1

      A.   Holmes' Document Requests Call For These Omitted Documents ............................ 2

      B.   West Bend First Started Developing Programmable Slow-Cookers In
           2002, In Collaboration With OEM Long Before April 2004 ........................................ 5

      C.   The Omitted Documents Relating To The Development Of West
           Bend's Programmable Slow-Cooker From 2002 Through April 2004
           Should Be In West Bend's Possession ............................................................................ 6

II.   WEST BEND HAS NOT PROVIDED A PLAUSIBLE EXPLANATION
      AS TO WHY THE OMITTED DOCUMENTS HAVE NOT BEEN
      PRODUCED. ........................................................................................................................ 9

III.  WEST BEND HAS NOT DEMONSTRATED THAT IT MADE
      REASONABLE EFFORTS TO LOCATE THE OMITTED DOCUMENTS. .................... 10

IV.   THE OMITTED DOCUMENTS CAN DEMONSTRATE THAT WEST
      BEND'S ACTIONS WHERE IN WILLFUL DISREGARD OF HOLMES'
      PATENT RIGHTS, AND WEST BEND'S FAILURE TO PRODUCE
      THESE DOCUMENTS WARRANTS A FINDING OF WILLFULNESS IN
      THESE PROCEEDINGS. .................................................................................................... 15

      A.   The Omitted Documents Presumptively Demonstrate West Bend's
           Willfulness, Otherwise They Would Have Been Produced. ....................................... 15

      B.   West Bend's Continued Failure To Produce The Omitted
           Documents Constitutes Bad Faith And Supports A Finding Of
           Willfulness. ..................................................................................................................... 17

V.    CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

*Afros S.p.A. v. Krauss-Maffei Corp.*,
671 F.Supp. 1402 (D. Del. 1987) ................................................................................17

*Alexander v. FBI*,
194 F.R.D. 299 (D.D.C.2000) ....................................................................................14

*Avery Dennsion Corp. v. UCB Films PLC*,
(N.D. Ill 1998) ............................................................................................................14

*Gray v. Faulkner*,
148 F.R.D. 220 (N.D. Ind. 1992) ...............................................................................15

*Haseotes v. Abacab Int'l Computers, Inc.*,
120 F.R.D. 12 (D.Mass.1988) .....................................................................................14

*Ortho Pharm. Corp. v. Smith*,
959 F.2d 936 (Fed. Cir. 1992) .....................................................................................15

*Russell Box Co. v. Grant Paper Box Co.*,
203 F.2d 177 (1st Cir. 1953) .......................................................................................17

*Scott v. Arex, Inc.*,
124 F.R.D. 39 (D.Conn 1989) .....................................................................................15

*Studiengesellschaft Kohle, M.B.H. v. Dart Indus*,
862 F.2d 1564 (Fed.Cir.1988) .....................................................................................15

*Zubulake v. UBS Warburg*,
229 F.R.D. 422 (S.D.N.Y. 2004)………………………………………………….....  10, 17

**STATUTES:**

7 Moore's Federal Practice § 34.14[2][b] (3rd ed. 2006) ..................................................14

Fed.R.Civ.P. 34 .................................................................................................................14

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff, The Holmes Group, Inc., now known as Sunbeam, Inc., d/b/a/ Jarden Consumer Solutions, (hereinafter "Holmes"), hereby moves for an order compelling production of product development documents and communications during the time period spanning 2002 and 2004, as well as other equitable relief relating to its claim of willful infringement of its U.S. patents by Defendants, West Bend Housewares, LLC and Focus Products Group, LLC (collectively referred to as "West Bend").

**I.    WEST BEND STARTED DEVELOPMENT OF ITS PROGRAMMABLE SLOW-COOKERS IN 2002, IN COLLABORATION WITH OEM, A CHINESE COMPANY AND HAD A PRODUCT THAT WAS SUBSTANTIALLY COMPLETED IN APRIL 2004.  HOWEVER, WEST BEND HAS FAILED TO PRODUCE ANY COMMUNICATIONS OR OTHER DOCUMENTS PRIOR TO APRIL 2004 THAT DEMONSTRATE THE EARLIER DEVELOPMENT OF THIS PRODUCT.**

Holmes has requested that West Bend produce all documents relating to the development of its programmable slow-cookers.  Based on West Bend's own documents and the sworn Affidavit and deposition testimony of its officers and employees, such documents should include internal West Bend e-mails, agendas, meeting notes and summaries, as well as e-mail communications with its Chinese manufacturer and vendor, OEM, between 2002 through the launch of its accused programmable slow-cooker in 2005.  However, the earliest communication produced by West Bend relating to the development of the accused product is an e-mail from OEM dated April 12, 2004[1] (Ex. A - *Identified as Confidential - Attorneys Eyes Only - To be filed under Seal*).  No plausible explanation has been offered by West Bend or its counsel why this is the earliest record of its programmable slow-cooker development that has been produced.

The April 12, 2004 e-mail (Ex. A) and other communications with OEM during that

---

[1] West Bend Document identified as WB 000534-WB 000535, which includes e-mail communications from Hugh Mackay of OEM (West Bend's overseas manufacturer of the programmable slow-cookers) to employees of West Bend dated April 12 and April 13, 2004 [**A Motion for Leave to File Under Seal is being filed concurrently herewith.**]

month, clearly demonstrate that substantial earlier communications must have taken place.  The

text of the additional e-mail dated April 13, 2004 (bottom Ex. A) discusses an earlier meeting at

West Bend.  The e-mail also includes an attachment (second page to Ex. A) showing that West

Bend's accused programmable slow-cooker appears to have been fully developed by that date.  It

is apparent that earlier planning and product development documents, including memoranda,

agendas, product and marketing plans and internal communications within West Bend and e-

mails with OEM, were either purposely destroyed by West Bend or withheld without reasonable

basis or explanation.  Also, it is apparent that documents generated between 2002 and April 2004

demonstrating the planning and development of the accused West Bend programmable slow-

cookers exist and should have been produced by West Bend.

**A.    Holmes' Document Requests Call For These Omitted Documents.**

On January 26, 2006, Holmes served document requests calling for documents relating to

the development of the accused West Bend programmable slow-cookers (Ex. B).  Further

documents relating to the development of West Bend's programmable slow-cookers are also

encompassed by Holmes' document Request Nos. 2, 6-12, 29-31, 33, 34, 47, 49, 50, 55, 56, 61

and 65.  For example:

> Holmes' Request No. 6:
>
> All documents and things constituting and/or relating to the conception,
> design, development and/or manufacture of the Programmable Slow-Cookers
> made, sold, imported by and/or otherwise marketed by West Bend.  Such
> documents include, but are not limited to manufacturing specifications,
> engineering drawings, blueprints, circuit diagrams, engineering change orders,
> product specifications, design specifications, work orders, product layouts,
> manufacturing records, prototypes, models, memoranda, e-mails and testing and
> maintenance documents.

West Bend responded (Ex. C) by asserting privilege and objecting to the request as follows:

<u>West Bend's Response to Request No. 6</u>:

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow-Cookers" (as defined by Plaintiff) rather than only those accused of infringement. Plaintiff defines "Programmable Slow-Cooker" as "any slow-cooker including a programmable electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this interrogatory calls for sales information for any model besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes supplements its discovery responses to identify additional West Bend slow-cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will supplement its response accordingly. West Bend further objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

Notwithstanding the assertion of privilege in West Bend's response, West Bend has since produced its opinion of counsel[2] and indicated that they were, in fact, relying on advice of counsel for their decision to continue developing, manufacturing and selling the infringing products[3]. Additionally, West Bend has produced documents relating to all four (4) of its programmable slow-cooker models after the April 12, 2004 date.

West Bend is relying on the Declaration of its President, Michael Carpenter provided in support of its Motion for Summary Judgment of Non-Willfulness, filed December 1, 2006 which alleges that it was working with OEM as early as 2002 to develop its programmable slow-cooker. From Mr. Carpenter's Declaration it is clear that product development occurred between 2002-2005. During the deposition of West Bend's Vice President of Sales and Marketing, Mr. Gary Shabino, taken on December 5, 2006, verbal requests were made on the record for

---

[2] See, "Report for West Bend Housewares on the Scope of Holmes U.S. Patent Nos. 6,573,483 and 6,740,855" marked as WB002352-2569 and cited by West Bend as Ex. D to the supporting Declaration by Michael Carpenter, in its Motion for Summary Judgment of Non-Willfulness, filed December 1, 2006.
[3] See, Carpenter Declaration submitted in support of West Bend's Motion for Summary Judgment of Non-Willfulness, filed December 1, 2006 (paragraph 7 states "In reliance upon the opinion of its patent counsel, West Bend introduced the accused product").

documents and communications with OEM relating to product development that occurred prior to April 12, 2004.  Our requests for these documents were formalized in a letter dated December 8, 2006[4] (Ex. D), which asks for:

> Documents, including communications with third parties, relating to the development of the accused West Bend programmable slow-cookers.  In particular, all documents between West Bend and OEM from the year 2002 which reflect the alleged collaborative effort to develop the accused products, including but not limited to any Purchase Orders relating to the accused products.

Notwithstanding the assertion during the depositions that all relevant documents had been produced, counsel for West Bend responded by letter dated December 11, 2006[5] (Ex. E - *Original Exhibits to this letter are Identified as Confidential - Attorneys Eyes Only - To be filed under Seal*), and enclosed additional documents relating to a confidentiality agreement with OEM dated November 10, 2004 and e-mail communications regarding this agreement.  West Bend's letter also enclosed invoices and related shipping documents for West Bends electronic slow-cookers sold to Walmart, all dated May 30, 2005.  However, the requested documents dated prior to April 12, 2004 were not provided.  The letter again alleged that "West Bend has no additional documents concerning the development of the accused product," however, there was no explanation why the newly produced documents had not been provided earlier.  Thereafter, when it became clear that West Bend would not produce any additional documents, the undersigned repeatedly attempted to speak with West Bend's counsel by telephone about this issue.  Finally, when the undersigned spoke with West Bend's counsel by telephone on January 3, 2006 to attempt to resolve this dispute, it became clear that this issue could not be resolved without the Court's intervention.

---

[4] Letter dated December 8, 2006 from Alan M. Sack, Esq. (Attorney for Holmes) to Joseph T. Miotke, Esq. (Attorney for West Bend)
[5] Letter dated December 11, 2006 from Joseph T. Miotke, Esq. (Attorney for West Bend) to Alan M. Sack, Esq. (Attorney for Holmes).

**B.    West Bend First Started Developing Programmable Slow-Cookers In 2002, In Collaboration With OEM Long Before April 2004.**

According to West Bend's President, Michael Carpenter, West Bend "began working with a Chinese Company named 'OEM' as early as 2002 to develop the product which Holmes now alleges infringes its patents" (Declaration of Michael Carpenter[6], 1st ¶).  In fact, West Bend's Project Development Manager, Howard Kaney, testified during his deposition conducted August 23, 2006 that the development of West Bend programmable slow-cookers was well underway when he took over as Manager in 2003[7].

Howard Kaney Deposition Transcript, page 32:

    5    Q.    When did you first become involved
    6  in the development of the West Bend
    7  programmable slow cooker?
    8    A.    If you mean involved as aware of
    9  the information, I worked in the product
  10   development department where my boss, Bill
  11  Dobson, sat on the slow cooker task force.
  12  And so I was aware or involved at that time
  13  to be following what the task force was
  14  doing, but I was not involved with any design
  15  responsibilities or direction as a result of
  16  that task force.
  17    Q.    At some point in time, did you
  18  become involved in the design responsibilities?
  19    A.    Yes.
  20    Q.    Do you recall when that would have
  21  occurred?
  22    A.    My recollection is it was about
  23  the time that the transition from Illinois
  24  Tool Works to Focus Products -- or excuse me,
  25  from Regal Ware to Focus Products took place.

The change of ownership occurred in 2003 and was addressed earlier in the deposition by Mr. Kaney at page 11, as follows:

---

[6] See, Carpenter Declaration submitted in support of West Bend's Motion for Summary Judgment of Non-Willfulness, filed December 1, 2006.
[7] See portions of deposition transcript of Howard Kaney, cited as Exhibit B to the Declaration of Alan M. Sack in support of Holmes' opposition to West Bend Motion for Summary Judgment of Non-Willfulness.

<u>Howard Kaney Deposition Transcript, page 11</u>:

21    Q.    Do you remember what year that
22    was?
23    A.    Coincident with the change in
24    ownership to Focus Products, and I believe
25    that was 2003.

Accordingly, there should have been ample documentation of product development at least as early as 2003, after the change of ownership to Focus Products.

