IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HOLMES GROUP, INC., | |
| Plaintiff, | |
| vs. | Civil Action No. 05-CV-11367 WGY (Alexander, M.J.) |
| WEST BEND HOUSEWWARES, LLC and FOCUS PRODUCTS GROUP, LLC, | |
| Defendants. | |

## WEST BEND'S OPPOSITION TO HOLMES' MOTION TO COMPEL
_____

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202-4108
Telephone:     414-271-6560

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
180 North Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:     312-222-0800

Lee Carl Bromberg, BBO #058480
Erik Paul Belt, BBO #558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Telephone:     617-443-9292

January 22, 2007                    *Attorneys for Defendants*

## INTRODUCTION

Holmes' last-minute motion is nothing more than a veiled request to extend discovery in this case past the cut-off date set by the Court. West Bend ("WB") has produced all requested documents within its possession, custody, or control. The fact that Holmes did not obtain documents from OEM and additional electronic discovery from WB is not the fault of WB. It is the result of Holmes' failure to pursue discovery during the discovery period and to confer in good faith with WB, as required under Local Rule 37-1. Holmes' untimely motion is without merit and should be denied.

In particular, the day before discovery was to end, Holmes filed this motion for an order compelling:

1) the "immediate production" of:

- alleged "omitted documents" [*i.e.* design and development documents that predate April 12, 2004]; and
- design and development documents allegedly in the possession of OEM – a Chinese manufacture that does business with West Bend;

and

2) that West Bend "demonstrate that it has made all reasonable efforts, including a professional search of its computers and backup systems to locate and produce the omitted documents relating to the planning, design and development of the accused West Bend programmable slow-cookers that predate April 12, 2004."

WB has conducted extensive searches for documents relating to the design and development of its accused slow cooker and produced all such documents located. There are no "omitted documents." Holmes' motion to compel is based--not upon any facts that WB actually has documents that it is withholding--but on the questionable premise that alleged "omitted documents" "<u>should be</u> in West Bend's possession," that [Holmes] "<u>expects</u> that documents <u>would have been</u> . . . retained" and that, in Holmes' opinion, WB has not provided a "<u>plausible</u>

1

explanation" as to why such documents do not exist.  Holmes' unsupported alleged suspicion is not a basis for an order to compel.  Indeed, Holmes' suspicion is unfounded.

During discovery Holmes never suggested that WB should collect documents in the possession of OEM.  The only request regarding OEM made by Holmes was that WB's attorneys accept a subpoena on behalf of a former employee of OEM.  Holmes was informed that WB's counsel did not represent that employee and could not accept the subpoena.  Such a denial is not grounds for ordering WB to produce documents that are not within its control.

On July 28, 2006, as documented in contemporaneous notes attached to the Declaration of Attorney Miotke, WB's counsel raised the issue of electronic discovery with counsel for Holmes.  Declaration of Joseph  T. Miotke Supporting West Bend's Opposition To Holmes' Motion To Compel ("Miotke Decl."), ¶¶ 2-3 and Ex. A.  This issue was raised prior to Holmes' 30(B)(6) deposition of WB so that there was no misunderstanding of the status of the production of documents at the time of that deposition.  *Id.*, ¶ 3.  During that telephone conference:

- Holmes (Attorney Henneberger), as well as WB (Attorney Miotke), stated that the only electronic documents that had been produced were printed copies of electronic email files contained on local computers acknowledging that neither party had conducted "professional" searches of electronic archives. *Id.,* ¶ 3.

- Holmes stated that it did not want to allow WB to search through Holmes' electronic archives.  *Id.,* ¶ 4.

- WB told Holmes that if Holmes wanted further electronic discovery from WB that WB expected Holmes would request and pay for such discovery. *Id.,* ¶ 5.

- Attorney Henneberger then stated that he would discuss the issue of further electronic discovery with co-counsel and get back to WB on any further electronic discovery.  *Id.*

Because Holmes never again mentioned electronic discovery, until the filing of Holmes' current motion seeking a declaration that WB had conducted a "professional search of its

computers and backup systems," *id.*, WB conducted no further searches of its electronic records and never pursued any further electronic discovery from Holmes.