C.    **The Omitted Documents Relating To The Development Of West Bend's Programmable Slow-Cooker From 2002 Through April 2004 Should Be In West Bend's Possession.**

The suggestion that an e-mail dated April 12, 2004 (Ex. A - To be filed under Seal), represents the earliest available document showing the collaborative development efforts between West Bend and EOM is not plausible. The development of a product as complex as a programmable slow-cooker produces numerous documents, such as product design and manufacturing specifications, drawings or sketches, blueprints, programming flow-charts, circuit diagrams, project schedules, budgets, expense projections and reports, prototypes, models, manufacturing records, work orders, testing and maintenance documents, and numerous notes, memoranda, e-mails, letters and other communications demonstrating changes and/or revisions to the product over the course of its development.

For example, West Bend's manual oval slow-cooker that forms the basis of West Bend's counterclaim for design patent infringement was similarly developed in collaboration with OEM, during the time frame of 1997 to 1999. During that time, numerous and detailed planning, scheduling and product development documents, presentations, marketing materials and notes were generated and retained both in-house and exchanged with OEM and additional third-parties. In fact, a detailed project schedule was exchanged and updated periodically. Samples of

6

these documents are provided as Ex. F (*Identified as Confidential - Attorneys Eyes Only - To be filed under Seal*). We would expect that similar documents would have been generated and retained by West Bend during the 2002 to April 2004 time period.

During his deposition on December 5, 2006, West Bend's Vice President of Sales, Gary Shabino, testified (Ex. G) that he had been copied on various communications regarding West Bend's programmable slow-cooker project. Mr. Shabino testified, as follows:

Gary Shabino Deposition Transcript, page 26:

```
 4    Q.    Did you have interaction with OEM
 5    or Mr. Mackay in the development of the
 6    electronic slow cooker?
 7    A.    Not the development of the
 8    electronics.
 9    Q.    What interaction did you have with
10    them?
11    A.    The only interaction I had was
12    seeing the renderings of the cosmetic look of
13    the unit.
14    Q.    What communications did you have
15    with Mr. Mackay or OEM?
16    A.    I was probably copied on e-mails
17    from Hugh. I don't recall the exact
18    communication. I don't recall any direct
19    correspondence that I had to Hugh --
```

He was also examined with regard to a document titled "2005 Objectives" (Ex. H - *Identified as Confidential - Attorneys Eyes Only - To be filed under Seal*) which describes tasks appointed to various West Bend employees with regard to the programmable slow-cooker project for 2005. Mr. Shabino testified that corresponding 2004 planning documents were generated and he is sure that he was given a copy. Mr. Shabino testified as follows:

Gary Shabino Deposition Transcript, pages 113-114:

```
                              113
25              (Exhibit-16 marked for
```

7

114

1    identification.)
2      BY MR. SACK:
3      Q.    This is a document that says 2005
4    objectives on it. It's identified as WB2073
5    through 2119.  Take a look at it, see if
6    you're familiar with this document.
7          MR. MIOTKE:  Has this been marked
8    as an exhibit yet?
9          MR. SACK:  Yes, it's marked as
10   Exhibit 16.
11         THE WITNESS:  (Witness reading.)
12   I have seen this before.
13     BY MR. SACK:
14     Q.    Okay.  Is this a document that you
15   were working on a draft before that we
16   testified?
17     A.    No, it -- this is separate.  This
18   is something that Mike Carpenter put together.
19     Q.    What is this?
20     A.    This is just the business
21   objectives for each manager that reports to
22   Mike.
23     Q.    Okay.  Is this the first time that
24   you had this type of document?
25     A.    He does it every year.

115

1      Q.    Every year.  There was one in
2    2004?
3      A.    Yes.
4      Q.    Did you have a copy of the
5    2004 --
6      A.    I'm for sure I was given a copy.
7      Q.    Do you know if you produced a
8    copy?
9      A.    Did I produce a copy?
10     Q.    To counsel.
11     A.    I don't recall if I did or not.
12         MR. SACK:  Counsel, could you see
13   if there is a 2004 objectives?
14         MR. MIOTKE:  Again request that in
15   writing; we'll respond appropriately.
16         MR. SACK:  Okay.  I think it's
17   covered by our document request.  Could you
18   mark that?

Although Holmes' counsel requested copies of such early planning documents (e.g., a 2004 planning document), the requested documentation was not provided.

## II.    WEST BEND HAS NOT PROVIDED A PLAUSIBLE EXPLANATION AS TO WHY THE OMITTED DOCUMENTS HAVE NOT BEEN PRODUCED.

To date, no reasonable explanation has been provided as to why the requested records can not be produced or located.  The Declaration of West Bend's counsel, Mr. Miotke[8], filed with West Bend's Reply Memorandum In Support Of Their Motion For Summary Judgment of Non-Willfulness, alleges without basis or support that West Bend has made a diligent search for such documents (see paragraph 2).  Likewise, Mr. Miotke's letter (Exhibit A to his declaration) makes the same, self-serving, uncorroborated statements suggesting that diligent searches to find the omitted documents have been made.  However, the scope and extent of such efforts have never been specified and substantiated by anyone at West Bend having first-hand knowledge of the alleged search.  Mr. Miotke generally averred to many documents not being retained when West Bend relocated its facilities after Focus Products purchased West Bend.  However, no explanation has been offered as to what documents were discarded or destroyed, and whether back-ups to these documents exist in electronic form in computer storage systems.

In addition, no explanation has been provided by West Bend or its counsel as to where the omitted documents were maintained and their current status.  West Bend's counsel did not provide a first-hand statement from a knowledgeable witness who was responsible for maintaining such documents.  Nor is there any explanation of when, why or how these documents were destroyed or otherwise discarded.  Holmes has no way of knowing which documents were destroyed and which documents were retained.  There has been no explanation

---

[8] See Declaration of Joseph T. Miotke (filed as document 81 on 01/05/07).

provided by West Bend or its counsel of any reason why some documents were destroyed or discarded, and other documents were apparently retained. If they were destroyed or discarded in anticipation of litigation West Bend would have the burden to explain when an why these documents were destroyed and who gave instructions to do so. *See, Zubulake v. UBS Warburg*, 229 F.R.D. 422 (S.D.N.Y. 2004).

### III.    WEST BEND HAS NOT DEMONSTRATED THAT IT MADE REASONABLE EFFORTS TO LOCATE THE OMITTED DOCUMENTS.

In light of the vast number of documents that would presumable be generated during the first two years of development of the accused West Bend programmable slow-cooker in question, it is hard to believe absolutely no "paper trail" remains. Especially in this age of e-mail communications and computers, it seems unlikely that all electronic records and back-up files were destroyed. Even if that were the case, West Bend could presumably obtain copies of its electronic communications and engineering records from its development partner OEM. West Bend has not demonstrated that it has made any reasonable efforts to obtain the omitted documents.

An example of the cursory search made by West Bend is provided the December 5, 2006 deposition of West Bend's Vice President of Sales, Gary Shabino[9]. Mr. Shabino could not detail any efforts made to search his computer for records and admitted that no one other than himself searched his records for relevant documents. While Mr. Shabino is West Bend's Vice President of Sales, it has not been demonstrated that he is technically qualified to conduct a thorough search to retrieve his e-mails and electronic records from West Bend's electronic storage systems. Mr. Shabino was not even aware whether any computer back-up files ever existed that might contain these records.

---

[9] See portions of the transcript of Deposition of Gary Shabino (Ex. G), namely pages 24-27 and 57.

<u>Gary Shabino Deposition Transcript, pages 24 - 27</u>:

<div align="center">24</div>

22   Q.   Did counsel ask you to search for
23   documents on other programmable slow-cooker
24   products?
25    A.   Yes.  Yes.

<div align="center">25</div>

1     MR. MIOTKE:  I'm going to jump in
2   just to the extent -- to the extent that
3   involves attorney-client privileged
4   communications, I'll instruct you not to
5   answer.
6    BY MR. SACK:
7    Q.   Did you look for documents with
8   regard to the slow cook -- the programmable
9   slow cooker product -- project and turn them
10  over to counsel for production?
11    A.   Yes.
12    Q.   Did you turn over all of your --
13  all of your documents to counsel on that
14  product?
15    A.   Absolutely.
16    Q.   From the earliest one on?
17    A.   Correct.
18    Q.   Did you turn over any documents in
19  2002, the date of 2002?
20    A.   I don't recall the dates, but we
21  extensively searched and turned over all
22  documentation that we had on the electronic
23  Crockery cooker.
24    Q.   From your earliest ones on?
25    A.   Correct.

<div align="center">26</div>

1    Q.   What type of documents did you
2  have -- did you have?
3    A.   I don't recall everything that we
4  turned over.  I do recall turning over notes
5  from the meeting we had at Wal-Mart.
6    Q.   Did you have electronic documents?
7    A.   No.
8    Q.   You didn't have any e-mails?
9    A.   I don't recall.
10    Q.   Did you have paper copies that you
11  kept in your files?  Is that what you gave
12  to your attorneys?
13    A.   The only thing I had were note

<div align="center">11</div>

14  meetings.
15    Q.    Note meetings.  Did you search
16  your computer?
17    A.    Yes.
18    Q.    Did you search your e-mails?
19    A.    Yes.
20    Q.    Yourself?
21    A.    Pardon?
22    Q.    Did you personally search it or
23  did you have somebody who --
24    A.    I personally searched my records.
25    Q.    Did you have somebody who was

                                27
1  familiar with computer infrastructure and
2  searching search your records also?
3    A.    I did not.
4    Q.    Did you have interaction with OEM
5  or Mr. Mackay in the development of the
6  electronic slow cooker?
7    A.    Not the development of the
8  electronics.
9    Q.    What interaction did you have with
10  them?
11    A.    The only interaction I had was
12  seeing the renderings of the cosmetic look of
13  the unit.
14    Q.    What communications did you have
15  with Mr. Mackay or OEM?
16    A.    I was probably copied on e-mails
17  from Hugh.  I don't recall the exact
18  communication.  I don't recall any direct
19  correspondence that I had to Hugh --

*Also see,* Gary Shabino Deposition Transcript, page 55-57:

                                55
20    Q.    Okay.  Now, you were copied on
21  these communications. Why were you copied on
22  these communications?
23    A.    The communication from Hugh?
24    Q.    Yes.
25    A.    Or other documents?
                                56
1    Q.    No, the communication from Hugh.
2  There's two communications here.

3    A.    Because at the time I had a very
4    strong working relationship with Hugh in
5    general, not specifically to this item.
6    Q.    But you weren't copied on any of
7    the previous development of this electronic
8    slow cooker project beforehand, before this
9    e-mail?
10    A.    I've turned over all the
11    documentation that -- that I could find.  I
12    -- I don't believe I was.
13    Q.    So he just started out of the blue
14    just copying you on this one?
15    A.    I don't recall the exact
16    circumstances, but Hugh and I have been
17    friends for many years and we talk about a
18    lot of different subjects.
19    Q.    Well, you didn't answer me, though.
20    Did -- did he copy you on the project
21    before?
22    A.    He may have.
23    Q.    And where would these
24    communications be?
25    A.    I'm not sure.

                            57

1    Q.    Would they be on your computer?
2    A.    Everything that was in my computer,
3    everything that was in my file was turned
4    over to counsel.
5    Q.    Do you still have that computer?
6    A.    Yes.  Well, back up -- back up a
7    minute.  I probably don't have the computer
8    and you should be aware of due to ownership
9    changes, we -- we went from different
10    computer systems.  I mean we have been part
11    of Focus Products Group since 2003.  Prior to
12    that it was Regal Ware and all of the
13    documentation stayed with us so --
14    Q.    Did you have backups at that time?
15    A.    I don't honestly know.
16    Q.    Backup to e-mails and other things
17    in your computer?
18    A.    Yeah, I don't know if --

In light of West Bend's failure to produce the omitted 2002 - April 2004 programmable

slow-cooker development documents, it is certainly reasonable to expect West Bend to conduct a

more thorough examination of its electronic data storage systems.  For example, West Bend should be obligated to verify that it has conducted a thorough search of its computers and backup files.  Many records of communications, such as e-mails, remain on individual computers and e-mail servers and can be retrieved by individuals properly qualified to do so.  Similarly, qualified computer and/or records specialists can retrieve backups and archive files, which non-technical employees may not have access to and may not even be aware of their existence.  Without demonstrating such efforts, West Bend can not say they have made reasonable efforts in this regard.