## <u>ARGUMENT</u>

**I.      All Design And Development Documents In WB's Possession Relating to The Accused Cooker Have Been Produced And WB Has Repeatedly Advised Holmes Of That Fact.**

Holmes moves to compel production of design and development documents relating to the accused slow cooker during the time period 2002 – April 2004, even though WB repeatedly represented that all such design and development documents in WB's possession have been produced.  On December 11, 2006, WB advised Holmes that it has no such additional documents concerning the development of WB's accused cooker.  Ex. E to Holmes' Motion at 1.  Again, after the purported January 4, 2007 "meet and confer," WB again advised Holmes in writing on January 4 that all documents concerning the development of WB's accused cooker in WB's possession had been produced.  Miotke Decl., ¶ 7 and Ex. B.

Holmes simply fails to accept this fact, arguing instead that "[w]e would <u>expect </u>that similar documents [design and development documents] would have been generated and retained by West Bend during the 2002 to April 2004 time period."  Holmes Brief at 7 (emphasis added).  While some documents might have possibly been generated, they were not retained and WB does not have them.

Holmes then argues that "no <u>reasonable</u> explanation has been provided as to why the requested records [design and development documents] can not be produced or located."  Holmes' Brief at 9.  As noted in Holmes' own brief, WB's counsel informed Holmes that the likely reason that pre-April 2004 documents were no longer in WB's possession was due to changes in ownership of WB and relocation of its facilities.  *Id.*

In late 2002, Regal Ware purchased WB from Illinois Tool Works. *See* Declaration of Howard Kaney Supporting West Bend's Opposition To Holmes' Motion To Compel ("Kaney Decl.") at ¶ 3. In approximately mid-2003, Focus Products Group purchased WB from Regal Ware. *Id.*, ¶ 4. In mid-2005, WB relocated its facility. *Id.*, ¶ 5. To the extent any development documents related to WB's accused cooker dated between 2002 and April 2004 existed, these documents appear to have been discarded or simply lost in connection with the ownership changes and facility relocation of WB. *Id.*, ¶ 6. In any event, WB no longer possesses such documents.

Having no evidence to refute these facts, Holmes simply denigrates the representation of counsel as a "self-serving, uncorroborated statement" unsubstantiated by anyone "having first-hand knowledge." Holmes' Brief at 9. Holmes had the opportunity and in fact deposed the primary WB employees involved in the design and development of the WB cooker. The president, head engineer, and lead marketing person on the design and development project were all deposed <u>after</u> WB's production. Holmes never during these depositions sought the "first-hand knowledge" it now complains is missing.

Holmes' claim that WB's explanation is "unreasonable," in addition to being irrelevant, is at best insincere. In response to WB's requests, Holmes itself produced very few documents relating to the design and development of Holmes' own patented cooker. Despite the fact that Holmes' development activity included the involvement of Holmes' marketing department in the conduct of customer focus groups, communications with the U.S. designer of Holmes' patented controller and the Chinese manufacturer of that controller, Holmes produced no documents from the marketing department, no documents concerning the customer focus groups, only two documents concerning communications with the U.S. designer of the controller and no

documents about the Chinese manufacturer.  When asked at its 30(B)(6) deposition about these missing documents, Holmes explained:

> As I had mentioned earlier, our records previous to the acquisition [Holmes acquisition of Rival] are pretty weak.  You know, there are some things we have, and some things we don't.

Holmes' 30(b) Dep. Tr. at 65:6-9.  Holmes' arguments that it is not plausible and unreasonable to believe that, after a change of ownership and a change of facilities, some documents would be retained and others would not, is disingenuous.  As the result of a change of ownership, Holmes itself admittedly did not retain the very type of development documents that it says  it "expects" WB would have retained.

WB repeatedly searched for all development documents related to its accused electronic cooker, including communications with OEM.  Kaney Decl., ¶ 7.  WB first conducted a search for all documents related to the development of WB's accused electronic cooker in September 2005, shortly after this litigation commenced.  *Id.*, ¶ 8.  WB again conducted a search for all documents related to the development of WB's electronic cooker, including communications with OEM related to such development, in August 2006.  *Id.*, ¶ 9.  All documents related to the development of WB's accused electronic cooker were turned over to WB's counsel.  *Id.*, ¶ 10. WB's counsel produced to Holmes all development documents related to WB's accused electronic cooker, including communications with OEM.  In short, no additional documents related to the design of WB's accused electronic cooker exist.  Holmes knew this yet moved to compel anyway.