Nor has West Bend demonstrated that it attempted to obtain the omitted documents from its overseas partner in the development and manufacture of the accused programmable slow-cooker, OEM.  Holmes is entitled to documents reflecting the development of this product.  Fed.R.Civ.P. 34 requires a party to produce documents in the "possession, custody or **control** of the party upon whom the request is served."  Where a party to whom a request for production has been made has the legal right to control or obtain the documents sought, discovery can be had even in the absence of actual possession.  *7 Moore's Federal Practice* § 34.14[2][b] (3rd ed. 2006); *Haseotes v. Abacab Int'l Computers, Inc.,* 120 F.R.D. 12, 14 (D.Mass.1988) ("A party has 'control' over a document if that party has a legal right to obtain those documents**.**").  *See also Alexander v. FBI,* 194 F.R.D. 299, 301-02 (D.D.C.2000). *Avery Dennsion Corp. v. UCB Films PLC*, (N.D. Ill 1998).

In particular, a party responding to a Rule 34 production request "is under an affirmative duty to seek that information reasonably available to him from his employees, agents or others subject to his control."  *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992); see also, *Scott v. Arex, Inc.* 124 F.R.D. 39, 41 (D.Conn 1989).  No such effort has been made.

14

**IV.    THE OMITTED DOCUMENTS CAN DEMONSTRATE THAT WEST BEND'S ACTIONS WHERE IN WILLFUL DISREGARD OF HOLMES' PATENT RIGHTS, AND WEST BEND'S FAILURE TO PRODUCE THESE DOCUMENTS WARRANTS A FINDING OF WILLFULNESS IN THESE PROCEEDINGS.**

**D.    The Omitted Documents Presumptively Demonstrate West Bend's Willfulness, Otherwise They Would Have Been Produced.**

The omitted documents are likely to demonstrate West Bend's intent when copying Holmes' programmable slow-cooker with impunity to compete in the marketplace. However, without these documents it is difficult to determine West Bend's initial considerations and intent during the early development of its accused programmable slow-cooker. Even counsel for West Bend has acknowledged that a determination of willfulness "is by definition a question of the infringer's intent". *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992).

The documents from 2002 to April 2004 are also important as they could presumably show evidence of when West Bend first became aware of the Holmes patent-in-suit. West Bend's counsel has made the unsupported assertion that "the undisputed documentary evidence" demonstrates that West Bend did not discover the Holmes patents until April 2004.[10] However, this statement is contradicted by the sworn deposition testimony of West Bend's Product Development Manager, Howard Kaney who stated that West Bend was aware of the Holmes '483 patent in 2003. Specifically Mr. Kaney testified, as follows:

> Howard Kaney Deposition Transcript, page 93:
>
> 6        MR. HENNEBERGER:  I'd like to mark
> 7     as Kaney Exhibit 11 U.S. Patent No.
> 8     6,573,483.
> 9            (Exhibit-11 was marked.)
> 10     BY MR. HENNEBERGER:
> 11     Q.    Mr. Kaney, I can advise you that
> 12     this is one of the patents Holmes has
> 13     asserted against West Bend in this lawsuit.

---

[10] See Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment of Non-Willfulness, page 9, middle paragraph.

14     Are you familiar with that patent?
15     A.     Yes.
16     Q.     When did you first become aware of
17     that patent?
18     A.     I became familiar with it on or
19     about the time that I had started working on
20     this project.

We know from Mr. Kaney's testimony (TR at pages 11 and 32) cited above at pages 5-6 that he started working on the West Bend programmable slow-cooker project in 2003.

Contrary to West Bend's counsel's assertions, the documents cited in Mr. Carpenter's Declaration only demonstrate when OEM first became aware of the Holmes '483 patent. At paragraph 2 of his declaration, Mr. Carpenter states: "In April 2004 OEM became aware of the '483 patent and informed West Bend of its existence." However, the declaration carefully avoids stating when West Bend first became aware of the Holmes '483 patent.

The omitted documents would shed light on West Bend's intent of copying Holmes' programmable slow-cooker and its failure to contact counsel for almost a year after West Bend became aware of the Holmes '483 patent, as admitted by Mr. Kaney. The omitted documents would further establish that West Bend had completed its accused programmable slow-cooker design and simply was looking to "clear the proposed product" with a "rubber stamp" of approval from its patent attorneys. *Also see*, e-mail communications dated July 23, 2004.[11] (Ex. I). Both actions would demonstrate willfulness.

In its Reply to its Motion for Summary Judgment of Non-Willfulness, West Bend has argued that no evidence has been presented to show that West Bend's patent counsel gave a "rubber stamp" opinion approving the already developed West Bend product (Reply Memorandum at page 1). However, this argument is disingenuous in view of West Bend's

---

[11] E-mail communication dated July 23, 2004 between Keith Jaffe the President of Focus Products Group, LLC and Martin L. Stern, Esq, identified as WB 002794 - WB 002795.

failure to provide the very documents that would show its intent and the extent of the changes it made to the accused product that took place prior to April 2004.

E.     **West Bend's Continued Failure To Produce The Omitted Documents Constitutes Bad Faith And Supports A Finding Of Willfulness.**

West Bend's litigation tactics, namely the withholding of evidence material to willfulness, supports a finding of willfulness.  *Russell Box Co. v. Grant Paper Box Co.,* 203 F.2d 177, 183 (1st Cir. 1953); *Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F.Supp. 1402, 1439-40 (D. Del. 1987).  Additionally, such conduct should be the basis of a determination by the Court that there is a presumption that the omitted documents would demonstrate willful conduct by West Bend.  *See, Zubulake  v. UBS Warburg*, @ 436-437, s*upra*.  As a part of the equitable relief for this conduct, Holmes requests that West Bend be precluded from relying on advice of counsel in defending against Holmes' charge of willful infringement of the patents-in-suit.  Based on this conduct, Holmes also requests that the Court deny West Bend's pending Motion for Summary Judgment on Non-Willfulness.

V.     **CONCLUSION**

Accordingly, Holmes respectfully requests an Order compelling the immediate production by West Bend of the omitted documents identified above, including communications relating to the development of the accused West Bend programmable slow-cookers from the years 2002 to April 2004.  Additionally, Holmes respectfully requests an Order compelling West Bend to demonstrate that it has made all reasonable efforts, including a professional search of its computers and backup systems to locate and produce the omitted documents relating to the planning, design and development of the accused West Bend programmable slow-cookers that pre-date April 12, 2004.

Unless these documents are produced immediately, Holmes requests appropriate

sanctions in this case, including the finding of a presumption of willfulness and the exclusion of

West Bend's opinion of counsel.  Such sanctions would be appropriate since the omitted

documents were repeatedly requested and West Bend has failed to provide a plausible

explanation why they have not been produced.  Finally, Holmes requests any further relief this

Court finds just and equitable under the circumstances.

THE HOLMES GROUP

By its Attorneys,

Dated:  January 11, 2007          */s/ Alan M. Sack/*_____
Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Alan M. Sack, Esq. (*Pro Hac Vice*)
AMSDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550
Facsimile:  (516) 822-3582

and

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Joseph W. Corrigan (BBO No. 647393)
jcorrigan@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  (617) 973-6100
Facsimile:  (617) 367-2315

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, with the exception of the exhibits and documents

noted below, is being filed by ECF on January 11, 2007.  A Motion for Leave to File Under Seal

is being filed concurrently herewith, requesting leave to file the following exhibits and

documents, which are referred to as part of the instant motion, with the Court:

- Exhibits A;
- Exhibit F;
- Attachments originally annexed to Exhibit E; and
- Exhibit H.

<div align="right">

/s/ Alan M. Sack        

Alan M. Sack

</div>

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,      :
                           :

             Plaintiff,    :     Civil Action No.  05-CV-11367 REK

         v.           :     (Alexander, M.J.)

                           :

WEST BEND HOUSEWARES, LLC and  :
FOCUS PRODUCTS GROUP, L.L.C.,   :

                           :

            Defendants.   :

## HOLMES' FIRST REQUEST TO WEST BEND HOUSEWARES, L.L.C.
## FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-66)

Plaintiff, The Holmes Group, Inc., (hereinafter "Holmes"), requests production of the following documents and things from Defendant, West Bend Housewares, LLC (hereinafter "West Bend").  The documents and things shall be produced at the offices of Hoffmann & Baron, LLP, 6900 Jericho Turnpike, Syosset, New York 11791-4407, within thirty (30) days of service of this request, or at such other place and time as may be mutually agreed to by counsel.

## DEFINITIONS

(a)     The words "you," "yours" and/or "yourselves" means one or more of West Bend and any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of West Bend.

(b)     The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" shall mean "including without limitation".

(c)     "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

(d)     The word "document" shall mean any writing, recording or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, e-mail, electronic files, compact discs (cd's), digital video discs (dvd's), computer printouts, microfilms, video tapes or tape recordings.

(e) The term "thing" as used herein refers to any tangible object other than a document, and includes objects of every kind and nature, such as prototypes, models or specimens.

(f)     "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

(g)     "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

(h)     The words "pertain to" or "pertaining to" mean: relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

(i)     The words "relate(s)" and "relating" means any relationship of whatever kind or nature, be it direct or indirect, and includes, without limitation, concerning, referring to,

embodying, connected with, commenting upon, responding to, showing, describing, mentioning, identifying, analyzing, reflecting, supporting and constituting.

(j)    "Communication(s)" shall mean any oral or written expression, disclosure, transfer, or exchange of information, or any nonverbal conduct of a person intended by that person as a substitute for an oral or written expression, disclosure, transfer or exchange of information.

(k)    The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

(l)    The term "action" shall mean the case entitled *The Holmes Group, Inc. v. West Bend Housewares, LLC and Focus Products Group, L.L.C.,* Case No. 05-CV-11367 REK, pending in the United States District Court for the District of Massachusetts.

(m)    The word "identify", when used in reference to a document, means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (i.e., correspondence, memorandum, facsimile etc.); (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; (5) the addressee of the document; and (6) the relationship of the author and addressee to each other.

(n)    The term "Programmable Slow Cooker" means any slow cooker including a programmable electronic control, including but not limited to West Bend's "6-Quart Electronic Crockery Cooker," Model No. 84386 identified in the Complaint.

(o)    The term "Holmes patents-in-suit" refers to United States Patent Nos. 6,573,483 B1 and 6,740,855 B1.

(p)    The term "West Bend's patents-in-suit" refers to United States Patent Nos. Des 434,266; Des 444,664; and Des 444,993.

(q)    West Bend is requested to produce an appropriate schedule of any documents withheld from production on the basis of an alleged privilege and/or immunity.  The schedule shall state separately the following information referred to in the "Instructions" listed below.

(r)    If any document to be produced has been lost, discarded, transferred to another person or entity, destroyed, or otherwise disposed of, state in writing:

    1.    the date, name and subject matter of the document;

    2.    the name, address, employment and title of each person who prepared, received, reviewed, and/or had custody, possession and/or control of the document;

    3.    all persons with knowledge of the contents or any portion of the contents of the document;

    4.    the previous location of the document;

    5.    the date of disposal or transfer of the document;

    6.    the reason for disposal or transfer of the document;

    7.    the manner of disposal of the document; and

    8.    the names and addresses of the transferee of the document, if applicable.

## INSTRUCTIONS

If you object to fully identifying a document or oral communication because of a privilege, you must nevertheless provide the following information pursuant to Fed.R.Civ.P 26(b)(5):

(1)     the nature of the privilege claimed (including work product);

(2)     if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(3)     the date of the document or oral communication;

(4)     if a document: its type (correspondence, memorandum, facsimile etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

(5)     if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

You are under a continuous obligation to supplement your document production under the circumstances specified in Fed.R.Civ.P. 26(e).

## REQUESTS

**Request No. 1:**

Documents sufficient to identify the corporate structure, officers, and employees with job titles of West Bend, including any parent organizations, divisions, affiliates, subsidiaries or related companies thereto from 1997 to the present.

**Request No. 2:**

All documents constituting and/or referring or relating, in whole or in part, to the Holmes patents-in-suit.

**Request No. 3:**

All documents and things constituting and/or relating to prior art to the Holmes patents-in-suit and the results of any prior art search directed to the Holmes patents-in-suit and/or similar subject matter.

**Request No. 4:**

All documents and things supporting, refuting and/or relating to West Bend's contention that the Holmes patents-in-suit are invalid, unenforceable and/or not infringed, including any analysis and/or opinions concerning invalidity, unenforceability, or infringement of the Holmes patents-in-suit.

**Request No. 5:**

All advertising, marketing and sales documents, including trade literature, catalogs, product bulletins and advertisements, referring or relating, in whole or in part, to Programmable Slow Cookers made, sold, imported by and/or otherwise marketed by West Bend.

**Request No. 6:**

All documents and things constituting and/or relating to the conception, design, development and/or manufacture of the Programmable Slow Cookers made, sold, imported by

and/or otherwise marketed by West Bend. Such documents include, but are not limited to manufacturing specifications, engineering drawings, blueprints, circuit diagrams, engineering change orders, product specifications, design specifications, work orders, product layouts, manufacturing records, prototypes, models, memoranda, e-mails and testing and maintenance documents.