Holmes' suggestion that WB's motion for summary judgment of no willful infringement be denied and WB be precluded from relying upon advice of counsel in defending against Holmes' unsupported charge of willful infringement is without merit.  These "omitted" (and

nonexistent) documents, even if they existed, have no bearing on the willfulness issue in this case. The assessment of willfulness does not even begin until the alleged infringer has notice of the patentee's rights. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999); *Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990). The earliest patent asserted against WB by Holmes did not issue until June of 2003. WB's activity prior to that date is without question irrelevant to Holmes' claims of willful infringement. As explained in WB's reply brief on its motion for summary judgment of no willfulness, WB did not receive actual notice of Holmes' patent rights until April of 2004. Consequently, the willfulness question presented here can be stated as follows: <u>After WB learned of Holmes' patents (April of 2004),</u> did WB sell the accused product without a reasonable belief that it had a right to do so? The "omitted" and nonexistent documents, *i.e.*, the pre-April 2004 design and development documents, would shed no light on that issue. *nCube Corporation v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) ("Willful infringement in this case hinges on when the defendants had actual knowledge of plaintiff's patent rights, and their actions after that time.").

Holmes' current motion has no legal relationship to WB's motion for summary judgment of no willfulness. Holmes attempts to link the two only because it lacks any evidence to support its claim of willful infringement.

## II.   Holmes Never Requested That WB Produce OEM's Documents And WB Is Under No Obligation To Produce Documents Within The Custody Of OEM.

Before filing its motion, Holmes never even suggested to WB that WB was obligated to produce documents in the possession of OEM. Holmes' counsel did not raise the issue of WB's production of OEM's documents in the alleged "meet and confer" on January 4, 2007. Miotke Decl., ¶ 8. Local Rule 37.1 states, "Before filing any discovery motion, including any motion for

sanctions or for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest extent possible."   D. Mass. L.R. 37.1(a). Holmes' violated L.R. 37.1 by failing to discuss with WB the issues of WB's alleged obligation to produce OEM's documents.  On that basis alone, Holmes' request for an order requiring WB to produce OEM's documents should be denied.

Additionally, Holmes' request is without merit.  First, as mentioned, Holmes never requested prior to the present motion that WB gather and produce OEM's documents.  Holmes' request was that WB's counsel (not WB) accept service of a subpoena for Mr. MacKay, a former employee of OEM.  Miotke Decl., ¶ 9.  WB's counsel informed Holmes that it did not represent Mr. MacKay and could not accept service for him.  *Id.*, ¶ 10 and Ex. C.  Counsel for Holmes indicated that it would proceed under the Hague Convention for a deposition of Mr. MacKay. *Id.*, ¶ 11.  WB heard nothing further about any deposition of Mr. MacKay or OEM until Holmes filed its brief in response to WB's motion for summary judgment of no willfulness.  *Id.*, ¶ 12. WB's counsel's refusal to accept service of process on Mr. MacKay's behalf cannot be turned into a discovery failure of WB warranting an order that WB produce OEM's documents.

Second, even had Holmes' requested that WB produce OEM's documents (it did not), WB had no legal obligation to do so.  The central inquiry for determining whether WB had "control" of OEM, for purposes of Rule 34, is the determination of the corporate relationship, if any, between the two corporations.  *Steele Software Systems, Corp. v. Dataquick Information Systems, Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006.).  The critical factors here include "the ownership of the nonparty, any overlap of directors, officers, and employees, and the financial relationship between the two entities."  *Id.*

OEM is not affiliated with WB.  Kaney Decl, ¶ 11.  WB has no ownership interest in OEM nor do they share any officers or directors.  *Id.*  The relationship between the two separate entities is one of purchaser and seller.  *Id.*  The fact that this business relationship may be mutually beneficial and amicable, as Holmes' suggests, does not grant WB control over OEM's documents nor impose an obligation on WB to produce those documents.  As explained by the Seventh Circuit in *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993):

> the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; <u>in fact it means the opposite</u>.