**Request No. 7**:

All documents and things constituting and/or relating to any West Bend patent or patent application whether pending, issued, or abandoned relating to Programmable Slow Cookers.

**Request No. 8**:

All documents and things constituting and/or referring or relating to Programmable Slow Cookers made, offered for sale and/or sold by Holmes.

**Request No. 9**:

All documents referring or relating to the first instance that West Bend became aware of Holmes' Programmable Slow Cookers.

**Request No. 10**:

All communications to or from any of the West Bend's customers and/or third parties which refers or relate, in whole or in part, to Holmes, the Holmes patents-in-suit, and/or any of Holmes' programmable slow cooker products.

**Request No. 11**:

All documents constituting and/or relating to communications between West Bend and customers, potential customers or any third parties regarding possible infringement of the Holmes patents-in-suit and/or copying by West Bend of any feature claimed or described in the Holmes patents-in-suit.

**Request No. 12**:

All documents and things constituting and/or relating to any investigation, examination, evaluation, test and/or study of Holmes' Programmable Slow Cookers.

**Request No. 13**:

Two (2) samples of each Programmable Slow Cooker made, used, sold, offered for sale, imported and/or or marketed by West Bend in the United States.

**Request No. 14**:

All documents and things relating to West Bend's contention that the Holmes patents-in-suit are invalid and/or unenforceable for failure to meet the requirements of patentability, including, but not limited to documents constituting and/or relating or referring to prior art or failure to meet the requirements of 35 U.S.C. § 112.

**Request No. 15**:

Documents sufficient to establish by product style, type, model or other designation, West Bend's annual revenues, expenses, gross profit and net profit from the sale of Programmable Slow Cookers, including documents showing: (1) the number of units of each product sold; (2) the number of units of each product in inventory; (3) the sales price for each product; (4) West Bend's gross profit resulting from the sale of each product; and (5) any costs West Bend has deducted or intended to deduct to calculate West Bend's gross profit and net profit for each product. This request seeks available summary documents kept in the ordinary course of business which calculate, set forth, or report the revenues, expenses, gross profit, net profit, or sales of Programmable Slow Cookers such as monthly, quarterly or annual sales reports, profit and loss statements, income sheets, statements of cash flow or balance sheets. This request should not be interpreted to seek records evidencing individual sales transactions, such as invoices, unless summary documents are not available.

**Request No. 16:**

Documents sufficient to show monthly or quarterly historical sales data, in units and dollars, for West Bend's Programmable Slow Cookers including financial statements, computer sales records and summaries, as well as customer invoice summaries broken down, if possible, into the following categories:

     a.     by customer;

     b.     by product or model number;

     c.     by distribution channel, if more than one is used (e.g., wholesale, Internet, retail sales).

**Request No. 17:**

Historical financial statements including income statements, balance sheets, statements of cash flow, and profit and loss statements for West Bend for the period January 1, 1997 to present broken down, if possible, into the following categories:

     a.     total company;

     b.     division which sells programmable slow cooker products;

     c.     division which sells slow cookers covered by the West Bend patents-in-suit; and

     d.     slow cooker product line.

**Request No. 18:**

All analyses and breakdowns of fixed and variable expenses for West Bend's Programmable Slow Cookers including, without limitation, documents sufficient to identify the methodology used in such analyses and any documentation of expenses classified as fixed or variable by West Bend for the manufacture and sale of Programmable Slow Cookers.

**Request No. 19:**

Documents sufficient to show all costs and expenses incurred by West Bend in

connection with the manufacture and sale of Programmable Slow Cookers including, but not

limited to, the following:

a.    cost of manufacture or purchase of product;

b.    marketing and advertising expense;

c.    general and administrative expense; and

d.    sales expense.

**Request No. 20:**

All price agreements, correspondence and other documents reflecting, referring or

relating to price competition between the Programmable Slow Cookers of West Bend and any

competitor selling Programmable Slow Cookers, including, but not limited to Holmes.

**Request No. 21:**

Documents sufficient to show West Bend's price setting, changes in pricing, price

competition, pricing policies, or rebate programs for Programmable Slow Cookers, including,

but not limited to, price lists, explanations or justification for any price change, and

intercompany communications and customer communications.

**Request No. 22:**

All documents setting forth estimates of market share for manufacturers of

Programmable Slow Cookers, including any internal estimates,

estimates in trade or other press, estimates by any market research entity or the like, and all

documents supporting such estimates.

**Request No. 23:**

All documents relating to current, former, or potential competitors of West Bend for the manufacture and sale of Programmable Slow Cookers.

**Request No. 24:**

Documents sufficient to show the amount, schedule, and structure of royalties offered, proposed, negotiated, paid by, or to, West Bend under any agreement to take, or grant, a license under any patent relating to Programmable Slow Cookers.

**Request No. 25:**

Documents sufficient to show the amount, schedule, and structure of payments offered, proposed, negotiated, paid by, or to, West Bend under an agreement to receive, or grant, any assigned rights in a patent(s) relating to any slow cookers, including, but not limited to Programmable Slow Cookers.

**Request No. 26:**

All documents, of which West Bend is aware, that constitute, evidence, or refer to the state of the art relevant to the invention claimed by the Holmes patents-in-suit.

**Request No. 27:**

All opinion letters obtained by West Bend regarding the unenforceability, validity and/or infringement of any of the claims of the Holmes patents-in-suit by West Bend's Programmable Slow Cookers.

**Request No. 28:**

Each annual report, 10K submission, financial statement, profit and loss statement, budget, cost analysis profit analysis, and general ledger of West Bend for any years in which West Bend has manufactured, used, sold, offered for sale, imported and/or distributed Programmable Slow Cookers to the present.

**Request No. 29**:

All documents and things referring or relating to the manufacture and sale of West Bend's Programmable Slow Cookers, including but not limited to the identification of the manufacturer of the West Bend Programmable Slow Cookers, manufacturing drawings, modifications, customer complaints, tests, certifications (including but not limited to Underwriters Laboratory) and product returns.

**Request No. 30:**

All documents referring or relating to any evaluations or comparisons of the performance of the West Bend Programmable Slow Cooker with those of competitor products, including but not limited to Holmes' slow cooker products.

**Request No. 31:**

All documents referring or relating to communications between West Bend and the manufacturer of West Bend's Programmable Slow Cookers.

**Request No. 32:**

All documents and things which support or tend to support West Bend's Second Affirmative Defense that it has not infringed, induced infringement of, or contributorily infringed any claim of the Holmes patents-in-suit.

**Request No. 33:**

All documents referring or relating to communications between West Bend and any potential customers and/or customers of West Bend's Programmable Slow Cooker.

**Request No. 34:**

All documents and things which support or tend to support West Bend's Third Affirmative Defense that West Bend has not willfully infringed the Holmes patents-in-suit.

**Request No. 35**

     All documents referred to or relied upon in preparation of West Bend's Answer to Complaint and Counterclaim.

**Request No. 36:**

     All documents relating to communications between Wal-Mart and West Bend with respect to Programmable Slow Cookers.

**Request No. 37:**

     All documents constituting, evidencing or referring to the preparation, filing, and/or prosecution of each application for the West Bend patents-in-suit, including any patents and/or applications related by a claim of priority to the West Bend patents-in-suit.

**Request No. 38:**

     All documents constituting, evidencing, or referring to the preparation, filing, and/or prosecution of each foreign patent or application corresponding to any of the West Bend patents-in-suit.

**Request No. 39:**

     All documents and things referring or relating to the conception of the alleged inventions claimed in the West Bend patents-in-suit.

**Request No. 40:**

     All documents and things referring or relating to each reduction to practice of the alleged inventions claimed in the West Bend patents-in-suit.

**Request No. 41:**

     All documents and things referring or relating to West Bend's design, development, offer for sale, sale, publication and/or public disclosure of an oval-shaped slow cooker.

**Request No. 42:**

      All documents referring or relating to research, design, development and/or testing, including but not limited to laboratory notebooks or log books, dated prior to the effective filing dates of any of the West Bend patents-in-suit relating to any of the alleged inventions in the West Bend patents-in-suit.

**Request No. 43:**

      All documents evidencing or referring to any sales, offers for sale, or consignments for sale or use, prior to the effective date for any of the West Bend patents-in-suit, of the alleged invention claimed by or any equivalent of the alleged invention claimed by the West Bend patents-in-suit.

**Request No. 44:**

      All documents evidencing or referring to any public uses or demonstrations, prior to the effective filing date for any of the West Bend patents-in-suit, of the alleged invention claimed by, or an equivalent of the alleged invention claimed by the West Bend patents-in-suit.

**Request No. 45:**

      All assignments, grants, and license agreements to which West Bend is a party and which relate to the alleged invention claimed by the West Bend patents-in-suit.

**Request No. 46:**

      All documents constituting, evidencing, or referring to enforcement or licensing, or any litigation involving the West Bend patents-in-suit, attempted enforcement or licensing, or contemplated enforcement or licensing of the West Bend patents-in-suit.

**Request No. 47:**

      All documents constituting, evidencing, or referring to any communications and/or contacts between West Bend and Holmes or any third party regarding oval-shaped slow cookers.

**Request No. 48:**

All documents constituting, evidencing, or referring to West Bend's practice of marking any of its products with the number of any of the West Bend patents-in-suit, including but not limited to documents evidencing the date the West Bend products were marked with the number of any of the West Bend patents-in-suit as the term Amarking@ is used in 35 U.S.C. 287.

**Request No. 49:**

All documents constituting, evidencing, or referring to any opinion, critique, or analysis of any products, whether sold by Holmes or a third party, in which West Bend contends such products infringe the West Bend patents-in-suit.

**Request No. 50:**

All documents constituting, evidencing, or referring to any opinion, report, or analysis relating to:

(a)  the validity, invalidity, or scope of any of the claims of the West Bend patents-in-suit or of any foreign patent rights related by a claim of priority;

(b)  the infringement or noninfringement of any of the claims of the West Bend patents-in-suit or of any foreign patent rights related by a claim of priority;

(c)  the enforceability or unenforceability of any of the claims of the West Bend patents-in-suit or of any foreign patent rights related by a claim of priority; and/or

(d)  the use or non-use of the alleged invention claimed by the West Bend patents-in-suit or by any foreign patent rights related by a claim of priority.

- 15 -

**Request No. 51:**

All advertising, marketing, and sales brochures, leaflets, and the like relating to the alleged invention claimed by, or an equivalent of the alleged inventions claimed by, the West Bend patents-in-suit.

**Request No. 52:**

All documents, of which West Bend is aware, that constitute, evidence, or refer to the state of the art relevant to the alleged invention claimed by the West Bend patents-in-suit.

**Request No. 53:**

All documents which constitute, evidence, or refer to prior art relevant to the validity, enforceability, or scope of any of the claims of the West Bend patents-in-suit.

**Request No. 54:**

All opinion letters obtained by West Bend regarding the validity and/or infringement of any of the claims of the West Bend patents-in-suit.

**Request No. 55:**

All communications to or from West Bend which refer or relate, in whole or in part, to Holmes or the accused slow cooker products.

**Request No. 56:**

All documents constituting and/or relating to communications between West Bend and any third party regarding West Bend's claim of infringement of any of the West Bend patents-in-suit by any competitor of West Bend.

**Request No. 57:**

For the time period January 1, 1997 to the present, documents sufficient to show monthly or quarterly historical sales data, in units and dollars, for West Bend=s slow cookers covered by the West Bend patents-in-suit, including financial statements, computer sales records and

summaries, as well as customer invoice summaries broken down, if possible, into the following categories:

        (a)     by customer;

        (b)     by product or model number;

        (c)     by geographic territory (e.g., states, regions, countries); and

        (d)     by distribution channels, if more than one is used (e.g., wholesale, Internet, retail sales).

**Request No. 58:**

All documents referring or relating to the ornamental features and/or points of novelty of the inventions claimed in the West Bend patents-in-suit.

**Request No. 59:**

Each annual report, 10K submission, financial statement, profit and loss statement, budget, cost analysis, profit analysis, and general ledger of West Bend for any years in which West Bend has manufactured, used, sold and/or distributed slow cookers covered by the West Bend patents-in-suit to the present.

**Request No. 60:**

All documents and things relating to, referring to, or involving any sales, revenue, profits or opportunities lost by West Bend because of Holmes= allegedly infringing products.

**Request No. 61:**

All documents and things constituting, evidencing, involving or referring to costs, profits, profit projections, market research or forecasts of the demand for slow cookers.

**Request No. 62**:

One sample of each West Bend slow cooker covered by the West Bend patents-in-suit.

**Request No. 63**:

Documents sufficient to identify the date of first sale and/or public display of a West

Bend slow cooker covered by the West Bend patents-in-suit.