Holmes' request for an order that WB produce documents not in its control is without any support in fact or law.

### III.    Holmes' Never Requested A "Professional" Search Of WB's Computers and Electronic Archives.

The reason there has been no "professional" search of WB's computers and electronic archives is that Holmes never requested that WB conduct such a search.  Holmes knew at least by July 28, 2006, that WB had not conducted a "professional" search of its computers and electronic archives.  On July 28, 2006, Attorney Miotke, counsel for WB, raised the issue of electronic discovery with Attorney Henneberger, counsel for Holmes.  Miotke Decl., ¶ 2 and Ex. A.  In that conversation, it was acknowledged that neither party had conducted a "professional" search of its computers and electronic archives and that the only "electronic" searches conducted by either party was a search of the email files stored locally on the computers of the relevant personnel.  *Id.*, ¶ 3.  Such relevant email files located in such searches were printed and produced in hard copy format by both parties.  *Id.*

Attorney Miotke advised Holmes' counsel during that conversation that if Holmes wanted further electronic searches of WB's computers that Holmes should so advise but that WB

would insist that such searches be at Holmes' expense.[1]   Miotke Decl., ¶ 5.   Attorney Henneberger acknowledged that Holmes had not "professionally" searched its own computers in response to WB's document requests and that Holmes did not want to have WB searching through its computers and electronic archives. *Id.*, ¶¶ 3-4.   Mr. Henneberger stated that he would confer with co-counsel and get back to Attorney Miotke about any further electronic discovery from WB. *Id.,* ¶ 5.

Holmes <u>never</u> got back to Attorney Miotke and <u>never</u> again raised the issue of electronic discovery until Holmes filed the present motion to compel.   Miotke Decl., ¶ 5.   There was no mention of electronic discovery in the alleged "meet and confer" on January 4, 2007. *Id.*, ¶ 6.

As noted above, Local Rule 37.1 requires that before filing a discovery motion counsel meet and confer in good faith to narrow the areas of disagreement.   Holmes' violated that rule by failing to even mention its demand for electronic discovery in the alleged "meet and confer." Raising this issue would have given the parties an opportunity to discuss such issues as:

- the exchange of electronic documents, *i.e*, Holmes own production of electronic documents;
- the existence, nature and format of any available electronic archives;
- the allocation of expenses for any requested searches of computers or archives;
- the nature of the searches that would be conducted, *e.g*., search terms and time periods;
- the format in which the electronic documents would be produced, *e.g*., hard copy, .pdf, text-searchable, metadata included; and
- the time it would take to conduct such searches, review and prepare the electronic documents prepared for production, and actually produce any documents found.

---

[1] There was nothing unusual about the insistence that Holmes pay for the electronic searches.   Cost-shifting in connection with discovery of electronic data that is not readily accessible is common. *Quinby v. WestLB AG*, No. 04 Civ. 7406, 2006 WL 2597900, at *7 (S.D.N.Y. Sep. 5, 2006); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003) ("E-mails stored on backup tapes (via NetBackup), however, are an entirely different matter. . . . In order to search the tapes for responsive emails, UBS would have to engage in the costly and time-consuming process detailed above.   It is therefore appropriate to consider cost shifting.")

On the basis of Holmes' failure to comply with L.R. 37.1, Holmes' current request should be denied.

Additionally, Holmes' request should be denied because of Holmes' own dilatory actions in failing to request and raise its alleged concerns about electronic discovery in a timely manner. Holmes knew that it had not conducted any "professional" searches of its computers and archives and produced no electronic documents for WB other than hard copy emails. At least by July 28, 2006, Holmes also knew that WB had not conducted any "professional" searches of its computers and archives and produced no electronic documents for Holmes other than hard copy emails. Despite this knowledge and after being asked if Holmes wanted further electronic discovery from WB, Holmes remained silent on the issue. That silence lasted until the day before discovery ended.

On the day before discovery ended, Holmes filed its motion to compel, demanding that WB:

> demonstrate that it has made all reasonable efforts, including a professional search of its computers and backup systems to locate and produce the omitted documents relating to the planning, design and development of the accused West Bend programmable slow-cookers that pre date April 12, 2004.