**Request No. 64**:

All documents referring or relating to the ownership of the West Bend patents-in-suit.

**Request No. 65**:

All documents referring or relating to communications between West Bend and Euro-Pro

Operating, LLC regarding slow cookers, the Holmes patents-in-suit, and/or the West Bend

patents-in-suit.

**Request No. 66**:

All documents referred to, relied upon or identified in West Bend's answers to Holmes'

First Set of Interrogatories (Nos. 1-19).

<div style="margin-left:40%">

THE HOLMES GROUP, INC.
By its Attorneys,

</div>

Dated:  January 26, 2006

<div style="margin-left:40%">

/s/Glenn T. Henneberger
Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
CRHDocket@hoffmannbaron.com
Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
GTHDocket@hoffmannbaron.com
HOFFMANN & BARON, LLP
6900 Jericho Turnpike
Syosset, New York  11791-4407
Telephone:  (516) 822-3550
Facsimile:  (516) 822-3582

and

</div>

Nicholas J. Nesgos (BBO No. 553177)
nnesgos@pbl.com
Joseph W. Corrigan (BBO No. 647393)
jcorrigan@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199-8004
Telephone:  (617) 973-6100
Facsimile:  (617) 367-2315

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing HOLMES' FIRST REQUEST TO WEST

BEND HOUSEWARES, L.L.C. FOR PRODUCTION OF DOCUMENTS AND THINGS

(NOS. 1-66) has been served via e-mail only this 26th day of January, 2006 upon the following:

> Erik Paul Belt, Esq.
> Bromberg & Sunstein LLP
> 125 Summer Street
> Boston, MA  02110-1618
> E-Mail:  ebelt@bromsun.com
>
> and
>
> Michael E. Husmann, Esq.
> Joseph T. Miotke
> jtmiotke@michaelbest.com
> Michael Best & Friedrich LLP
> 100 E. Wisconsin Avenue
> Suite 3300
> Milwaukee, Wisconsin  53202-4108
> E-Mail:  MEHusmann@michaelbest.com

> /s/ Glenn T. Henneberger
> Glenn T. Henneberger

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE HOLMES GROUP, INC.,

      Plaintiff,

      v.

WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, L.L.C.,

      Defendants.

Civil Action No. 05-CV-11367 REK
(Alexander, M.J.)

## WEST BEND HOUSEWARES, LLC'S ANSWERS TO HOLMES GROUP, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, West Bend Housewares, LLC ("West Bend"), by and through its attorneys MICHAEL BEST & FRIEDRICH, LLP, hereby answers Plaintiffs the Holmes Group, Inc.'s ("Plaintiffs") First Request for Production of Documents and Things as follows:

Each response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such responses were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are expressly reserved and may be interposed at the time of trial. The responses given herein are without prejudice to West Bend's right to supplement or to revise these responses if further investigation or discovery so indicates.

West Bend's responses shall not be deemed to constitute an admission (i) that any particular information or document(s) exists, is relevant, non-privileged, or admissible in evidence, or (ii) that any statement or characterization in Defendant's interrogatories is accurate

or complete. In addition, willingness to produce documents in response to any particular request is in no way a concession that such documents exist, or that any such documents are within West Bend's possession, custody or control.

## GENERAL OBJECTIONS

A.    West Bend objects generally to these discovery requests to the extent they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and by the Local Rules of this Court.

B.    West Bend objects to these discovery requests to the extent that they seek information which does not appear reasonably calculated to lead to discovery of admissible evidence and, thus, are not within the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure.

C.    West Bend objects to these discovery requests to the extent the requests seek information and documents protected by the attorney-client privilege, the attorney work-product immunity, or any other privilege or immunity.

D.    West Bend objects to these discovery requests to the extent the requests seek information and documents in West Bend's possession, the disclosure of which is subject to or precluded by restrictions of confidentiality imposed by, or pursuant to an agreement with, a third party.

E.    West Bend objects to these discovery requests to the extent that they are unlimited with respect to time. Subject to its other objections, West Bend will respond to each request by producing documents dated or prepared before Plaintiff first filed the complaint in this action, unless otherwise stated.

F.    West Bend will respond to these discovery requests based upon its current understanding of the facts of the case and the investigation it has conducted to date. West Bend specifically reserves the right to revise, correct, supplement or clarify any of these responses at any time during the discovery and trial preparation processes. West Bend objects to these discovery requests to the extent that they are inconsistent with these conditions.

West Bend specifically incorporates each of these General Objections into its specific responses to each of Plaintiff's discovery requests, whether or not each such General Objection is expressly referred to in West Bend's response to a specific discovery request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

### REQUEST NO. 1:

Documents sufficient to identify the corporate structure, officers, and employees with job titles of West Bend, including any parent organizations, divisions, affiliates, subsidiaries or related companies thereto from 1997 to the present.

### RESPONSE TO REQUEST NO. 1:

West Bend objects to this request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. This request seeks the production of documents related to all West Bend personnel, including those of its "parent organizations, divisions, affiliates, subsidiaries or related companies thereto from 1997 to the present." Aside from Focus Products Group, LLC, co-defendant in this case, no other West Bend affiliates have been named in the present action. Defendant has served separate discovery requests upon Focus Product Group, LLC ("Focus"). As a result, this document request to West Bend is beyond the scope of this action. Moreover, even if such entities were named in this action, West Bend would be

unable to produce documents on behalf of such entities. Subject to these and its general objections, West Bend will produce responsive documents.

**REQUEST NO. 2:**

All documents constituting and/or referring or relating, in whole or in part, to the Holmes patents-in-suit.

**RESPONSE TO REQUEST NO. 2:**

West Bend objects to his interrogatory as overly broad, vague, and unduly burdensome. It is not clear what is meant by "constituting and/or referring or relating, in whole or in part, to the Holmes patents-in-suit," as such request arguably could be construed as requesting any document relating in any way to a slow cooker. West Bend further objects to this document request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its general objections, West Bend will produce responsive documents that specifically mention the Holmes patents-in-suit.

**REQUEST NO. 3:**

All documents and things constituting and/or relating to prior art to the Holmes patents-in-suit and the results of any prior art search directed to the Holmes patents-in-suit and/or similar subject matter.

**RESPONSE TO REQUEST NO. 3:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 4:**

All documents and things supporting, refuting and/or relating to West Bend's contention that the Holmes patents-in-suit are invalid, unenforceable and/or not infringed, including any analysis and/or opinions concerning invalidity, unenforceability, or infringement of the Holmes patents-in-suit.

**RESPONSE TO REQUEST NO. 4:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. West Bend further objects to this

request as premature to the extent it calls for any opinions of counsel related to the Holmes

patents-in-suit. Should West Bend later elect to rely upon any opinion of counsel, and to the

extent such opinions exist, West Bend reserves the right to supplement its response to this

request. Subject to these and its General Objections, West Bend will produce responsive

documents.

**REQUEST NO. 5:**

All advertising, marketing and sales documents, including trade literature, catalogs,
product bulletins and advertisements, referring or relating, in whole or in part, to Programmable
Slow Cookers made, sold, imported by and/or otherwise marketed by West Bend.

**RESPONSE TO REQUEST NO. 5:**

Subject to its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 6:**

All documents and things constituting and/or relating to the conception, design,
development and/or manufacture of the Programmable Slow Cookers made, sold, imported by
and/or otherwise marketed by West Bend. Such documents include, but are not limited to
manufacturing specifications, engineering drawings, blueprints, circuit diagrams, engineering
change orders, product specifications, design specifications, work orders, product layouts,
manufacturing records, prototypes, models, memoranda, e-mails and testing and maintenance
documents.

**RESPONSE TO REQUEST NO. 6:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement. Plaintiff defines "Programmable Slow Cooker" as "any

slow cooker including a programmable electronic control, including but not limited to West

Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint."

Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes

patents-in-suit, and to the extent this interrogatory calls for sales information for any model

besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue

burden upon West Bend. As Holmes supplements its discovery responses to identify additional

West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend

will supplement its response accordingly. West Bend further objects to this request as calling for

information protected from discovery by the attorney-client privilege and work-product doctrine.

Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 7:**

All documents and things constituting and/or relating to any West Bend patent or patent
application whether pending, issued, or abandoned relating to Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 7:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege. Subject to these and its General Objections, West Bend will

produce responsive documents.

**REQUEST NO. 8:**

All documents and things constituting and/or referring or relating to Programmable Slow
Cookers made, offered for sale and/or sold by Holmes.

**RESPONSE TO REQUEST NO. 8:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 9:**

All documents referring or relating to the first instance that West Bend became aware of Holmes' Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 9:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 10:**

All communications to or from any of the West Bend's customers and/or third parties which refers or relate, in whole or in part, to Holmes, the Holmes patents-in-suit, and/or any of Holmes' programmable slow cooker products.

**RESPONSE TO REQUEST NO. 10:**

West Bend objects to this request as vague in that it is unclear what is meant by "the West Bend's customers." West Bend will treat this phrase to mean "West Bend's customers." West Bend further objects to this request as vague because it is unclear what is mean by "Holmes' programmable slow cooker products." West Bend further objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents in accordance with West Bend's understanding of this request.

**REQUEST NO. 11:**

All documents constituting and/or relating to communications between West Bend and customers, potential customers or any third parties regarding possible infringement of the Holmes patents-in-suit and/or copying by West Bend of any feature claimed or described in the Holmes patents-in-suit.

**RESPONSE TO REQUEST NO. 11:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 12:**

All documents and things constituting and/or relating to any investigation, examination,
evaluation, test and/or study of Holmes' Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 12:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 13:**

Two (2) samples of each Programmable Slow Cooker made, used, sold, offered for sale,
imported and/or marketed by West Bend in the United States.

**RESPONSE TO REQUEST NO. 13:**

West Bend will produce two samples of each responsive slow cooker.

**REQUEST NO. 14:**

All documents and things relating to West Bend's contention that the Holmes patents-in-
suit are invalid and/or unenforceable for failure to meet the requirements of patentability,
including, but not limited to documents constituting and/or relating or referring to prior art or
failure to meet the requirements of 35 U.S.C. § 112.

**RESPONSE TO REQUEST NO. 14:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 15:**

Documents sufficient to establish by product style, type, model or other designation, West Bend's annual revenues, expenses, gross profit and net profit from the sale of Programmable Slow Cookers, including documents showing: (1) the number of units of each product sold; (2) the number of units of each product in inventory; (3) the sales price for each product; (4) West Bend's gross profit resulting from the sale of each product; and (5) any costs West Bend has deducted or intended to deduct to calculate West Bend's gross profit and net profit for each product. This request seeks available summary documents kept in the ordinary course of business which calculate, set forth, or report the revenues, expenses, gross profit, net profit, or sales of Programmable Slow Cookers such as monthly, quarterly or annual sales reports, profit and loss statements, income sheets, statements of cash flow or balance sheets. This request should not be interpreted to seek records evidencing individual sales transactions, such as invoices, unless summary documents are not available.

**RESPONSE TO REQUEST NO. 15:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather than only those accused of infringement. Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this interrogatory calls for sales information for any model besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes supplements its discovery responses to identify additional West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will supplement its response accordingly. Additionally, West Bends objects to sub-parts (4) and (5) of this request because these sub-parts relate to West Bend's gross profit, net profit, and costs associated with its Model No. 84386. This information is irrelevant to any issue in this case. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 16:**

Documents sufficient to show monthly or quarterly historical sales data, in units and dollars, for West Bend's Programmable Slow Cookers including financial statements, computer sales records and summaries, as well as customer invoice summaries broken down, if possible, into the following categories:

 a. by customer;
 b. by product or model number;
 c.  by distribution channel, if more than one is used (e.g., wholesale, direct Internet, retail sales).

**RESPONSE TO REQUEST NO. 16:** ·

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement.  Plaintiff defines "Programmable Slow Cooker" as "any

slow cooker including a programmable electronic control, including but not limited to West

Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint."

Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes

patents-in-suit, and to the extent this interrogatory calls for sales information for any model

besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue

burden upon West Bend.  As Holmes supplements its discovery responses to identify additional

West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend

will supplement its response accordingly.  Subject to these and its General Objections, West

Bend will produce responsive documents.

**REQUEST NO. 17:**

Historical financial statements including income statements, balance sheets, statements of cash flow, and profit and loss statements for West Bend for the period January 1, 1997 to present broken down, if possible, into the following categories:

 a. total company;
 b. division which sells programmable slow cooker products;
 c. division which sells slow cookers covered by the West Bend patents-in-suit; and
 d. slow cooker product line.

-10-

**RESPONSE TO REQUEST NO. 17:**

West Bend objects to this request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. West Bend's historical financial statements from January 1, 1997 to present are not relevant to any issue in this case, nor is such information "reasonably calculated to lead to the discovery of admissible evidence." West Bend will not produce documents responsive to this irrelevant request.