Holmes' Motion at 2-3; Holmes' Brief at 17. Having been told the status of WB's electronic discovery production to Holmes almost six months earlier, Holmes knew full well when it filed the motion that WB, like Holmes, had not made any "professional" searches. Having remained silent on the issue of electronic discovery for almost six months, after telling WB that it would get back to WB about any further electronic discovery, Holmes should now be barred from extending the discovery deadline under the guise of a motion to compel. Clearly, Holmes is now seeking the very electronic discovery that Holmes chose not to conduct during the designated discovery period. Trial in this matter is scheduled to commence in two months, a date that has

been long established.  The disruption and confusion to the trial preparation process and the undue expense resulting from such continued discovery at this time is unwarranted, particularly in view of Holmes' delay in raising this issue and the irrelevancy of the documents to the issue of willfulness.

Holmes had its opportunity for discovery and made a conscious decision not to pursue electronic discovery.  WB should not be prejudiced by Holmes' lack of diligence in discovery.

## CONCLUSION

Holmes' motion to compel is nothing more than an effort to extend discovery because Holmes failed to diligently pursue discovery during the allotted period.

Holmes' feigned belief that development documents dated between 2002 and April 2004 have been withheld by WB is baseless.  Holmes cannot and has not demonstrated otherwise.

Holmes has always known that WB could not produce OEM's documents.  That is why Holmes never asked WB to do so.  The present motion seeking OEM's documents arises solely out of Holmes' failure to subpoena OEM itself during the discovery period, not out of any failure on WB's part.

Holmes knew since at least July 2006 that if it wanted electronic discovery from WB, Holmes had to so inform WB and knew that it would be subject to the same electronic discovery, a process that it acknowledged it did not want.  This motion relating to electronic discovery also arises out of Holmes' lack of diligence, not WB's failures.

For the foregoing reasons, WB respectfully requests that the Court deny in its entirety Holmes' Motion To Compel the Production of Documents By West Bend.

Dated:  January 22, 2007

Respectfully submitted,

WEST BEND HOUSEWARES, LLC
FOCUS PRODUCT GROUP, LLC

*By their attorneys,*

/s/ Erik P. Belt
_____
Erik Paul Belt, BBO# 558620
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, Massachusetts 02110-1618
Tel.:  617.443.9292
Fax:  617.443.0004
E-mail:  ebelt@bromsun.com

Of Counsel:

Martin L. Stern
MICHAEL BEST & FRIEDRICH LLP
401 N. Michigan Ave., Ste. 1400
Chicago, Illinois 60611
Tel.:  312.222.0800
E-mail:  mlstern@michaelbest.com

Michael E. Husmann
Joseph T. Miotke
MICHAEL BEST & FRIEDRICH LLP
100 E. Wisconsin Ave., St. 3300
Milwaukee, Wisconsin 53202-4108
Tel.:  414.271.6560
Fax:  414.277.0656
E-mail:  mehusmann@michaelbest.com

## CERTIFICATE OF SERVICE

I certify that on January 22, 2007, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Erik P. Belt
_____
Erik Paul Belt

03032/00501  604795.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

           Plaintiff,

     v.

WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

           Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**DECLARATION OF JOSEPH T. MIOTKE
SUPPORTING WEST BEND'S OPPOSITION
TO HOLMES' MOTION TO COMPEL**

I, Joseph T. Miotke, hereby give the following declaration based on personal knowledge, and if called to testify, would state:

1.  I am a partner at the law firm of Michael Best & Friedrich LLP, and I have been involved in the representation of West Bend (WB) in this matter since 2005.

2.  On July 28, 2006, I raised the issue of production of electronic documents with Glenn Henneberger, counsel for Holmes.  A true and correct copy of my notes from this July 28 teleconference are attached hereto as Exhibit A.

3.  This July 28 conversation occurred before the 30(b)(6) deposition of WB on August 22 and 23, 2006.  Both parties acknowledged that professional searches of their respective electronic archives had not been conducted and the only "electronic" searches conducted by either party was a search of the email files stored locally on the computers of the relevant personnel.   Such relevant email files located in such searches were printed and produced in hard copy format by WB, and upon information and belief, by Holmes.