**REQUEST NO. 18:**

All analyses and breakdowns of fixed and variable expenses for West Bend's Programmable Slow Cookers including, without limitation, documents sufficient to identify the methodology used in such analyses and any documentation of expenses classified as fixed or variable by West Bend for the manufacture and sale of Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 18:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather than only those accused of infringement. Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this interrogatory calls for sales information for any model besides the 84386, this information is irrelevant to any issue in this case, not "reasonably calculated to lead to the discovery of admissible evidence," and constitutes an undue burden upon West Bend. As Holmes supplements its discovery responses to identify additional West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will supplement its response accordingly. West Bend further objects to this request as irrelevant, as

-11-

West Bends "fixed and variable" expenses is vague and unclear and West Bend's expenses

associated with its Model No. 84386 slow cooker is irrelevant to any issue in this case. West

Bend will not produce responsive documents to this irrelevant request.


**REQUEST NO. 19:**

Documents sufficient to show all costs and expenses incurred by West Bend in
connection with the manufacture and sale of Programmable Slow Cookers including, but not
limited to, the following:
   a.    cost of manufacture or purchase of product;
   b.    marketing and advertising expense;
   c.    general and administrative expense; and
   d.    sales expense.

**RESPONSE TO REQUEST NO. 19:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement. Plaintiff defines "Programmable Slow Cooker" as "any

slow cooker including a programmable electronic control, including but not limited to West

Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint."

Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes

patents-in-suit, and to the extent this interrogatory calls for sales information for any model

besides the 84386, this information is irrelevant to any issue in this case, not "reasonably

calculated to lead to the discovery of admissible evidence, " and constitutes an undue burden

upon West Bend. As Holmes supplements its discovery responses to identify additional West

Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will

supplement its response accordingly. West Bend further objects to this request as irrelevant

because West Bend's costs and expenses associated with its Model No. 84386 slow cooker are

irrelevant to any issue in this case. West Bend will not produce responsive documents to this irrelevant request.

**REQUEST NO. 20:**

All price agreements, correspondence and other documents reflecting, referring or relating to price competition between the Programmable Slow Cookers of West Bend and any competitor selling Programmable Slow Cookers, including, but not limited to Holmes.

**RESPONSE TO REQUEST NO. 20:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather than only those accused of infringement. Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this interrogatory calls for sales information for any model besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes supplements its discovery responses to identify additional West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will supplement its response accordingly. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 21:**

Documents sufficient to show West Bend's price setting, changes in pricing, price competition, pricing policies, or rebate programs for Programmable Slow Cookers, including, but not limited to, price lists, explanations or justification for any price change, and intercompany communications and customer communications.

**RESPONSE TO REQUEST NO. 21:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement. Plaintiff defines "Programmable Slow Cooker" as "any

slow cooker including a programmable electronic control, including but not limited to West

Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint."

Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes

patents-in-suit, and to the extent this interrogatory calls for sales information for any model

besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue

burden upon West Bend. As Holmes supplements its discovery responses to identify additional

West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend

will supplement its response accordingly. Subject to these and its General Objections, West

Bend will produce responsive documents.

**REQUEST NO. 22:**

All documents setting forth estimates of market share for manufacturers of
Programmable Slow Cookers, including any internal estimates, estimates in trade or other press,
estimates by any market research entity or the like, and all documents supporting such estimates.

**RESPONSE TO REQUEST NO. 22:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement or identified as covered by the Holmes patents-in-suit.

Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable

electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery

Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product

-14-

besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this

interrogatory calls for sales information for any model besides the 84386, this information is

irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes

supplements its discovery responses to identify additional West Bend slow cookers, if any, that it

believes infringe the Holmes patents in suit, West Bend will supplement its response

accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers

covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend

will produce responsive documents.

**REQUEST NO. 23:**

All documents relating to current, former, or potential competitors of West Bend for the
manufacture and sale of Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 23:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement or identified as covered by the Holmes patents-in-suit.

Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable

electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery

Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product

besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this

interrogatory calls for sales information for any model besides the 84386, this information is

irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes

supplements its discovery responses to identify additional West Bend slow cookers, if any, that it

believes infringe the Holmes patents in suit, West Bend will supplement its response

accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers

covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 24:**

Documents sufficient to show the amount, schedule, and structure of royalties offered, proposed, negotiated, paid by, or to, West Bend under any agreement to take, or grant, a license under any patent relating to Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 24:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement or identified as covered by the Holmes patents-in-suit.

Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable

electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery

Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product

besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this

interrogatory calls for sales information for any model besides the 84386, this information is

irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes

supplements its discovery responses to identify additional West Bend slow cookers, if any, that it

believes infringe the Holmes patents in suit, West Bend will supplement its response

accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers

covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend

will produce responsive documents.

**REQUEST NO. 25:**

Documents sufficient to show the amount, schedule, and structure of payments offered, proposed, negotiated, paid by, or to, West Bend under an agreement to receive, or grant, any assigned rights in a patent(s) relating to any slow cookers, including, but not limited to Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 25:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather than only those accused of infringement or identified as covered by the Holmes patents-in-suit. Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this interrogatory calls for sales information for any model besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes supplements its discovery responses to identify additional West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will supplement its response accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 26:**

All documents, of which West Bend is aware, that constitute, evidence, or refer to the state of the art relevant to the invention claimed by the Holmes patents-in-suit.

**RESPONSE TO REQUEST NO. 26:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

-17-

**REQUEST NO. 27:**

All opinion letters obtained by West Bend regarding the unenforceability, validity and/or infringement of any of the claims of the Holmes patents-in-suit by West Bend's Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 27:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine.  West Bend further objects to this

request as premature to the extent it calls for any opinions of counsel related to the Holmes

patents-in-suit.  Should West Bend later elect to rely upon any opinion of counsel, and to the

extent such opinions exist, West Bend reserves the right to supplement its response to this

request.  Subject to these and its General Objections, West Bend will produce responsive

documents.

**REQUEST NO. 28:**

Each annual report, 10K submission, financial statement, profit and loss statement, budget, cost analysis profit analysis, and general ledger of West Bend for any years in which West Bend has manufactured, used, sold, offered for sale, imported and/or distributed Programmable Slow Cookers to the present.

**RESPONSE TO REQUEST NO. 28:**

West Bend objects to this request as irrelevant and unduly burdensome.  West Bend's

financial status is irrelevant to any issue is this case and is not , not "reasonably calculated to

lead to the discovery of admissible evidence."  West Bend will not produce any responsive

documents.

**REQUEST NO. 29:**

All documents and things referring or relating to the manufacture and sale of West Bend's Programmable Slow Cookers, including but not limited to the identification of the manufacturer of the West Bend Programmable Slow Cookers, manufacturing drawings, modifications, customer complaints, tests, certifications (including but not limited to Underwriters Laboratory) and product returns.

**RESPONSE TO REQUEST NO. 29:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather than only those accused of infringement or identified as covered by the Holmes patents-in-suit. Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this interrogatory calls for sales information for any model besides the 84386, this information is irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes supplements its discovery responses to identify additional West Bend slow cookers, if any, that it believes infringe the Holmes patents in suit, West Bend will supplement its response accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 30:**

All documents referring or relating to any evaluations or comparisons of the performance of the West Bend Programmable Slow Cooker with those of competitor products, including but not limited to Holmes' slow cooker products.

**RESPONSE TO REQUEST NO. 30:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather than only those accused of infringement or identified as covered by the Holmes patents-in-suit. Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable

-19-

electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery

Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product

besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this

interrogatory calls for sales information for any model besides the 84386, this information is

irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes

supplements its discovery responses to identify additional West Bend slow cookers, if any, that it

believes infringe the Holmes patents in suit, West Bend will supplement its response

accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers

covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend

will produce responsive documents.

**REQUEST NO. 31:**

All documents referring or relating to communications between West Bend and the
manufacturer of West Bend's Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 31:**

West Bend objects to this interrogatory as overly broad and unduly burdensome in that it

seeks information related to all "Programmable Slow Cookers" (as defined by Plaintiff) rather

than only those accused of infringement or identified as covered by the Holmes patents-in-suit.

Plaintiff defines "Programmable Slow Cooker" as "any slow cooker including a programmable

electronic control, including but not limited to West Bend's '6-Quart Electronic Crockery

Cooker,' Model No. 84386 identified in the Complaint." Plaintiff has not accused any product

besides Model No. 84386 of infringing any of the Holmes patents-in-suit, and to the extent this

interrogatory calls for sales information for any model besides the 84386, this information is

irrelevant to any issue in this case and constitutes an undue burden upon West Bend. As Holmes

supplements its discovery responses to identify additional West Bend slow cookers, if any, that it

believes infringe the Holmes patents in suit, West Bend will supplement its response

accordingly. In addition, Holmes has not yet specifically identified the Holmes' slow cookers

covered by the Holmes' patents-in-suit. Subject to these and its General Objections, West Bend

will produce responsive documents.

**REQUEST NO. 32:**

All documents and things which support or tend to support West Bend's Second
Affirmative Defense that it has not infringed, induced infringement of, or contributorily infringed
any claim of the Holmes patents-in-suit.

**RESPONSE TO REQUEST NO. 32:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 33:**

All documents referring or relating to communications between West Bend and any
potential customers and/or customers of West Bend's Programmable Slow Cooker.

**RESPONSE TO REQUEST NO. 33:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 34:**

All documents and things which support or tend to support West Bend's Third
Affirmative Defense that West Bend has not willfully infringed the Holmes patents-in-suit.

**RESPONSE TO REQUEST NO. 34:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 35:**

All documents referred to or relied upon in preparation of West Bend's Answer to Complaint and Counterclaim.

**RESPONSE TO REQUEST NO. 35:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 36:**

All documents relating to communications between Wal-Mart and West Bend with respect to Programmable Slow Cookers.

**RESPONSE TO REQUEST NO. 36:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 37:**

All documents constituting, evidencing or referring to the preparation, filing, and/or prosecution of each application for the West Bend patents-in-suit, including any patents and/or applications related by a claim of priority to the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 37:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 38:**

All documents constituting, evidencing, or referring to the preparation, filing, and/or
prosecution of each foreign patent or application corresponding to any of the West Bend patents-
in-suit.

**RESPONSE TO REQUEST NO. 38:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 39:**

All documents and things referring or relating to the conception of the alleged inventions
claimed in the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 39:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 40:**

All documents and things referring or relating to each reduction to practice of the alleged
inventions claimed in the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 40:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 41:**

All documents and things referring or relating to West Bend's design, development, offer for sale, sale, publication and/or public disclosure of an oval-shaped slow cooker.

**RESPONSE TO REQUEST NO. 41:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. West Bend further objects to this request as overly broad, irrelevant, and, not "reasonably calculated to lead to the discovery of admissible evidence." West Bend will not produce responsive documents.

**REQUEST NO. 42:**

All documents referring or relating to research, design, development and/or testing, including but not limited to laboratory notebooks or log books, dated prior to the effective filing dates of any of the West Bend patents-in-suit relating to any of the alleged inventions in the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 42:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 43:**

All documents evidencing or referring to any sales, offers for sale, or consignments for sale or use, prior to the effective date for any of the West Bend patents-in-suit, of the alleged invention claimed by, or any equivalent of the alleged invention claimed by the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 43:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 44:**

All documents evidencing or referring to any public uses or demonstrations, prior to the effective filing date for any of the West Bend patents-in-suit, of the alleged invention claimed by, or an equivalent of the alleged invention claimed by the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 44:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. West Bend further objects to this request as vague because it is unclear what is meant by "an equivalent of the alleged invention claimed by the West Bend patents-in-suit." Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 45:**

All assignments, grants, and license agreements to which West Bend is a party and which relate to the alleged invention claimed by the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 45:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 46:**

All documents constituting, evidencing, or referring to enforcement or licensing or any litigation involving the West Bend patents-in-suit, attempted enforcement or licensing, or contemplated enforcement or licensing of the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 46:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine.  Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 47:**

All documents constituting, evidencing, or referring to any communications and/or
contacts between West Bend and Holmes or any third party regarding oval-shaped slow cookers.

**RESPONSE TO REQUEST NO. 47:**

West Bend objects to this interrogatory as overly broad and unduly burdensome because

it is not limited to any specific dates and relates to all "oval-shaped slow cookers" regardless of

the manufacturer of such slow cooker.  The breadth of this request could be construed to require

documents going back several decades, and without further specificity regarding the scope of this

request, West Bend is unable to offer any meaningfully response.  West Bend further objects to

this request as irrelevant and not "reasonably calculated to lead to the discovery of admissible

evidence."As a result, West Bend will not produce responsive documents.