4.  Attorney Henneberger stated during this July 28 conversation that Holmes did not want to allow WB  to search through Holmes' electronic archives.

5.  I told Attorney Henneberger on July 28, 2006 that if Holmes wanted WB's electronic archives searched that WB expected Holmes to pay for such searching.  Mr. Hennenberger stated that he would discuss the issue with co-counsel and get back to WB on any further electronic discovery.  Holmes never again even mentioned electronic discovery, until the filing of Holmes' current motion.

6.  Attorney Sack never mentioned electronic discovery during our January 4, 2007 teleconference.

7.  After my teleconference with Attorney Alan Sack on January 4, 2007, I advised Holmes in writing on January 4 that all documents concerning the development of WB's accused electronic cooker in WB's possession had been produced.  A true and correct copy of my January 4, 2007 letter to Attorney Sack is attached hereto as Exhibit B.

8.  During my January 4, 2007 teleconference with Attorney Sack, the issue of WB's alleged obligation to produce OEM's documents was not discussed.

9.  Holmes requested that WB's counsel (not WB) accept service of a subpoena for Mr. Hugh MacKay, a former employee of OEM.

10. WB's counsel informed Holmes that it did not represent Mr. MacKay and could not therefore accept service for him.  A true and correct copy of a letter dated November 8, 2006 from me to Alan Sack reflecting this is attached as Exhibit C.

11. Counsel for Holmes then indicated that it would proceed under the Hague Convention for a deposition in Australia.

12. WB heard nothing further about any deposition of Mr. MacKay or OEM until Holmes filed its brief in response to WB's motion for summary judgment of no willfulness.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2006.

/s/ Joseph T. Miotke
Joseph T. Miotke

# EXHIBIT A

WB/ Holme                                    28  JULY  2004

Call  w/ Hennelyn

∘  Schedule                                  — lft v/m
                                              7/28/06  @
                                              1:15 pm

∘  electronic discovery
       ⟹  providing email stored
            locally from any shd tys

       ⟹  no efficient way for WB
            to search archived email
                ⟹  if Holms wants to
                     do this, do it at
                     Holm expen

       ⟸  Otherw, agree that must
            R  will  search archived
            email

∘  Holms has not searched its
    network either, so we
    will agree not to search
    this after Glen has
    spoke w/ Hoffman.

# EXHIBIT B



**Michael Best & Friedrich LLP**
**Attorneys at Law**
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI  53202-4108
Phone  414.271.6560
Fax  414.277.0656

**Joseph T. Miotke**
Direct  414.225.4976
Email  jtmiotke@michaelbest.com

January 4, 2007

<u>**HAND DELIVERED**</u>

Alan M. Sack, Esq. (Guest)
c/o Pfister Hotel
424 E Wisconsin Ave
Milwaukee, WI 53202

Re:    *The Holmes Group, Inc. v. West Bend Housewares, et al.*
         <u>Civil Action No. 05-CV-11367 WGY</u>

Dear Alan:

Enclosed for production pursuant to the Paul Ayer's subpoena, please find documents Bates numbered PAA000001-88.  Mr. Ayers also has two notebooks that he will be bring to tomorrow's deposition but have not been copied.

Also enclosed for production are documents Bates numbered WB 004752-4805, which also relate to Mr. Ayers.

Finally, further to our telephone conversation this morning, West Bend has produced all responsive documents in its possession related to the development of West Bend's Electronic Crockery Cooker with OEM.  Your continued assertions that West Bend has somehow withheld documents on this matter is completely without merit.

Sincerely,

Michael Best & Friedrich LLP

Joseph T. Miotke

# EXHIBIT C

# MICHAEL BEST

**Michael Best & Friedrich LLP**
**Attorneys at Law**
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Phone 414.271.6560
Fax 414.277.0656

**Joseph T. Miotke**
Direct 414.225.4976
Email jtmiotke@michaelbest.com

November 8, 2006

**VIA E-MAIL**

Alan M. Sack, Esq.
HOFFMAN & BARON, LLP
6900 Jericho Turnpike
Syosset, NY 11791-4407

Re:    The Holmes Group, Inc. v. West Bend Housewares, LLC
       and Focus Products Group, LLC
       Civil Action No. 05-CV-11367 WGY
       File No. 095511-9088

Dear Alan:

I am writing in accordance with our telephone conference of yesterday concerning deposition scheduling and in response to your letter of last evening.