**REQUEST NO. 48:**

All documents constituting, evidencing, or referring to West Bend's practice of marking
any of its products with the number of any of the West Bend patents-in-suit, including but not
limited to documents evidencing the date the West Bend products were marked with the number
of any of the West Bend patents-in-suit as the term "marking" is used in 35 U.S.C. 287.

**RESPONSE TO REQUEST NO. 48:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine.  Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 49:**

All documents constituting, evidencing, or referring to any opinion, critique, or analysis of any products, whether sold by Holmes or a third party, in which West Bend contends such products infringe the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 49:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine.  Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 50:**

All documents constituting, evidencing, or referring to any opinion, report, or analysis relating to:
- (a)    the validity, invalidity, or scope of any of the claims of the West Bend patents-in-suit or of any foreign patent rights related by a claim of priority;
- (b)    the infringement or Noninfringement of any of the claims of the West Bend patents-in-suit or of any foreign patent rights related by a claim of priority;
- (c)    the enforceability or unenforceability of any of the claims of the West Bend patents-in-suit or of any foreign patent rights related by a claim of priority; and/or
- (d)    the use or non-use of the alleged invention claimed by the West Bend patents-in-suit or by any foreign patent rights related by a claim of priority.

**RESPONSE TO REQUEST NO. 50:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine.  Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 51:**

All advertising, marketing, and sales brochures, leaflets, and the like relating to the alleged invention claimed by, or an equivalent of the alleged inventions claimed by, the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 51:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. West Bend further objects to this request

as vague because it is unclear what is meant by the phrase "equivalent of the alleged inventions claimed by, the West Bend patents-in-suit." Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 52:**

All documents, of which West Bend is aware, that constitute, evidence, or refer to the state of the art relevant to the alleged invention claimed by the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 52:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 53:**

All documents which constitute, evidence, or refer to prior art relevant to the validity, enforceability, or scope of any of the claims of the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 53:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 54:**

All opinion letters obtained by West Bend regarding the validity and/or infringement of any of the claims of the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 54:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. West Bend will not produce responsive documents.

**REQUEST NO. 55:**

All communications to or from West Bend which refer or relate, in whole or in part, to Holmes or the accused slow cooker products.

**RESPONSE TO REQUEST NO. 55:**

West Bend objects to this request as vague and unduly burdensome. It is not clear what is meant by "the accused slow cooker products." In addition, this request seeks all communications related to Holmes, regardless of their relation to any of allegations of the present action. West Bend further objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. West Bend will not produce responsive documents.

**REQUEST NO. 56:**

All documents constituting and/or relating to communications between West Bend and any third party regarding West Bend's claim of infringement of any of the West Bend patents-in-suit by any competitor of West Bend.

**RESPONSE TO REQUEST NO. 56:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 57:**

For the time period January 1, 1997 to the present, documents sufficient to show monthly or quarterly historical sales data, in units and dollars, for West Bend's slow cookers covered by the West Bend patents-in-suit, including financial statements, computer sales records and summaries, as well as customer invoice summaries broken down, if possible, into the following categories:

      (a)     by customer;
      (b)     by product or model number;
      (c)     by geographic territory (e.g., states, regions, countries); and
      (d)     by distribution channels, if more than one is used (e.g., wholesale, Internet, retail sales).

**RESPONSE TO REQUEST NO. 57:**

West Bend objects to this request as unduly burdensome and irrelevant to any issue in

this case.  35 U.S.C. § 289 provides for the recovery of the accused infringer's lost profits, not

the lost profits of the design patentee.  As a result, information related to West Bend's sales of

products covered by the West Bend patents-in-suit is not relevant nor "reasonably calculated to

lead to the discovery of admissible evidence."  As a result, West Bend will not produce

responsive documents.

**REQUEST NO. 58:**

All documents referring or relating to the ornamental features and/or points of novelty of
the inventions claimed in the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 58:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine.  Subject to these and its General

Objections, West Bend will produce responsive documents.

**REQUEST NO. 59:**

Each annual report, 10K submission, financial statement, profit and loss statement,
budget, cost analysis, profit analysis, and general ledger of West Bend for any years in which
West Bend has manufactured, used, sold and/or distributed slow cookers covered by the West
Bend patents-in-suit to the present.

**RESPONSE TO REQUEST NO. 59:**

West Bend objects to this interrogatory as unduly burdensome and not "reasonably

calculated to lead to the discovery of admissible evidence."  West Bend will not produce

responsive documents.

**REQUEST NO. 60:**

All documents and things relating to, referring to, or involving any sales, revenue, profits
or opportunities lost by West Bend because of Holmes' allegedly infringing products.

-30-

**RESPONSE TO REQUEST NO. 60:**

West Bend objects to this request as unduly burdensome and irrelevant to any issue in this case. 35 U.S.C. § 289 provides for the recovery of the accused infringer's lost profits, not the lost profits of the design patentee. As a result, information related to West Bend's sales of products covered by the West Bend patents-in-suit is not relevant nor "reasonably calculated to lead to the discovery of admissible evidence." As a result, West Bend will not produce responsive documents.

**REQUEST NO. 61:**

All documents and things constituting, evidencing, involving or referring to costs, profits, profit projections, market research or forecasts of the demand for slow cookers.

**RESPONSE TO REQUEST NO. 61:**

West Bend objects to this request as unduly burdensome and irrelevant to any issue in this case. 35 U.S.C. § 289 provides for the recovery of the accused infringer's lost profits, not the lost profits of the design patentee. As a result, information related to West Bend's sales of products covered by the West Bend patents-in-suit is not relevant nor "reasonably calculated to lead to the discovery of admissible evidence." As a result, West Bend will not produce responsive documents.

**REQUEST NO. 62:**

One sample of each West Bend slow cooker covered by the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 62:**

West Bend will produce responsive samples.

**REQUEST NO. 63:**

Documents sufficient to identify the date of first sale and/or public display of a West Bend slow cooker covered by the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 63:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 64:**

All documents referring or relating to the ownership of the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 64:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege and work-product doctrine. Subject to these and its General Objections, West Bend will produce responsive documents.

**REQUEST NO. 65:**

All documents referring or relating to communications between West Bend and Euro-Pro Operating L.L.C. regarding slow cookers, the Holmes patents-in-suit and/or the West Bend patents-in-suit.

**RESPONSE TO REQUEST NO. 65:**

West Bend objects to this request as calling for information protected from discovery by the attorney-client privilege, work-product doctrine, and joint defense privilege. West Bend will not produce responsive documents.

**REQUEST NO. 66:**

All documents referred to, relied upon or identified in West Bend's answers to Holmes' First Set of Interrogatories (Nos. 1-19).

**RESPONSE TO REQUEST NO. 66:**

West Bend objects to this request as calling for information protected from discovery by

the attorney-client privilege and work-product doctrine. Subject to these and its General

Objections, West Bend will produce responsive documents.


Dated: March 31, 2006                    By: Joseph T. Miotke _____

                                         Charles A. Laff
                                         Martin L. Stern
                                         MICHAEL BEST & FRIEDRICH LLP
                                         401 N. Michigan Ave. – Ste. 1900
                                         Chicago, Illinois 60611
                                         Tel: (312) 222-0800
                                         Facsimile: (312) 222-0818
                                         calaff@michaelbest.com

                                         Michael E. Husmann
                                         Joseph T. Miotke
                                         MICHAEL BEST & FRIEDRICH LLP
                                         100 E. Wisconsin Ave.
                                         Milwaukee, Wisconsin 53202
                                         Tel.: (414) 271-6550
                                         Facsimile: (414) 277-0656
                                         mehusmann@michaelbest.com

# EXHIBIT D

# HOFFMANN & BARON, LLP

ATTORNEYS AT LAW

6900 JERICHO TURNPIKE

SYOSSET, NEW YORK 11791

(516) 822-3550

FACSIMILE: (516) 822-3582

www.hoffmannbaron.com

CHARLES R. HOFFMANN
RONALD J. BARON
DANIEL A. SCOLA, JR. *
SALVATORE J. ABBRUZZESSE *
ALAN M. SACK

IRVING N. FEIT
R. GLENN SCHROEDER
GLENN T. HENNEBERGER
ANTHONY E. BENNETT *
LUDOMIR A. BUDZYN

STEVEN T. ZUSCHLAG†

JOHN S. SOPKO† *

SUSAN A. SIPOS
KEVIN E. MCDERMOTT
RODERICK S.W. TURNER
ANNA-LISA GALLO
JAMES F. HARRINGTON
STEPHEN CANNAVALE *
JAMIE M. LARMANN *

ANDREA M. WILKOVICH *
BARTHOLOMEW J. DIVITA
TONY A. GAYOSO
D.W. DARREN KANG *
NICHOLE E. MARTIAK
LAUREN T. EMR
LINDA D. CHIN

PATENT AGENTS

GLORIA K. SZAKIEL, PH.D.
EDNA I. GERGEL, PH.D.

ANNA C. CHAU
ANDREW H. BERKS, PH.D.

NEW JERSEY OFFICE
1055 PARSIPPANY BLVD.
PARSIPPANY, N.J. 07054-1272
(973) 331-1700
FAX (973) 331-1717

COUNSEL
GORDON F. BELCHER

SCIENTIFIC ADVISOR
DANIEL A. SCOLA, SR., PH.D.

* NOT ADMITTED IN N.Y.
† SENIOR ATTORNEY

December 8, 2006
**VIA E-MAIL ONLY**

Joseph T. Miotke, Esq.
Michael Best & Friedrich LLP
100 E. Wisconsin Avenue
Suite 3300
Milwaukee, Wisconsin 53202-4108

Re:    *The Holmes Group v. West Bend Housewares, et al.*
       Civil Case No.: 1:05-CV-11367-WGY

Dear Mr. Miotke:

We are disappointed by West Bend's selective production of documents in this case. West Bend's actions are the most egregious example of vexatious discovery tactics. As you are well aware, Holmes Group has repeatedly requested the production of documents relating to the development of the accused programmable slow-cookers. However, in light of Mr. Carpenter's declaration in support of West Bend's Summary Judgment Motion of Non-Willfulness, as well as the recent deposition testimony by Mr. Shabino and Mr. Sarauer earlier this week, it is clear that West Bend Housewares and/or Focus Products Group has not complied with their discovery obligations.

Mr. Carpenter's declaration alleges that "West Bend began working with a Chinese Company named 'OEM' as early as 2002 to develop the product which Holmes now alleges infringes its patents." However, virtually no documents dated earlier than April 13, 2004 have been produced demonstrating communications or transactions between West Bend and OEM to support this contention. By contrast, numerous documents showing activities between 1998 and 2001 appear to have been readily available and were provided by West Bend.

Joseph T. Miotke, Esq.
December 8, 2006
Page 2 _____

Likewise, Mr. Sarauer has made similar statements during his deposition claiming ignorance of earlier communications with OEM and its principal, Mr. MacKay during the development of the accused programmable slow-cookers.  Thus, in spite of West Bend's recently filed motion for summary judgment of non-willfulness, they have intentional withheld the very documents showing development of the accused product and evidencing the activities that would demonstrate their willful behavior.  In so doing, by hiding responsive documents that are clearly within Holmes' outstanding document requests, West Bend has acted in the most willful and culpable manner.

During the depositions of Mr. Shabino and Mr. Sarauer, we had made several requests and you asked us to identify the requested documents in writing.  Accordingly, we demand immediate production of the following items:

- Documents, including communications with third parties, relating to the development of the accused West Bend programmable slow cookers.  In particular, all documents between West Bend and OEM from the year 2002 which reflect the alleged collaborative effort to develop the accused products, including but not limited to any Purchase Orders relating to the accused products (*see Shabino Deposition pp. 40-41* and *Sarauer Deposition pp 29-31*).

- Copies of any confidentiality agreements entered into between West Bend and any third party relating to the accused West Bend products.  In particular, any agreements between West Bend and YFL USA (*see Shabino Deposition p. 63*).

- An unredacted copy of West Bend document numbers:

  ➢ WB 000110 (*see Shabino Deposition pp. 78-80*)

  ➢ WB 002654 (*see Shabino Deposition p. 115*),

  ➢ WB 002660-2661 (see *Shabino* Deposition p. 112) and

  ➢ WB 002728-2729 (*see Shabino Deposition pp. 87-88*).

- A copy the 2004 version of the document referred to as the West Bend 2005 Objectives (document number WB 002073 - WB 002119) (*see Shabino Deposition p. 96*).

- A copy of any notes taken at the meeting that took place on September 9, 2005 between representatives of Walmart and West Bend (*see Shabino Deposition pp. 104-105*).