We are confirming the depositions of the West Bend employees which you have requested as follows. Gary Sarauer's deposition will take place at our Milwaukee office on December 4, 2006 at 9:00 A.M. Gary Shabino's deposition will take place at our Milwaukee office on December 5, 2006 at 9:00 A.M.

At Holmes' request, we have contacted the following West Bend employees and cleared the following dates for their depositions as requested. Mr. Richard Day and Ms. Kathi Benson are available on December 13th and 14th. Mr. Jeff Wellek, an employee of Focus, is available on December 15th. Please confirm these dates for your depositions of West Bend's and Focus' employees so that they can reschedule their other commitments.

As you are aware, Mr. Hugh Mackay is not and never has been an employee of West Bend or Focus and resides, we believe, in Australia. We have no contact information for him other than the information included with the documents produced in this matter. We also understand that he is no longer employed by OEM. We have not spoken to him and have no authorization to accept a subpoena on his behalf.

Your letter of yesterday (November 7th) came as quite a surprise given our past conversations regarding the scheduling of depositions in this case and particularly in light of our telephone conversation of yesterday which preceded your November 7th letter.

Your November 7th letter is the first time Holmes has ever suggested that it needs to depose William Dobson or Scott Pollnow, inventors on West Bend's design patents that are the subject

# MICHAEL BEST

Alan M. Sack, Esq.
November 8, 2006
Page 2

of the counterclaim in this case, prior to the December 1st date for filing summary judgment motions. Yesterday, before we received your letter, we discussed scheduling the depositions of these inventors. Specifically, I suggested that Mr. Dobson be deposed on December 19th and that we work to schedule Mr. Pollnow on December 18th or 20th so that Holmes would only need to make one trip for their depositions. You made no objection to that proposal and made no mention of any need to depose these inventors prior to December 1st.

We do not understand Holmes' claim that it needs to depose the West Bend inventors prior to the date for filing summary judgment motions. Holmes was able to meet the deadline for filing expert reports on issues pertaining to West Bend's design patents (both infringement and validity) without these depositions. What information does Holmes need and expect to get from West Bend's inventors that relate to the filing of summary judgment motions? Why did Holmes wait until October 30th to make any serious attempt to schedule these depositions? Without answers to these questions, we are in no position to discuss an agreement to extend the deadline for Holmes to file summary judgment motions addressing West Bend's counterclaim in this case. While we do not believe that Holmes has or will suffer any prejudice if these depositions are not taken in November, we do believe that any alleged prejudice is the result of Holmes' procrastination, not West Bend's failure to cooperate as alleged in your letter.

As we have previously discussed, neither William Dobson nor Scott Pollnow is an employee of West Bend, and we have no authorization to accept subpoenas on their behalf. At your request, we agreed to attempt to arrange dates for their depositions and have done so as best we can. As you can imagine (and no doubt you have experienced in this case with Holmes' inventors who are no longer employees), these witnesses are not eager to drop what they are doing to accommodate the attorneys' schedules. Your last minute November 7th claim of a need for these depositions in November does not make the scheduling any easier. We have had, and continue to have, difficulties in contacting these former employees.

Nonetheless, in an effort to accommodate Holmes, we have been able to schedule Mr. Dobson's deposition for November 21st at our Milwaukee office. Unless we hear otherwise, Mr. Dobson will be prepared to go forward with his deposition at 9:00 A.M. on November 21, 2006 at our Milwaukee office. We also have been able to schedule Mr. Pollnow's deposition for November 28th at our Milwaukee office. Unless we hear otherwise, Mr. Pollnow will be prepared to go forward with his deposition at 9:00 A.M. on November 28 at our Milwaukee office. Mr. Pollnow will be traveling and not available from November 17-26, 2006. I'm sure that you can understand his unavailability given the unavailability of Holmes' inventor, Mr. DeCorbert, for three months after November 18th, which you first advised us yesterday.