- A copy of the West Bend meeting agenda referred to in West Bend document no. WB 002712 (*see Shabino Deposition pp. 111-112*).

- A copy of the declaration referred to in West Bend document no. WB 002624-25 (*see Shabino Deposition pp. 120-121*).

- A West Bend report similar to that contained in West Bend document no. WB 004599, but broken down by month from 2004 to present (*see Shabino Deposition pp.156-157*).

Joseph T. Miotke, Esq.
December 8, 2006
Page 3 _____

- An updated West Bend report similar to that contained in West Bend document no. WB 004008-4009, but broken down by month (*see Shabino Deposition pp. 126-127*).

- The name of the photographer that took the picture contained in West Bend document no. WB 000080, and copies of any agreements between West Bend and that photographer (*see Shabino Deposition pp.136-137*).

In view of the deadlines for responding to the pending summary judgment motions and the upcoming close of discovery, we once again request that West Bend comply with its discovery obligations and respond to Holmes' discovery requests. If we do not receive the required documentation by Wednesday, *December 13, 2006*, we will seek immediate relief from the Court.

If you have any questions, please do not hesitate to call me.

Sincerely,

/s/ *Alan M. Sack*

AMS:tt
230259_1

# EXHIBIT E

**(Original Attachments - To Be
Filed Under Seal)**



**Michael Best & Friedrich LLP**
**Attorneys at Law**
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Phone 414.271.6560
Fax 414.277.0656

**Joseph T. Miotke**
Direct 414.225.4976
Email jtmiotke@michaelbest.com

December 11, 2006

**VIA E-MAIL**

Alan M. Sack, Esq.
HOFFMAN & BARON, LLP
6900 Jericho Turnpike
Syosset, NY 11791-4407

Re:   The Holmes Group, Inc. v. West Bend Housewares, LLC
      and Focus Products Group, LLC
      Civil Action No. 05-CV-11367 WGY

Dear Alan:

This letter responds to your letter dated December 8, 2006.

Your characterization of West Bend's document productions as "selective" is without basis.
West Bend has and continues to be fully responsive to Holmes' document requests. West Bend
cannot produce documents that it does not have. Your personal attacks are unsupported and
insulting.

We do not agree to postpone the depositions of the three Defendant employees, Richard Day,
Kathi Benson, and Jeff Wellek. As we stated in our earlier letter, we have accommodated your
schedule in scheduling these depositions twice. To ask to do so for a third time without any
justifiable basis is unreasonable. They will be available for deposition this week as noticed.

We are in the process of reviewing your December 8th letter regarding your claim of missing
documents and are again discussing the matter with our client. West Bend has no additional
documents concerning the development of the accused product. We have located some
purchase orders between West Bend and OEM for the product after completion of the design
efforts and the confidentiality agreement with OEM. Copies are attached and Bates numbered
WB004600-4608. We will continue to search for additional such purchase orders and will
produce them if they are found.

In regard to your specific requests for West Bend's 2004 objectives, notes and agenda of the
Wal-Mart meeting and declaration, these documents, if they existed, would have been gathered
and produced in our earlier searches. We believe that these documents have already been
produced or no longer exist.

We do not understand why Holmes now needs West Bend's sales information broken down on
a monthly basis. Your expert did not need this information to prepare the report. This new



Alan M. Sack, Esq.
December 11, 2006
Page 2

request seems to be unnecessary. If you can explain why it is needed we will consider your new request. Similarly, the update that you are requested seems unnecessary at this time. If you can explain your need we will consider your request.

West Bend has no documents identifying the photographer referenced in your letter.

Sincerely,

Michael Best & Friedrich LLP

Joseph T. Miotke

# EXHIBIT G

James Gary Shabino                         December 5, 2006
        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 24

1    piece and also the Ham Beach piece that was

2    in the marketplace.

3        Q.     Do you remember when the Ham Beach

4    piece came into the marketplace?

5        A.     I don't recall the exact date.  I

6    know it was in the Chef's Catalog prior to

7    the introduction of our unit.

8        Q.     All right.  Were you aware of the

9    Rival -- the Rival programmable slow cooker

10   prior to the introduction of the Ham Beach

11   product?

12       A.     I don't know who came first.

13       Q.     Do you recall when West Bend

14   decided to make a programmable slow cooker?

15       A.     Sometime -- I don't know the exact

16   date because I don't have the documentation

17   that we've searched for.  It would have been

18   sometime during the calendar year of '04.

19       Q.     That's the first time you became

20   aware of it?

21       A.     Yes.

22       Q.     Did counsel ask you to search for

23   documents on other programmable slow cooker

24   products?

25       A.     Yes.  Yes.

James Gary Shabino                                    December 5, 2006
      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

                                                        Page 25

 1              MR. MIOTKE:  I'm going to jump in

 2      just to the extent -- to the extent that

 3      involves attorney-client privileged

 4      communications, I'll instruct you not to

 5      answer.

 6          BY MR. SACK:

 7          Q.      Did you look for documents with

 8      regard to the slow cook -- the programmable

 9      slow cooker product -- project and turn them

10      over to counsel for production?

11          A.      Yes.

12          Q.      Did you turn over all of your --

13      all of your documents to counsel on that

14      product?

15          A.      Absolutely.

16          Q.      From the earliest one on?

17          A.      Correct.

18          Q.      Did you turn over any documents in

19      2002, the date of 2002?

20          A.      I don't recall the dates, but we

21      extensively searched and turned over all

22      documentation that we had on the electronic

23      Crockery cooker.

24          Q.      From your earliest ones on?

25          A.      Correct.

James Gary Shabino                    December 5, 2006
        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 26

1      Q.      What type of documents did you
2   have -- did you have?
3      A.      I don't recall everything that we
4   turned over.  I do recall turning over notes
5   from the meeting we had at Wal-Mart.
6      Q.      Did you have electronic documents?
7      A.      No.
8      Q.      You didn't have any e-mails?
9      A.      I don't recall.
10     Q.      Did you have paper copies that you
11  kept in your files?  Is that what you gave
12  to your attorneys?
13     A.      The only thing I had were note
14  meetings.
15     Q.      Note meetings.  Did you search
16  your computer?
17     A.      Yes.
18     Q.      Did you search your e-mails?
19     A.      Yes.
20     Q.      Yourself?
21     A.      Pardon?
22     Q.      Did you personally search it or
23  did you have somebody who --
24     A.      I personally searched my records.
25     Q.      Did you have somebody who was

James Gary Shabino                              December 5, 2006
          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 27

1    familiar with computer infrastructure and
2    searching search your records also?
3         A.      I did not.
4         Q.      Did you have interaction with OEM
5    or Mr. Mackay in the development of the
6    electronic slow cooker?
7         A.      Not the development of the
8    electronics.
9         Q.      What interaction did you have with
10   them?
11        A.      The only interaction I had was
12   seeing the renderings of the cosmetic look of
13   the unit.
14        Q.      What communications did you have
15   with Mr. Mackay or OEM?
16        A.      I was probably copied on e-mails
17   from Hugh.  I don't recall the exact
18   communication.  I don't recall any direct
19   correspondence that I had to Hugh --
20        Q.      Did you speak --
21        A.      -- on the subject.
22        Q.      I'm sorry, I didn't mean to
23   interrupt you.  Did you speak to him?
24        A.      Yes.
25        Q.      What did you speak to him about?

James Gary Shabino                    December 5, 2006
       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

                                              Page 55

1          Q.      And why?

2          A.      I don't remember all of the

3     details.  I believe it centered around the

4     positioning of the microprocessor in our unit.

5          Q.      Have you spoke to anybody about

6     that before?

7          A.      There may have been conversations.

8          Q.      With whom?

9          A.      I don't honestly recall.  Probably

10    someone in our R&D area.

11         Q.      And do you know who at R&D?

12         A.      I would assume it would be Howard.

13         Q.      Howard Kaney?

14         A.      Uh-huh.

15         Q.      And do you recall what he said to

16    you?

17         A.      I don't remember the exact words.

18    I think the feeling is that we have a

19    different product.

20         Q.      Okay.  Now, you were copied on

21    these communications. Why were you copied on

22    these communications?

23         A.      The communication from Hugh?

24         Q.      Yes.

25         A.      Or other documents?

a765f1dd-5ea3-4026-814e-4e9ad93833c9

Page 56

1       Q.      No, the communication from Hugh.

2    There's two communications here.

3       A.      Because at the time I had a very

4    strong working relationship with Hugh in

5    general, not specifically to this item.

6       Q.      But you weren't copied on any of

7    the previous development of this electronic

8    slow cooker project beforehand, before this

9    e-mail?

10      A.      I've turned over all the

11   documentation that -- that I could find.  I

12   -- I don't believe I was.

13      Q.      So he just started out of the blue

14   just copying you on this one?

15      A.      I don't recall the exact

16   circumstances, but Hugh and I have been

17   friends for many years and we talk about a

18   lot of different subjects.

19      Q.      Well, you didn't answer me, though.

20   Did -- did he copy you on the project

21   before?

22      A.      He may have.

23      Q.      And where would these

24   communications be?

25      A.      I'm not sure.

a765f1dd-5ea3-4026-814e-4e9ad93833c9

James Gary Shabino                          December 5, 2006
       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 57

1          Q.      Would they be on your computer?

2          A.      Everything that was in my computer,

3     everything that was in my file was turned

4     over to counsel.

5          Q.      Do you still have that computer?

6          A.      Yes.  Well, back up -- back up a

7     minute.  I probably don't have the computer

8     and you should be aware of due to ownership

9     changes, we -- we went from different

10    computer systems.  I mean we have been part

11    of Focus Products Group since 2003.  Prior to

12    that it was Regal Ware and all of the

13    documentation stayed with us so --

14         Q.      Did you have backups at that time?

15         A.      I don't honestly know.

16         Q.      Backup to e-mails and other things

17    in your computer?

18         A.      Yeah, I don't know if --

19         Q.      Okay.  Let's go on to --

20                 MR. MIOTKE:  And if we could take

21    a break now, we've been going for over an

22    hour.  Now is a good time?

23                 MR. SACK:  Sure.

24                 (Break taken.)

25                 (Exhibit-4 marked for

# EXHIBIT I

**Stern, Martin L.**

| | |
|---|---|
| From: | Keith Jaffee [keith@focusinv.com] |
| Sent: | Friday, July 23, 2004 11:26 AM |
| To: | Stern, Martin L.; Keith Jaffee |
| Cc: | Sufrin, Barry W.; Mike Carpenter; hkaney@focuspg.com |
| Subject: | Re: Investigation Of U.S. Patent No 6,573,482 |

proceed!

--- Original Message ---
From: "Stern, Martin L." <MLStern@MBF-LAW.com>
Sent: Fri 7/23/2004 9:32 am
To: "Keith Jaffee" <keith@focusinv.com>
Cc: "Sufrin, Barry W." <BWSufrin@MBF-LAW.com>, "Mike Carpenter"
<MikeCarpenter@FOCUSPG.com>, "hkaney@focuspg.com" <hkaney@focuspg.com>
Subject: Investigation Of  U.S. Patent No 6,573,482

Keith:

As you know, we have been corresponding and talking with Mike and Howard
about the new slow cooker they are developing and the above patent owned by
Holmes. A copy of the patent accompanies this email.  While Howard and Mike
have been searching, and are continuing to search, for prior art that would
show the patent is invalid, we have recommended that we also conduct a
prior art investigation in the U.S. Patent Office for relevant prior art
that might invalidate the patent.  As we explained to Howard and Mike, at
this time, the Holmes patent remains a significant issue of concern. We
recommend that you not proceed with this project  until we complete our
study of the Holmes patent and clear the proposed product.

We estimate that the cost to conduct a thorough prior art search would be
in the range of $5,000-$7,500.

We look forward to your instructions.

> -----Original Message-----
> From:  Kiley, Joanne C.
> Sent:  Friday, July 23, 2004 9:02 AM
> To:    Stern, Martin L.
> Subject:   us 6573482 for client 095511-9072
>
> >  <<us6573483(B1).pdf>>
>
> Joanne C. Kiley
> Manager of Information Services                **HIGHLY CONFIDENTIAL**
> Michael Best & Friedrich, LLP                  **ATTORNEYS' EYES ONLY**
> 401 N. Michigan Suite 1900
> Chicago, Illinois 60611
>
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
The information contained in this communication may be confidential,
is intended only for the use of the recipient(s) named above,
and may be legally privileged. If the reader of this message

1

WB 002794

is not the intended recipient, you are hereby notified
that any dissemination, distribution, or copying of this communication,
or any of its contents, is strictly prohibited. If you have
received this communication in error, please return it
to the sender immediately and delete the original message and any
copy of it from your computer system. If you have any questions
concerning this message, please contact the sender.
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

2

WB 002795