Yesterday, for the first time, Holmes also raised a claim that Holmes needed to depose West Bend's technical experts on both Homes' and West Bend's patents prior to the response date for responding to any summary judgment motions West Bend might file. First, as I stated in our telephone conference, West Bend is willing to accommodate this last minute claim of Holmes. Secondly, your letter is inaccurate in its statement that: "we [Holmes] have also noticed West

# MICHAEL BEST

Alan M. Sack, Esq.
November 8, 2006
Page 3

Bend's experts to allow sufficient time for their examination prior to responding or replying to Summary Judgment motions." Your October 30[th] letter in which you for the first time request dates for West Bend's experts states:

> We would like to schedule the deposition of West Bend's technical expert for **December 20, 2006** and West Bend's design expert for **December 21, 2006**. Please confirm these dates or provide us with alternative dates for their examination. We will then issue a deposition notice for these witnesses.

Your requested dates of December 20th and 21st are after the long-scheduled December 1 Summary Judgment deadline and December 15th Summary Judgment response deadline. As you are aware, the Court has yet to set reply dates.

In yet another attempt to accommodate Holmes' last minute claims, we have again contacted our experts and had both them and us rearrange our calendars. West Bend's technical expert, Dr. Feinberg, and design expert, Mr. Woodring, are available for their depositions at our Milwaukee office on December 7th, 8th, 11th or 12th. Please advise on which of these two dates Holmes will take these depositions. Because our experts have other matters that must also be scheduled, as do we, we ask that you promptly inform us of the selected deposition dates.

Finally, we confirm the dates for two of Holmes' inventors, James DeCorbert and Lorens Hlava, who both are former employees that we have had difficulty in scheduling. Mr. DeCorbert's deposition will take place at 9:00 A.M. on November 16, 2006 in Providence, Rhode Island. We will serve an updated deposition notice confirming the November 16 date along with the specific location in Providence for the deposition. You advised me for the first time yesterday that Mr. DeCorbert will be unavailable for three months commencing on November 18, 2006.

We also confirm that Mr. Hlava's deposition will take place at 9:00 A.M. on December 14, 2006 in Tulsa, Oklahoma. We will serve an updated deposition notice confirming the December 14 date along with the specific location in Tulsa for the deposition.

If you have any questions, please contact me.

Sincerely,

**MICHAEL BEST & FRIEDRICH LLP**

Joseph T. Miotke

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,

Plaintiff,

v.

WEST BEND HOUSEWARES, LLC and
FOCUS PRODUCTS GROUP, LLC,

Defendants.

Civil Action No. 05-CV-11367 WGY
(Alexander, M.J.)

**DECLARATION OF HOWARD KANEY
SUPPORTING WEST BEND'S OPPOSITION
TO HOLMES' MOTION TO COMPEL**

I, Howard Kaney, hereby give the following declaration based on personal knowledge,
and if called to testify, would state:

1.  I am a Product Manager for West Bend Housewares, LLC ("WB").

2.  I have been employed by WB, and its prior owners, continuously since 1984.

3.  In late 2002, Regal Ware purchased WB from Illinois Tool Works.

4.  In approximately mid-2003, Focus Products Group purchased WB from Regal Ware.

5.  In mid-2005, WB relocated its facility.

6.  To the extent any development documents related to WB's accused cooker dated
between 2002 and April 2004 existed, these documents appear to have been discarded or simply
lost in connection with the ownership changes and facility relocation of WB.

7.  WB repeatedly searched for all development documents related to its accused
electronic cooker, including communications with OEM.

8.  WB first conducted a search for all documents related to the development of WB's
accused electronic cooker in September 2005, shortly after this litigation commenced.

9.   WB again conducted a search for all documents related to the development of WB's electronic cooker, including communications with OEM related to such development, in August 2006.

10. All documents related to the development of WB's accused electronic cooker were turned over to WB's counsel.

11. OEM is not affiliated with WB.  WB has no ownership interest in OEM nor do they share any officers or directors.  The relationship between WB and OEM is one of purchaser and seller.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2006.

_____
Howard Kaney